```
               IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA


CLAUDETTE DELEON,              :
         Plaintiff             :
                               :
    v.                         :    No. 05-126E
                               :
CRAWFORD CENTRAL SCHOOL        :
DISTRICT,                      :
         Defendant             :
```

          Hearing on Motion to Dismiss in the

     above-captioned matter held on Tuesday, October

     11, 2005, commencing at 2:19 p.m., before the

     Honorable Sean J. McLaughlin, at the United States

     Courthouse, Courtroom C, 617 State Street, Erie,

     Pennsylvania 16501.


For the Plaintiff:
     Caleb L. Nichols, Esquire
     P.O. Box 1585
     Erie, PA 16507


For the Defendant:
     Roberta Binder Heath, Esquire
     Andrews & Beard
     3366 Lynnwood Drive
     P.O. Box 1311
     Altoona, PA 16603-1311



            Reported by Janis L. Ferguson, RPR

1

```
 1                        I N D E X
 2
 3   TRANSCRIPT OF THE PROCEEDINGS  . . . . . . . . . . . . . 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                THE COURT:  Good afternoon.  Ms. Heath?
 2                MS. HEATH:  Your Honor, last time we were before
 3   you in this action, we had a Motion to Dismiss Plaintiff's
 4   Complaint, and you entered an order from the bench relative
 5   to permitting Plaintiff an opportunity to amend the
 6   Complaint.
 7                And there are particular issues that remain
 8   in play, and -- there are four issues, actually.  And of
 9   those four, we filed a Motion to Dismiss on two of those
10   issues, so it is a partial Motion to Dismiss, as you
11   indicated.
12                The first is a failure to exhaust
13   administrative remedies.  And I had filed with the Court a
14   supplemental memorandum, because I anticipated Plaintiff's
15   attempting to argue an equitable tooling of the statute
16   relative to filing the PHRC Complaint --
17                THE COURT:  Let me ask you just a couple
18   background questions to make sure that we're on the same
19   factual page.
20                As I understand it, the Plaintiff would have
21   been terminated -- was it August of 2003?
22                MS. HEATH:  Yes.  Yes.
23                THE COURT:  But sometime, some months prior to
24   that, she was suspended.  Is that correct?
25                MS. HEATH:  Correct.
```

```
 1              THE COURT:  And there's no dispute, at least in
 2   your view, that she filed a Complaint with the EEOC --
 3              MS. HEATH:  March 23rd of 2003.
 4              THE COURT:  Apropos to her suspension?
 5              MS. HEATH:  That is correct.
 6              THE COURT:  And to put a fine point on it, insofar
 7   as the exhaustion issue is concerned, your contention is
 8   that you have looked in vain, and you have not found, nor
 9   have you been supplied what you characterize as an Amended
10   Complaint complaining of the termination.  Is that correct?
11              MS. HEATH:  Or any Complaint complaining of the
12   termination.  Nothing has been filed.
13              THE COURT:  All right.  Well --
14              MS. HEATH:  Or served.
15              THE COURT:  All right.  Well, there is
16   correspondence that was attached -- I don't know if you
17   attached it or he attached it, but I read it -- wherein a
18   representative of the EEOC, whose name is presently name
19   escaping me --
20              MS. HEATH:  Mr. Flipping.
21              MR. NICHOLS:  Flipping.
22              THE COURT:  Yes.  -- references her termination.
23   Isn't it reasonable to -- now, I'm speculating, because
24   there's been no record available.  But doesn't it look like
25   the EEOC investigated this from a termination standpoint;
```

4

1  whatever you call it?
2         MS. HEATH:  There had been some attempts at
3  discussion concerning a settlement, and the PHRC
4  investigator was indicating that he mentioned the
5  correspondence indicates the dismissal.  But it has always
6  been the School District's contention, and continues to be,
7  is because she never filed an Amended Complaint, dismissal
8  was never an issue that was going to be discussed for
9  potential settlement with the PHRC.
10         THE COURT:  When I said EEOC, maybe I meant PHRC.
11  But before there was an attempt to mediate or resolve this,
12  which ultimately proved unsuccessful, I guess -- but do you
13  know or does -- do you personally know, or does the record
14  here reflect the extent to which the PHRC had actually began
15  its investigation and conducted any investigation?
16         MS. HEATH:  No.  And, in fact, there were no
17  documents.  From what I have -- I was not involved at that
18  level, but in reviewing the file, there were no requests for
19  documents or anything of that nature from the PHRC relative
20  to the dismissal, which would be indicative of a formal
21  investigation.
22         THE COURT: All right.  And I don't know what more
23  we can say on that.  I get your point.  And then isn't
24  there -- if I remember correctly, there's a contention with
25  respect to the 1981 claim?

```
 1                MS. HEATH:  And the 1983.
 2                THE COURT:  And the 1983 claim?
 3                MS. HEATH:  That's correct.
 4                THE COURT:  There's not enough said about the
 5    individual Defendant's personal involvement?
 6                MS. HEATH:  And I think the Rode -- the Third
 7    Circuit decision that I cited, which continues to be cited,
 8    despite there's been subsequent Supreme Court cases
 9    concerning --
10                (Proceedings interrupted by reporter.)
11                (Discussion held off the record.)
12                MS. HEATH:  The Rode case, R-O-D-E, is still good
13    law relative to individual liability arguments.  And I said
14    despite the fact there has been a Supreme Court decision, a
15    Sorema decision relative to there is no heightened standard
16    of pleading employment law cases versus other federal cases,
17    nonetheless, this Rode case continues to be cited.  And in
18    particular, Section 1983 does not impose any liability under
19    respondeat superior theory.  So, in other words, there has
20    to be some specific pleading of personal involvement.
21                In the Boykins versus Ambridge Area School
22    District case, which is a Third Circuit 1980 case, they
23    upheld individual liability under Section 1983 because
24    particular times, places, and events were all pled and
25    separated out as the actor not being an agent of the
```

```
 1    employer, but acting on his own.
 2              Similarly, they argue that the Section 1981
 3    claim, again, there has to be some sort of a personal action
 4    or personal involvement so as to have the civil rights
 5    remedy under Section 1981 and for personal liability to
 6    attach.
 7              THE COURT:  All right.  Thanks.
 8              MS. HEATH:  Thank you.
 9              THE COURT:  All right, Mr. Nichols, come on up.
10              MR. NICHOLS:  Judge --
11              THE COURT:  Hang on.  Hang on.  Now, you know how
12    I work.  I start asking questions first.  Otherwise, we'll
13    get all over the place.  Then I'm going to let you talk.
14    But I want to ask some preliminary questions.
15              Now, what I'm talking about is the exhaustion
16    issue, insofar as it relates to the termination claim.  My
17    first question is, was there a Complaint filed with the PHRC
18    or the EEOC relative to her complaining about discriminatory
19    treatment relative to her termination?
20              MR. NICHOLS:  In sum and substance, there was --
21    the PHRC was put on notice.  In particular --
22              THE COURT:  How did that happen?
23              MR. NICHOLS:  In particular, my client, whose
24    testimony I can put on, if necessary --
25              THE COURT:  No.
```

```
 1            MR. NICHOLS:  -- went -- she went to the PHRC, and
 2   she carried with her a portfolio.
 3            THE COURT:  All right.
 4            MR. NICHOLS:  She met with Mr. Flipping.
 5            THE COURT:  What is his name again?  I'm sorry.
 6            MR. NICHOLS:  Mr. Flipping.
 7            THE COURT:  Can you spell it.
 8            MR. NICHOLS:  F-L-I-P-P-I-N-G.  He is a
 9   representative of the PHRC.  She met with him.  She
10   discussed the nature of the problem.  And then there was
11   subsequent correspondence in front of the Judge.  All of
12   that, you see the substance involves her dismissal.  As a
13   matter of fact, they indicate -- Mr. Flipping acknowledging
14   some -- in one of the letters -- which I would provide the
15   Court with -- that there was -- he referred specifically to
16   dismissal.
17            Now, you can quibble whether it's dismissal
18   or terminate.  I don't think it's helpful.  You quibble over
19   words like that.  You're trying to make a difference by
20   distinction.
21            THE COURT:  No.  No.  I'm sorry. That's -- the
22   quibbling isn't between the word "dismissal" and
23   "termination".  The quibbling is between the word
24   "termination" and "suspension".  They are two distinct
25   things.  Right?
```

```
 1              MR. NICHOLS:  Judge, I will let the record speak
 2   for itself.  As I said --
 3              THE COURT:  What would Mr. Flipping -- if
 4   Mr. Flipping were deposed -- in other words, what do you
 5   believe he would say that would inform my decision as to
 6   whether the PHRC was on notice of this claim and was
 7   actively grappling with it, with the termination issue?
 8              MR. NICHOLS:  I have talked to Mr. Flipping by
 9   telephone myself.  I can represent that to the Court.
10              THE COURT:  All right.
11              MR. NICHOLS:  I believe that he would testify,
12   one, that my client came in concerning -- after the
13   suspension, after she had been terminated, dismissed,
14   April of 2003.
15              THE COURT:  Now, wait. Excuse me.  You know,
16   precision is important, Mr. Nichols.
17              MR. NICHOLS:  I understand.
18              THE COURT:  And you said after she was terminated
19   in April 2003.  She had not been terminated as of
20   April 2003.  She had been suspended.
21              MR. NICHOLS:  No, Judge, please.  Please.  I have
22   a letter.  I have a letter --
23              THE COURT:  Maybe --
24              MR. NICHOLS:  I have a letter --
25              THE COURT:  You know, I can tell you something.
```

```
 1   You've got to wait until I finish speaking.
 2            MR. NICHOLS:  All right, Judge.
 3            THE COURT:  That's the rule.
 4            MR. NICHOLS:  I understand.  I understand.
 5            THE COURT:  And it isn't so much for me; it's for
 6   that lady there, who can't get down what we're saying.
 7                What was the date of your client's
 8   suspension, first of all?  What date was she suspended?
 9            MR. NICHOLS:  Excuse me, Your Honor.
10            THE COURT:  Yes, go ahead.
11            (Discussion held off the record.)
12            MR. NICHOLS:  Judge, my client informs me that she
13   was suspended March 2003.  And then following that, in
14   April 2004 --
15            THE COURT:  No, wait.  No.  It's April 2003.
16            MR. NICHOLS:  2003.  Correct.  Correct.
17            THE COURT:  Then she got a letter terminating her.
18            MR. NICHOLS:  Terminating her.
19            THE COURT:  All right.  So we've got that sequence
20   down.
21            MR. NICHOLS:  Right.
22            THE COURT:  So getting back to this again, what
23   would Mr. Flipping's -- what offer of proof can you give me
24   that if Mr. Flipping were to testify, he would indicate that
25   the PH -- he's with the PHRC.
```

```
 1            MR. NICHOLS:  That's right.  He's a
 2    representative.
 3            THE COURT:  That he was aware that your client was
 4    complaining about termination -- not just the suspension,
 5    but the termination?  What would he say about that?
 6            MR. NICHOLS:  My understanding is that she
 7    carried -- my client carried to him, physically carried to
 8    him in his office in Pittsburgh, PHRC office, a portfolio
 9    which included -- and that included all of the
10    correspondence, as well as the correspondence dealing with
11    her termination.
12            THE COURT:  Would this meeting have occurred after
13    termination?
14            (Discussion held off the record.)
15            THE COURT:  I heard from the background that she
16    sent the letter around May 2nd and subsequently met with him
17    after that.  Is that right?
18            MR. NICHOLS:  That's right, Judge.
19            THE COURT:  All right.  What do you want to say
20    about the other point; about the alleged inadequacy of your
21    pleading under 1981 and 1983?
22            MR. NICHOLS:  Well, I read the -- I read your
23    ruling again.  I thought you had ruled on the 1981 claim as
24    being adequate.  That was my understanding, as I read the
25    decision.
```

1        THE COURT: All right. If the 1981 claim is
2   adequate, then presumably the 1983 claim is adequate for
3   pleading purposes.
4        MR. NICHOLS: That's what I read. I mean, I have
5   a copy of the decision.
6        THE COURT: I know. I know what I -- you needn't
7   pull it out. I read it before it came out.
8           All right, thank you. You can sit down.
9           (Discussion held off the record.)
10       THE COURT: Presently pending before the Court is
11  a Motion to Dismiss brought on behalf of the Defendant.
12          By way of background, the Plaintiff has filed
13  an Amended Complaint in response to this Court's previous
14  order of August 9. First, the Defendant moves to dismiss
15  the Plaintiff's claim based upon her termination which
16  occurred in April of 2003. And specifically the Defendant
17  contends the Plaintiff has failed to exhaust her
18  administrative remedies by filing a timely Complaint with
19  either the PHRC or the EEOC relative to her termination.
20          Parenthetically, it is apparently undisputed
21  that she did file a claim relative to her suspension, which
22  occurred several weeks before her termination. Of course, a
23  timely EEOC Complaint must be filed within 300 days of the
24  alleged discriminatory event and within 180 days for
25  purposes of PHRC.

```
 1                In response, Plaintiff attaches various
 2   letters wherein the Plaintiff's dismissal is mentioned by
 3   Mr. Flipping of the PHRC.  She claims that counsel -- that
 4   Mr. Flipping would testify that PHRC was put on notice of
 5   the termination claim by virtue of a group of documents
 6   supplied by the Plaintiff and/or through her personal
 7   meeting with him, and then in that sense, the PHRC was
 8   considering, as an aspect of her claim, the termination
 9   aspect of it.
10                In my view, the record at this point is not
11   sufficiently developed to resolve the exhausting issue as a
12   matter of law.  Consequently, that aspect of the motion is
13   denied to permit further record development insofar as it
14   might relate to issues of tolling, estoppel, et cetera.
15                Finally with respect to the 1981 and 1983
16   claims, I have reviewed them against the standard of Rode
17   versus DeleCarte, and I find that for pleading purposes,
18   they are sufficient.  So the Defendant's motion is denied.
19           (Discussion held off the record.)
20           (Whereupon he following discussion was held on the
21            record in camera:)
22           THE COURT:  The Motion to Dismiss having been
23   denied, it's now time to get your answer filed.  I don't
24   want to see another motion filed.  And I'm not being
25   critical, but it's time to get the answer and get it in
```

```
 1   timely within the regular time period.
 2               We will then, in due course, schedule this
 3   for a status conference.  We'll give you a discovery
 4   schedule, which is likely going to be my standard 120 days.
 5   And as I said before, you have a standing offer here, if you
 6   both choose and your clients are so inclined to have me
 7   mediate a settlement conference at some point.  All right?
 8           MS. HEATH:  Thank you.
 9
10           (Hearing concluded at 1:58 p.m.)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```