**EXHIBIT 9**



# CRAWFORD CENTRAL SCHOOL DISTRICT

Instructional Support Center
11280 Mercer Pike
Meadville, Pennsylvania 16335-9504
Telephone: (814) 724-3960
FAX: (814) 333-8731
www.craw.org

Michael E. Dolecki, *Superintendent*

Charles E. Heller III
*Assistant Superintendent*
Shawn G. Sampson
*Business Manager/Board Secretary*
Kathy K. Thomas
*Director of Curriculum & Instruction*
Nicholas J. Cheropovich
*Director of Special Services*
John M. Bauer
*Supervisor of Buildings & Grounds*
Richard L. Fraker
*Coordinator of Technology*

## OFFICE OF THE SUPERINTENDENT

March 26, 2002

Claudette déLeon
11983 Eureka Road
Edinboro, PA 16412

Dear Ms. déLeon:

Please be advised that an appointment has been made for you with Dr. Kenneth Bill at the Clarion Psychiatric Center on April 25, 2002, at 1:00 P.M. I am requesting that you call his office as soon as possible and confirm this appointment and provide pertinent information that is required before your visit. The number of Dr. Bill's office is 1-800-253-4906. Your medical insurance should cover all expenses for the appointment. In case the insurance does not cover expenses, Crawford Central will be responsible for costs. If an appointment can be made with a doctor prior to the above date, the District will notify you in writing.

I also would like to reconfirm the District's willingness to consider discussing a paid leave for the remainder of the 2001-2002 school year based upon your resignation as a teacher in the Crawford Central School District.

Please call my office if you have any questions.

Sincerely,

Michael E. Dolecki
Superintendent of Schools

MED/cak

PC:   Mrs. Patricia Deardorff, C.C.E.A. President
      Mr. George Deshner, Principal ~ Meadville Senior High
      Mr. Emil M. Spadafore, Jr., C.C.S.D. Solicitor
      Personnel File

**Sent Certified Mail on March 26, 2002**

File:CDrive\Misc.MED\ConfidentialFile\\CdeLeonDrAppt3-22-02.doc

AN EQUAL RIGHTS AND OPPORTUNITIES SCHOOL DISTRICT

**EXHIBIT 10**

| | | |
|---|---|---|
| IN THE MATTER OF ARBITRATION BETWEEN | ) | ARBITRATION |
| | : | |
| CRAWFORD CENTRAL SCHOOL DISTRICT | ) | OPINION AND AWARD |
| AND | ) | JAMES CLAIR DUFF |
| | : | |
| CRAWFORD CENTRAL EDUCATION ASSOCIATION | ) | ARBITRATOR |
| | : | |
| | ) | PA Bureau of Mediation |

SUBJECT:   UNSATISFACTORY RATING AND ACTION PLAN
FOR PROFESSIONAL EMPLOYEE/TEACHER

HEARINGS HELD IN MEADVILLE, PENNSYLVANIA
WEDNESDAY, MAY 7, 2003;
FRIDAY, JUNE 13, 2003;
AND THURSDAY, AUGUST 21, 2003

A P P E A R A N C E S

FOR THE EMPLOYER

CARL P. BEARD
Andrews and Beard
LEGAL COUNSEL

FOR THE UNION

RICHARD S. McEWEN
Pennsylvania State Education
 Association
LEGAL COUNSEL

## APPOINTMENT

The undersigned impartial Arbitrator was selected by representatives of Crawford Central School District and of Crawford Central Education Association from a panel furnished by the Pennsylvania Bureau of Mediation to hear and decide a dispute pending between the Parties. Arbitration Hearings were conducted on May 7, June 13, and August 21, 2003 at the District's Administration Offices in Meadville, Pennsylvania. At those times, both sides were represented by Legal Counsel and each of them was afforded fair and ample opportunity to present testimony, exhibits and arguments in support of the respective positions. Records of the proceedings were compiled and subsequently transcribed. After reviewing the complete evidentiary record thus comprised, as well as Post-Hearing Briefs submitted on behalf of the Parties by their Legal Counsel through the mail, the undersigned now enters the following disposition of this controversy.

## PERTINENT SUBJECT MATTER

A claim asserting as follows was filed on behalf of Grievant Claudette deLeon on or about 6-14-02:

> STATEMENT OF GRIEVANCE:
>
> The school district has violated the collective bargaining agreement and legal statutes in their observations and evaluation of Claudette Deleon. The district issued an unjust and improper evaluation to the grievant on May 30, 2002.

- 1 -

## RELEVANT PORTIONS OF THE COLLECTIVE BARGAINING AGREEMENT

### ARTICLE I
### RECOGNITION

Unit

The Board hereby recognizes the Association as the exclusive representative for the collective bargaining for all professional employees included in the bargaining unit as certified and determined by the Pennsylvania Labor Relations Board.   A copy of said determination is reproduced and made a part hereof.

The parties acknowledge that the Directors of Secondary and Elementary Guidance, Testing and Adult Education are encompassed by the term "Guidance Counselors" which appears in the unit description portion of the Certification of Representative below.

. . .

### ARTICLE III
### GRIEVANCE PROCEDURE

A.   Definitions

1.   Grievance

A "grievance" is hereby defined as:

a.   a claim by an employee or employees regarding the meaning, interpretation or application of any provision in this Agreement

or

b.   that the local school board or its agents have acted inequitably in the application of the terms of this Agreement.

. . .

- 2 -

B.   **Purpose**

The purpose of this procedure is to secure at the
lowest possible level equitable solutions to the
problems which may from time to time arise affecting
employees.   Both parties agree that these proceedings
will be kept as informal and confidential as may be
appropriate at any level of the procedure.

C.   **Time Limits**

. . .

6.   **Level Four – Arbitration**

. . .

a.   Within ten (10) school days after such
written notice of submission to arbitration,
the Board and the Association shall attempt
to agree upon a mutually acceptable arbitrator
and shall obtain a commitment from said arbi-
trator to serve.   If the parties are unable to
agree upon an arbitrator, or to obtain such
a commitment within the specified period, a
request for a list of arbitrators may be made
to the Pennsylvania Mediation Board by either
party.   The parties shall then be bound by
the rules and procedures of the Pennsylvania
Mediation Board in the selection of an arbi-
trator.

b.   The arbitrator so selected shall confer with
the representatives of the Board and the
Association and hold hearing promptly and
shall issue his decision not later than twenty
(20) days from the date of the close of hear-
ings, or, if oral hearings have been waived,
then from the date of the final statements
and proofs on the issues are submitted to
him.   The arbitrator's decision shall be in
writing and shall set forth his findings of
fact, reasoning and conclusions on the issues
submitted.   The arbitrator shall be without
power or authority to make any decision which
requires the commission of an act prohibited
by law or which is in violation of the terms of
this Agreement.   The decision of the arbitrator
shall be submitted to the Board and the Asso-
ciation and shall be final and binding on the
parties.

c.    Costs for the services of the arbitrator, including per diem expenses if any, and actual and necessary travel, subsistence expenses and the costs of the hearing room and arbitration reporter, shall be borne equally by the Board and the Association or the aggrieved party. Any other expenses incurred shall be paid by the party incurring same.

. . .

## ARTICLE IV
## RIGHTS OF PROFESSIONAL EMPLOYEES

A.    Just Cause Provision

No professional employee shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board or any agent or representative thereof, shall be subject to the grievance procedure herein set forth. The reasons forming the basis for disciplinary action will be made available to the professional employees and the Association promptly.

. . .

## ARTICLE XII
## EMPLOYEE EVALUATION

A.    General Criteria

1.    Basis for Conducting Evaluations

Evaluations shall be conducted under the provisions of Section 1123 of the School Code and the School District Policy governing the use of Appendix A of the Professional Evaluation Instrument.

2.    Observation Reports

An employee shall be given a copy of any written observation report. No such report shall be submitted to the central office, placed in the employee's file, or otherwise acted upon without prior review by the employee. The employee shall acknowledge that he/she has had the opportunity to review such material by affixing his/her signature to the copy to be filed with the express understanding that

– 4 –

such signatures in no way indicate agreement
with the contents of the report.

3.    Rating Reports

The employee shall receive a copy of all rating
reports prior to said forms being placed in his/
her personnel file.  The employee may request
a conference to review this rating form with the
appropriate administrator.

4.    Rating Reports

Notification of rating of temporary professional
employees shall be done in accordance with the
provisions of Section 1108(a) of the School Code
of 1949 as amended and the School District
Policy governing the use of Appendix A of the
Professional Evaluation Instrument.

. . .

ARTICLE XXII
MANAGEMENT RIGHTS

The exercise of the foregoing powers, rights, authority,
duties and responsibilities by the Board, the adoption of
policies, rules, regulations and practices in furtherance
thereof, and the use of judgment and discretion in connec-
tion therewith shall be limited only the specific and ex-
pressed terms of this Agreement and then only to the ex-
tent such specific and expressed terms hereof are in con-
formance with the Constitution and laws of the State of
Pennsylvania and the Constitution and laws of the United
States.

ARTICLE XXV
WAIVERS

The parties agree that all negotiable items have been
discussed during the negotiations leading to this Agree-
ment and that no additional negotiation on this Agreement
will be conducted on any item, whether contained herein
or not, during the life of this Agreement.

# SCHOOL CODE

## 24 PS 11-1123 Rating System

In determining whether a professional employee shall be
dismissed for incompetency or unsatisfactory teaching
performance as provided for in section 1122(a) of this
act, and in rating the services of a temporary profes-
sional employee, the professional employee or temporary
professional employee shall be rated by an approved
rating system which shall give due consideration to
personality, preparation, technique; and pupil reaction,
in accordance with standards and regulations for such
scoring as defined by rating cards to be prepared by
the Department of Education, and to be revised, from
time to time, by the Department of Education with the
cooperation and advice of a committee appointed by the
Secretary of Education, including 'representation from
district superintendents of schools, classroom teachers,
school directors, school supervisors, parents of school-
age children enrolled in a public - school, a representa-
tive from a college or department of education within a
higher education institution located within this common-
wealth, and such other groups or interests as the
Secretary of Education may deem appropriate.   Rating
shall be done by or under the supervision of the super-
intendent of schools or, if so directed by him, the same
may be done by an assistant superintendent, a super-
visor, or, a principal, who has supervision over the
work of the professional employe or temporary profes-
sional employe who is being rated: Provided that no
unsatisfactory rating shall be valid unless approved
by the district superintendent.

## BACKGROUND FACTS

This grievance concerns an unsatisfactory performance evaluation issued to the Grievant by the Crawford Central School District for the 2001-2002 school year. As has already been suggested, the evidentiary record is quite voluminous and no effort will be made to reiterate all of the testimony and other evidence at this juncture, although it is incorporated fully herein by reference. The most salient aspects of this case will be identified in the course of the analysis which follows.

It is noteworthy however that the Crawford Central School District has utilized an alternative rating form, purportedly consistent with discretion afforded to the District under the Pennsylvania School Code, for many years. The procedure utilized in order to arrive at the Grievant's unsatisfactory performance evaluation is very much at the heart of this dispute. Critical details of that procedure and the relevant legal mandates will be examined hereafter in detail.

Grievant Claudette deLeon is a Spanish teacher at Meadville Area High School where she has taught since 1989. In the course of her career, she has experienced a series of disagreements with the District's Administration as well as emotional depression for which she has sought medical attention. Just prior to the issuance of her unsatisfactory performance evaluation she consented to and was subjected to a psychological examination at the District's expense. She was found to be able to return to work, but was then issued the disputed rating. The grievance form lists the "relief sought" as follows:

- 7 -

The district should rescind the evaluation and all directives and action plans. The unsatisfactory rating should be replaced with a satisfactory rating.

The District shall cease and desist from any further such action.

The District shall make the grievant whole.

And any other relief, punitive or otherwise, the arbitrator may deem appropriate.

## CONTENTIONS OF THE PARTIES

The Association insists that the District has failed to follow the proper procedure in issuing the unsatisfactory rating to the Grievant and has abdicated its responsibilities and reneged upon the commitment to teachers made when they collaborated on creating the alternative rating form. It believes that Ms. deLeon's evaluation is fatally flawed and cannot stand for various reasons, including that it was not issued within five days of the final observation preceding the rating and was not adequately substantiated by anecdotal records. It suggests that the requirement that the Grievant submit to a psychological examination was unwarranted and in violation of the Americans With Disabilities Act and that the Grievant was made the victim of a pattern of discrimination. It contends that the Parties' arbitration precedent establishes that the District must have just cause to issue an unsatisfactory rating and has the burden of proof to establish unsatisfactory performance and it argues that the District has failed in its effort to justify its action in this forum. It accordingly requests that the grievance be sustained and that the District be ordered to withdraw the unsatisfactory rating and replace it in the Grievant's personnel record with a satisfactory evaluation for the 2001-2002 school year.

- 8 -

The District maintains that neither the issuance of an "unsatisfactory" rating nor an action plan for improvement is arbitrable under apposite case law in Pennsylvania. It asserts that the action plan issued to the Grievant for the 2001-2002 school year was properly issued and that in fact action plans do not even constitute discipline. In any event, it notes that the Grievant's 2001-2002 action plan was never grieved. It characterizes the Association's arguments regarding potential retaliation, bad faith motives, hidden agenda, etc. as claims that make no sense and lack merit. It submits that the District's offer to allow the Grievant to resign in March of 2002 was legitimately tied to her unstable emotional state and not any evidence of a discriminatory motive. It emphasizes that its witnesses are more credible than the Association's witnesses, especially the Grievant, and it takes the position that the prior arbitration cases involving ratings of this Grievant clearly involved distinguishable facts not germane to the instant case. The District is confident that its issuance of the unsatisfactory rating to the Grievant was proper and it requests for all of these and other reasons that the Arbitrator deny the grievance and uphold its actions in all respects.

## DISCUSSION AND FINDINGS

While the record in this case contains a ponderous array of facts and claims which might be mentioned here and discussed both at length and with acute attention to detail, the undersigned believes instead that the more circumspect approach here is to cut out those concerns which are ultimately peripheral and to deal from the outset with the crux of the matters he is compelled to straightforwardly address.   Effort will be expended to achieve that objective.

As a threshold issue, the District has interposed the argument that neither the Grievant's unsatisfactory rating nor action plans it created, ostensibly for her benefit, are arbitrable matters properly brought to this forum.   However, an unsatisfactory rating issued without just cause would most emphatically deprive a professional employee of a professional advantage in violation of Article IV of the Parties' Collective Bargaining Agreement.   By contrast, the action plans issued to the Grievant have not been shown to pose any particular threat to the Grievant's status or to constitute disciplinary action; accordingly, they are dismissed from further consideration in this tribunal.

As to the unsatisfactory rating, this Arbitrator is quite simply not at liberty to ignore what the record so emphatically demonstrates. Various alleged deficiencies were cited and relied upon by the District as the causal factors triggering her overall unsatisfactory rating for the school year in question and they must be reviewed.   The principal document pur- porting to evidence the basis for that verdict is reproduced in relevant part for convenience here as follows:

- 10 -

Interestingly, in a prior arbitration between not only the same Parties but also Grievant deLeon, Arbitrator Ronald F. Talarico had occasion to make certain incisive observations which are eminently apropos in the instant context as well. Those comments are worthy of copying here:

> Obviously recognizing the significance that tenure holds for professional employees, the Pennsylvania General Assembly has gone to great lengths in determining the circumstances under which a professional employee may be dismissed for incompetency. Those requirements, set forth in Section 1123 of the Public School Code, require an approved rating system which gives due consideration to certain evaluative categories, and mandates that evaluations be in accordance with standards and regulations prepared by the Department of Public Instruction.
>
> Pursuant to that authority, the Department of Public Instruction promulgated certain regulations found at 22 Pa. Code regarding ratings which use alternative forms:
>
> Section 351.24(d)
> "Rating shall be substantiated by anecdotal records and discussed with the employee within five working days after the final observation preceding the rating. The discussion may take place before or after the rating is approved by the Superintendent. The five day limitation may be extended only because of emergency or extenuating circumstances."
>
> Section 351.26(c)
> "Whenever an unsatisfactory rating is given, it shall be supported by anecdotal records. The records shall include specific evidence likely to be important in the event of dismissal."
>
> These regulations contain three very critical and basic requirements, i.e. (1) that the rating be substantiated by anecdotal records; (2) that the rating be discussed with the employee within five working days after the final observation preceding the rating; and (3) the five day limitation may be extended only because of emergency or extenuating circumstances.

- 14 -

· · ·

However, there also exists a second and equally important basis upon which to invalidate the unsatisfactory rating given to the Grievant.  The School District failed to adequately substantiate its rating by anecdotal records, as is also required by Section 351.24(d).  As one might expect, the requirements regarding unsatisfactory ratings are much more specific and rigorous because of the serious consequences that flow from the issuance of such a rating.  One of the most repeated admonitions set forth in all of the Department of Education regulations on ratings is that unsatisfactory ratings must be accompanied by appropriate anecdotal records.  Although the term anecdotal records is not specifically defined, Section 351.26(c) of the regulations require that anecdotal records "include specific evidence likely to be important in the event of dismissal."

The importance of the anecdotal records that must accompany an unsatisfactory rating cannot be overstated.  This is an extremely serious situation for any teacher.  After having received a first unsatisfactory rating, one's teaching career hangs in the balance because a second unsatisfactory rating will likely trigger a dismissal on the basis of incompetency.

Therefore, a proper anecdotal record should provide a clear outline for the teacher as to the events that caused the unsatisfactory rating; but perhaps even more importantly, it should reflect what can be done to improve one's performance and correct undesirable behavior.  Furthermore, in the event of a dismissal the anecdotal record would, in essence, become a specific statement of the charges against the teacher, and at the same time would help form the basis for any defense of that teacher.  If the anecdotal records lack these qualities to any significant degree, the rating must be considered invalid.

Accompanying the standardized Professional Evaluation Instrument that the Grievant received on June 6, 1996 is a one page <u>Summative Evaluation Report</u>, which is set forth in its entirety beginning on page 7 of this Opinion.  That <u>Report</u> simply references, in a very broad brushed fashion, the following topics:

(1)  Damages to the modular classroom;
(2)  Being tardy for class;
(3)  Unfair treatment of students;
(4)  Sharing confidential information
     with improper persons; and
(5)  Inconsistencies in the classroom.

However, the comments contained therein are merely vague generalities, lacking specific mention of the necessary particulars....

One of the "ATTACHMENTS" or citations submitted on behalf of the Crawford Central Education Association by its Counsel purports to define anecdotal support as follows:

> ** 14 (2) An anecdote is a brief narrative giving the factual details of a specific incident or event. Without factual details, a rating of professional competence or efficiency is virtually worthless and is little more than epithetical opinion. Without supporting factual detail incompetency cannot be found; and without supporting factual detail an unsatisfactory rating is by definition arbitrary. The essentiality of anecdotal support for an unsatisfactory rating is beyond dispute. An anecdotal record of observations of the employe's performance on specific dates and times, and of the factual details of such observations, made contemporaneously with the observations while they are fresh in mind, is so important and so far superior in effectiveness and reliability to any later recital or documentation made for purposes of litigation, as to be worthy of a stringent rule mandating the former.[1]

Although the Association has deemed the timing of the District's discussion of the Grievant's unsatisfactory rating of her as a flaw which is in effect statutorily fatal to it, the undersigned believes that in fact the fragile state of her psyche during the relevant time frame has been reasonably relied upon by the District as amounting to "extenuating circumstances." However, the blatant deficiencies in the anecdotal support related to her rating cannot be overlooked. The above-quoted extracts from the document evidencing the unsatisfactory rating dramatically illustarte this phenomenon.

---

[1] 9 Pa. D. & C.3d 147, *171, 1977 WL 190, **13 (Pa.Com.Pl.)

It is hard to imagine more emphatic evasion of factual details and plain statement of epithetical opinion than arbitrary categorization of alleged conduct without specific dates, times, and factual details. The rule in Pennsylvania is indeed stringent that observation of a professional teaching employee's performance cannot be denounced only by documentation or re-citals made non-contemporaneously with particular alleged events. In this case it appears to be quite clear that none of the general comments entered on Claudette deLeon's "Professional Evaluation Instrument" dated 3/18/02 had anything to do with her performance prior to the month of March 2002. Her emotional distress exhibited on 3/12/02 simply did not, so far as the available information indicates, warrant a premature unsatisfactory rating for the entire 2001-2002 school year without more supportive anecdotal records than the District ever produced.

AWARD

The grievance is sustained in part; the disputed rating is legally invalid. The Grievant is entitled to be made whole with respect to any professional disadvantage she has been subjected to as a result of this transparent contractual violation. The undersigned impartial Arbitrator retains jurisdiction over this matter for one (1) calendar year from this date to fashion an appropriate remedy.

James Clair Duff
Arbitrator

Pittsburgh, Pennsylvania

January 26, 2004

- 18 -