IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAUDETTE deLEON,
        Plaintiff

v.                    CIVIL ACTION NO. 05-126 ERIE

CRAWFORD CENTRAL SCHOOL
DISTRICT, et al.,


            PRETRIAL MOTIONS



        Proceedings held before the HONORABLE

        SEAN J. McLAUGHLIN, U.S. District Judge,

        in Courtroom C, U.S. Courthouse, Erie,

        Pennsylvania, on Thursday, December 29, 2005.




APPEARANCES:
        CALEB L. NICHOLS, Esquire, appearing on behalf
        of the Plaintiff.

        ROBERTA BINDER HEATH, Esquire, appearing on

behalf of the Defendants.

Ronald J. Bench, RMR - Official Court Reporter

2

1          P R O C E E D I N G S

2

3          (Whereupon, the proceedings began at 1:22 p.m., on

4    Thursday, December 29, 2005, in Courtroom C.)

5

6          THE COURT:  We have several different things I want

7    to try to resolve here today.  The first matter for

8    consideration is -- I have Ms. Heath's motion to compel

9    plaintiff's cooperation, or in the all alternative, motion to

10   dismiss Americans with Disabilities Act and emotional distress

11   claims.  Do you want to tell me about that?

12          MS. HEATH:  As I indicated in my motion, your Honor,

13   because there is an ADA claim, and there is also an emotional

14  distress claim, I think it's imperative that the defense, in

15  order to properly defend against those claims, have access to

16  the plaintiff's medical records.

17      THE COURT:  Do you have any of the medical records

18  yet -- you want an IME, too?

19      MS. HEATH:  Correct, because she is also requesting

20  reinstatement, so that her current condition is important.

21  Because she's also claiming that the working conditions either

22  caused or acerbated her mental condition, I think it's very

23  important to have the progression of what happened with regard

24  to her medical records, and her mental condition and the

25  history of that mental condition, the nature of it, what she

3

1  told the doctors, what the doctors found, how it regressed over

2  time.  The first psychiatric hospitalization she had was in

3  1998.  Then she took a sabbatical leave.  Plaintiff's counsel

4  has indicated that because she was deemed to be fit to return

5  to work in 2002, we're simply not entitled to any medical

6  records.  After that fact or even before that time.  And I

7  don't understand, if in fact he wants to prove an ADA claim,

8  how can he prove it without the medical records.

9      THE COURT:  All right, I understand your point.  All

10  right, Mr. Nichols, do you want to come on up to the podium.

11  Before we begin, just very briefly, in my continuous effort to

12  try to make things simpler, rather than more complicated, let

13  me ask you just a couple of brief questions.  In preparation

14  for getting together today, I reread your amended complaint.

15  Now, in Count Four of your amended complaint -- if you want to

16  grab it, that would be fine.

17      MR. NICHOLS:  Yes, judge.

18      THE COURT:  You say, for instance, at paragraph 28

19  of Count Four that "plaintiff was unlawfully terminated from

20  her employment because of a ADA documented disability that she

21  received treatment and care for, psychotherapy."  And you make

22  it clear at paragraph 24 that her ADA disability had been

23  diagnosed as psychotic features, high levels of anxiety,

24  post-traumatic stress due to working conditions.  And finally

25  in this count at paragraph 27 you allege, in essence, I'm

                                4

1  reading from it, that they "failed to provide plaintiff,"

2    meaning the defendants, "with reasonable accommodation while

3    she was under documented medical care," correct?

4            MR. NICHOLS:  That's correct, judge.

5            THE COURT:  Okay.  Now, here's my first question.

6    With respect to the ADA claim, then, if I'm reading this

7    correctly, it is your contention in part that she was an

8    individual with a disability within the meaning of the Act, and

9    that in fact motivated in part the employer when it took the

10   allegedly unlawful actions against her that it did, is that a

11   quick fair summary?

12           MR. NICHOLS:  That's a fair summary of the Act.

13           THE COURT:  You don't have to answer to anything --

14   I just want to walk us through that.  That's right so far,

15   isn't it, what I said?

16           MR. NICHOLS:  I agree with that so far.

17           THE COURT:  Now, my question then is this.  And then

18   let me ask you one other question.  Among the damages that you

19   are claiming here, I know that there's an ADA count, there's a

20   Title VII count, there are various other counts, by way of

21   damages you are seeking, among other things, damages for

22   emotional distress, psychological damages, correct -- as a

23   result of the allegedly unlawful actions, is that correct?

24          MR. NICHOLS:  Specifically, judge, in terms of the

25   damages, the emotional distress is claim eight.  That's the


                                5


1   tortious claim.

2          THE COURT:  Right, in other words, it says severe

3   emotional psychological distress, among other things.  Here's

4   my question for you then.  If your claim is based in part on an

5   alleged disability, a psychological disability within the

6   meaning of the Act, and further and in this count if you are

7   seeking damages in the nature of emotional distress and

8   psychological injury, and if by virtue of both of those things

9   you had specifically put into issue your client's psychological

10   condition, how for goodness sakes wouldn't a defendant be

11   entitled to those records?

12          MR. NICHOLS:  I would say in response to this, first

13   of all, I have two cases I would like to offer to the court.

14          THE COURT:  Well, you can, just tell me first in

15   your own words, if you put it into issue, I'm not saying

16   there's anything wrong with that, this is your case, but in all

17   my years in private practice and over 11 years on this bench,

18  I have never seen a situation where someone puts their physical

19  or psychological well-being into issue in a case and then

20  successfully can prevent the other side from investigating it?

21          MR. NICHOLS:  Judge, basically, on a very practical

22  level, we certainly understand that these records have to come

23  in, otherwise, we cannot establish a ADA claim.  Plus, the

24  tortious damages claim, we understand that.  My concern is

25  this.  Is that there's a method, a manner by which these

6

1  records should come in.

2          THE COURT:  We're not talking about admissibility at

3  trial right now, we're talking about they want it for discovery

4  purposes.  That's what we're talking about.

5          MR. NICHOLS:  I understand.

6          THE COURT:  What's your position on that?

7          MR. NICHOLS:  My position on that is this.  Is that

8  because of the privacy interests of my client and they are

9  substantial here, in light of those privacy interests, the

10  HIPPA Act --

11          THE COURT:  Sir, and once again, this is with all

12   respect, you can't hide behind the HIPPA Act when you bring a

13   lawsuit in court.  It doesn't trump the defendant's right to

14   see what the basis of your case is.

15          MR. NICHOLS:  I understand.  But what I'm saying, I

16   have two cases.  I have two cases I'd like to offer to court.

17   One says that the claim, the tortious claim -- does not put in

18   issue --

19          THE COURT:  What is the case citation?

20          MR. NICHOLS:  Here it is, I cite it in my brief,

21   it's Klovensy_v._Moore.  I cite it in my brief.

22          THE COURT:  What would be that citation, if you

23   could find it for me?

24          MR. NICHOLS:  In my memorandum of law -- page 337.

25          THE COURT:  Do you have the official cite in your


                                  7


1   brief?

2          MR. NICHOLS:  Yes, sir.

3          THE COURT:  What is that?

4          MR. NICHOLS:  Klovensy -- 337 D & C, 4th, page 70,

5   (2002).

6         THE COURT:  Is there another case you wanted to call

7   my attention to?

8         MR. NICHOLS:  There's another case here that says --

9   this is a Third Circuit case --

10        THE COURT:  What would that citation be?

11        MR. NICHOLS:  The citation there is Bolden_v._SEPTA,
          _____ __ _____

12   21 F.3d page 29, (3rd Cir. 1994).

13        THE COURT:  What proposition does that case stand

14   for that you think is important?

15        MR. NICHOLS:  The Third Circuit, of all the Courts

16   of Appeals have expressly considered the issue, have held that

17   expert testimony is not required to establish emotional

18   injuries.  Such as those alleged in the eighth claim.  So the

19   IME is not necessary to -- I mean expert testimony is not

20   necessary.  So getting a required IME in order to say that that

21   necessarily implicates and puts into issue the claim because we

22   have alleged under the eighth claim, does not cut ice.  Does

23   not cut ice because the courts say, one, you don't have to have

24   expert testimony.  We don't have to call an expert to prove

25   that.  Those are traditional, tortious damages.  That's what

8

1   Klovensy says, the case which I cite in my brief.  What I'm
    _____

2   simply saying on a very practical level is this.  The way I

3   analyze this case with respect to the allegations of the ADA

4   and damages that the plaintiff has sustained is that, at least

5   for 2001 until 2002, at a time -- to go before a psychiatrist,

6   to undergo an IME, I'm saying during that span of time there

7   was several things that the employer, in terms of required her

8   to do, as far as unlawful practices, I think it did not

9   reasonably accommodate her within the meaning of the ADA.

10  Having said that, I full well understand we have to first prove

11  and establish that her condition is cognizable, recognizable

12  under the ADA.

13      THE COURT:  But at trial, to the extent you are

14  proceeding on an ADA claim based upon a substantial impairment

15  within the meaning of the Act, in this case a psychological or

16  psychotic impairment, you would need expert testimony to

17  establish that prong of your ADA claim, wouldn't you?

18      MR. NICHOLS:  Well, we are prepared to do that.  As

19  a matter of fact, we have substantial volume of medical records

20  already compiled over the years by the physicians that have

21  seen my client.  We already have those documents.

22        THE COURT:  All I need to know is this, then I have

23  a few other questions, I think I might be able to rule on this.

24  You have no intention of withdrawing your ADA claim?

25        MR. NICHOLS:  Oh, no.


9


1        THE COURT:  Nor do you have any intention of

2  withdrawing your damage claims, if you will, for psychological

3  injury?

4        MR. NICHOLS:  No.

5        THE COURT:  All right, you can sit down.  You have

6  extent out of him a request for production of documents, is

7  that right?

8        MS. HEATH:  Yes.

9        THE COURT:  Does it include an authorization for

10  release of medical information?

11        MS. HEATH:  Yes, I sent the paper release to him,

12  but he hasn't sent them back.

13    THE COURT:  All right.  And for what period of time?

14    MS. HEATH:  Well, it would essentially be from 1997

15  through the present.

16    THE COURT:  Why do you need an IME?

17    MS. HEATH:  She's requesting reinstatement, and

18  there had been some indication, although not formally in the

19  pleadings, that her failure to mitigate her damages by seeking

20  other employment was in some respect due to her emotional

21  distress and her ongoing emotional issues.  Now, if there is

22  not going to be a claim that she has ongoing emotional issues

23  as a result of what my client allegedly did in their

24  termination of her or that it didn't affect her in getting

25  other employment, that's fine.  But at this point that's not my


10


1  understanding.

2    THE COURT:  Well, this is what I'm going to do for

3  present purposes until this thing comes into somewhat sharper

4  focus.  First of all, with respect to the motion to compel, I'm

5  going to grant the motion to this extent.  Based upon the fact

6  that in my view since the ADA claim remains a part of the case,

7  plaintiff contends that she suffered from a disability within

8  the meaning of the Act, i.e., a psychological disability, and

9  that it was a factor in her termination.  Based upon the

10  additional fact that there are psychological damages that are

11  being claimed, I think it's entirely appropriate that the

12  defendant have an opportunity to review those medical records.

13  I'm going to direct that they be produced.  I'm going to direct

14  that the attached authorizations be provided.

15       That said, I am, at this time, not going to order

16  the plaintiff to submit to an independent psychiatric or

17  medical evaluation.  I think that's premature.  I will revisit

18  that issue if and when the defendant feels that it still needs

19  the IME, after a review of the relevant medical records.  So

20  the motion is granted in part and denied in part.

21       Now, let's go on to another issue, just in no

22  particular order.  I received, Mr. Nichols, from you -- well,

23  sent to the Clerk's Office, dated December 22, 2005 a letter, a

24  cover letter to me, which includes a demand letter that you had

25  sent to defense counsel, along with various attachments.  Just

11

1  so you know, those, at my direction, are not filed and will not

2  be filed.  I consider this something maybe for another day that

3  would form the subject matter of a settlement conference, all

4  right.  But I have those.  And then I received, which was

5  filed, a motion for partial summary judgment.  Do you have that

6  motion with you?

7         MR. NICHOLS:  Yes, sir.

8         THE COURT:  You are asking me to declare as a matter

9  of law that the defendant violated plaintiff's federal and

10  constitutional rights under the Americans with Disability Act

11  and unlawfully discriminated against her, as well as violated

12  their statutory obligations to plaintiff to provide reasonable

13  accommodations.  And then in various particulars there.  How,

14  for goodness sakes -- I mean this isn't even briefed up yet.

15  These are quintessential issues of fact and motive and intent.

16  How could I grant at this stage a partial judgment on liability

17  to the plaintiff?

18         MR. NICHOLS:  Well, except one thing, your Honor.

19         THE COURT:  I have never seen this.  I'm not being

20  critical, maybe it can be done, but how could I possibly grant

21  partial judgment here?

22         MR. NICHOLS:  I would refer the court to the fifth

23  paragraph, the last paragraph as a matter of fact, of my

24  memorandum in support of my memorandum of law.

25          THE COURT:  Did you file a brief in support of this?


                                    12


1           MR. NICHOLS:  A memorandum of law, it's attached to

2   that.

3           THE COURT:  Attached to the motion?

4           MR. NICHOLS:  It's supposed to be attached to the

5   motion.  I have a copy.

6           THE COURT:  I see, it's like one and a half pages?

7           MR. NICHOLS:  Correct.  The last paragraph, the

8   fifth paragraph.

9           THE COURT:  Okay, I see it.  But how can I declare

10  right now that you win on liability?

11          MR. NICHOLS:  I'm simply asking, judge, is that the

12  record as of today and in terms of the documentation, which I

13  submitted in support of this motion, one, it puts in a very

14  stark form whether or not my client is covered by ADA or not.

15  That's, of course, the first issue, the threshold issue.

16          THE COURT:  I don't know on this record.  First of

17  all, refresh my recollection, when is discovery supposed to

18  close, do you know?

19       MS. HEATH:  It's 120 days from December 22nd or

20  December 16th or something like that.

21       THE COURT:  So you haven't gotten any discovery, you

22  haven't done any discovery yet, right?

23       MR. NICHOLS:  Except for one thing, though, judge.

24  And that is I think the record as it is today, based upon what

25  we put before you already, you could make a determination on


13


1  whether or not she is covered.  Because her medical records,

2  it's not as if it's been several years.

3       THE COURT:  Every one is potentially covered under

4  the ADA.  But at this early stage, I'll tell what I'm going to

5  do, just to keep my record clean and marching forward.  Because

6  this is just, first of all, completely premature, there is no

7  record developed.  I'm going to deny your motion, but I'm going

8  to deny it without prejudice.  If you feel it's appropriate to

9  reassert the motion, you can do so at the conclusion of

10  discovery, all right.  Then I'll have a record there.

11          MR. NICHOLS:  All right.

12          THE COURT:  So that's that.  Okay, you can take your

13  seat, thank you, Mr. Nichols.  Finally, Ms. Heath, just by way

14  of wrapping some of this stuff up.  You were not the attorney

15  way back when for the district when they were involved in those

16  periodic suspensions and whatnot, is that right?

17          MS. HEATH:  No, it's my partner.

18          THE COURT:  Why did they keep suspending -- this is

19  just background for me, but I looked at the arbitration

20  decision, the one that was attached.  What was going on here,

21  they kept suspending her and she kept on being reinstated,

22  suspending her, kept being reinstated.  I'm trying to get a

23  handle back then -- was it poor performance, was it because

24  they believed she was psychologically impaired to the point

25  where she couldn't teach, they kept losing before the

14

1  arbitrator, what was reason they kept doing that?

2          MS. HEATH:  It was, from my understanding, it was

3  that they believed that she was incompetent.  There were

4  performance issues.  There were a variety of issues that kept

5    coming up relative to her --

6          THE COURT:  But I've never seen such a string of

7    losses, have you?

8          MS. HEATH:  Well, ultimately, as to termination, we

9    won that.

10          THE COURT:  I say tongue and cheek, a broken clock

11    twice a day.  But you did win at termination.  But the record,

12    it may be further developed later on, I just wanted to make

13    sure that the basis, your understanding as to the basis of

14    those earlier suspensions was the district's contention before

15    the arbitrator that her work was sub-standard, is that

16    essentially it?

17          MS. HEATH:  Yes.

18          THE COURT:  Who was your partner by the way?

19          MS. HEATH:  Carl Beard.

20          MR. NICHOLS:  Judge --

21          THE COURT:  Yes.

22          MR. NICHOLS:  Judge, the arbitration as rendered by

23    the arbitrator is significant and we certainly would want to

24    revisit this in the future.  Specifically, it deals with her

25    psychological condition.  And, indeed, that was the

15

1   determinative issue upon which he ruled favorably for my

2   client.  Back then, that was 2000 and something.

3           THE COURT:  That was a while ago.

4           MR. NICHOLS:  Very persuasive decision.

5           THE COURT:  It may be, I don't know.  We'll see how

6   persuasive it is, we'll see how it all fits in.  Let's go off

7   the record here for a minute.

8           (Discussion held off the record.)

9

10          (Whereupon, at 1:50 p.m., the proceedings were

11   concluded.)

12

13                       - - -

14

15

16

17

18

19

20

21

22

23

24

25

16

1        C E R T I F I C A T E
         – – – – – – – – – –

2

3

4        I, Ronald J. Bench, certify that the foregoing is a

5    correct transcript from the record of proceedings in the

6    above-entitled matter.

7

8

9

10   _____

11   Ronald J. Bench

12

13

14

15

16

17

18

19

20

21

22

23

24

25