# EXHIBIT (1)

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF PENNSYLVANIA

\* \* \* \* \* \* \* \* \*

| | |
|---|---|
| CLAUDETTE DE LEON, | \* |
| Plaintiff | \* Case No. |
| vs. | \* 05-126E |
| CRAWFORD CENTRAL | \* |
| SCHOOL DISTRICT | \* |
| CRAWFORD CENTRAL | \* |
| SCHOOL BOARD, | \* |
| Defendants, | \* |
| MICHAEL E. DOLECKI, | \* |
| Superintendent, | \* |
| Defendant, | \* |
| CHARLES E. HELLER, | \* |
| III, Assistant | \* |
| Superintendent, | \* |
| Defendant | \* |

\* \* \* \* \* \* \* \*

DEPOSITION OF

CLAUDETTE DE LEON

April 4, 2006

Any reproduction of this transcript
is prohibited without authorization
by the certifying agency.

158

1          Some other teachers say it out

2     loud.  They say, you're failing.

3     Because I heard them, especially when I

4     was witnessing other teachers and I'd

5     have to go to several other classes.

6     They'd say, hey, you, you're failing.

7     They did.  I never did because I know

8     it was confidential.  So I wrote it in

9     a little piece of paper, and I'd give

10    it to them, and any other information,

11    of course.  I never called any other

12    parent before, prior to that.

13    Q.     And you never opened any grade

14    books and showed the class other

15    students' grades?

16    A.     Of course not.  My grade book

17    was my grade book.

18    Q.     Now, if you will recall from the

19    last arbitration, there was an issue

20    about your copying Mr. Flipping on

21    correspondence that related to

22    students' discipline and identified the

23    students by name; do you remember that

24    issue?

25    A.     Yes.  Uh-huh (yes).

159

1    Q.        And it is correct that Mr.

2    Flipping was copied on some of that

3    information; correct?

4    A.        It was only one page that I

5    recall that Mr. Deshner brought up.

6    And I was explaining to him --- I can't

7    recall if it was when I was talking to

8    Mrs. McDaniels about this particular

9    student.  And I cannot recall the issue

10   that we were discussing, that he

11   happened to be --- that I told him the

12   kind of students ---.

13        Oh, I know.  If I recall very

14   well, these students were screaming,

15   yelling in front of my class, you're

16   going to be fired.  Because of you, I

17   already went to the office because Mr.

18   Higgins is asking us, how'd you act,

19   what'd you say, what'd you do in class?

20   And because of you, I had to go to the

21   office.  And you are going to get

22   fired.  In front of the whole entire

23   class.

24        And I sent him a memo saying,

25   this is what the students are saying.

160

1    And this other student, Megan --- I

2    can't recall her name right now.  One

3    is Thomas.  The other one is Megan.  I

4    have the memo, if you have a copy of

5    that.  And I said, this particular

6    student, that I'm having a great deal

7    of difficulty with him academically.  I

8    already called his mother, he was a D

9    student, that I was having difficulty

10   keeping him on task.  The other girl, I

11   didn't have that much problem.  But

12   still, at the beginning, she was a very

13   nice student.

14        And after Mr. Higgins told her

15   to ask them how I act --- because she

16   said the same thing.  Yeah, we were

17   called to the office because of you.

18   If you keep sending students to the

19   office, you are not going to be

20   teaching here for too much longer.

21   That's what Mr. Higgins said in front

22   of the whole entire class.

23        So I copied Mr. Flipping with

24   all the comments and telling him, this

25   is the kind of student, and they're

161

1  asking him about my professional

2  performance when this is a D student

3  that is not even paying attention, and

4  I have so much difficulty keeping him

5  on task and turning in his homework.

6           I explained to him the situation

7  and the type students, that they were

8  being questioned about me, how I acted,

9  what I said, what did I do.  And there

10  were two incidents which also

11  aggravated my lawyer.  Cassandra Prenak

12  (phonetic) was asking Higgins about me,

13  how I act, what did I say in class.

14  Well, he observed me.  He gave me S.

15  Q.       And you didn't feel that that

16  type of exchange was a violation of the

17  student confidentiality policy?

18  A.       Do you think that it was a

19  violation of the teacher's

20  confidentiality?

21  Q.       I'm asking if you believe that

22  was in violation of the student's

23  records privacy.

24  A.       Telling the students that I was

25  going to be fired and telling the

162

1   parents ---?

2   Q.      My question is, didn't you

3   believe that that kind of exchange, in

4   identifying a student by name ---?

5   A.      Not to human relations, no.

6   Q.      And who told you that, or is it

7   just your own feeling?

8   A.      It's not my own feeling.  I did

9   provide him with all the documentation

10  that was necessary, and my lawyers,

11  because I have filed a complaint.  And

12  legally, I was allowed --- if they

13  weren't allowed, they did, too.  They

14  sent all the documentation, including

15  all my documentation, my medical files.

16  All this is confidential information.

17  And they sent it to human relations, as

18  well, even documentation that they were

19  not allowed to submit.  Remember when

20  the arbitrator said what's good for the

21  goose ---?

22  Q.      Again, you're confusing the law

23  that is the basis of this action for

24  what the arbitrator said, which was to

25  purge your file so it was not to be

163

1   used for further disciplinary action

2   against you on that basis.  That is a

3   separate issue, completely separate.

4   Let me show you what's already been

5   marked as, I believe, Exhibit 15.  Ms.

6   de Leon, have you ever seen this

7   document called the Pennsylvania Code

8   of Professional Practice and Conduct

9   for Educators?

10   A.     No.  I never seen it until just

11   now.  Have they seen it?  Have they

12   seen the Professional --- have you seen

13   this document?  Why don't you give him

14   a copy?

15   Q.     This is the law, and I'm going

16   to direct your attention under

17   practices, which is 22 Pa.C. 235.4,

18   that's practices.  And looking to page

19   two, there are a variety of practices

20   that are listed that are expected under

21   the law of professional educators.  And

22   one of them, if you look to number (9),

23   it states, professional educators shall

24   keep in confidence information obtained

25   in confidence in the course of their

164

1  professional service unless required to

2  be disclosed by law or by clear and

3  compelling professional necessity as

4  determined by the professional

5  educator.  So my question to you is, do

6  you believe that your copying Mr.

7  Flipping on all of that student

8  information falls within number nine?

9  A.      Correct.  Yes.

10                  ATTORNEY NICHOLS:

11                  Counsel, let me state for

12          the record before you continue

13          to put this question to my

14          client like that, I have to

15          remind you of the ruling by

16          Arbitrator Amis on this

17          particular issue dealing with

18          the release of student

19          information to Mr. Flipping and

20          other members of the PHRC.  That

21          did come before Mr. Amis.  Mr.

22          Amis specifically ruled on ---.

23                  ATTORNEY HEATH:

24                  Please do not lecture me

25          about the arbitration.

165

ATTORNEY NICHOLS:

No, I'm saying --- but you asked her ---.

ATTORNEY HEATH:

I don't want to know about that.  What I'm asking her ---.

ATTORNEY NICHOLS:

But it's not fair for you ---.

ATTORNEY HEATH:

Oh, dear God.

ATTORNEY NICHOLS:

It's not fair for you ---.

CERTIFIED SECTION

ATTORNEY HEATH:

Certify this on the record.  I'm going to the Judge. I cannot put up with this.  I will not put up with this.

ATTORNEY NICHOLS:

But I welcome my opportunity to go to the Judge and listen because this is not

166

fair.  It's unfair for
you ---.

ATTORNEY HEATH:

This is ridiculous.

ATTORNEY NICHOLS:

Let the record reflect
it's unfair for you to, one,
first of all, suggest that my
client violated the law in any
fashion ---.

ATTORNEY HEATH:

Put your objection on the
record and move on.  This is a
deposition under the Federal
Rules.

ATTORNEY NICHOLS:

No.  Wait a minute.  You
asked her a question and she has
a right to --- we have a right
to respond.

ATTORNEY HEATH:

You do not testify.  She
can testify.

ATTORNEY NICHOLS:

No, no.  I have a right

167

to speak to this legal issue.

ATTORNEY HEATH:

Oh, dear God.

ATTORNEY NICHOLS:

And the legal issue is

this.  Arbitrator Amis

ruled ---.

ATTORNEY HEATH:

Sir, as we're going to

the Judge ---.

ATTORNEY NICHOLS:

The arbitrator --- yes,

we're going to the Judge.

ATTORNEY HEATH:

Certify this.  I will

move on.  I will move on.

ATTORNEY NICHOLS:

We're going to the Judge

on this.

ATTORNEY HEATH:

This is ridiculous.

ATTORNEY NICHOLS:

No, no, no.  No, it

isn't.  You raised it.

ATTORNEY HEATH:

168

1    I'll call him.  Call him.

2    Want to call him on the phone?

3    ATTORNEY NICHOLS:

4    Yes.  Please, please.

5    ATTORNEY HEATH:

6    All right.

7    ATTORNEY NICHOLS:

8    Arbitrator Amis ---

9    ATTORNEY HEATH:

10   I don't care about that.

11   ATTORNEY NICHOLS:

12   --- ruled, invalidating

13   the charge which Mr. Dolecki

14   charged her with immorality.  He

15   expunged it.  He said it's

16   invalidated because she was

17   authorized to do what she did.

18   I have the opinion here.  Now,

19   this here is saying she is

20   violating a section of code in

21   light of that.  Arbitrator Amis

22   ruled what she did with this

23   information is authorized.

24        You are now saying ---

25   and you not only implied, you

169

insisted that she violated these
Professional --- and the law in
professional code is just plain
wrong.  And he said that when
Mr. Dolecki charged her with
immorality.  This is what he
said.  I have the record.  He
said one, there was no time that
she sought to deceive.

ATTORNEY HEATH:

Again, ---.

ATTORNEY NICHOLS:

Obviously, that's in the
record.

ATTORNEY HEATH:

Okay.

ATTORNEY NICHOLS:

And I'm not going to have
you charge my client unfairly.
I welcome the opportunity.  We
will talk to the Judge.

ATTORNEY HEATH:

I'm not talking to you
until you calm down.

ATTORNEY NICHOLS:

170

1          I will not allow you to

2     impugn her motive.

3               ATTORNEY HEATH:

4          Please let the record

5     reflect ---

6               ATTORNEY NICHOLS:

7          I've got the record

8     saying otherwise.  The

9     arbitrator said otherwise.

10              ATTORNEY HEATH:

11         --- Mr. Nichols is

12    pounding his fist on the table.

13    He has stood up and he is

14    screaming.

15              ATTORNEY NICHOLS:

16         That's right.

17              ATTORNEY HEATH:

18         Let the record reflect

19    that.  And at this point, I

20    don't think it would be

21    professionally in your best

22    interest to speak to the Judge

23    unless you calm down.

24              ATTORNEY NICHOLS:

25         Well, I'll tell you, I'm

171

1     not going to allow you to say

2     that.

3                ATTORNEY HEATH:

4                This is absolutely

5     absurd.  If you want to take a

6     deposition ---.

7                ATTORNEY NICHOLS:

8                I'm not going to allow

9     you to impugn her character that

10    way.  You impugned her

11    character.

12               ATTORNEY HEATH:

13               If you want to end this

14    deposition, then withdraw your

15    complaint and let the

16    termination stand.  If you want

17    to talk about arbitrations, the

18    award was that she was fairly

19    terminated for just cause.  Let

20    it stand.

21               ATTORNEY NICHOLS:

22               No.  I'm talking about

23    Arbitrator Amis.

24               ATTORNEY HEATH:

25               I can ask about the

172

1    confidentiality issue.  I have a

2    right to.

3              ATTORNEY NICHOLS:

4              He ruled on that very

5    issue you couldn't before.

6              ATTORNEY HEATH:

7              What?

8              ATTORNEY NICHOLS:

9              He has ruled.  He has

10    ruled.

11              ATTORNEY HEATH:

12              Ruled what?  So what?

13              ATTORNEY NICHOLS:

14              And now you are saying

15    --- you asked her to ---.

16              ATTORNEY HEATH:

17              It's not res judicata.

18              ATTORNEY NICHOLS:

19              You were just saying

20    --- you impugned her character.

21              ATTORNEY HEATH:

22              Oh, yes, because she's

23    put her character at issue.

24              ATTORNEY NICHOLS:

25              No, she hasn't.

173

1      ATTORNEY HEATH:

2           Well, her credibility is

3      at issue.

4           ATTORNEY NICHOLS:

5           I'm not going to sit here

6      and allow you ---

7           ATTORNEY HEATH:

8           I can't believe this.

9           ATTORNEY NICHOLS:

10          --- to impugn her

11     character away when I know what

12     the arbitrator said.  He said

13     that those charges of immorality

14     that were brought against

15     her ---

16          ATTORNEY HEATH:

17          I'm asking about

18     confidentiality.

19          ATTORNEY NICHOLS:

20          --- by the

21     administrator ---

22          ATTORNEY HEATH:

23          How is confidentiality

24     and immorality ---

25          ATTORNEY NICHOLS:

174

1      --- were wrong.

2          ATTORNEY HEATH:

3          --- the same thing?  How

4      on God's earth is that true?

5      He's not even listening to my

6      question at this point.  He's

7      throwing a fit and a tantrum.

8          ATTORNEY NICHOLS:

9          Please ask Mr. Dolecki.

10     He brought the charges.

11         ATTORNEY HEATH:

12         This is the most

13     unprofessional, ridiculous

14     action that I have heard ---

15         ATTORNEY NICHOLS:

16         The question, is it true?

17         ATTORNEY HEATH:

18         --- in 18 years of

19     practice.

20         ATTORNEY NICHOLS:

21         The question, is it true,

22     though?  Is it true?  Counsel,

23     is it true?

24         ATTORNEY HEATH:

25         I'm asking if she

175

1    believes that her copying Mr.

2    Flipping was ---.

3                ATTORNEY NICHOLS:

4           And the arbitrator

5    answered that.  He answered

6    that.  You might not want to

7    read it, but I'm not going to

8    sit here and allow you to impugn

9    her character.  You ask your

10   client, did he charge her with

11   immorality?  You ask him.

12               ATTORNEY HEATH:

13          I'm not talking about

14   immorality.

15               ATTORNEY NICHOLS:

16          Well, what are you

17   talking about here?  You're

18   waving the Professional Code at

19   her.

20               ATTORNEY HEATH:

21          Yes.

22               ATTORNEY NICHOLS:

23          A code about immorality.

24   Please don't be disingenuous

25   with us.

176

1          ATTORNEY HEATH:

2          Have you read it?

3          ATTORNEY NICHOLS:

4          What are you talking

5     about?

6          ATTORNEY HEATH:

7          Have you even read it?

8          ATTORNEY NICHOLS:

9          I read it.

10         ATTORNEY HEATH:

11         It's the law.

12         ATTORNEY NICHOLS:

13         I've seen it before.

14   A.    They should read it.

15         ATTORNEY HEATH:

16         It has nothing to do with

17    immorality except for one part.

18    It talks about professional

19    educators shall exhibit ---

20         ATTORNEY NICHOLS:

21         Precisely.

22         ATTORNEY HEATH:

23         --- consistent and

24    equitable treatment of

25    students, ---

177

1          ATTORNEY NICHOLS:

2          Look, you're not ---.

3          ATTORNEY HEATH:

4          --- fellow educators and

5      parents.

6          ATTORNEY NICHOLS:

7          Counsel, Counsel ---.

8          ATTORNEY HEATH:

9          You haven't even read it.

10         ATTORNEY NICHOLS:

11         I have.  You know why I

12     read it?

13         ATTORNEY HEATH:

14         Oh, dear God.

15         ATTORNEY NICHOLS:

16         You know why I read it?

17     Because the district has moved

18     to decertify her.  And they

19     wrote me.  She gave it to me,

20     and I had to respond to it.

21         ATTORNEY HEATH:

22         But this has nothing to

23     do with the question of ---.

24         ATTORNEY NICHOLS:

25         Oh, it is.  This is what

178

1    they did.  This is what ---

2    you're trying to decertify her.

3    You're trying to decertify

4    her ---

5        ATTORNEY HEATH:

6        I'm asking her ---.

7        ATTORNEY NICHOLS:

8        --- on the basis of this.

9    And then you come in here and

10    act, well, what are you talking

11    about?

12        ATTORNEY HEATH:

13        This is a federal

14    lawsuit.

15        ATTORNEY NICHOLS:

16        What are you talking

17    about?

18        ATTORNEY HEATH:

19        This is perfectly legal.

20        ATTORNEY NICHOLS:

21        You are trying to

22    decertify my client.

23        ATTORNEY HEATH:

24        Let the record reflect

25    that at this point, I'm warning

179

1      Mr. Nichols that this type of

2      behavior, I will go before the

3      Judge.

4              ATTORNEY NICHOLS:

5              We're going before the

6      Judge because I'm not going to

7      allow it.

8              ATTORNEY HEATH:

9              He is refusing to allow

10     his client to answer questions.

11     And I will move for dismissal of

12     the complaint because he is

13     refusing ---

14             ATTORNEY NICHOLS:

15             All right.  You can

16     move ---.

17             ATTORNEY HEATH:

18             --- to cooperate with the

19     court ordered deposition

20     relative to discovery.

21             ATTORNEY NICHOLS:

22             All I can say on that

23     particular issue --- on that

24     particular issue, let me say

25     this.  The record that I've

180

1          stated of Arbitrator Amis speaks

2          for itself.  That is the issue

3          that she's put to us.  My client

4          has answered.  And I insist ---

5          or Counsel insists that I will

6          not allow her character to be

7          impugned this way when the

8          record clearly speaks on that

9          particular issue.

10              The arbitrator has

11         already ruled that she has done

12         nothing wrong.  As a matter of

13         fact, it's that very basis that

14         we are asking for back wages,

15         unpaid wages, that I'm going to

16         be putting in the record.

17              ATTORNEY HEATH:

18              Again, I don't really

19         want to waste ---

20              ATTORNEY NICHOLS:

21              That very thing.

22              ATTORNEY HEATH:

23              --- any more time.

24              ATTORNEY NICHOLS:

25              Okay.

Sargent's Court Reporting Service, Inc.
(814) 536-8908

181

1           ATTORNEY HEATH:

2               To certify it for the

3       Judge, I'm filing the motion

4       tomorrow.

5           ATTORNEY NICHOLS:

6               All right.

7           ATTORNEY HEATH:

8               Actually, I'm not filing

9       it until Thursday because I

10      won't be in tomorrow.

11          ATTORNEY NICHOLS:

12              Fine.

13  EXAMINATION

14  BY ATTORNEY HEATH:

15  Q.      Next is Exhibit 16.  I'm going

16  to ask you to take a look at this.

17              (de Leon Exhibit Number

18              16 marked for

19              identification.)

20  WITNESS REVIEWS DOCUMENT

21  BY ATTORNEY HEATH:

22  Q.      Have you ever seen the student

23  records policy before?

24  A.      No, I never have.

25  Q.      And are you aware that this was