# EXHIBIT (2)

PENNSYLVANIA BUREAU OF MEDIATION



| | |
|---|---|
| In the Matter of Arbitration Between: | Opinion and Award |
| Crawford Central Education Association ) ) ) | |
| -and- ) ) | Claudette deLeon |
| Crawford Central School District ) ) | January 12, 2005 |

Issues:  1. Did the School District have just cause to give the grievant a three-day suspension?
2. Did the School District have just cause to give the grievant a five-day suspension?
3. Did the School District violate the Agreement or the School Code when it gave the grievant an unsatisfactory rating for the 2002-2003 school year?

Location of Hearing:      Meadville, Pennsylvania

Dates of Grievances:      12/4/02, 3/25/03, 5/6/03

Dates of Hearings:        5/19/04, 5/20/04, 6/15/04, 6/22/04, 7/22/04, 7/23/04

Record Closed:            10/26/04

Appearances:              John Paul Jones, Esquire
                          Staff Attorney, PSEA/NEA
                          For the Association

                          Carl P. Beard, Esquire
                          Andrews & Beard
                          For the School District

Lewis R. Amis
Arbitrator

Action Plan for an extensive period during the first semester of the 2002-03 school term. She showed willful neglect in the manner and place in which she chose to discipline a student, contravening past instructions about student confidentiality, thus her actions demonstrated willful failure to comply with school laws of the Commonwealth and to follow official directives from the administration. The School District had just cause to suspend the grievant for three days without pay.

    Grievance No. 12-4-02-CCEA-38 (JX-2), therefore, will be denied.

## THE FIVE-DAY SUSPENSION

    The District issued the grievant a five-day suspension on March 18, 2002 (SDX-36):

> Dear Mrs. deLeon:
>     This letter is to formally confirm our discussion on March 11, 2003, wherein I advised you that you were being suspended without pay for five (5) days on March 12, 13, 14, 17 and 18 respectively.
>     The reasons for the suspension without pay include the following: immorality, willful neglect of duties, persistent negligence in the performance of duties and persistent and willful violation of or failure to comply with the school laws of the Commonwealth of Pennsylvania (including official directives and established policies of the District or any of its administrators).
>     As was discussed with you in the presence of your Association representatives, you were specifically being suspended for your:

1. Failure to adequately maintain a log of student discipline and parental contacts as previously directed.
2. Breach of student confidentiality to include providing student discipline and other student information to outside parties.
3. Inaccurate reporting of student misconduct on student disciplinary referrals.
4. Not properly following through on student discipline issues as previously directed.

With respect to issues arising from deLeon's failure to maintain an adequate log of student discipline and parental contacts, the district will prevail. The original Action Plan for 2002-2003 explicitly requires such a log containing both student discipline and parental contacts to the extent they involve concerns of student conduct. It is not clear whether the district intended that the grievant maintain one or two logs, though one would serve, provided it contained the requisite information in a useful format. By her own admission deLeon did not understand the purpose of a log, which was to make her management of discipline problems easier and more consistent. It appears that she kept files on her students, but never translated them into an effective log. Those she produced for the administration on February 27 and 28 were chronological lists of her parental contacts and disciplinary actions, but they seem of little use in tracking individual student disciplinary actions so that she could take appropriate action for repeated offenses. Higgins' examination of her log revealed that generally she was neither accurate nor consistent. To summarize, the discrepancies Higgins found include: failure to respond to inappropriate student behavior; inconsistent application of rules, punishing one student but not another for

the same infraction; procedural lapses, namely failure to create or forward misconduct notices, failure to record actions taken, and recording actions not taken.

With respect to student confidentiality, deLeon copied both Flippin and Jones on documents that had to do primarily with internal student disciplinary problems. These include a memo to Higgins dated February 28 (SDX-29) in which she argues about his findings in the whore incident and in which she names the student protagonist and disciplinary actions against her. In another memo to Higgins on February 28, deLeon pursues the argument over the whore incident and mentions another student by name in connection with her discipline log (SDX-30). Finally, in SDX-32, deLeon mentions several students in the context of discipline problems and grades as she protests serious behavior difficulties in her first period Spanish I class. It was a breach of confidentiality to copy these specific documents to Flippin and Jones, persons outside the school district.

She also copied Association representatives in the district. These are professionals who know of confidentiality strictures but who must from time to time be made aware of specific student discipline problems. There is no breach of confidentiality in copying them because if the information is pertinent to a defense, an employee must be allowed to defend herself in a dispute with the employer. It is not clear, however, what purpose was served by copying Flippin and Jones in the instances set forth in here.

According to the grievant in a March 4 memorandum to Deshner, she made it a habit to copy Flippin with any document she produced that she believed was relevant to her case with the PHRC and to copy Jones with anything that she believed pertained to her grievance (SDX-34). At a meeting on the morning of March 3, she apparently stated as much. In the afternoon, however,

according to the district, she seemed to recant and claimed that she only provided information to her attorney that concerned grievances.

There is no substantial contradiction here and no obvious attempt to mislead the district. The documents copied to Flippin and Jones speak for themselves, though they have no clear relationship to any claims against the district, whether in the PHRC charge or the grievance, except in the grievant's mind. She makes no such distinctions in the documents. Her copying outsiders is a breach of confidentiality, but her explanation is not, as the district would have it, an example of dishonesty or an attempt to deceive. She exhibits confusion, perhaps, but not guile; thus, the district's charge of immorality cannot stand.

Under the heading of inaccurate reporting of student misconduct, the district mentioned two events, one regarding the bubblegum and the other the whore incident. The district's complaint is that in both cases deLeon gave inaccurate information. Moreover, when the administration investigated and found that the student accused was not guilty, the grievant refused to accept the administrator's conclusions and continued to argue her point. She appears to have finally accepted that Aniece did not put the gum in her hair, but she has not accepted that A.M. did not call her a whore but uttered some less offensive phrase.

Higgins testified that he interviewed the students involved in the whore incident, A.M. and P.B., and got written affidavits from others in the class, all of whom said that they did not hear A.M. utter the word "whore." On that basis, he found that A.M. did not use the offensive term. His procedure was similar to what he does in investigating any question of student discipline. As an administrator it is his job to investigate