IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAUDETTE de LEON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) (NO. 05-126E) |
| | ) |
| CRAWFORD CENTRAL SCHOOL DISTRICT | ) |
| CRAWFORD CENTRAL SCHOOL BOARD, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| MICHAEL E. DOLECKI, SUPERINTENDENT, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| CHARLES E. HELLER, III, ASSISTANT | ) |
| SUPERINTENDENT, | ) |
| | ) |
| Defendant | ) |
| | ) Document: |
| | ) **DEFENDANTS' BRIEF IN** |
| | ) **SUPPORT OF MOTION** |
| | ) **FOR SUMMARY JUDGMENT** |
| | ) |
| | ) |
| | ) |
| | ) Filed on behalf of |
| | ) Defendants by: |
| | ) **ANDREWS & BEARD** |
| | ) |
| | ) Roberta Binder Heath, Esquire |
| | ) Pa.Id. No. 50798 |
| | ) rbheath@andrewsbeard.com |
| | ) 3366 Lynnwood Drive |
| | ) Altoona, PA 16602 |
| | ) 814-940-8670 |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAUDETTE de LEON,                          )
                                            )
                    Plaintiff,              )
                                            )
            Vs.                             )        (NO. 05-126E)
                                            )
CRAWFORD CENTRAL SCHOOL DISTRICT,           )
CRAWFORD CENTRAL SCHOOL BOARD,              )
                                            )
                    Defendants,             )
                                            )
MICHAEL E. DOLECKI, SUPERINTENDENT,         )
                                            )
                    Defendant,              )
                                            )
CHARLES E. HELLER, III, ASSISTANT           )
SUPERINTENDENT,                             )
                                            )
                    Defendant               )

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

AND NOW, come Defendants, by and through their counsel of record, and hereby provide this Brief in Support of their Motion for Summary Judgment.  The Defendants hereby incorporate by reference the Statement of Facts, Exhibits, and Motion for Summary Judgment, which sets forth, the summary judgment standard of review and a synopsis of Defendants' legal arguments.

## I. LEGAL ARGUMENT

## A. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Fed.R.Civ.Pro. 56; See also, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).  Despite the Court's

obligation to view all inferences from the evidence presented in the light most favorable to the non-moving party, the United States Supreme Court's consistent interpretation of Rule 56 admonishes that a party is not permitted to simply rest upon the laurels of his pleadings. Under Rule 56, when a moving party has carried his or her burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. . ." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (citations omitted).

This burden shifting requires that the non-moving party present affirmative evidence in order to defeat a properly supported motion for summary judgment and cannot "simply reassert factually unsupported allegations contained in [the] pleadings". *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3rd Cir. 1989). Thus, in order to defeat summary judgment, the responding party must establish all of the elements of its *prima facie* case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Even if the non-moving party does submit evidence in opposition to the motion, "[i]f the . . . evidence is merely colorable or is not significantly probative, summary judgment may [still] be granted." Id. at 249-250.

Summary judgment is an appropriate means of expediting litigation and avoiding unnecessary trials if the requirements of Rule 56 are met. In this case, summary judgment is appropriate for all claims as Plaintiff can present no supporting evidence other than her own speculation.

## B. PLAINTIFF CANNOT SUSTAIN HER BURDEN OF PROOF UNDER TITLE VII[1]

### 1. Claims are Barred and/or Limited by Statute

Plaintiff cannot encompass all of her claims concerning alleged discriminatory acts dating back to 1996 as specified in her First Claim For Relief under Title VII. Her First Claim is not a hostile environment claim. Accordingly, no continuing violation theory applies allowing Plaintiff to encompass discrete acts of alleged discrimination occurring in the past that pre-dated the 180/300 day period prior to the last

---

[1] In ¶ 20, Plaintiff encompasses allegations concerning "documented disabilities". Such claim is improper pursuant to Title VII of the Civil Rights Act of 1964, as amended. (See, Amended Complaint).

PHRC/EEOC Complaint filed in March of 2003, relative to Plaintiff's suspension and alleged harassment. (Ex. 96) *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)[2]. Consequently, the only actions to be reviewed for Title VII purposes relate to the 300 day period prior to March 2003. As such, Plaintiff's allegations at ¶ 21 (a) fall outside the permissible time limit and should not be addressed pursuant to any alleged Title VII violation.

Defendants further assert that the discovery process did not elicit any additional information concerning proof Plaintiff provided her termination letter of April 30, 2003 to the PHRC. (Ex. 94). No dispute exists that no formal complaint was issued or served by the PHRC regarding termination. Thus, Defendants contend that any Title VII claim is improper and either time-barred or barred by Plaintiff's failure to exhaust her administrative remedies.

## 2. Historic Explanation of Standard of Proof

If the Court determines Plaintiff has a Title VII action then the burden of proof paradigms are critical. The *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) decision established the parties' respective burdens of production and proof in "single motive" discrimination claims. Inherent within this single motive conceptualization of discrimination is the notion of "pretext", contradicting the employer's proffered legitimate reason for the employment action. *Id.; Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981). A "mixed motive" approach was not formalized until 1989, by virtue of the Supreme Court decision, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

Since the Supreme Court decided *McDonnell Douglas,* proof of employment discrimination essentially followed one of two paths depending on the nature of the available evidence, either direct or circumstantial, and the justification proffered by the employer for its decision. Under Title VII, discrimination cases are either "disparate treatment" cases or "disparate impact" cases. Disparate treatment cases require

---

[2] Defendants hereby incorporate by reference its arguments provided on this issue as well as the exhaustion of remedies issue in the Brief in Support of the two (2) Motions to Dismiss filed previously.

Plaintiff to prove intent. Claims alleging disparate treatment fall within one of three categories: "Pure Discrimination"; "Mixed Motive"; or "Pretext" cases. The standard had been that, in determining which type of case is presented, the type of evidence produced by the Plaintiff must be examined. *Hook v. Ernst and Young*, 28 F.3d 366, 374 (3rd Cir. 1994).

In this case, Plaintiff's race, national origin and gender claims are disparate treatment claims and will be examined both under a "pretext" and a "mixed motive" analysis. A "pretext" case is presented where a plaintiff alleges that a defendant's facially legitimate reason for an adverse employment decision is false and merely a pretext for the true discriminatory reason. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F. 2d 509 (3d Cir.), *cert. denied*, 570 U.S. 826 (1993). In cases where direct evidence of discriminatory intent existed and the Plaintiffs alleged that gender, or another prohibited factor, was one of several motivating factors in the employment decision, a "mixed-motive" approach was used. Under this approach, in order to obtain a jury instruction on discrimination or to survive summary judgment, the Plaintiff needed to prove by <u>direct</u> evidence that, "race, color, religion, sex or national origin" played a motivating part in the employment decision. If this burden was met, the employer could avoid a finding of liability by proving that it would have made the same decision even if it would not have taken the impermissible factor into account. *Price Waterhouse*, 490 U.S. 242, 244 (1989); *Armbruster v. Unisys Corp.*, 32 F.3d 786, 778-779 (3d Cir. 1994). Evidence that was circumstantial, even if strong, was not enough to shift the burden to the employer. *Price Waterhouse*, 490 U.S. at 277.

In 1991, Congress amended Title VII, and arguably, implicit in that amendment were the standards to be utilized in a "mixed motive" analysis. First, the "motivating" factor test was articulated clearly. However, the second pertinent amendment is somewhat at odds with *Price Waterhouse* relative to the totality of the affirmative defense available and established that the defense only limits the remedies available. These amendments were incomplete and did not assist the Circuit Courts in settling the dilemma of defining direct

versus circumstantial evidence. In *Costa v. Desert Palace*, Inc., 539 U.S. 90 (2003), the Supreme Court for the first time addressed that issue and noted the statute's silence on the matter.

The Supreme Court observed that, on its face, the statute does not require that a Plaintiff meet the heightened evidentiary burden of producing direct evidence. The statute simply requires a Plaintiff to "demonstrate" an impermissible factor. *Desert Palace*, 539 U.S. at 94. In its analysis, the Court noted that Congress had "been unequivocal when imposing heightened proof requirements in other circumstances, including other provisions of Title 42". *Id.* (Citing 8 U.S.C. § 1158(a)(2)(b) and 42 U.S.C. § 5851(b)(3)(d)). The Court emphasized the appropriateness of considering circumstantial evidence, particularly in discrimination cases where, circumstantial evidence is often the only type of evidence available to a Plaintiff. *Id.* at 95. [3] Based on its reading of the statute, the Supreme Court held that a Plaintiff's burden in a Title VII mixed-motive case is met by presenting "sufficient evidence for a reasonable jury to conclude, by preponderance of the evidence [with direct or circumstantial evidence] that 'race, color, religion, sex, or national origin, was a motivating factor for any employment practice". *Id.,* at 101.

It does not appear from the analysis of the decisions following *Desert Palace* that Courts are any less willing to grant summary judgment on mixed-motive claims. The only difference seems to be that the courts now consider Plaintiff's circumstantial evidence in the analysis, rather than limiting it to direct evidence. As the Fourth Circuit explained in January of 2004, "regardless of the type of evidence offered by a Plaintiff as support of her discrimination claim (direct, circumstantial, or evidence of pretext), or whether she proceeds under a mixed-motive or single-motive theory, 'the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the Plaintiff was the victim of intentional discrimination'". *Hill vs. Lockheed-Martin Logistics, et. al.,* 354 F.3d 277, 286 (4th Cir. 2004); *quoting Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 and *citing, Burdine* 450 U.S. at 256. Relating this

---

[3] Justice O'Connor drafted a two-paragraph concurrence asserting that prior to the 1991 Amendment, she believed that direct evidence was required in a mixed-motive analysis, but that the 1991 Act embodied a "new evidentiary rule". Id. at 96.

concept to the summary judgment stage, the Court of appeals went on to explain that, "to demonstrate such an intent to discriminate on the part of the employer, an individual alleging disparate treatment based upon a protected trait must produce sufficient evidence upon which one could find that 'the protected trait actually motivated the employer's decision'". *Id.* After reviewing Plaintiff's direct and circumstantial evidence, the Court found it lacking and affirmed the District Court's grant of summary judgment. *Id.* In this case, Plaintiff similarly fails to present any circumstantial or direct evidence to withstand summary judgment.

### 3. Plaintiff's Claims Fail to Meet Evidentiary Test to Withstand Summary judgment

Plaintiff claims she was discriminated against on the basis of her race, national origin and gender. To establish a prima facie case of employment discrimination under upon Title VII, the Plaintiff must prove the following elements by a preponderance of the evidence:

1. That she was a member of a protected class;
2. That she was qualified for a position or a promotion;
3. That she suffered an adverse employment decision; and
4. That similarly situated individuals who were not members of a protected class were hired or promoted instead.

*Sheridan v. E.I.DuPont deNemorus and Co.*, 100 F. 3d 1061, 1066 n. 5 (3rd Cir. 1996); *Fuentes vs. Perskie*, 32 F. 3d 759, 763 (3rd. Cir. 1994), (quoting *McDonnell Douglas ,* 411 U.S. at 802). The prima facie burden is easily achieved. Clearly, she is a member of several protected classes because she is an Hispanic female. She possessed a teaching certification making her "qualified" in a generic sense. Finally, she was disciplined and ultimately terminated. Nonetheless, Defendants argue that Plaintiff was not treated differently than other similarly situated individuals who were not in a protected class. Defendants further can prove that discipline was warranted and not related to ethnicity or gender. The majority of the teachers in the District are female (Ex. 4, Templeton, at p. 53)**.** The District has in the past and continues to employee female administrators, such as Ms. Templeton and Patricia Deardorff, a former union president. (Ex. 4 & 13) These women have not faced any discrimination on the bases of gender and have been very successful within the District. (Ex.

4 & 13). Plaintiff has offered no evidence related to gender bias other than the testimony of Deborah Englebaugh, a Caucasian female. Englebaugh, a disgruntled former teacher, believed that the Administration "hated women", but was utterly at a loss to then explain Ms. Templeton's role as a woman in a supervisory position within the hierarchy of the "old boy's club". (Ex. 71, N.T. Englebaugh at pp. 11, 20, 40-41, 52-53, 64). Englebaugh presented no evidence remotely indicative of gender bias and never complained of same either internally via the grievance process or by filing a discrimination suit. (*Id.* at pp. 49-50). Further, Englebaugh inaccurately believed she was treated unfavorably, not because she was a woman, but rather because Principal Deshner wanted his friend, Mr. Gettys, in her position. (*Id.* at p.16, 19, 43). Plaintiff herself fails to assert any incidents of disparate treatment truly linked to on gender. (Ex. 10, 11, 12). Thus, no claim for gender bias exists at the prima facie level.

Similarly, Plaintiff's claims that she was discriminated against on the basis of her race and national origin are not supported by the evidence of record. Plaintiff herself admits no one ever made a negative comment to her about being Hispanic, nor did she ever overhear any ethnic or racial remarks concerning her or her position. (Ex. 11, N.T. deLeon at p. 83; Ex. 12 N.T. deLeon at pp. 130-132). Plaintiff was also unable to provide any evidence ever suggesting a pattern of discrimination against minorities engaged in by the District. She was even unaware of the number of minorities employed by the District and had no knowledge as to how those individuals had been treated. (Ex.10, N.T. deLeon at pp. 99-103; Ex. 43 – Hiring data).

Plaintiff cannot provide any evidence showing she was treated differently on the basis of either her gender or race from other teachers who engaged in disciplinary infractions or had performance issues. At Paragraph 21 of her Complaint, she denotes specific incidents of alleged discrimination. For example, she admits she had no actual knowledge whether other teachers were disciplined for being tardy. (Ex. 10, N.T. deLeon at pp. 54-67, 143). Being a traveling teacher was not linked to race or gender. (Ex.11, N.T. deLeon

at pp. 80-82). Rather, traveling was a scheduling issue due to a lack of space. (Fact at ¶ 39-42). Action

plans imposed on other teachers also did not hinge upon gender and the area of race was not explored by

Plaintiff. ( Facts at ¶ 61-62). Her lack of union representation at a parent-teacher meeting in March of 1996

was unrelated to her being a member of a protected class because it is not mandated by either due process

laws or common practice to allow for representation at a parent-teacher conference. Parent conferences

are not disciplinary meetings and issues of student confidentially come into play. (Facts at ¶ 19; See also,

*National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 950 S.Ct. 959 (1975))

Finally, Plaintiff alleges she was "publicly humiliated, abused, belittled and disrespected in the

presence of a colleague by management…". (Amended Complaint ¶ 21 (c)). To prove this contention,

Plaintiff called her colleague, John Stanford, to testify on March 7, 2006. Mr. Stanford, now retired, testified

he did not recall that Plaintiff was subjected to abuse or belittled in any way. To the contrary, Mr. Stanford

testified that he encountered Plaintiff coming out of Mr. Deshner's office in tears and asked her what was

wrong. While in the hallway, Plaintiff began to recount the incident. Mr. Deshner came out and, in a "stern"

voice, asked Plaintiff not to discuss this personnel incident in public. Mr. Stanford adamantly denied that

Deshner screamed or yelled or that he was "belligerent" in any way. (Ex.100 - N.T. Stanford, at pp. 8-10).

Plaintiff further fails to meet her prima facie burden because the specific allegations contained in

Paragraph 21 do not rise to the level of "adverse employment action". It is odd the Plaintiff does not mention

being disciplined, suspended, or discharged as a specific incident. Leaving those issues aside, as obviously

rising to the level "adverse employment actions", the other specific examples do not rise to the request level

to be actionable. A number of courts have emphasized that not every job action that makes the employee

unhappy constitutes an adverse employment action supporting a Title VII claim. See, *Robinson v. City of*

*Philadelphia*, 120 F.3d. 1286 (3rd Cir. 1987) (defining adverse employment action for retaliation claim, which

would be applicable to Title VII). Similarly, job-related inconveniences are insufficient to support an adverse

employment action claim under either a retaliation or Title VII claim. *Kinly v. City of Philadelphia*, 2002 W.L 1277329 at *15 (E.P.D. Pa. June 4, 2002); See also, *Sanchez v. Denver P.B. SCH.*, 164 F.3d 527, 532 (10th Cir. 1998) ("Will not consider a mere inconvenience… to be an adverse employment action"). In this regard, Plaintiff's complaints are minor employment actions which do not form the basis of a discrimination claim as a matter of law. *Robinson*, 120 F.3d at 1300. Accordingly, Plaintiff fails to prove her prima facie Title VII Claim.

### 4. In the Alternative, Plaintiff's Claims Fail Under a Pretext Analysis

If this Court finds Plaintiff met her prima facie burden, then the analysis continues under the *McDonnell Douglas* sequence of shifting burdens. The burden of persuasion evidencing that Defendants intentionally discriminated against Plaintiff remains at all times with the Plaintiff. It is only the burden of production that shifts. *Reeves*, 503 U.S. at 143. If the burden of production is not met, then the other party is entitled to summary judgment. *McDonnell Douglas*, 411 U.S. at 802; *Reeves*, 530 U.S. at 142. Once Plaintiff articulates a prima facie case, an inference of discrimination arises, such that the questioned employment action "if otherwise unexplained, are more likely than not based on the considerations of impermissible factors." *Pivirotto v. Innovative Systems, Inc.,* 191 F. 3d 344, 352 (3rd Cir. 1999). In a Title VII case, the Plaintiff must show that she was treated less favorably than others outside the protected class under circumstances that give rise to the inference of unlawful discrimination. *Pivirotto,* supra.

Under a "pretext" analysis, Plaintiff must show the prohibited factor "played a role in the decision-making process and that it had a determinative influence on the outcome of that process." *Miller v. CIGNA Corp.*, 47 F.3d 586, 597 (3d Cir. 1995). Under this theory, the burden then shifts to the Defendant to articulate some legitimate, nondiscriminatory reason for the employment decision. *Burdine*, 450 U.S. at, 253. If Defendant carries its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the Plaintiff, who must now show by a

preponderance of the evidence that the employer's explanation is pretextual (thus meeting the Plaintiff's burden of persuasion)." *Id.* (parenthetical in original) (emphasis added). Thus, the presumption of discrimination created by the Plaintiff's prima facie case falls away once the Defendant has given a non-discriminary explanation for its decision. *Reeves,* 530 at 143; *Burdine,* 450 U.S. at 254.

In order to establish pretext and survive summary judgment, the Plaintiff must then point to some evidence from which a fact finder could reasonably conclude that: (1) the employer's articulated legitimate reasons are false; or (2) an invidious discriminatory reason was, more likely than not, a motivating or determinative cause of the employer's action. *Showalter,* 190 F. 3d at 234. Although "this standard places a difficult burden on the Plaintiff [to avoid summary judgment], it arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decision making by the private sector in economic affairs." *Burdine,* 450 U.S. at 765; See also, *Ezold v. Wolf, Block,* 983 F.2d at 531.

To show that an employer's reason for the termination is pretextual, a Plaintiff must discredit the employer given non-discriminatory reason for the action by showing that it is a fabrication or otherwise unworthy of credence. *Ryder v. Westinghouse Electric Corp.,* 128 F. 3d 128, 136 (3rd Cir. 1997), *cert. denied.* 522 U.S. 1116 (1988); See also, *Simpson v. Kay Jewelers,* 142 F. 3d at 644 (to avoid summary judgment, Plaintiff must point to weaknesses, inconsistencies, or contradictions in the employer's proffered reasons such that a reasonable fact finder could rationally find them unworthy of credence); *Armbruster v. Unisys Corp.,* 32 F. 3d 768 (3rd Cir. 1994); *Fuentes v. Perskie,* 32 F. 3d 759 (3rd Cir. 1994). An employee must show, not merely that the employer's proffered reason was wrong, but it was so plainly wrong that it could not have been the employer's real reason for the adverse employment action. *Keller v. Orix Credit Alliance, Inc.,* 130 F. 3d, 1001 at 1109. (3rd Cir. 1997). To discredit the employer's proffered reason for its decision, "the Plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual disputed issue is whether discriminatory animus motivated the employer, not whether the employer is

wise, shrewd, prudent, or competent." *Fuentes*, 32 F. 3d at 765.  Implicit in the pretext analysis, is that a single motive be it legitimate or an illegitimate one – explains the adverse action.  The analysis involves an all or nothing finding for the Plaintiff, and for this reason, is a more rigid and onerous burden.

In the case at hand, the District encountered on-going problems with Plaintiff's performance, which became recurring themes, such as issues with classroom management, consistent student discipline, prudent interaction with parents, and a willingness to cooperate with the Administration. Plaintiff's actions are documented clearly, are consistent in nature, and are supported specifically by testimony of the Administration and Plaintiff's own union representatives, she cannot sustain her burden to show pretext. (Facts at ¶¶ 8, 10, 14, 22, 26, 28, 32, 58, 67, 74, 77-81, 91, 96-97, 100-102, 105-110, 112, 115, 116, 119,127, 128-130, 135, 138-140).

The facts of record support the decision to monitor, discipline and ultimately terminate Plaintiff. These are legitimate documented reasons bolstered by consistent testimony.  None of these reasons dealt with Plaintiff's race, national origin or gender.  Plaintiff cannot meet her burden of establishing pretext by simply disagreeing with the Defendants' actions or responses.  See *Fuentes*, 32 F. 3d at 675; *Ezold*, 93 F. 2d at 533.  Plaintiff also cannot establish pretext by asking the Court to sit as a "super-personnel department", second guessing her employer's employment decisions. By enacting Title VII and the ADEA, Congress did not intend "to guarantee a job to every person regardless of qualifications."  *Griggs v. Duke Power Co.*, 401 U.S. 424, 430-31 (1971).  "[T]he employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination".  *Zhuang v. Datacard Corp.*, 2004 WL 1887498 at 17 (D. Minn. Aug. 23, 2004), *citing, Ottman v. City of Independence*, 341 F. 3d 751, 757-58 (8th Cir. 2003); *Jones v. Travelers Ins. Corp.*, 896 F.

Supp. 463, 467 (E.D. Pa. 1995) aff'd 85 F.3d 617 (3d Cir. 1996); See also, *Keller vs. Orix Credit Alliance*, 130 F.3d at 1109; *Afrassiabin v. Pro Credit Holdings*, 1999 W.L. 605589 (Ed. Pa. August 9, 1999).

*Desert Palace* clarifies a Plaintiff can now offer either direct or circumstantial evidence in a mixed-motive claim. Arguably the evidentiary burden necessary to survive summary judgment under this analysis is lessened somewhat. Nonetheless, in this case, Plaintiff fails to articulate supporting evidence of any kind to meet her burden that her race, national origin or gender was a motivating factor in any adverse employment decision made by Defendants. Even in a mixed-motive analysis, the primary inquiry remains whether or not the evidence educed through discovery casts sufficient doubt on the Defendants' articulated reasons for their actions. In this case, no evidence exists to remotely link race, national origin or gender to the District's decisions.

Essentially, the mixed-motive analysis now follows the standards articulated in *Price Waterhouse,* but allows proof to be either direct or circumstantial. Plaintiff must present evidence that a least one of Defendant's multiple motives for the employment decision was an unlawful one. *Id.* at 237. In *Price Waterhouse*, the plurality specified:

". . . when a Plaintiff . . . proves her [protected characteristic] played a motivating part in an employment decision the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's [protected characteristic] into account." *Id.* at 259. If Plaintiff does not satisfy her initial burden, which triggers the affirmative defense, the claim fails. *Id.* at 276. Race, national origin or gender must be proven to be a motivating factor in the District's adverse decisions. Plaintiff has had ample opportunity to prove this claim, or raise an issue of material fact and survive summary judgment, either by direct or circumstantial evidence. However, Plaintiff has no articurable evidence meriting a denial of summary judgment.

In this case, Plaintiff offers no evidence of stray remarks or discriminatory remarks from the School Board or Administration, or any comparative evidence of racism, ethnicity issues or gender bias within the District. She cannot, in any respect, support a claim of disparate treatment. To the contrary, all evidence of record belies Plaintiff's claims. Here, the evidence shows Plaintiff's long history battling issues with classroom management, student discipline, following procedures, working as a team player, interacting consistently and prudently with parents and students, and recurring problems coping under pressure. (Facts at ¶¶ 8-16, 18-19, 26-32, 37-39, 56-59, 65, 73, 76-84, 91-139).

Plaintiff cannot provide any circumstantial or direct evidence to support her contention that she was discriminated against due to her race, national origin or gender. To the contrary, Plaintiff's contention that she was unfairly treated appears to be related to a perceived bias of a personal nature, and wholly unrelated to her being in any protected class. Plaintiff points to no conversations or remarks or other information concerning race, national origin or gender playing a motivating factor in the disciplinary actions taken against her. Here, the record evidence is overwhelming and shows that Plaintiff was properly disciplined and ultimately terminated for just cause.

## C. PLAINTIFF CANNOT MEET HER BURDEN REGARDING RETALIATION

The Second Claim alleges that the Defendants unlawfully retaliated against Plaintiff because she filed Complaints with the PHRC and because she was successful in several grievance proceedings. (Amended Complaint at pp. 8-9). Plaintiff relates these actions back to June of 1994 through her ultimate termination in April 2003. Defendants assert that Plaintiff's Claims are time-barred because the allegations relate to allegedly discrete retaliation versus and on-going hostile environment. (Amended Complaint at p. 8). The only theory that is arguably "on-going" is she was more strictly "micro-managed, scrutinized and subjected to a Professional Improvement Action Plan and sanctioned for tardiness more frequently than her co-workers." (Amended Complaint at p. 8). As addressed earlier, these allegations do not rise to the level of

adverse employment actions or an on-going pattern of harassing conduct. National Railroad Passenger Corp., supra. Finally, the tardiness issue pre-dated any filing (Facts at ¶¶ 6,7,8,14). Thus, the only viable claim relates to the PHRC Complaint filed in March 2003. In the alternative, if not limited statutorily, this claim should be limited equitably and Defendants entitled to assert a laches defense. *National Railroad Passenger Corp.,* 536 U.S. at 121-122. Thus, a reasonable period should be determined by the Court.

In order to successfully establish a prima facie case of retaliation, the Plaintiff must show that: (1) The employee engaged in a protected employment activity; (2) The employer took an adverse employment action after or contemporaneous with that activity; and (3) A causal link exists between the employee's protected activity and the employer's adverse action. *Westin vs. Pennsylvania,* 251 F.3d 420, (3rd Cir. 2001); *Farrell vs. Planter's Lifesavers Company,* 206 F. 3d 271, 279 (3rd. Cir. 2000). In the case at hand, the Defendants acknowledge the existence of the first element. However, the majority of Plaintiff's Complaints do not rise to the level of an adverse employment action. Finally, the Plaintiff fails to prove a causal link existed between her receiving unsatisfactory evaluations, being suspended for failing to perform in accordance with District policy to her filing a PHRC Complaint or grievance.

Adverse employment actions must be "serious and tangible enough to alter an employee's compensation, term, conditions, or privileges or employment." *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1296-7, 1300 (3rd Cir. 1997); *Toure v. Pisano,* 116 F.3d 625, 640 (3rd Cir. 1997). Being placed on a Corrective Action Plan and expected to adhere to District policy and the laws of the Commonwealth do not rise to the level of an adverse employment action. Such actions do not constitute a severe disruption in the working conditions. *Durham Life Insurance Co. v. Durham,* 166 F.3d 139, 152 (3rd Cir. 1999). Finally, the Plaintiff cannot allege any pervasive pattern of retaliatory harassment to permit this Court to determine that a pattern and practice existed to establish retaliation. *Jensen v. Potter,* 435 F.3d 444 (3rd Cir. 2006).

In trying to determine whether an inference of a causal link exists in showing the third prong of the threshold test for retaliation, courts have focused on two main factors:  (1) temporal proximity; or (2) evidence of ongoing antagonism.  *Kachmar v. Sunguard Data System Inc.*, 109 F.3d 173, 177 (3rd Cir. 1997), *citing, Robinson v. SEPTA,* 982 F.2d at 895; *See also, Woodson v. Scott Paper Co.,* 109 F.3d 913, 920-21 (3d. Cir. 1997).  The Third Circuit has reiterated that, "the mere fact that an adverse employment action occurs after a complaint would ordinarily be insufficient to satisfy the Plaintiff's burden of demonstrating a causal link between the two events".  *Robinson,* 120 F. 3d at 1302; *Krouse v. American Sterilizer Co.,* 126 F. 3d 494, 503 (3rd Cir. 1997).

In the case at hand, Plaintiff has set forth no evidence that supports her allegations that her suspensions or negative evaluations, which were "adverse", were causingly linked to her engaging in any protected activity.  Although Plaintiff's claim is that she was more stringently micro-managed, scrutinized, and sanctioned more frequently for tardiness than her co-workers, she presents no evidence to support such contention, nor evidence that the Defendants' actions were retaliatory.  To the contrary, the evidence reveals that her own union representatives believed that the Professional Improvement Action Plan, were within the managerial rights of the School District and was merited under the circumstances. (Facts at ¶ **54**).  Further, the Administration testified that other individuals were put on Professional Improvement Action Plans, which included males with less seniority and others who were not purported to have engaged in protected activities.  (Facts at ¶  61-64).  Most importantly, the Defendants have documented a history of recurring problems in Plaintiff's performance that pre-date any filing with the PHRC or relative to a grievance.  The performance issues were consistent and documented as such.  Consequently, Plaintiff cannot show the requisite nexus between her being monitored and disciplined and any protected activity.

Finally, Plaintiff claims that she was wrongfully discharged in April of 2003.  However, this termination was upheld by the arbitration decision as being merited by just cause.  This decision to terminate the Plaintiff

has been the subject of intense discovery, and Plaintiff has been unable to provide any evidence to support her claim that such termination was not merited. Her bizarre and appalling behavior during the 2002-2003 school year, up to including her refusal to participate appropriately and professionally in the meetings with the Administration, were grounds alone for termination. She was uncooperative and unprofessional. She refused to accept constructive criticism and instead was insubordinate and defiant to a point she had to be physically removed from an administrative meetings. (Facts at ¶ 96-142). Plaintiff's behavior was shocking meriting the District's determination that she had no place in any classroom. Thus, Plaintiff has asserted nothing to contradict the fact that her discipline and ultimate termination were not warranted or that the legitimate reasons articulated by Defendants were pretextual and retaliatory.

Even if this court finds that Plaintiff has established a prima facie case of retaliation, then in accordance with the general *McDonnell Douglas* standard, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the adverse action. At this stage, precedent establishes the Defendants' burden is "relatively light". *Bazargani vs. Haverford State Hospital*, 90 F. Sup. 2nd, 643, 650 (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3rd Cir. 1994). Should the Defendants carry this burden, the presumption of discrimination created by the prima facie case disappears. *St. Mary's Honor Center vs. Hicks*, 509 U.S. 502, 511 (1993).

The legitimate reasons behind the unsatisfactory evaluations, suspension and ultimate termination were testified to in detail by the Administration and supported by documentation. Plaintiff had serious issues concerning her performance at the work place, particularly in the area of classroom management. She had far more disciplinary referrals than any other teacher, which is supported not only by documentary evidence, but also the testimonies of the Administration. (Facts at ¶¶19, 22-27, 29, 30, 60, 105, 106, 116-117, 122, 127). Multiple and on-going parental complaints concerning treatment, loss of assignments, inappropriate

classroom behavior on the part of the Plaintiff spanned over almost a decade until Plaintiff's termination. (Facts and Supporting Exhibits).

When an employer articulates a reasonable business premise for its business decision relative to a Plaintiff, then the burden shifts back to the Plaintiff to prove, by a preponderance of the evidence, that Defendants' proffered reason was a pretext for discrimination. *Burdine*, 450 U.S. 252-253. At this juncture, the Plaintiff must point out evidence that the Defendants' intent genuinely remains at issue. *(Id.)* Despite the burden shift, the primary focus on retaliatory intent at all times remains with the Plaintiff. *Bazargani,* 90 F. Sup. 2nd at 653, quoting, *Shaner v. Synthes*, 204 F. 3d 494, 501 (3rd Cir. 2000). In this case, Plaintiff offers only unsubstantiated speculation. Plaintiff offers no substantive evidence to persuade the court that the fact finder could reasonably find that the employer's proffered explanation was false and that retaliation was the actual reason for the employment actions. Therefore, this claim should be dismissed.

## D. PLAINTIFF CANNOT PROVE A HOSTILE ENVIRONMENT

In Plaintiff's Third Claim for Relief, she is claiming that she was subjected to hostile working environment due to gender, race, national origin, and disability. Harassment is a form of discrimination under Title VII, which can take the form of a hostile work environment. *Harris v. Forklift,* Sys., Inc., 510 U.S. 17 (1993); *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986); *Jensen v. Potter*, 435 F.3d 444 (3rd Cir. Pa. 2006). The ADA prohibits discrimination based on disability, which can also take the form of a hostile environment claim. 42 U.S.C.S. § 12112 (a). When situations in the work place are permeated with "discriminatory intimidation, ridicule, and insult", that is "sufficiently severe or pervasive to alter the conditions of the victims' employment and create an abusive working environment" Title VII is violated. *Harris*, 510 U.S. at 21; See also, *National Railroad Passenger Corp., supra*. A similar analysis applies to ADA claims to establish a prima facie case of harassment, a Plaintiff must show that: (1) she is harassed because of her protected traits; (2) the discrimination was subjectively and objectively detrimental and severe or pervasive;

and (3) respondeat superior liability exists.  See, *Pelma v. Volunteers With Am.*, 2006 U.S. District Lexis 5136 (E.D. Pa. 2006), citing *Harris*, 510 U.S. at 21.  Because a hostile environment claim requires proof of "severe and pervasive" conduct, this area has been heavily litigated due to the strict standards that a Defendant must endure if in fact Plaintiff sustains her prima facie case.  e.g. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

In order to demonstrate a disability-based hostile work environment, Plaintiff must show that: (1) she is a qualified individual with a disability under the ADA; (2) she has been subject to unwelcome harassment; (3) the harassment was based on Plaintiff's disability request for accommodations; (4) the harassment was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and to create an abusive working environment; and (5) Defendant knew or should have known of the harassment and failed to take prompt, effective remedial action.  *Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d. 661, 666-7 (3rd Cir. 1999).  In cases where the Plaintiff alleges an ADA violation based on the "regarded as" disabled standard, the proofs concerning both issues, whether the Plaintiff is disabled and whether the Plaintiff was subjected to a hostile work environment, may collapse together.  e.g. *Reinhart v. Shaner*, 2004 U.S. District Lexis 3480 at p. 13.  In the case at hand, as addressed more specifically relative to Plaintiff's ADA claim, it is denied that Plaintiff is either disabled or was regarded as being disabled.  She went out on sabbatical for vague reasons after an excuse was provided from a women's heath center.  (Fact a ¶ 17).  She returned in 1999 without restriction.  Her mental health was not an issue again until 2002.  (Facts at ¶¶ 70-90).  Further, no evidence whatsoever exists that she requested an accommodation based on any alleged disability.  The only request Plaintiff ever mentions, related to her finding it physically difficult to push a cart between classrooms.  (Fact at ¶ 44).  It is specifically denied that Plaintiff was reduced to an "inferior" position after her medical sabbatical.  Finally, Plaintiff fails to prove as a result of her disability any alterations in her working conditions created an abusive working environment.  (Ex. 28, 10, 11, 12).  (Fact  at ¶ ¶ 17, 33, 35-37, 39, 44, 76-90).  In light of

Plaintiff's bizarre behavior in March 2002, the Administration's requesting Plaintiff to submit to an IME for clearance to return to the classroom is not evidence of abuse, but rather prudent education practice. (Facts at ¶¶ 76-90).

None of the allegations contained in Paragraph 22(a)-(i) of Plaintiff's Amended Complaint rise to the level sufficient to form a basis for a hostile work environment claim. Plaintiff specifically fails to even mention her race or national origin relative to this hostile environment claim. She further fails to indicate how there was any nexus between the discrimination she allegedly suffered due to her gender. All the harassment claims require proof that the harassment was sufficient, severe, or pervasive to alter the condition of Plaintiff's employment and to create an abusive working environment. See, *Harris*, 510 U.S. at 29. In a recent case, the First Circuit Court specified:

> "Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe. There are not intended to promote or enforce civility, gentility or even decency. (citation omitted) Thus, to qualify as sufficiently hostile or offensive for a claim under Title VII, an employer's conduct must be motivated by discriminatory intent, and severely abusive or disparaging toward the plaintiff."

*Quiles-Quiles v. Henderson*, 2006 U.S. App. Lexis 4047 at p. 14 (1st Cir. February 21, 2006), citing *Oncale v. Sundowner Offshore Servs., Inc.* 523 U.S. 75, 78 (1998). See also, *Ennis v. Sonitrol Management Corporation*, 2006 U.S. District Lexis 2599 at p. 23 (S.D. N.Y. January 24, 2006). *National Passenger Railroad Corp.* Supra.

This case can easily be distinguished from a recent Third Circuit case overturning the granting of Summary Judgment in a Title VII retaliation claim against Defendants the U.S. Postal Service. *Jensen v. Potter,*. Reviewing the facts of the *Jensen* case, it is critical to note that the frequency of insults and level of harassment in consistency and regularity over a period of time permeated the workplace so as to change the terms of and conditions of Jensen's employment. Similarly, in the National Railroad Passengers Corp. case, the level of severity, the pervasiveness, and the on-going regularity of the racial epithets led to the

conclusion a hostile environment existed resulting in an abusive work environment. In this case, Plaintiff's claims, in no way, rise to a similar level to defeat summary judgment in this matter[4].

The case at hand is more similar factually to *Hartwell v. Lifetime Doors, Inc.*, 2006 Dist. Lexis 6026 (E.D. Pa. 2006), in which the Court found that the Plaintiff's hostile work environment claims failed because he presented very limited evidence describing racial harassment, having only described two incidents of explicit racial harassment that occurred at the work place. The Court held that under *Cardenas v. Massey*, 269 F.3d 251, 262 (3d Cir. 2001), the events fell short of the severe and pervasive working environment standard required. See also, *Bhagat v. Hettche*, 137 Fed. Appx. 507 (3d. Cir. 2005). Plaintiff's allegations concerning alleged disability harassment have no factual basis. Her allegations she was harassed discriminated against or subjected to a hostile environment on the basis of her gender, race or national origin are similarly devoid of any evidence. Thus, Plaintiff's claims fall short of the standard required to prove a hostile environment claim and withstand summary judgment.

### E. PLAINTIFF'S FOURTH CLAIM FOR RELIEF IS NOT MERITED

Plaintiff cannot substantiate her claim that she is either disabled within the meaning of the ADA, or that she was perceived or "documented" as being disabled and, as a result, was discriminated against. Plaintiff returned to work without restriction after her sabbatical in 1999. At that time, her alleged health condition was unclear. (Fact at ¶ 17). Thus, no "documented" condition rising to the level of a "disability" existed. In March 2002, Plaintiff exhibited bizarre behavior, which gave rise to the District exercising its right to require an IME ensuring Plaintiff's fitness to return to the classroom. (Facts at ¶70-90). She was released to return to work without restricts. (Ex. 54). No evidence exists that she requested any reasonable accommodation at this time. Further, Plaintiff has no evidence at all to support any documented or

---

[4] This case can also be distinguished from another recent case, such as *Davis v. Mother's Work, Inc.*, 2005 U.S. Dist. Lexis 15890 (E.D. Pa. 2005), wherein the Court found that the Plaintiff provided specific and clear evidence that the district manager treated the African American Muslim employee differently from similarly situated white employees.

perceived disability caused her to be terminated in 2003. Plaintiff confuses being expected to behave like a responsible adult in a professional setting and taking responsibility for her own actions with "harassment" due to her "disability." These claims are without merit.

In order to seek protection under the ADA, an individual must meet three requirements: (1) she must show she is disabled within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of her job; and (3) she has suffered an adverse employment action as a result of discrimination. *Shadle v. Central Dauphin School District,* 2003 U.S. Dist. Lexis 5475, 10-11 (M.D. Pa. 2003); Thompson v. AT&T Corp., 371 F.Supp. 661, 671 (W.D. Pa. 2005). (Citations omitted).

**1. Plaintiff Must Show She is "Disabled"**

Under the ADA, a person is "disabled" when she has a physical or mental impairment which substantially limits one or more of her major life activities, has a record of such impairment, or is regarded as having such impairment. *42 U.S.C. § 12102(2).* Determining whether an individual is substantially limited in a major life activity involves a two-step process; both steps view the individual in relation to an average person of similar skill and ability. *See Thompson and Thompson v. AT&T Corporation,* 371 F. Supp. 2d 661, 673 (W.D. Pa. 2005). The first step looks at whether the individual is substantially limited in major life activities other than work. *Id.* Here, major life activities refer to activities that are integral to most people's daily lives. *See Toyota Motor Manufacturing v. Williams,* 534 U.S. 184, 197 (2002). If the individual is determined to be substantially limited in this regard then the inquiry ceases, and the person is deemed disabled for purposes of ADA coverage. *Thompson,* 371 F. Supp. 2d at 673. If, however, no substantial limitation is found in daily activities, then an inquiry into the individual's work activity must be conducted. Under this second prong, a person is substantially limited if she is unable to execute either a class of occupations or a broad range of jobs in various classes. *Id.; Williams v. Philadelphia Housing Authority,* 380 F.3d 751, 763 (3rd Cir. 2004); *See also 29 C.F.R. § 1630.2(j)(3)(i).* A number of factors including the duration of the

impairment or limitation, the nature and severity of the impairment or limitation, and the permanent or long-term impact of the limitation should be examined before a final determination is made. *Toyota Motor Manufacturing*, 534 U.S. at 197.

In order to demonstrate disability, the ADA mandates that the individual be *presently* substantially limited; the Plaintiff must have been substantially limited as a result of her disability at the time the employer issued an adverse employment decision against her. *Thompson,* 371 F. Supp. 2d at 677; *Norman v. University of Pittsburgh*, 2002 U.S. Dist. Lexis 27694, 17 (W.D. Pa. 2002). The determination of whether the individual qualifies as disabled must be made with regard to the time that the adverse employment decision was made. *Thompson,* 371 F. Supp. 2d at 677. An individual cannot allege discrimination under the ADA unless an adverse employment decision was made at a time when her disability was causing her substantial impairment or limitation. *See, e.g., Caracciolo v. Bell-Atlantic-PA Inc.*, 135 Fed. Appx. 503, 504 (3rd Cir. 2005) (court refused to consider Plaintiff's limitations over a long period of time and considered relevant only her abilities at the time the employment decision was made). Plaintiff makes no such claim relative to her termination.

Depression is not a per se disorder under the ADA. *Reed v. Medical College*, 2004 U.S. Dist. Lexis 25029, 11 (U.S. Court for the Eastern Dist of PA 2004). Therefore, unless it is determined that the person's depression substantially limits her in a major life activity, she will not be able to claim protection under the ADA. *Id.* The Third Circuit has acknowledged ADA coverage for mental conditions including depression and panic or anxiety disorders when the disorder is chronic and permanent. Plaintiff returned from her medical sabbatical of dubious origin without restriction. Although she had on-going performance issues, the specter of alleged mental problems was not raised again until March of 2002. *See Norman*, 2002 U.S. at 15. Plaintiff then returned to work without restriction according to Dr. McFadden and, thus, was not "disabled" to be afforded protection under the ADA.

Plaintiff may also seek the ADA protection if she has a record of such an impairment, or is regarded as having such an impairment.  42 U.S.C. §12102(2); 29 C.F.R. §1630.2(g).  In order to successfully sustain such a claim under the ADA, it is the Plaintiff's burden to prove that her condition falls within the appropriate referenced definition.  Although Plaintiff claims she has a record of disability, she must first demonstrate her recorded impairment falls within the meaning of a "disability" under the ADA.  *Tice v. Centre Area Transportation Authority*, 247 F.3d 506, 513 (3d Cir. 2001).   In this case, as noted above, Plaintiff fails to meet her threshold burden as her alleged depression/panic disorder was not legally disabling, nor was she regarded as being disabled.  In fact, her own treating physician as well as Dr. McFadden found Plaintiff to be not suffering from a disability and able to perform the essential functions of her job without restriction. (See, Ex. **54**).  Dr. Mercatoris, Plaintiff's treating physician, indicated as did Plaintiff, that she only needed a couple of days in March of 2002.  (Fact No. **71**).  No record exists of any mental issues or treatment for the 2002-2003 school year, the year in which she was terminated..

Plaintiff does not provide any definitive information as to how her alleged panic disorder/anxiety is disabling.  From the Complaint itself, it seems this alleged condition would elicit only transitory symptoms, and thus, would not constitute a "disability".  Further, the alleged psychological condition has not been pled as being of such a nature as to significantly affect any major life activity any more than the average members of the population.  *Kelley v. Drexel University*, 94 F.3d 102, 105 (3rd Cir. 1996).  See also, *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.2d 778, 783 (3rd Cir. 1998).

In addition, it has been repeatedly emphasized by the United States Supreme Court that a condition must be considered in its *mitigated state*.  In other words, if a condition can be treated with medication, or some other corrective means, so that a person can perform major life activities without definitive restrictions in the manner or duration to which they can perform those activities, then such condition is not a "disability" under the law.  *Sutton v. United Airlines*, 527 U.S. 471 (1999); *Murphy v. United Postal Services, Inc.*, 527

U.S. 516 (1999); See also, *Toyota* (definition of disability narrowed further); See also, *Shabbet v. Marcincin*, 2005 U.S. Dist. Lexis 16562 (E.D. Pa. 2005). Plaintiff admits to taking anti-depressants for an extended period and asserts she is and has been able to do her job since her return from sabbatical in 1999. (Ex. 10, N.T. deLeon at pp. 81-84,; Amended Complaint, Fourth Claim).

Thus, Plaintiff's suffering from anxiety periodically due to job stress, or having sporadic bouts of anxiety do not meet the threshold requirement of being a "disability" for purposes of an ADA analysis. Moreover, Plaintiff has failed to demonstrate by any evidence that she has an impairment which substantially limits a major life activity, such as her ability to work full-time as a teacher. Finally, she has failed to prove she falls under the ADA umbrella relative to a documented disability.

### 2. Plaintiff Must Show She Has Suffered an Adverse Employment Action

Plaintiff seeking to invoke ADA protection must also establish that she endured an adverse employment decision as a result of her employer discriminating against her on the basis of her disability. *Shadle*, 2003 U.S. Dist. Lexis at 11. The Plaintiff must show that her employer was on notice of her claimed disability before she can use the employer's conduct to allege discrimination. *Id.* at 12. Also, as stated above, the time at which the employer acted adversely toward the claimant with respect to an employment decision must have been concurrent with the individual's being substantially limited as a result of her disability. *Thompson,* 371 F. Supp. 2d at 677. Plaintiff has offered no such evidence. In fact, she had been released the prior year to return to work without restriction. (Ex. 54) Thus, no evidence exists that she suffered any adverse action as a result of her disability.

In her Complaint, Plaintiff refers to allegedly discriminatory treatment occurring in 1999-2000, when she returned from her medical sabbatical. When Plaintiff returned from medical sabbatical she also returned without restrictions. (Fact at ¶ 36) Plaintiff can offer no evidence that at the time she was regarded as being disabled or requested any accommodations due to her disability to be eligible for ADA

protection.  The only "accommodation" she mentions is having a permanent classroom because pushing a cart from class to class was too hard physically.  (Ex.  11, N.T. Plaintiff  at pp. 71-72, 79-80).  This case is therefore distinguishable from *Williams v. Philadelphia Housing Authority*, 380 F.3d 751 (3rd Cir. 2004).  The traveling teacher assignment was not made to Plaintiff alone, but also to multiple other teachers until the building project was completed.  There is no evidence whatsoever that this traveling assignment was related to any perceived disability on the part of Plaintiff, or was in any way discriminatory. (Fact at ¶¶ 39-40, 42-43).  Further, Plaintiff could produce no information that she was denied any reasonable accommodations by virtue of being a traveling teacher and how this assignment even related to her alleged condition of having depression.  In fact, Plaintiff traveled before she went out on sabbatical.  For a period before her sabbatical, she did have a modular classroom, but space continued to be a problem until the building project was finished.  (Facts at ¶ 39-43).  Plaintiff can provide no evidence, other than utterly unsupported speculation, that the District ever regarded her as being disabled.  Any disability she alleges to have suffered was not discussed with the District relative to terms of accommodation as changing her schedule.   Union representative Carl Roznowski recalls only a conversation of a permanent classroom as it related to her Corrective Action Plan, which he testified had nothing to do with requesting an ADA accommodation.  ( Facts at ¶¶ 43-44).  When Plaintiff was directed to undergo an IME in March of 2002, she was on paid leave and returned to work without restrictions.  (Ex. 52 and 54)  There is simply no viable nexus between any alleged adverse employment action that Plaintiff sustained and her alleged disability, or any evidence to support that Defendants in fact regarded Plaintiff as being disabled and discriminated her against her on the basis.

### 3. Defendants had Legitimate Business Reasons for Its Decisions

Because Plaintiff's prima facie case fails, the burden-shifting analysis will not be addressed in detail.  Nonetheless, if this Court proceeds under the *McDonnell-Douglas* framework, the business reasons

articulated by Defendants relative to Plaintiff's being a traveling teacher, being subject to Corrective Action Plans, and being disciplined are clear. (Fact at ¶ 36-46, 60, 74-90, 69-97, 100-142). Plaintiff can present no evidence, either direct or circumstantial, to refute these reasons and support any claim for pretext. Simply no evidence exists that the Defendants regarded her as being disabled or discriminated against her on the basis of any disability, or that any business decisions related to her claimed medical condition.

## F. PLAINTIFF'S FIFTH AND SIXTH CLAIMS FOR RELIEF FAIL

Plaintiff's Fifth Claim asserts an equal protection argument relating to her employment contract under § 1981 against the District and the Board. Claiming she was wrongfully terminated on the basis of her race. Her §1981 claims include allegations against Mr. Dolecki and Mr. Heller in their personal capacity. The allegations relate specifically to Plaintiff's termination in April 2003. (See, Amended Complaint, ¶ 34). Plaintiff herself admits she has no evidence that her being Hispanic was a motivating factor. (Facts at ¶ 38).

Establishing a prima facie case of discrimination pursuant to §1981 involves essentially the same standards applicable to Title VII. Plaintiff must show that she is discriminated against because of being Hispanic and that the discrimination was subjectively and objectively detrimental or severe or pervasive. Section 1981 protection provides an umbrella of protection from discrimination to identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. 42 U.S.C.A. § 1981; See, *El-hakem v. BJY Inc.*, 415 F.3d 1068 (9th Cir. 2005).

For the same reasons articulated in response to Title VII claims the §1981 fails as well. In this case, Plaintiff fails to point out any comments or actions which are specifically related to Plaintiff's race. Thus, Plaintiff failed to demonstrate any incidents of racial degradation and thus the Claim must fail. See, *Manatt v. Bank of America*, 339 F.3d 792, 794-5 (9th Cir. 2003). See also, *Davis v. Mother's Work, Inc.*, 2005 U.S. Dist. Lexis 15890 (E.D. Pa 2005).

Plaintiff's Sixth Claim alleges that Misters Dolecki and Heller, II acted in their personal capacities in "perpetrating unlawful employment practices and actions against Plaintiff" under Title 42 §1981, §1983, and the 14th Amendment. Plaintiff fails to present evidence sufficient to support any Constitutional violation on the part of any Defendants.

Fourteenth Amendment claims relate primarily to Plaintiffs due process rights. Nothing in the Complaint or Plaintiff's evidence supports a due process violation. In *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 950 S.Ct. 959 (1975), the United States Supreme Court ruled that "an employee has a right to union representation during an investigatory interview which the employee reasonably believes might result in disciplinary action. The inquiry as to whether the belief is reasonable must be based on **o**bjective standards and upon a reasonable evaluation of, all circumstances and not upon the subjective reaction of the employee." At all times she was afforded procedural due process, which was safeguarded through her union representation. (Facts at ¶ ¶ 5, 19, 32, 41,64, 66, 69, 77-78, 94, 109, 117, 120, 129,131, 134, 137-139**)** Plaintiff was always afforded an opportunity to be represented and tell her side of the story. Thus, she was afforded due process. Plaintiff's theory relating to any alleged Fourteenth Amendment Violation. Specifically, Plaintiff has failed to provide any example of unequal treatment or any evidence whatsoever of not being afforded equal protection. Thus, her claims must fail. e.g. *Lauth v. McCollum*, 424 F.3d 631 (7th Cir. 2005).

The District and the Board are not liable under §1983 because Plaintiff has failed to establish any policy or custom existed which caused her alleged Constitutional violations. *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658 (1978). In the leading Third Circuit case on municipal liability, *Andrews v. City of Philadelphia*, 895 F. 2d 1469 (3d Cir. 1990), the Court set forth a two-step test for determining municipal liability under *Monell.* As the Court explained in *Andrews*, "section 1983 liability attaches to a municipality only when 'execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'"

*Andrews*, 895 F.2d at 1480 (quoting, *Monell*, 436 U.S. at 694). The *Andrews* Court further explained:

> A government policy or custom can be established in two ways. Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035 (*quoting*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, 90 S.Ct. 1598, 1613-14, 26 L.Ed.2d 142 (1970)). *Accord Anela v. City of Wildwood*, 790 F.2d 1063, 1067 (3d Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 434, 93 L.Ed.2d 384. In either of these cases, it is incumbent upon a Plaintiff to show that a policy maker is responsible either for the policy or, through acquiescence, for the custom.

(895 F.2d at 1480)

Plaintiff has established no such course of action to sustain §1983 liability.

To successfully support a §1983 action, Plaintiff must show that she was deprived a federal right by an individual acting under the color of state law. A person acts under the color of state law when he acts with authority possessed by virtue of his employment with a state entity, such as a School District. A Defendant in a 1983 suit acts "under color of state law" when he abuses the position given to him by that state entity. *Almand v. DeKalb County, Georgia*, 107 F.3d. 1510, 1513 (11th Cir.), cert. denied., 522 U.S. 1966 (1997); *Griffin v. City of Opa-Locka*, 261 F.3d 1291, 1306 n.10 (11th Cir. 2001). In this regard, Plaintiff can offer no evidence that Mr. Heller and Mr. Dolecki abused that position by enforcing a particular standard of conduct and expecting the Plaintiff to perform her teaching duties in a particular and acceptable fashion.

Even if it determined that the individual Defendants acted under color of state law, they are entitled to the defense of qualified immunity. *Owen v. City of Independence*, 445 U.S. 622 (1980). The doctrine of qualified immunity protects those officials from liability for discretionary actions taken in good faith that do not constitute a violation of a person's constitutional right. *Crawfor-I v. Britton*, 118 S. CT. 1584 (1998).

> "There are three steps involved in determining whether a person is entitled to sovereign immunity. In evaluating a claim of Qualified immunity a court must first determine whether a Plaintiff has asserted a violation of a constitutional right. *Doe v. Groody*, 361 F.3d

232, 237 (3d Cir. 2004).  If the answer to that is "yes" it must be determined whether that right was clearly established at the time.  *Siegert v. Gilley*, 500 U.S. 226, 231 (1991).

"Clearly established" rights are those with contours sufficiently clear that a reasonable official would understand that what he is doing violates that right.  *McLaughlin v. Watson*, 271 F.3d 566, 571 (3d Cir. 2001).  There must be sufficient precedent at the time of the action, factually similar to the Plaintiff's allegations to put the defendant on notice that his or her conduct is constitutionally prohibited.  *Id* at 572.  Where there is no controlling circuit authority a court should look to a consensus of cases of persuasive authority from other jurisdictions.  *Wilson v. Layne*, 119 S.Ct. 1962 (1999) (holding that unconstitutionality of ride-alongs was not clearly established where general fourth amendment principles did not apply with obvious clarity to the officers' conduct, there was no controlling authority from the relevant jurisdiction and there was no consensus of cases of persuasive authority that would put a reasonable officer on notice that his conduct was unlawful.)"

(12th Annual Northeast Regional Employment Law Institute at MM-22 – MM 23)

If the rights are clearly established, the Court must then determine if the defendant's conduct was objectively reasonable, using the standards in effect at the time of the events in question.  *Nerren v. Livingston Police Department*, 86 F.3d 469, 473 (5th Cir. 1996).  If, upon reviewing the evidence in the light most favorable to the non-movant, public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity.  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).  The Court should ask whether the official acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be reconstructed five years after the fact.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).

In the case at hand, the Defendants' conduct was objectively reasonable given the circumstances in question.  In this regard, there are no material issues of fact refuting that the individual Defendants should be afforded qualified immunity. Finally, no liability should attach because only ultimate decision-makers may be liable under §1983.  For example, in *Beattie v. Madison County School Board*, 254 F.3d 595 (5th Cir. 2001), the Plaintiff alleged that the Principal and Superintendent of the school in which she worked in retaliation for her support of opposing candidate for superintendent, recommended to the school board that she should be discharged.  The court found that even if the Plaintiff's allegations were true, the Principal and the

Superintendent could not be liable under §1983 if they did not make a final discharge decisions to discharge her "no matter how unconstitutional their motives", *Id* at 605. Thus, there should be no liability attaching to either Misters Dolecki or Heller because in their respective capacities as Superintendent and Assistant Superintendent they did not have the final decision power to discharge the Plaintiff as such decision was made by the school board and then later upheld through the arbitration process. See also, *City of St. Louis v. Prapatink*, 45 U.S. 112, 123 (1998). As specified previously, the District and Board are not liable because no policy or cause of discrimination existed.

Finally, Plaintiff's claims are time-barred in part. Claims under §1983 are governed by the Statute of Limitations for personal injury actions under state law. *Wilson v. Garcia,* 471 U.S. 261 (1985). Thus, any allegations relating back further than April 2003 are time-barred.

## G. **PLAINTIFF CANNOT SUSTAIN HER SEVENTH CLAIM FOR RELIEF UNDER THE PENNSYLVANIA HUMAN RELATIONS ACT**

Plaintiff cannot sustain her claim under the Pennsylvania Human Relations Act ("PHRA") against Defendants. Plaintiff's Seventh Claim for Relief, alleges that she was discriminated against because her race, national origin, sex and disability in violation of the PHRA. Plaintiff brings these claims against all Defendants, including Misters Dolecki and Heller in their personal capacities.

The consensus among federal courts is that the PHRA should be interpreted in accordance with its Federal counterparts, such as Title VII and the ADA. e.g. *Rineheimer v. Cemcolift, Inc.*, 292 F.3d 375 (3rd Cir. 2002); *Kelley v. Drexel University*, 94 F.3d 102, 105 (3rd Cir. 1996); *Bailey v. Storlazzi*, 729 A.2d 1206 (Pa. Sup. 1999); *Zekavat v. Philadelphia College of Osteopathic Medicine*, 1997 U.S. District Lexis 3802 (Ed. Pa. March 21, 1997). Therefore, where summary judgment is appropriate pursuant to Title VII or the ADA, the PHRA claim will be dismissed as well. *Sweet v. Bell Atlantic – Pa*, 1988 U.S. District Lexis 5415 (Ed. Pa. April 20, 1998). Thus, because Plaintiff's claims under Title VII and the ADA cannot survive summary judgment, similarly the Plaintiff's claim should be dismissed brought pursuant the PHRA.

Relative to individual liability, the Third Circuit held in *Dici. v. Commonwealth of Pennsylvania*, 91 F.3d 542 (3rd Cir. 1986), that under the PHRA a supervisor cannot be held liable for discrimination where an employee alleged only indirect incidents of harassment by a supervisor and failed to alleged facts that would indicate that the supervisor aided or abetted the employer by refusing to take prompt and remedial action against any discrimination suffered by the employee. *DC*, 91 F.3d at pp. 552-553; 43 P.S. § 955 (a). It is the School Board that has the ultimate authority to terminate the Plaintiff. Relative to the disciplinary actions imposed by the District, including those approved and implemented by Mr. Dolecki and Mr. Heller, Plaintiff cannot prove that these actions were not merited and were simply pretext for discrimination. Plaintiff's claim cannot lie against Mr. Dolecki and Mr. Heller for simply making employment decisions, doing their jobs, and supervising the Plaintiff as they saw fit. The record is replete with evidence of Plaintiff's unprofessional conduct and unsatisfactory performance. (See statement of Facts and Supporting Exhibits). Thus, the PHRA claims against the individual defendant should be dismissed as well.

## H. PLAINTIFF CANNOT SUBSTANTIATE AN ACTIONABLE EMOTIONAL DISTRESS CLAIM

Plaintiff's Eighth Claim relates to a "state claim" for infliction of emotional distress. Damages for emotional distress are punitive in nature. Typically, punitive damages are not available against a governmental entity. *Cook County v. U.S. ex rel. Chandler*, 538 U.S. 119 (2003). Thus, Plaintiff cannot successfully make this claim for entitlement to damages for emotional distress under the majority of her causes of action.

Under §1983, punitive damages may be awarded against officials acting in their individual capacity. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). In order to be successful, Plaintiff must show that the individual actions were motivated by malice or the person acted with reckless or callous indifference to the federally protected rights of the Plaintiff. *Smith v. Wade,* 461 U.S. 30 (1985). In the case at hand, Plaintiff offers no evidence meriting the survival of this claim as no allegation rises to the requisite level.

## III. CONCLUSION

Plaintiff has failed to meet her burden of proof to withstand Summary Judgment on all counts. Defendants have acted prudently and appropriately under the circumstances and did not violate Plaintiff's rights under any statute or theory of liability. It is respectfully requested this Honorable Court dismiss the Complaint in its entirety and not permit this absurd, and unsubstantiated vendetta to persist, where in reality Plaintiff simply refuses to take responsibility for her own actions.

Respectfully submitted:

ANDREWS & BEARD

*/s/ Roberta Binder Heath*
Roberta Binder Heath, Esquire
Pa. I.D. No. 50798
Counsel for Defendants
CRAWFORD CENTRAL SCHOOL DISTRICT,
CRAWFORD CENTRAL SCHOOL BOARD,
MICHAEL E. DOLECKI, SUPERINTENDENT,
CHARLES E. HELLER, III, ASSISTANT
SUPERINTENDENT