CRAWFORD CENTRAL SCHOOL ...
Meadville, Pennsylvania

**PROFESSIONAL EVALUATION INSTRUMENT**

1993-1994

Teacher ___Mitchell Claudette___  Date _____  Grade Level __10-12__  Building __Meadville Area Senior High School__  Years of Service as a full-time employee in the District __5__

Subject Area ___Foreign Language___

S - Satisfactory    U - Unsatisfactory

Appendix A must be used in conjunction
with the Philosophy and Rationale Section.

I. PROFESSIONAL COMPETENCY

A. PREPARATION - PROFESSIONAL STAFF SHOULD DEMONSTRATE, THE ABILITY TO PREPARE, PLAN AND USE EFFECTIVELY INSTRUCTIONAL LESSONS

[S] ALL PROFESSIONAL STAFF IN THEIR TEACHING ASSIGNMENT.

APPROPRIATE TO THEIR TEACHING ASSIGNMENT.
The following criteria are guidelines for consideration:
The following indicates definite goals have been established in correlation with
instruction.
Teacher participates in peer-group discussion of teaching techniques.
Resourceful in selection of instructional materials.
Lesson plans were purposeful.

Comments

B. TECHNIQUE - TEACHING EFFECTIVENESS

[S] ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO USE APPROPRIATE TEACHING TECHNIQUE TO ENHANCE TEACHER

EFFECTIVENESS.
The following criteria are guidelines for consideration:
Uses auditory and visual aids purposefully.
Uses explanations clear and concise.
Makes student's experiences to motivate interest.
Uses a variety of instructional methods.
Stimulates interest and curiosity.
Obtains positive reaction from most students.
Makes effective use of community resources.

Comments

C. TEACHER - STUDENT INTERACTION

[S] ALL PROFESSIONAL STAFF SHOULD ENCOURAGE POSITIVE TEACHER - STUDENT RELATIONSHIPS.

The following criteria are guidelines for consideration:
Courtesy and tact - polite, considerate, and respectful with students.
attempts to maintain professional relationship with students.
Encourages positive self-discipline and responsible behavior, respect and
honesty in the student.
Strives to develop self-discipline such as responsible behavior, respect and
Understands and respects differences in abilities, interests and needs of
students.

Comments

II. PERSONAL CHARACTERISTICS AND TRAITS

A. RESPONSE TO SUPERVISION

[S] ALL PROFESSIONAL STAFF SHOULD BE ABLE TO RESPOND EFFECTIVELY TO SUPERVISION.

The following criteria are guidelines for consideration:
Demonstrates ability to work with administrators to achieve educational improvements.
Observes administrative policies while reserving the right to seek change.
Responds to constructive criticism for improvement of the educational program.

Comments

B. ATTITUDE

[S] ALL PROFESSIONAL STAFF SHOULD DISPLAY POSITIVE ATTITUDE TOWARD ACHIEVING EDUCATIONAL GOALS.

The following criteria are guidelines for consideration:
Displays interest, enthusiasm, flexibility and dedication as a teacher.
is polite and considerate.

Comments

Has written plans, seating charts, plus special schedules available (when appropriate).
The room is attractive and neat (use of bulletin boards, posters, etc.)
Teacher adjusts the physical features of the room to provide a healthful and meaningful environment.
Decor or room corresponds to curriculum.

Encourages and directs students interactions.
Attempts to motivate students in reaching levels of performance consistent with their ability.
Provides for student involvement in planning of classroom activities.
Provides alternative methods of study.
Maintains class control essential to the learning process.
Teacher demonstrates knowledge of the subject.

Encourages student interaction and free expression of ideas.
Encourages the development of desirable study habits and/or use of study time.
Encourages the students in the planning classroom activities.
Establishes an attitude of friendliness and feeling of mutual interest
between students and teacher, shows no favoritism or partiality.

**C. ABILITY TO COOPERATE**

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COOPERATE WITH OTHERS.

The following criteria are guidelines for consideration:

Maintains sound relationships and works constructively with students, parents and school personnel.

Carries out extra duty assignments regularly.

[S]

Comments

**D. MATURITY**

ALL PROFESSIONAL STAFF SHOULD DISPLAY MATURITY.

The following criteria are guidelines for consideration:

Demonstrates self-confidence and a pleasant disposition toward students, parents and co-workers, has a sense of humor.

Exhibits intelligent, mature behavior and conducts himself in a manner which exhibits professional dignity.

Demonstrates honesty and respect for laws.

[S]

Comments

**E. DEPENDABILITY**

ALL PROFESSIONAL STAFF SHOULD BE DEPENDABLE.

The following criteria are guidelines for consideration:

Is responsible in meeting education obligations.

Is punctual in meeting schedules, can be relied upon to take some initiative and cope with various circumstances which may arise.

Record keeping is accurate and reports are submitted promptly and neatly.

[S]

Comments

**F. COMMUNICATION**

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COMMUNICATE EFFECTIVELY.

The following criteria are guidelines for consideration:

Gives adequate attention to personal grooming and appropriate dress.

Gives clear and concise instructional directions.

Solves everyday problems realistically.

Has listening ability.

Has skill in asking pertinent questions.

[S]

Comments

**G. PHYSICAL CHARACTERISTICS**

ALL PROFESSIONAL STAFF SHOULD GIVE ADEQUATE ATTENTION TO PERSONAL AND PHYSICAL CHARACTERISTICS.

The following criteria are guidelines for consideration:

Gives adequate attention to personal grooming and appropriate dress.

Is physically fit as evidenced by regular attendance, and the ability to carry a normal assignment. (This does not apply to temporary disabilities).

[S]

Comments

**H. PROFESSIONALISM**

ALL STAFF SHOULD STRIVE FOR CONTINUED PROFESSIONAL GROWTH OPPORTUNITIES.

The following criteria are guidelines for consideration:

Strives to attend workshops, seminars, etc. to provide for professional growth.

Is an active member in professional organizations.

Demonstrates a willingness to serve in a responsible position in local, district or state educational organizations.

[S]

Comments

Teacher's Comments:    (If extra comment area is needed, please attach an additional sheet.)

I have read this report and discussed it with my evaluator.

OVERALL EVALUATION:

[ ] [Y] - Satisfactory

[ ] - Unsatisfactory

AS    PER    ABINGTON    HEIGHTS    RULING    1994-199?

_Charlotte H. Mitchell_
Signature of Teacher

_(signature)_
Signature of Evaluator

Appendix A must be used in conjunction
with the Philosophy and Rationale Section.

CRAWFORD CENTRAL SCHOOL DISTRICT
Meadville, Pennsylvania

PROFESSIONAL EVALUATION INSTRUMENT

Teacher     Claudette Mitchell                              Building     Meadville Area Senior High

Subject Area     Foreign Language     Date     6-9-95     Grade Level     10-12     Years of Service as a full-time employee in the District     5

S - Satisfactory     U - Unsatisfactory

I.  PROFESSIONAL COMPETENCY

A.  PREPARATION - PLANNING

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO PREPARE, PLAN AND USE EFFECTIVELY INSTRUCTIONAL LESSONS
APPROPRIATE TO THEIR TEACHING ASSIGNMENT.

The following criteria are guidelines for consideration:

S

Instruction indicates defining goals have been established in correlation with
the curriculum.

Resourceful in selection of instructional materials.

Teacher participates in peer-group discussion of teaching techniques.

Lesson plans were purposeful.

Has written plans, seating charts, plus special schedules available (when
appropriate).

The room is attractive and neat (use of bulletin boards, posters, etc.)

Teacher adjusts the physical features of the room to provide a healthful and
meaningful environment.

Decor or room corresponds to curriculum.

Comments

B.  TECHNIQUE - TEACHING EFFECTIVENESS

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO USE APPROPRIATE TEACHING TECHNIQUE TO ENHANCE TEACHER
EFFECTIVENESS.

The following criteria are guidelines for consideration:

S

Uses auditory and visual aids purposefully.

Makes explanations clear and concise.

Uses student's experiences to motivate interest.

Uses a variety of instructional methods.

Stimulates interest and curiosity.

Obtains positive reaction from most students.

Makes effective use of community resources.

Encourages and directs student interactions.

Attempts to motivate students in reaching levels of performance consistent
with their ability.

Provide for student involvement in planning of classroom activities.

Encourages the student in the planning classroom activities.

Provides alternative methods of study.

Maintains class control essential to the learning process.

Teacher demonstrates knowledge of the subject.

Comments     *Much improvement noted in this area.*

C.  TEACHER - STUDENT INTERACTION

ALL PROFESSIONAL STAFF SHOULD ENCOURAGE POSITIVE TEACHER - STUDENT RELATIONSHIPS.

The following criteria are guidelines for consideration:

S

Courtesy and tact - is polite, considerate, and respectful with students;
attempts to maintain consistencies when working with students.

Encourages positive, professional relationship with students.

Strives to develop self-discipline such as responsible behavior, respect and
honesty in the student.

Understands and respects differences in abilities, interests and needs of
students.

Encourages student interaction and free expression of ideas.

Encourages the development of desirable study habits and/or use of study
time.

Establishes an attitude of friendliness and a feeling of mutual interest
between students and teacher; shows no favoritism or partiality.

Comments     *Much improvement noted in this area.*

II.  PERSONAL CHARACTERISTICS AND TRAITS

A.  RESPONSE TO SUPERVISION

ALL PROFESSIONAL STAFF SHOULD BE ABLE TO RESPOND EFFECTIVELY TO SUPERVISION

The following or items are guidelines for consideration:

S

Demonstrates ability to work with administrators to achieve educational improvements.

Observes administrative policies while reserving the right to seek change.

Responds to constructive criticism for improvement of the educational program.

Comments     *Much improvement and protocol in this area.
Mrs. Mitchell and the administration worked much
together.*

B.  ATTITUDE

ALL PROFESSIONAL STAFF SHOULD DISPLAY POSITIVE ATTITUDE TOWARD ACHIEVING EDUCATIONAL GOALS.

S

The following criteria are guidelines for consideration:

Displays interest, enthusiasm, flexibility and dedication as a teacher.

is polite and considerate.

Comments

## C. ABILITY TO COOPERATE

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COOPERATE WITH OTHERS.

The following criteria are guidelines for consideration:

Maintains sound relationships and works constructively with students, parents and school personnel.

Carries out extra duty assignments regularly.

Comments

## D. MATURITY

ALL PROFESSIONAL STAFF SHOULD DISPLAY MATURITY.

The following criteria are guidelines for consideration:

Demonstrates self-confidence and a pleasant disposition toward students, parents and co-workers; has a sense of humor.

Exhibits intelligent, mature behavior and conducts himself in a manner which exhibits professional dignity.

Demonstrates honesty and respect for laws.

Comments

## E. DEPENDABILITY

ALL PROFESSIONAL STAFF SHOULD BE DEPENDABLE.

The following criteria are guidelines for consideration:

Is responsible in meeting education obligations.

Is punctual in meeting schedules, can be relied upon to take some initiative and cope with various circumstances which may arise.

Comments

## F. COMMUNICATION

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COMMUNICATE EFFECTIVELY.

The following criteria are guidelines for consideration:

Demonstrates appropriate use of language and voice control.

Gives clear and concise instructional directions.

Comments

Has listening ability.

Has skill in asking pertinent questions.

Solves everyday problems realistically.

Record keeping is accurate and reports are submitted promptly and neatly.

## G. PHYSICAL CHARACTERISTICS

ALL PROFESSIONAL STAFF SHOULD GIVE ADEQUATE ATTENTION TO PERSONAL AND PHYSICAL CHARACTERISTICS.

The following criteria are guidelines for consideration:

Gives adequate attention to personal grooming and appropriate dress.

Is physically fit as evidenced by regular attendance, and the ability to carry a normal assignment. (This does not apply to temporary disabilities)

Comments

## H. PROFESSIONALISM

ALL STAFF SHOULD STRIVE FOR CONTINUED PROFESSIONAL GROWTH OPPORTUNITIES.

The following criteria are guidelines for consideration:

Strives to attend workshops, seminars, etc. to provide for professional growth.

Is an active member in professional organizations.

Comments

Demonstrates a willingness to serve in a responsible position in local, district or state educational organizations.

Teacher's Comments _____

(If extra comment area is needed, please attach an additional sheet.)

I have read this report and discussed it with my evaluator

OVERALL EVALUATION:

☐ - Satisfactory

☑ - Unsatisfactory

Signature of Teacher

IN THE MATTER OF ARBITRATION

between

CRAWFORD CENTRAL
SCHOOL DISTRICT

and

CRAWFORD CENTRAL
EDUCATION ASSOCIATION

]
]
]
]
]
]
]
]
]

Grievance No. 2-94-95

Teacher Evaluation
Claudette Mitchell

DECISION IN

GRIEVANCE:

The grievance asserts that the District did not have just cause to rate the Grievant unsatisfactorily for the 1993-1994 school year.

AWARD:

The grievance is sustained.

HEARING:

February 24, 1995; Meadville, Pennsylvania

APPEARANCES

For the District

Emil M. Spadafore, Jr., Solicitor to Crawford Central
James C. LaScola, Superintendent, CCSD
Michael E. Dolecki, Assistant Superintendent, CCSD
George H. Deshner, Principal, Meadville Sr. High
Richard S. Curry, English Teacher

For the Association

John P. Jones, PSEA Staff Attorney
Richard Zylak, CCEA President
Pat Deardorff, Grievance Chairperson
Claudette Mitchell, Grievant

## ADMINISTRATION

By letter of February 8, 1995, the undersigned was notified of his selection by the Parties to hear and decide a matter then in dispute between them. A hearing went forward on February 24, 1995, where both Parties presented testimony, written evidence and arguments in support of their respective positions and where the Grievant appeared and testified in his own behalf. Post Hearing Briefs were duly filed and exchanged, whereupon the record was closed. The matter is now ready for final disposition.

## GRIEVANCE AND QUESTION TO BE RESOLVED

On June 27, 1994, the following Grievance (Joint Exhibit 2) was filed:

> **Nature of Grievance.** That the principal has violated the contractual and legal rights of the grievant by having improperly observed and rated her unsatisfactory for the 1993-94 school year without just cause.

> **Relief Sought.** That the principal cease and desist from violating the contractual and legal rights of the grievant. That the unsatisfactory rating and any other related material be removed from her file and destroyed and changed to a satisfactory rating, and any other relief the arbitrator may deem appropriate.

The question to be resolved is was there just cause to issue the Grievant an unsatisfactory rating.

Grievance No. 2-94-95

2

August 3, 1995

# PERTINENT PORTIONS OF THE AGREEMENT

The following portions of the Agreement (Joint Exhibit-1) are pertinent:

## ARTICLE III

### GRIEVANCE PROCEDURE

A.

  1. Definitions

    Grievance

    A "grievance" is hereby defined as:

    a. a claim by an employee or employees regarding the meaning, interpretation or application of any provision in this Agreement.

## ARTICLE IV

### RIGHTS OF PROFESSIONAL EMPLOYEES

A. Just Cause Provision

No professional employee shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board or any agent or representative thereof, shall be subject to the grievance procedure herein set forth. The reasons forming the basis for disciplinary action will be made available to the professional employees and the Association promptly.

## ARTICLE XII

### EMPLOYEE EVALUATION

A. General Criteria

  1. Basis for Conducting Evaluations

    Evaluations shall be conducted under the provisions of Section 1123 of the School Code and the School District

Policy governing the use of Appendix A of the Professional Evaluation Instrument.

## 2. Observation Reports

An employee shall be given a copy of any written observation report. No such report shall be submitted to the central office, placed in the employee's file, or otherwise acted upon without prior review by the employee. The employee shall acknowledge that he/she has had the opportunity to review such material by affixing his/her signature to the copy to be filed with the employee. Such signatures in no way express understanding that such signatures in no way indicate agreement with the contents of the report.

## 3. Rating Reports

The employee shall receive a copy of all rating reports prior to said forms being placed in his/her personnel file. The employee may request a conference to review this rating form with the appropriate administrator.

## 4. Rating Reports

Notification of rating of temporary professional employees shall be done in accordance with the provisions of Section 1108(a) of the School Code of 1949 as amended and the School District Policy governing the use of Appendix A of the Professional Evaluation Instrument.

## B. Personnel File

### 1. Contents Available

An employee shall have the right, upon request, to review the contents of his/her personnel file. An employee shall be entitled to have a representative of the Association accompany him/her during such review.

### 2. No Separate File

The board agrees not to maintain or establish any separate personnel file which is not available for the employee's inspection.

DEC-15-2003  09:27         PSEA                                      814 734 5206    P.06

## FACTUAL BACKGROUND

The Grievant is a tenured foreign language instructor (Spanish) at the Meadville Area Senior High School, which is part of the Crawford Central School District (District).

The Grievant is represented in matters pertaining to collective bargaining by the Crawford Central Education Association (Association). The Grievant was initially hired by the District in August 1990. The Grievant began teaching in the District at the Cochranton Area Schools, and she subsequently transferred to the Meadville Area Senior High School where she taught Spanish. On June 10, 1994, the Grievant was given an unsatisfactory rating for the 1993-1994 school year by George Deshner, who is the High School Principal.

The following events were testified to by Mr. Deshner as the principle reasons for the unsatisfactory rating:

1) October 28, 1991 Parent Alice Williams requested a parent-teacher conference because her daughter received a detention notice for laughing in class. A conference was held, and the Grievant's classroom rules were reviewed. The Grievant admitted putting the student into the hallway until she was ready to observe the classroom rules.

2) About this same time frame, other students were reporting to the office who had also been put out of the Grievant's classroom.

3) December/late November Deshner noticed the Grievant coming into the office wearing her coat after 8:00 am. The faculty is to report by 7:50 am and leave at 3:20 pm. The Grievant's first period is a study hall at beginning at 8:11 am; on one occasion, she was not at the study hall at 8:15 am. Deshner testified that he called the Grievant into his office to talk about her reporting times at which point she became belligerent and argumentative. He recalls that the Grievant stated that she would not remain beyond 3:20 pm. On January 5, 1994, shortly after the meeting, a

Grievance No. 2-94-95                        5                        August 3, 1995

letter was issued to the Grievant addressing her tardiness. That letter provided in pertinent part that:

TO:     CLAUDETTE MITCHELL

FROM:  GEORGE H. DESHNER

RE:     TARDINESS TO SCHOOL

DATE:  1/5/94

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

As you should recall, we had a discussion in early December about arriving to school on time. The normal workday for professional staff at Meadville Area Senior High School is 7:50 A.M. until 3:20 P.M. In order that the school day commence as it should, it is imperative that all staff be on time and at their assigned places at 7:50 A.M.

Since this discussion, you have continued to arrive late to school on a consistent basis. Some of the dates and times of your arrival are as follows:

| | |
|---|---|
| December 8, 1993 | 7:56 A.M. |
| December 9, 1993 | 8:03 A.M. |
| December 10, 1993 | 8:04 A.M. |
| December 14, 1993 | 8:00 A.M. |
| December 21, 1993 | 8:08 A.M. |
| January 3, 1994 | 8:07 A.M. |
| January 5, 1994 | 8:14 A.M. |

Attached please find the guidelines for A.M. hall supervision and the area to which you are assigned. Also attached is Board Policy No. 418 relating to tardiness. Please review these materials as they relate to this situation.

I anticipate that you will make every effort to correct the problem of tardiness and that it will not be necessary to take any other administrative action.

If you have any questions concerning this matter or wish to discuss it with me, please feel free to make an appointment to do so.

Thank you for your attention to this matter.

cc: Mr. James C. LaScola, Superintendent

Grievance No. 2-94-95                               6                                      August 3, 1995

her class.  He stated that had the Grievant produced the note in October, immediate action would have been taken.

On April 27, 1994, Deshner sent a letter to the Grievant summarizing the April 22, 1994 parent conference, together with a copy of the "note." That letter provided in pertinent part that:

To: Claudette Mitchell, MASH Spanish Teacher
From: George H. Deshner, Principal
RE: Parent Conference on 4/22/94
Date: 4/27/94

*********************************************************

Thank you for attending the parent conference with Ms. Curtis McBride and his son, Christopher, on April 22, 1994.

I would like to review the concerns that Mr. McBride presented to us and ask that you make every effort to address these concerns and take appropriate action to correct them.

(1)  **The timeliness of notifying parents that a problem exists with a student.**

The date that the administration gives to submit progress reports is only a guideline.  You may send a progress report at any time you see a student is falling off in their work.  It is also advisable that parents be contacted by phone to apprise them of student progress or discipline situations.

(2)  **Offering appropriate suggestions to parents for improvement.**
The progress report has many items that can be checked to offer suggestions for parents to help their students. You may also offer any written comments to parents to help the parent and student.  It is important that you give professional advice concerning correcting the situation to the parents about their son/daughter's situation.

(3)  **Discussing student situations in front of the class or to other students.**

Grievance No. 2-94-95                              August 3, 1995

10

As we have previously discussed, it is not appropriate to go to other students or to say things in front of the class about another student's situation. An example was to begin discussing the letter Heath Strasser wrote and then handing it to Mr. McBride to read. You did not bring the letter to the attention of the administration, guidance or Heath's parents at the time it was confiscated in October. It should not be brought up for other parents to read.

(4)  **Make  sure  that  all  students  have  the  required materials.**

Mr. McBride was concerned that Chris had not received handouts in class and then on two occasions when he asked for them was told there were no more available or was ignored. Chris indicated that on two different days, this had happened to him concerning the current class assignment. This could be avoided by making extra copies of worksheets and keeping them with you for the duration of the class periods the students are working on them.

(5)  **Use of films in class.**

During the conference the question arose concerning the use of the films El Norte and Naked Gun 2 1/2 in class. Chris indicated you had shown both to the class. You had indicated that you had not used this film but instead, Naked Gun. Chris reiterated that El Norte was shown to the class. It was established that in either situation the language used in the films is not appropriate. I would suggest that better judgment be used in selecting materials for use to teach Spanish. There are other films available in Spanish that do not use offensive language or sexual innuendos.

(6)  **Use of the work folders for ten percent of the students final grade.**

At the conference you indicated that students were to keep all of their work from the year in a folder. This folder would be collected at the end of the year and would count for ten percent of their final grade. This came as a surprise to the students, parents and myself. We have had several discussions concerning the folders over the past several weeks and at no time was this ever stated. As per our conference of 4/27/94 at 9:45 a.m., I am

suggesting that this not be used this current school year. If the folders are to be collected, they should be used as extra credit for the student and not a part of their final grade for this year. Students and parents should be notified of this requirement in writing at the start of the school year. You agreed to going this. Please inform those classes where this was to be used and of how it will be handled for this year.

cc: Mr. James C. LaScola, Superintendent
    Personnel File

(NOTE:)

Ho! Ho! Yo! Yo! Yo!

Speakin' Spanish just ain't my game,
Cold cockin' bi***es is my claim to fame;
Mother f***ers trying' to sweat me, but she [illegible]
Punk f***ers can never get [illegible] me.
So me and my [illegible] hang.
Trying to figure out the Mitchell gang bang.
Yeah, oh yeah, that sh**'s just too hot, only
3 o'clock and already given up the cock,
Yes, she's much too fast, all I [illegible] can think
of is stickin' that Latino ass !!!

15)    Deshner testified that in May of 1994, a delegation of students came to him from the Spanish I class. They complained that the AM class was permitted to use cheat sheets on the test while they were not. Deshner recalls that when he asked the Grievant about why this had been permitted, the Grievant responded that the AM class was weaker and needed the help while the afternoon class did not. Deshner checked the grade average of the two classes and found that the AM class had a higher percentage of A grades.

16)    Deshner stated that in April the Grievant stopped talking to her classes and simply handed out xerox work sheets.

On June 10, 1994, at the conclusion of the school year, Deshner issued an unsatisfactory rating to the Grievant. Of the eleven categories to be evaluated, five were

Grievance No. 2-94-95                    12                    August 3, 1995

marked as "unsatisfactory" and six were marked as "satisfactory". The overall rating was "unsatisfactory".

On June 27, 1994, the instant grievance was filed protesting the evaluation as being without just cause. The District challenged the grievance, arguing that teacher ratings was not an arbitrable matter. On January 11, 1995, the undersigned issued an Award stating that a May 20, 1992 Award by Arbitrator William C. Heekin, who found that unsatisfactory ratings were arbitrable, was indeed controlling in the instant procedural dispute and that the instant dispute was arbitrable. As such, the matter is now ready to be decided on its merits.

## CONTENTIONS OF THE PARTIES

### DISTRICT CONTENTIONS

The District contends that the purpose of the evaluation is to improve job performance and it is not disciplinary in nature. It points to a Pennsylvania Supreme Court decision in Nicolella v. Trinity Area School Board, 444 Pa. 544, 281 A. 2d 832 (1971) and Travis v. Teeter, Pa. 326 87 A. 2d 177 (1952). The District argues that the courts have held that if an unsatisfactory rating has been issued in compliance with all legal requirements, the rating is presumed to be valid and will be set aside only if the employee can prove that the rating is arbitrary or capricious or was issued in bad faith. It submits that this conclusion was reached applying the rule that where the law has

vested discretion in a public official, the courts will not interfere with the official's exercise of discretion unless discretion is arbitrarily and fraudulently exercised or is based on a mistake of law. The District maintains that the evidence presented in the hearing is fair and reasonable and was not arbitrary or capricious.

Turning to the Association's several hearsay objections, the District admits that hearsay evidence was presented. However, it takes the position that this is an arbitration hearing with looser standards on the admissibility of hearsay evidence and that an unsatisfactory rating grievance is not a proceeding before an administrative agency; therefore, looser standards should apply.

The District cites *Augustine v. the Turkeyfoot Valley Area School District*, 9D&C 3rd 147, 172 (1977), which discusses and defines an anecdotal record as it applies to an employee's performance evaluation. It contends that such records were introduced into evidence on this record establishing specific dates and times of parent conferences and administrative directives to the Grievant. Conversely, it charges that the Grievant had no such records. The District concludes that the Grievant's evaluation for the 1993-94 school year is proper and should not be disturbed.

## ASSOCIATION CONTENTIONS

The Association contends that the District has not met its burden of proof under the minimum standards of the just cause provision. It also contends that the evaluation of the Grievant cannot stand inasmuch as the District rated her unsatisfactory more than two months after her last observation. The Association maintains that this is a violation

of the Pennsylvania School Code at paragraph 351.22 (g) and 351.24 (d). It argues that the Grievant's prior observations gave no indication of the unsatisfactory rating to come and that the District took no action to remediate any problems that were indicated. It points to the fact that the September 16, 1993 observation report contained only satisfactory ratings and that the March 25, 1994 observation report contained six areas where improvement was needed; and it points out that the recommendations given concentrated on seating and nothing of substance. The Association concludes that the observation reports do not give notice of a possible unsatisfactory rating.

The Association also contends that the District's case is based almost entirely on inadmissible hearsay. It submits that Deshner's testimony is what he did in reaction to statements made by others. The Association notes that this hearsay testimony was objected to throughout the record. It concludes that the hearsay statements relied upon cannot form the basis for the Grievant's unsatisfactory rating. Turning to the allegation of lateness, the Association maintains that the Grievant did not know that she had missed any hall duty assignments until she received the January 5 memo. It argues that as a traveling teacher, the Grievant did not have a hall duty assignment in the previous year and did not expect to have one in the current year. As to the PMS statement, it denies the District's characterization admitting only that the Grievant said, "I'm not a PMS teacher," when a student said that she was in a bad mood. The Association takes the position that the ratings on the form are not valid because the District failed to prove that the Grievant discussed student situations with other students. It asserts that the unsatisfactory rating given to the Grievant was not for just cause and that it was arbitrary

## DISCUSSIONS AND FINDINGS

The presentation of this case involved considerable hearsay testimony from the District's witnesses. In this connection, the District argues that inasmuch as this matter involves an unsatisfactory rating grievance and is not a proceeding before an administrative agency, "looser standards" should apply. While arbitration hearings tend to operate under somewhat relaxed rules of evidence, when an employee's job, contractual right or a management right is on the line, the "truth of the matter asserted" cannot be established from hearsay testimony. Black's Law Dictionary, Fifth Edition, in pertinent part describes hearsay evidence as:

> Evidence not proceeding from the personal knowledge of the witness, but from the mere repetition of what he has hear others say.

Therefore, for the purposes of this decision, hearsay evidence offered as background will be accepted as background only. Hearsay evidence will not be accepted where it is offered for the purpose of proving the truth of the matter asserted.

When students approach a principal with ongoing complaints about a teacher, a red flag would certainly go up on the principal's mind that a potential problem might exist

and capricious. The Association seeks in relief that all references to the unsatisfactory rating be removed from the Grievant's personnel file.

with the teacher. Indeed, the principal would be remiss if he failed to investigate the matter. The evidence placed on this record expressly establishes that the students with whom the Grievant was having trouble were all from her eighth period Spanish I class. It must be observed as significant that no evidence was adduced on this record that might tend to indicate that any problem existed in any of the other of the Grievant's classes. It must follow then, that the Grievant's unsatisfactory evaluation is based on the fact that she had a problem with one of her six Spanish classes.

In describing the principle students from the eighth period class who were bringing the charges and allegations against the Grievant, District witness Richard Curry, an English teacher, described them as "discipline problems." Indeed, even Principal Deshner admitted under cross-examination that it was possible that these students were out to get the Grievant. It simply strains the bounds of logic to accept that the Grievant's inability to teach in a satisfactory manner, as set forth in the unsatisfactory evaluation, would not have been mirrored in her other classes.

With the exception of a few charges that will be discussed later in this Award, most of the District's allegations against the Grievant were expressed in hearsay testimony by Principal Deshner. More specifically, he was repeating what the students said to him without having any first hand knowledge that what the students said had actually occurred. Simply put, he accepted and later raised in charges against the Grievant the accusations brought to him by the students of the eighth period Spanish I class. This is not the kind of evidence that can be relied upon in order to prove the truth of the matter

Grievance No. 2-94-95    17    August 3, 1995

asserted. As such, that testimony by Deshner that is not of his first hand knowledge or an admission by the Grievant on this record will not be considered.

The record reveals that the Grievant did on several occasions report after the contractually mandated starting time. While the Grievant offered several excuses, the record establishes that the schedule information was included in the material handed out to teachers at the beginning of the year. The Grievant is responsible for this material, particularly in the face of the fact that she was not a new teacher who was unaware of teaching schedules. This charge against the Grievant is affirmed, and the letter reflecting the same shall remain in her file. It must be noted that upon receipt of this letter, the Grievant reported in a timely fashion.

The charge that the Grievant wore a bra over her sweater on "inside out day" is affirmed by her own testimony and that of District witness Curry. It must be observed as curious that while the Grievant wore this outfit all day, including trips into the office, that it took a student/parent complaint to make an issue of it.

The charge that the Grievant retaliated against a student by placing him behind a pole or post in the classroom is set aside by the Grievant's uncontroverted testimony that she let the students choose their own seats.

There is no evidence to support the allegation that it was the Grievant and not a substitute who showed the film El Norte. However, the record reveals that the Grievant did show the movie Naked Gun to her classes. It is not clear from this record what part the showing of this movie played in her unsatisfactory evaluation.

The Grievant's published classroom expression, Association Exhibit-7, which contains, <u>inter alia</u>, the expression "esto apesta" which means "this sucks" does not reveal itself to be a professional document.

The District is correct in its concern about the Grievant's admitted statement to her class that she "is not a PMS teacher" is well founded and hardly professional.

The question as to the Grievant's grades in the eighth period class and the use of D as a grade or a discipline note was not sufficiently developed as a charge and is accordingly dismissed.

On March 25, 1994, Superintendent LaScola told the Grievant to move on from the matter with her students and to start on Monday with something new. The record reveals that the Grievant's response was to hand out a survey dealing with the express charges that students of her eighth period class had raised with Principal Deshner. This was directly opposite to what she had been instructed.

In sum, once the hearsay testimony is removed, the charges affirmed against the Grievant are:

1) During November/December the Grievant did have several late reports. Upon being reprimanded, the Grievant corrected this problem.

2) The Grievant wore a bra over her sweater on inside out day.

3) The Grievant did show the movie Naked Gun.

4) The Grievant did publish one questionable expression in a list of seventy-one classroom expressions.

Grievance No. 2-94-95

19

August 3, 1995

In the way of commendations, Deshner provided:

1) Students are encouraged to speak Spanish at all times - Good.

2) Teacher walked about room and checked student progress.

It must be observed as significant that these observations are not indicative of an unsatisfactory evaluation. Nor do they forecast in any fashion that the Grievant was in trouble. It must be observed as critical to the District's case that when he was asked about the end of the year evaluation for the 1993-1994 school year of the Grievant, Deshner replied that it was "based on student interviews." This is the same type of hearsay that is excluded from this record. Indeed, the very anecdotal records relied upon by Deshner were also for the greatest extent hearsay.

Evaluation of a teacher is at best a subjective process that should not be readily overturned by a third party unless it is arbitrary or capricious. While the Grievant did show errors of judgement as set forth, _supra_, the record here clearly reveals that the unsatisfactory evaluation was based primarily upon hearsay provided by students to the Principal. At the same time, there is no evidence that the Grievant had a problem with the other five of her six classes. The record reveals that the problems disclosed by students and eventually their parents came from the eighth period class. Other than the parent/teacher conferences, there are no warnings of poor teaching practice or suggestions by the administration to the Grievant in resolving the problems with this

DEC-16-2003 09:44    PSEA    814 734 5206    P.05

class. The admonition by Superintendent LaScola to "start Monday with something new" falls far short of professional assistance. When all of these factors are considered together, it must be found that this evaluation was arbitrary and capricious. Accordingly, the grievance is sustained.

## A W A R D

The grievance is sustained. The June 10, 1994 evaluation of the Grievant for the 1993-1994 school year is overturned and any reference thereto shall be removed from the Grievant's file.

Carl F. Stollenberg

August 3, 1995

Pittsburgh, Pennsylvania

Grievance No. 2-94-95

22

August 3, 1995

TOTAL P.05