

## CRAWFORD CENTRAL SCHOOL DISTRICT

Instructional Support Center
RR 9, Box 462, Route 102
Meadville, Pennsylvania 16335-9504
Telephone: (814) 724-3960
FAX: (814) 333-8731

James C. LaSoul, Superintendent

Michael E. Dolecki
Assistant Superintendent
Lary L. Williams
Director of Curriculum & Instruction
Nicholas J. Rancourt
Director of Special Services
Thomas E. Berg
Director of School Services
Jean E. Starvey
Business Management Secretary

**EXHIBIT 14**

# SUMMATIVE EVALUATION REPORT

Claudette Mitchell is a Spanish teacher at the Meadville Area Senior High School. For the 1995-1996 school year, she was assigned to teach Spanish I, Spanish IV, and Spanish V. In addition to these subjects, Mrs. Mitchell has sponsored the Spanish Club along with another teacher who teaches Spanish. Mrs Mitchell has also helped a special needs student that required extra attention.

Mrs Mitchell is knowledgeable of the Spanish language. It is evident that she has adequate planning. Lesson plans are turned in as required and are always complete. She was observed twice during the 1995-1996 school year with many of the areas on the observation sheet marked as satisfactory. Questions of improvement needed concerned classroom mechanics in dealing with student interaction and using sound instructional judgment when working with students. It was also noted that establishing and following classroom routines and procedures needed attention.

During the course of the year, damages to the modular classroom were noted. Mrs Mitchell also continued to be tardy to class and extra duty assignments. Students were observed entering her classroom with Mrs. Mitchell reporting after the students had arrived. This is inconsistent with her assurance to us that her classroom was never left unlocked when she was not there and that she was always with her students and they could not possibly cause damages to the classroom. At other times, the students were observed standing in the snow waiting to get into the classroom and Mrs. Mitchell arrived late. Numerous problems were also brought to our attention from parents and students concerning unfair treatment of students, sharing of confidential information with improper persons contrary to district policy and directives which she had been given by the administration, and inconsistencies in the classroom.

These are all areas that need strong attention in the future. Because of these observations and concerns, Mrs. Mitchell is being rated unsatisfactory for the 1995-1996 school year.

_Claudette Mitchell_   6/6/96
TEACHER            DATE

_Georgette Johnson_   6/6/96
SUPERVISOR          DATE

This signature indicates that this observation was reviewed with you by your supervisor.

_Signature does not imply agreement with contents_

S.MAEP/FS FOR/US

AN EQUAL RIGHTS AND OPPORTUNITIES SCHOOL DISTRICT.

IN THE MATTER OF THE ARBITRATION

Between

CRAWFORD CENTRAL EDUCATION
ASSOCIATION, PSEA/NEA

and

CRAWFORD CENTRAL SCHOOL
DISTRICT

OPINION AND AWARD

RONALD F. TALARICO
ARBITRATOR

**GRIEVANT**

Claudette Mitchell

**ISSUE**

Unsatisfactory Rating

**HEARINGS**

November 7, 1996
December 17, 1996
December 18, 1996
Meadville, PA

**POST-HEARING BRIEFS RECEIVED BY**

March 3, 1997

**APPEARANCES**

**For the Employer**
Emil M. Spadafore, Jr., Esq.

**For the Association**
John P. Jones, Esq.

EXHIBIT
15

DEC-16-2003  09:14    PSEA    814 734 5286    P.03

## ADMINISTRATIVE

The undersigned Arbitrator, Ronald F. Talarico, Esq., was mutually selected by the parties to hear and determine the issues herein. An evidentiary hearing was held on November 7, 1996, December 17, 1996 and December 18, 1996 in Meadville, Pennsylvania, at which time the parties were afforded a full and complete opportunity to introduce any evidence they deemed appropriate in support of their respective positions and in rebuttal to the position of the other, to examine and cross examine witnesses and to make such arguments that they so desired. Post-hearing briefs were received from both parties by March 3, 1997 at which time the record was closed. No jurisdictional issues were raised.

## PERTINENT CONTRACT PROVISIONS

### ARTICLE III

### GRIEVANCE PROCEDURE

A.  **Definitions**

   1.  **Grievance**

   A "grievance" is hereby defined as:

   a.  a claim by an employee or employees regarding the meaning, interpretation or application of any provision in this Agreement.

   or

DEC-16-2003  09:14    PSEA    814 734 5206    P.04

## ARTICLE IV

## RIGHTS OR PROFESSIONAL EMPLOYEES

**A.    Just Cause Provision**

No professional employee shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board or any agent or representative thereof, shall be subject to the grievance procedure herein set forth. The reasons forming the basis for disciplinary action will be made available to the professional employee and the Association promptly.

b.    that the local school board or its agents **h a v e  a c t e d** inequitably in the application of the **t e r m s  o f  t h i s** Agreement.

## ARTICLE XII

## EMPLOYEE EVALUATION

**A.    General Criteria**

1.    **Basis for Conducting Evaluations**

Evaluations shall be conducted under the provisions of Section 1123 of the School Code and the School District Policy governing the use of Appendix A of the

2

Professional Evaluation Instrument.

2. Observation Reports

An employee shall be given a copy of any written observation report. No such report shall be submitted to the central office, placed in the employee's file, or otherwise acted upon without prior review by the employee. The employee shall acknowledge that he/she has had the opportunity to review such material by affixing his/her signature to the copy to be filed with the express understanding that signatures in no way indicate agreement with the contents of the report.

3. Rating Reports

The employee shall receive a copy of all rating reports prior to said forms being placed in his/her personnel file. The employee may request a conference to review this rating form with the appropriate administrator.

4. Rating Reports

Notification of rating of temporary professional employees shall be done in accordance with the provisions of Section 1108(a) of the School Code of 1949 as amended and the School District Policy governing the use of Appendix A of the Professional Evaluation Instrument.

3

B.

1.  Personnel File

   Contents Available

   An employee shall have the right, upon request, to review the contents of his/her personnel file. An employee shall be entitled to have a representative of the Association accompany him/her during such review.

2.  No Separate File

   The Board agrees not to maintain or establish any separate personnel file which is not available for the employee's inspection.

## BACKGROUND

The Grievant, Claudette Mitchell, has been employed by the Crawford Central School District since August, 1990 and at all times pertinent to the within matter held the position of Spanish Teacher at the Meadville Area Senior High School. The Grievant had received all satisfactory ratings until the 1993/94 school year. At the end of that school year, she received an unsatisfactory rating and filed a grievance in response thereto. That grievance was sustained by Arbitrator Carl F. Stoltenberg on January 11, 1995. The unsatisfactory rating was removed from her file and changed to a satisfactory rating. During the 1994/95 school year the Grievant received a satisfactory rating.

The within grievance involves an unsatisfactory rating that was given to the Grievant by Mr. George H. Deshner, Principal of Meadville Area Senior High School, for the 1995-96

4

school year. On December 15, 1995 Mr. Deshner conducted a classroom observation of the Grievant's first period Spanish I class. At the end of his observation Mr. Deshner completed the School District's "Report of Classroom Visitation". This form is comprised of the following major evaluation subject areas: Preparation-Planning; Instructional Technique/Effectiveness; Teacher-Student Interaction; Personal Characteristics; and Management and Organization.

The "Report of Classroom Visitation" form contains a total of 35 specific sub-categories in which a teacher is to be evaluated. The only ratings to be given are "satisfactory", "improvement needed", "not applicable", and "see written comment". For her observation that day the Grievant received 32 "satisfactory" ratings, and 3 "improvement needed" ratings. The observation form does not contain an overall rating. The Grievant also received the following specific commendations from Mr. Deshner:

(1) Mrs. Mitchell requires the students to speak Spanish at all times. She provides assistance if the students are having difficulty.

(2) Students are participating in the lesson through her questioning and translation methods of teaching the class.

(3) Positive reinforcement used with the students in encouraging their use of Spanish.

The following recommendations were also made to the Grievant:

(1) Two students monopolized most of Mrs. Mitchell's time. All students need to have time devoted to them at one time or another. Seek ways to minimize unnecessary student interruptions that do not deal with the lesson.

(2) Writings or marks on desks. Check after class. Walk around a.m. before classes arrive. Check for

5

DEC-16-2003 09:15          PSEA                                         814 734 5206    P.09

writing after each period. Follow-up with each
student about writing if appropriate.

The School District introduced evidence through several different witnesses who disclosed
various incidents where it was alleged that the Grievant behaved in a less than professional and
satisfactory manner. These included instances of the Grievant allegedly discussing a student's
behavior in class with the parent's work place supervisor; the Grievant yelling "shut-up" at
several students; the Grievant creating a hostile environment for a student who gave testimony
against her and then discriminating against that student; the Grievant calling a parent
"unprofessional" during a parent conference; showing favoritism to certain students in her
classes; poorly handling an evening parent conference; being late for class on numerous
occasions; and that her classes were loud, disruptive and chaotic.

On May 21, 1996 Dr. Wes Berkebile, Assistant High School Principal, conducted a
second class room observation of the Grievant during her seventh period Spanish I class. Dr.
Berkebile used the same rating form used by Mr. Deshner on December 15, 1995. The
Grievant received 29 "satisfactory" ratings, 2 "not applicable" ratings, 3 "improvement needed"
ratings, and 1 "see written comment". Under the heading Commendations and
Recommendations were the following statements:

"Good use of chalk board;

Good movement of class;

Students need to accept responsibility for
materials (telling is not enough)".

On June 6, 1996 Mr. Deshner met with the Grievant and reviewed with her at that time
her yearly professional evaluation report. Professional employees throughout Pennsylvania are
normally evaluated by use of the "DEBE - 333" form approved by the Department of Education.

6

However, the Crawford Central School District adopted an alternative rating form which apparently was approved by the Department for use in the evaluation of it's professional employees. This alternative rating form is divided into 11 different subject areas of evaluation. The Grievant was rated "satisfactory" in 4 areas, and "unsatisfactory" in 7 areas. She was given an overall evaluation of unsatisfactory. Accompanying the Professional Evaluation Instrument was a document prepared by Mr. Desincr entitled "Summative Evaluation Report", which provides as follows:

"Claudette Mitchell is a Spanish teacher at the Meadville Area Senior High School. For the 1995-1996 school year, she was assigned to teach Spanish I, Spanish IV, and Spanish V. In addition to these subjects, Mrs. Mitchell has sponsored the Spanish Club along with another teacher who teaches Spanish. Mrs. Mitchell has also helped a special needs student that required extra attention.

Mrs. Mitchell is knowledgeable of the Spanish language. It is evident that she has adequate planning. Lesson plans are turned in as required and are always complete. She was observed twice during the 1995-1996 school year with many of the areas on the observation sheet marked as satisfactory. Questions of improvement needed concerned classroom mechanics in dealing with student interaction and involvement and using sound instructional judgment when working with students. It was also noted that establishing and following classroom routines and procedures needed attention.

During the course of the year, damages to the modular classroom were noted. Mrs. Mitchell also continued to be tardy to class and extra duty assignments. Students were observed entering her classroom with Mrs. Mitchell reporting after the students had arrived. This is inconsistent with her assurance to us that her classroom was never left unlocked when she was not there and that she was always with her students and they could not possibly cause damages to the classroom. At other times, the students were observed standing in the snow waiting to get into the classroom and Mrs. Mitchell arrived late. Numerous problems were also brought to our

7

attention from parents and students concerning unfair treatment of students, sharing of confidential information with improper persons contrary to district policy and directives which she had been given by the administration, and inconsistencies in the classroom.

There are all areas that need strong attention in the future. Because of these observations and concerns, Mrs. Mitchell is being rated unsatisfactory for the 1995-1996 school year."

On June 18, 1996 a grievance was filed contesting the Grievant's unsatisfactory rating.

## ISSUE

Whether the Employer had just cause for issuing an unsatisfactory rating to the Grievant for the 1995-96 school year?

## POSITION OF THE SCHOOL DISTRICT

Pursuant to Section 1123 of the Public School Code, the School District had developed a rating form which was approved by the Department of Public Instruction. The Crawford Central evaluation form takes 11 different areas into consideration other than classroom observation. Many of these areas involve a teacher's behavior, not only in the classroom, but her behavior outside of the classroom and her ability to respond to supervision. As a general proposition, if an unsatisfactory rating has been issued in compliance with all legal requirements, the rating is presumed to be valid and will be set aside only if the employee can prove that the rating was arbitrary, capricious or issued in bad faith.

The Commonwealth Court has held that lying is a form of "immorality" and grounds for dismissal of a professional employee. The Commonwealth Court also went on to hold that such

8

DEC-16-2003  09:17                    PSEA                    814 734 5206    P.11

conduct can also be grounds for an unsatisfactory rating as well. The District submits that it has established by clear and convincing evidence that the Grievant lied to her supervisors on several different occasions. Accordingly, the District not only had cause to rate this Grievant as unsatisfactory, but the School District may have cause to terminate her as a result of her dishonesty.

The District believes that it has submitted enough exhibits into evidence, along with three days of testimony, which serve as anecdotal records to support this unsatisfactory rating. The District has introduced contemporaneous records, made at the time of the observations, while they were fresh in the Principal's mind, supporting many of the allegations complained of. The District submits that where the law has vested discretion in a public official, the Courts will not interfere with that official's exercise of discretion, unless the discretion is arbitrarily or fraudulently exercised or is based on a mistake of law.

For all of the above reasons the District requests that the Arbitrator sustain the unsatisfactory rating of Claudette Mitchell for the 1995-96 school year.

## POSITION OF THE ASSOCIATION

The District asserts that it's rating of the Grievant should be presumed valid unless shown to be arbitrary or capricious. However, the District has bargained for provisions in the Collective Bargaining Agreement governing the rating of employees, including a just cause clause. It has been held several times, over the objection of the District, that unsatisfactory ratings are arbitrable. In those decisions, the Arbitrators made it clear that the District's rating

9

is to be judged by a just cause standard. It is axiomatic, in just cause cases, that the burden is on the Employer to justify it's actions.

In her two observations, the Grievant received overwhelmingly positive assessments of her classroom abilities. The District's observation form merely mirrors it's evaluation form, especially in the area of professional competency. Neither classroom observation was indicative of an unsatisfactory evaluation.

Just cause, under this agreement, requires that the District provide notice in an attempt to obtain correction of behavior before it deprives an employee of a professional advantage. A "Report of Classroom Visitation" can undermine the just cause clear notice requirement should it not be reflective of any ongoing employee misconduct problems. A mere ten working days after her very positive observation by Dr. Berkebile on May 21, 1996 the Grievant received an unsatisfactory rating, based not upon conduct since May 21, but upon allegations going back as far as December, 1995. Just cause is, therefore, absent from the rating. This is especially true since the Grievant had addressed her prior alleged problems. No more incidents of vandalism, tardiness, releasing confidential information, unfair treatment of students, or improper conduct during teacher conferences were reported after she was made aware of these problems and, certainly, not after the second observation. The Grievant had no notice that she was to receive an unsatisfactory rating and, in fact, the opposite message was sent. Therefore, the rating should be overturned.

Furthermore, the District clearly did not adhere to it's own policy on the ratings. It relied on unverified statements made against the Grievant by students, parents and even

supervisors of parents. It never gave her the chance to rebut many of the charges against her. Very little in the way of observable and verifiable facts were even presented.

Finally, the District also violated the rating requirements imposed by the Department of Education. When an alternative rating form is used, the District must review the evaluation and anecdotal records within 5 working days of the final observation preceding the unsatisfactory rating. This five day limit can be extended only in the case of emergency or extenuating circumstances. This requirement is also meant to help the teacher improve. In this case, the final observation was on May 21, 1996. The rating and meeting to review it were on June 6, 1996, which is more than five working days.

For the foregoing reasons the Association asks that the rating and all anecdotal records and references thereto be removed from the Grievant's personnel file.

## FINDINGS AND DISCUSSION

The District raises a threshold issue as to the appropriate standard for review of the unsatisfactory rating issued to the Grievant. The District contends, as a general proposition, that if an unsatisfactory rating has been issued in compliance with all legal requirements the rating is presumed to be valid, and will be set aside only if the employee can prove the rating was arbitrary, capricious, or issued in bad faith. I disagree.

The Collective Bargaining Agreement contains specific provisions governing employee evaluations, and requires they be conducted under the provisions of Section 1123 of the School Code. Pursuant to the regulations promulgated thereunder by the Department of Education, professional employees may be dismissed upon receiving two unsatisfactory ratings.

11

The Collective Bargaining Agreement contains a standard "just cause" provision which provides, in pertinent part, that:

> "no professional employee shall be disciplined, reprimanded, reduced in rank or compensation, or deprived of any professional advantage without just cause."

Although the term "professional advantage" is not specifically defined in the Collective Bargaining Agreement, it is not unreasonable to interpret that phrase as broadly referring to any District action which might have an adverse impact on a teacher's professional life. Since a professional employee's first unsatisfactory rating places them at a point that could subsequently lead to their ultimate termination, such action obviously constitutes a loss of "professional advantage".

While certainly the School District has the right to take such action, it can do so only for just cause. Under a standard just cause provision, the Employer has the burden of establishing proof of wrongdoing or, in this instance, proof of unsatisfactory performance. Therefore, the School District is not entitled to any presumptions as to the validity of the unsatisfactory rating given to the Grievant, and must bear the burden of persuasion indicated above.

Let us turn now to the merits of the within grievance. Professional employees are required by state law to be evaluated a minimum of once each year. In conducting teacher evaluations the Crawford Central School District chose not to utilize the standardized Department of Education "DEBE - 333" form, and instead adopted an alternative rating form ("Professional Evaluation Instrument") which apparently has been approved for use throughout the District.

12

Obviously recognizing the significance that tenure holds for professional employees, the Pennsylvania General Assembly has gone to great lengths in determining the circumstances under which a professional employee may be dismissed for incompetency. Those requirements, set forth in Section 1123 of the Public School Code, require an approved rating system which gives due consideration to certain evaluative categories, and mandates that evaluations be in accordance with standards and regulations prepared by the Department of Public Instruction.

Pursuant to that authority, the Department of Public Instruction promulgated certain regulations found at 22 Pa. Code regarding ratings which use alternative forms:

### Section 351.24 (d)

"Rating shall be substantiated by anecdotal records and discussed with the employee within five working days after the final observation preceding the rating. The discussion may take place before or after the rating is approved by the Superintendent. The five day limitation may be extended only because of emergency or extenuating circumstances."

### Section 351.26 (c)

"Whenever an unsatisfactory rating is given, it shall be supported by anecdotal records. The records shall include specific evidence likely to be important in the event of dismissal."

These regulations contain three very critical and basic requirements, i.e. (1) that the rating be substantiated by anecdotal records; (2) that the rating be discussed with the employee within five working days after the final observation preceding the rating; and (3) the five day limitation may be extended only because of emergency or extenuating circumstances.

On May 21, 1996, the School District conducted it's final observation of the Grievant preceding it's unsatisfactory rating. This was the observation conducted by Dr. Wes Berkebile.

However, the unsatisfactory rating issued to the Grievant was not discussed with her until June 6, 1996, which is considerably more than the five working day period required by Section 351.24 (d). Therefore, on it's face, the unsatisfactory rating issued by the School District on June 6, 1996 is invalid for failure to comply with Department of Education regulations.

It should be noted that the requirement to discuss the rating within 5 working days is an important and significant prerequisite to the issuance of a valid rating, inasmuch as the Department of Education went to the trouble of specifying that the 5 day limitation may be extended only because of emergency or extenuating circumstances. No evidence whatsoever has been presented by the School District to show that it's failure to meet with the Grievant until June 6, 1996 was the result of any emergency or extenuating circumstances.

In situations where a time limitation specified in a statute or regulation has not been observed, one might attempt to excuse that lack of compliance by arguing the absence of any evidence of prejudice or harm to the individual, as a result of the delay. However, the Department of Education apparently anticipating that such an "equitable" argument might be made, specified that the mandated time frame can only be extended because of emergencies or extenuating circumstances. Accordingly, the issue of whether the Grievant suffered any actual prejudice or harm as a result of the delay has preemptively been removed and cannot properly be before this Arbitrator.

However, there also exists a second and equally important basis upon which to invalidate the unsatisfactory rating given to the Grievant. The School District failed to adequately substantiate its rating by anecdotal records, as is required by Section 351.24 (d). As one might expect, the requirements regarding unsatisfactory ratings are much more specific and

rigorous because of the serious consequences that flow from the issuance of such a rating. One of the most repeated admonitions set forth in all of the Department of Education regulations on ratings is that unsatisfactory ratings must be accompanied by appropriate anecdotal records. Although the term anecdotal records is not specifically defined, Section 351.26 (c) of the regulations require that anecdotal records "include specific evidence likely to be important in the event of dismissal".

The importance of the anecdotal records that must accompany an unsatisfactory rating cannot be overstated. This is an extremely serious situation for any teacher. After having received a first unsatisfactory rating, one's teaching career hangs in the balance because a second unsatisfactory rating will likely trigger a dismissal on the basis of incompetency.

Therefore, a proper anecdotal record should provide a clear outline for the teacher as to the events that caused the unsatisfactory rating; but perhaps even more importantly, it should reflect what can be done to improve one's performance and correct undesirable behavior. Furthermore, in the event of a dismissal the anecdotal record would, in essence, become a specific statement of the charges against the teacher, and at the same time would help form the basis for any defense of that teacher. If the anecdotal records lack these qualities to any significant degree, the rating must be considered invalid.

Accompanying the standardized Professional Evaluation Instrument that the Grievant received on June 6, 1996 is a one page Summative Evaluation Report, which is set forth in its entirety beginning on page 7 of this Opinion. That Report simply references, in a very broad brushed fashion, the following topics:

(1)    Damages to the modular classroom;

DEC-16-2003  09:19                    PSEA                                    814 734 5206    P.18

(2)  Being tardy for class;

(3)  Unfair treatment of students;

(4)  Sharing confidential information with improper persons; and

(5)  Inconsistencies in the classroom.

However, the comments contained therein are merely vague generalities, lacking specific mention of the necessary particulars. For instance, what are "inconsistencies in the classroom"? The Report provides no details or other information to apprise the Grievant of the basis for these alleged "inconsistencies". The same can be said of the generalized statement of "sharing of confidential information with improper persons".

The Grievant was rated unsatisfactory in 7 of 11 evaluative categories, but all she received was essentially 1 paragraph supporting her unsatisfactory rating for the 1995-96 school year. Unquestionably, this falls significantly short of the required documentation that should clearly explain the reasons for an unsatisfactory rating and, equally as important, indicate the means of improving undesirable performance.

It should be noted that the School District's Policy No. 412 ("Evaluation of Professional Employees") requires that employee evaluations include "provisions for improving unsatisfactory performance by offering resource aide, recommending how improvement can be effected, and scheduling follow-up conferences to assess change". None of that was done in the Grievant's situation.

Moreover, in keeping with the District's own policy on evaluation, once many of the areas of alleged deficiency were brought to the Grievant's attention during the 1995-96 school year, no more similar instances were subsequently recorded. For example, many of the

DEC-16-2003  09:20                                    PSER                                    814 734 5206    P.19

allegations regarding tardiness were never even brought to the Grievant's attention until after she had allegedly accumulated a number of incidents, at least according to the observations being surreptitiously made by the District. However, once this issue was brought to her attention it never occurred again. These factors, coupled with the overwhelmingly satisfactory classroom observations that the Grievant received in December, 1995, and May, 1996 would in no way provide any reasonable notice to her of the continued existence of deficiencies that could result in an unsatisfactory rating.

For all of the above reasons I find the unsatisfactory rating issued to the Grievant on June 6, 1996 to be invalid for failure to substantially comply with Department of Education regulations, and the grievance must, therefore, be sustained.

**AWARD**

The grievance is sustained. The Grievant's 1995-96 Professional Evaluation Instrument rating of unsatisfactory is invalid. All anecdotal records and references thereto shall be removed from the Grievant's personnel file.

Jurisdiction shall be retained to insure compliance with this Award.

Date: _Ronald 21, 1997_
Pittsburgh, PA

_[signature]_
Ronald F. Talarico, Esq.
Arbitrator

17

9 Pa. D. & C.3d 147

(Cite as: 9 Pa. D. & C.3d 147, 1977 WL 190 (Pa.Com.Pl.))

C

Court of Common Pleas of Pennsylvania, Somerset County.

Augustine

v.

Turkeyfoot Valley Area School District (No. 1)

No. 293 of 1976.

June 1, 1977

**\*1 \*148 Appeal under Local Agency Law.

West Headnotes

Mandamus ⟨⟩5
250k5

Since the enactment of the Local Agency Law of December 2, 1968, P.L. 1133 (53 P.S. § 11301 et seq.), giving a temporary professional employe who has been dismissed a right to hearing and appeal, the former remedy of mandamus is no longer available.

Schools ⟨⟩139
345k139

There is no impropriety in a school board's suggesting to a temporary professional employe that he resign in view of his performance, nor does the fact that it did so cast any cloud upon a subsequent unsatisfactory rating.

Schools ⟨⟩147.14
345k147.14
(Formerly 345k141(4))

Under section 1123 of the Public School Code (24 P.S. § 11-1123) and the regulations of the Department of Public Instruction, the rating cards for professional employes must be supported by anecdotal records, and the dismissal of a temporary professional employe by reason of an unsatisfactory rating is invalid unless supported by such records.

Schools ⟨⟩147.14
345k147.14
(Formerly 345k141(4))

While a professional employe having tenure may under section 1122 of the Public School Code of

March 10, 1949, P.L. 30 (24 P.S. § 11-1122), be dismissed only for unsatisfactory performance, a temporary professional employe may be dismissed for an unsatisfactory rating under section 1108 (24 P.S. § 11- 1108); in such a situation, the board need not prove unsatisfactory performance.

Schools ⟨⟩147.38
345k147.38
(Formerly 345k141(5))

The constitutional rights of a temporary professional employe who has been dismissed by a school board are not violated by the fact that the board received ex parte statements concerning his job performance from time to time, since in no other way could the board perform its supervisory duties, or by the fact that the board authorized its personnel committee to meet with the employe and seek his resignation prior to a final unsatisfactory rating.

Schools ⟨⟩147.38
345k147.38
(Formerly 345k141(5))

In quasi-judicial hearings before a school board relating to the dismissal of a temporary professional employe, a brief voir dire is proper and should ordinarily be granted, not to determine the motivations and reasons for discharge but to ascertain whether any board member has such a fixed or unchangeable opinion of the case that it cannot be set aside in favor of a decision based solely on the facts presented at the hearing; it need not be conducted by the employe's counsel but may appropriately be conducted by the board's counsel, and questions may be directed to the panel as a whole or to individual board members as circumstances may require.

Schools ⟨⟩147.40(1)
345k147.40(1)
(Formerly 345k141(5))

The dismissal of a temporary professional employe will not be set aside on the basis that it was in bad faith, arbitrary and capricious, by reason of the fact that at the hearing the board merely introduced the rating cards and did not attempt to explain or justify the ratings, there being no initial burden upon it to do so, or by reason of its failure to explain why

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, 1977 WL 190 (Pa.Com.Pl.))

appellant received three satisfactory ratings, then an unsatisfactory one, another satisfactory one, received ex parte reports concerning his teaching performance and had sought his resignation.

Schools ⬥147.36
345k147.36

(Formerly 345k141(5))

A temporary professional employe's dismissal will not be set aside because at the hearing before the board the board's counsel refused to allow the employe's counsel to examine the board on voir dire, where the board's counsel, addressing the board members as a whole, had told them to disqualify themselves if they believed themselves to be so biased that they could not decide the case on the evidence, and gave them an opportunity to consider their attitude, after which they all expressed the opinion that they could decide the case fairly and based upon the evidence.

\*149 William K. Eckel, for appellant.

C. Gregory Frantz and Eugene E. Fike, II, contra.

COFFROTH, P.J.

\*\*2 Appellant, a **teacher** in the appellee school district, has filed this appeal under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. § 11301 et seq., from his dismissal by the school board, after hearing, because of **unsatisfactory rating** as a temporary professional employe. He seeks an order compelling the board to give him a permanent contract as a tenured professional employe.

The case involves the following questions:

(1) Whether appellant's constitutional right to an impartial tribunal was denied because the school board had during the period of his employment

(2) Whether the board's denial of the request of appellant's counsel for pre- hearing interrogation of board members as on voir dire concerning bias was improper;

(3) Whether **unsatisfactory ratings** are invalid for want of an anecdotal record;

(4) Whether, because of the foregoing matters and the failure of the board at the hearing to **support** the **unsatisfactory ratings** by substantial evidence, and the fact that appellant was given four satisfactory **ratings**, the board acted in bad faith or arbitrarily or capriciously in dismissing appellant.

FACTS

Appellant was employed by the district for the 1973-74 and 1974-75 school years as an art teacher.

\*150 He was given a satisfactory **rating** for both semesters of the 1973-74 year and for the first semester of the 1974-75 year, but was **rated unsatisfactory** for the second semester of the latter year. Notwithstanding the **unsatisfactory rating**, appellant was given employment for the 1975-76 school year, with the understanding that tenure was not conferred and would depend upon whether appellant's performance improved. He was rated satisfactory for the first semester of the 1975-76 year but **unsatisfactory** for the second semester of that year, and the dismissal resulted.

The **ratings** were made on **rating** cards prescribed by the State Department of Education, which are based on evaluation sheets; both are prepared by the person doing the **rating** and are in evidence. After each administration, the evaluation met with appellant and reviewed the **ratings**. Appellant's performance had also been discussed with him at other times by administrators, and by them with the board, and appellant also appeared before the board for such a discussion during the summer of 1975. At the board meeting on May 3, 1976, at the suggestion of one or more members, it was agreed that the personnel committee of the board and the

Schools ⬥147.47
345k147.47

(Formerly 345k141(5))

Where the dismissal of a temporary professional employe for **unsatisfactory rating** is not **supported** by **anecdotal records**, but it appears that such **records** may be in existence, although not introduced at the hearing or in court, the court will not direct the employe's reinstatement but will continue the matter to give the school board a chance to produce the **anecdotal records** if in fact available.

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *150, 1977 WL 190, **2 (Pa.Com.Pl.))

superintendent should meet with appellant to discuss his performance and to request or suggest his resignation. That meeting was held May 5 and by letter of May 6 the chairman of the committee and the superintendent confirmed that the board felt that appellant's performance had not been satisfactory and requested his resignation, which was not given. On May 27, the superintendent formally evaluated appellant's performance and rated him unsatisfactory, of which he was notified.

**\*3** Appellant was later notified of a hearing to be held on July 13 for the purpose of deciding whether **\*151** or not he should be dismissed. The hearing was continued by agreement of the parties until July 27 when it was held. On August 23, 1976, the board dismissed appellant because of the unsatisfactory ratings.

FN1. Whether the administration could call appellant as for cross- examination under the Act of 1887, 28 P.S. §381, has not been raised.

DISCUSSION

Right of Hearing and Appeal

Appellant in his brief and argument concedes that under the Public School Code of March 10, 1949, P.L. 30, his status is that of temporary professional employe who seeks and claims to be entitled to professional employe status. Accordingly, these proceedings are properly taken under the Local Agency Law of December 2, 1968, P.L. 1133, 53 P.S. §11301, because no other statute affords appellant any right to a board hearing or to an appeal from dismissal. The Administrative Agency Law of June 4, 1945, P.L. 1388, 71 P.S. §1710.1 et seq., does not cover school districts: Smith v. Harmony Area School Dist., 16 Pa. Commonwealth Ct. 175, 177, 328 A. 2d 883 (1974). The Public School Code grants neither hearing nor appeal to a temporary professional employe. See Young v. Littlestown Area School Dist., 24 Pa. Commonwealth Ct. 621, 628, 328 A. 2d 120 (1976)

At the hearing, the only witness called to testify was Mr. Knight, superintendent. Appellant elected not to take the stand, and declined to submit to cross-examination by administration counsel, but did answer several questions by board members relating only to his receipt of the ratings and some peripheral matters. [FN1]

; McKelvey v. Colonial

**\*152** School District, 22 Pa. Commonwealth Ct. 207, 348 A. 2d 445 (1975). The provisions for appeal in the Public School Code apply only to professional employes. See Smith v. Harmony Area, supra, 177; Brentwood Borough School District Appeal, 439 Pa. 256, 259, 267 A. 2d 848 (1970); Public School Code of March 10, 1949, P.L. 30, 24 P.S. §11-1127 et seq. Prior to enactment of the Local Agency Law, the sole avenue available to the temporary professional employe for judicial review of dismissal was an action of mandamus, if the employe's right was clear and if he had no other adequate remedy. See Young v. Littlestown Area, supra; Elias v. Board of School Directors, 421 Pa. 260, 218 A. 2d (1966); Travis v. Teter, 370 Pa. 326, 87 A. 2d 177 (1952). Now, the temporary professional employe's right to hearing and appeal are secured by the Local Agency Law: Young v. Littlestown Area School District, supra; Kudasik v. Port Alleghany School District, 23 Pa. Commonwealth Ct. 208, 350 A. 2d 887 (1976); McKelvey v. Colonial School District, supra. The Local Agency Law was intended to supply a remedy in cases where no other statute supplied it: Shaulis v. Indian Lake Borough, 32 Somerset 271, 280 (1976). Since the remedy is adequate under that act, mandamus is no longer available. See Young v. Littlestown Area, supra, 628; Smith v. Harmony Area, supra, 177; Hutnik v. Duquesne School District, 8 Pa. Commonwealth Ct. 387, 302 A. 2d 873 (1973). [FN2]

FN2. As to the constitutional right of a public employe to notice and hearing before being dismissed during the term of his employment contract: see Board of Regents v. Roth, 33 L.Ed. 2d 548 (1972), and Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 50 L.Ed. 2d 471, 481 (1977); see also Tishock v. Tohickon Valley Joint School Board, 181 Pa. Superior Ct. 278, 124 A. 2d 148 (1956).

**\*153** Scope of Review

**\*4** Section 8 of the Local Agency Law, 53 P.S. § 11308, defines the scope of our review in this case as follows:

"After hearing, the court shall affirm the adjudication unless it shall find that the same is in violation of the constitutional rights of the appellant,

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *153, 1977 WL 190, **4 (Pa.Com.Pl.))

Page 4

or is not in accordance with law, or that the provisions of this Act have been violated in the proceeding before the agency, or that any finding of fact made by the local agency and necessary to support its adjudication is not supported by substantial evidence."

In the present case, appellant asserts two grounds for relief: (1) violation of his constitutional right to an impartial tribunal, and (2) the dismissal is not supported by substantial evidence. We shall consider these in order.

## Violation of Constitutional Rights

Administrative tribunals, like judicial tribunals, must provide fair hearings in accordance with principles of due process of law, must be unbiased and must avoid the appearance of bias: Donnon v. Downingtown Civil Service Commission, 3 Pa. Commonwealth Ct. 366, 283 A. 2d 92 (1971). Appellant's charge of bias in this case is based upon the following facts:

(1) The board members had received from the **154 administration, from time to time during appellant's employment, ex parte statements concerning his job performance, and

(2) The board authorized the personnel committee of the board to meet with appellant and to seek his resignation prior to the final unsatisfactory rating.

Appellant expects too much of a school board that it hold itself aloof from information concerning teacher performance, and at the same time perform its statutory obligation to administer the public school system: 24 P.S. §3-301 and §5-501. The school board is merely the agent of the Commonwealth in maintaining and supporting "a thorough and efficient system of public education" as directed in article 3, sec. 14, of the Pennsylvania Constitution. Therefore, "school boards have traditionally been given by the Legislature, under constitutional mandates, broad inherent managerial powers to operate the public schools and to determine policy relative thereto." Pennsylvania Labor Relations Board v. State College Area School District, 9 Pa. Commonwealth Ct. 229, 240, 306 A. 2d 404 (1973), reversed on other grounds in 461 Pa. 494, 337 A. 2d 262 (1975), where the Supreme Court said that ". . . the true public interest is the

effective and efficient operation of public employment. . . ." (p. 505).

Performance of the school board's managerial and supervisory functions in the operation of the public schools must entail continued and close board member involvement with teacher performance. By necessity, school directors cannot acquire the knowledge of teacher performance essential to carrying on the board's managerial and supervisory duties, and at the same time be devoid *155 of such knowledge when sitting as members of the tribunal which adjudicated teacher dismissal.

**5 The system of combining in the school board both managerial and quasi- judicial functions with respect to the same employee is inherently incapable of the degree of impartiality that appellant contends for and as may be expected of a more detached judicial body. In a teacher dismissal proceeding, the school board "can never be totally unbiased." Brentwood Appeal, supra, 262-3, also quoted in Board of Education v. Philadelphia Federation of Teachers, 464 Pa. 92, 104, 346 A. 2d 35 (1975). What we are dealing with is degree of detachment. Either we must accept a lesser degree of detachment in the school board than is adjudicatory functions, or take from the board its adjudicatory functions. Our society, with judicial approval, has chosen the former alternative. Although the courts have insisted that the school board may not fill the roles of both prosecution and adjudication, as is well illustrated in Owens v. Vo-Tech, 31 Somerset 38 (1976), nevertheless the courts recognize that lay persons of intelligence and integrity are capable of perceiving the difference between facts gained and opinions held before hearing, and the duty of suspending and setting aside those acquisitions when called upon to make a decision of importance on the basis of evidence produced in an adversary hearing. [FN3]

FN3. The same principle is recognized in the selection of impartial juries in courts of record. In Com. v. Johnson, 452 Pa. 130, 136, 305 A. 2d 5 (1973), the court said: "The law recognizes that it would be unrealistic to expect jurors to be free from all prejudices, a failing common to all human beings. We can only attempt to have them put aside those prejudices in the performance of their duty, the determination of guilt or innocence. We therefore do not expect a tabula rosa but merely a mind sufficiently conscious of its sworn responsibility and willing to attempt to reach a decision solely on the facts presented, assiduously

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *155, 1977 WL 190, **5 (Pa.Com.Pl.))

*156 Judge Shaulis analyzed this rationale thoroughly and adopted it in Owens v. Vo-Tech (No. 2), 34 Somerset 101 (1977). We will not repeat here all that was said there, nor review all of the authorities there examined; reference to the opinion by the reader should suffice. We shall here repeat only the court's statement in Spruce Hill Township School Dist. Bd. of Directors v. Bryner, 148 Pa. Superior Ct. 549, 556, 25 A. 2d 745 (1942), which is cogently illustrative of the principles we are discussing:

'The making of the charges presupposes that the members of the board had some knowledge of the facts upon which the charges were based. Unless they had an opinion that the charges, if sustained, would warrant dismissal, they should never have been made. That a member of the board had an opinion at the time the charges were preferred against appellant would not disqualify him from participating in a hearing on those charges, or invalidate the proceedings. We do not think that anything more was required of the members of the board than that they could hear and determine the charges against appellant on the evidence given before them, uninfluenced by other previous impressions.' The foregoing was quoted with approval in Flannery Appeal, 406 Pa. 515, 521-22, 178 A. 2d 751 (1962). See also Rayne v. Edgewood *157 School Dist., 19 Pa. Commonwealth Ct. 353, 339 A. 2d 151 (1975).

**6 In the instant case, there is no evidence of bias in the school board in the nature of any opinion so fixed and unchangeable as to deprive any member of the ability to do his duty fairly in the adjudication. In fact, as we shall now see, the evidence is to the contrary.

As to the claimed right of voir dire, no Pennsylvania authority has been brought to our attention which treats the issue. Counsel for appellant cites only Osborne v. Bullitt County Board of Education, 415 S.W. 2d 607, 610 (Ky. 1967), where the court said:

'Appellant's next allegation of error in the proceedings is the refusal of the members of the

avoiding the influences of irrelevant factors.' In the present case, the administration as prosecutor and the board as tribunal had separate counsel at the hearing.

We are in partial agreement with the Kentucky Court. A brief voir dire is proper, not to determine the motivation and reasons for discharge, but to ascertain whether any board member has such a fixed or unchangeable opinion of the case that it cannot be set aside in favor of a decision based solely on the facts presented at the hearing, and to serve as an instruction to the board members that such is their duty. Such inquiries are especially needed because of the dual nature of the board's function as previously mentioned. The extent of voir dire should depend upon the degree to which there are indications of pre-hearing involvement. *158 and it need not be conducted by counsel for the adversaries. It may appropriately be conducted by board counsel, much as voir dire in a court of record may be conducted by the judge, and questions may be directed to the panel as a whole or to individual board members as circumstances may require. See 50 C.J.S. §276, 1055, and Downingtown Civil Service Commission, supra, 369.

Accordingly, in quasi-judicial hearings before school boards, requests for such limited pre-hearing voir dire should ordinarily be granted. Whether refusal is reversible error should depend upon the circumstances of the case, and need not automatically follow. As stated in Donnon v.

'... [T]he question before us is: Absent a showing of actual bias, did the municipality or its agency provide reasonable procedural safeguards to assure the protection of the respondent's right to a fair and unbiased adjudication? No hard and fast ground rules can be established to guide parties. Truly each factual situation calls for a separate determination first and hopefully finally at the administrative level, and lastly, by judicial decree.'

In the present case counsel for the board denied appellant's request for individual interrogation of board members by counsel for appellant; but he did

school board to be called and examined upon their possible prejudice against him. We believe they should have submitted to such examination. Most certainly appellant was entitled to show in the record that those who were responsible for his discharge were motivated by improper and unfounded reasons.'

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *158, 1977 WL 190, **6 (Pa.Com.Pl.))

Page 6

request the board members, addressing them as a group, to "disqualify yourselves if you think that you're biased or not impartial or if you think you cannot decide this case on the evidence and testimony that's going to be presented here tonight." He then declared a recess for the board members to consider the request, after which the group was asked: "Does any board member feel he should be disqualified?" to which there was no affirmative *159 reply. He then inquired: "Do you feel you can decide the case fairly and based upon the evidence that we hear tonight?" To this all board members responded: "Yes." Under these facts, we think the procedure was adequate to insure a fair hearing and decision. Compare Delsio v. Ellwood City Area School Dist., 70 Pa. D. & C.2d 524, 530 (1975).

**7 Also, we see no impropriety in the pre-hearing request to appellant by the board that he resign in view of his teaching performance. In employer-employe relationships, the employe is frequently offered that alternative to a discharge. That course of action does not cast a cloud upon the subsequent unsatisfactory rating and discharge as does the practice of offering a satisfactory rating in return for a resignation, as was condemned in Owens v. Vo-Tech, 31 Somerset 38, supra. On the contrary, the suggestion of resignation here was consistent with the accumulated indications from administrative observation that appellant's service was unsatisfactory, and consistent with the administrative and supervisory functions of school boards, and not inconsistent with the capacity of board members so engaged to afford appellant a fair and unbiased hearing and adjudication. Compare Am. Fed. St., Co. & Mun. Employes v. Com., 24 Pa. Commonwealth Ct. 162, 354 A. 2d 1 (1976).

Appellant was afforded due process of law in the proceedings before the school board.

Sufficiency of Evidence Supporting Dismissal

It is vital to realize that appellant was dismissed for unsatisfactory rating, not for incompetence, even though the rating is based upon performance which is alleged to have been unsatisfactory or incompetent. The distinction between incompetency *160 based on unsatisfactory rating, and unsatisfactory rating based on incompetency, is a legal one, and produces differences in legal procedures and proof requirements. It is derived

from the provisions of the Public School Code which establish differences between a professional employe (who has tenure status) and a temporary professional employe (who lacks tenure status), which give rise to the following legal propositions:

(1) Each school district is required to maintain an efficiency rating system for evaluating specified professional skills or qualifications (personality, preparation, technique and pupil reaction) of each employe (both permanent and temporary) in the performance of professional duties: 24 P.S. §§ 11-1123 and 11-1125.

(2) In order to dismiss a professional employe for unsatisfactory performance related to qualifications evaluated in the rating system, the dismissal must be for incompetency under Public School Code section 1122, 24 P.S. §11-1122, which provides as follows:

'The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employee shall be immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth . . . [and retirement for age]." (Emphasis added.) [FN4]

FN4. Incompetency within the meaning of Public School Code section 1122 is a broad term which may embrace conduct and qualifications not involved in the rating system. See Brown's Case, 151 Pa. Superior Ct. 522 (1943), affirmed 347 Pa. 418 (1943), commented on in Thall Appeal, 410 Pa. 222, 229 (1963), involving physical disability; School Dist. of Philadelphia v. Soler, 406 Pa. 168 (1961), refusal to respond to inquiries by superior as to fitness. See also Horosko v. Mt. Pleasant Twp. Sch. Dist., 335 Pa. 369 (1939); Schwer's Appeal, 36 Pa. D. & C. 531 (1939); Feuermacher's Appeal, 36 Pa. D. & C. 373 (1939).

**8 *161 (3) Although the code in section 1122, supra, by its terms specifies grounds for dismissal only for professional employee, nevertheless a temporary professional employee may also be dismissed for the causes stated in that section. In Johnson v. United Sch. Dist. Joint Sch. Bd., 201 Pa. Superior Ct. 375, 383, 191 A. 2d 897 (1963), the court said:

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *161, 1977 WL 190, **8 (Pa.Com.Pl.))

Page 7

"It appears to us that a temporary professional employe may be dismissed either by an unsatisfactory rating referred to in §§1108 and 1123, supra, or by the board for reasons set forth in § 1122. If a professional employe can be discharged under §1122 and a temporary professional employe cannot be discharged under that section, the temporary employe who has not acquired tenure by two years service has greater tenure rights than one who has acquired that tenure status. This could not have been the intent of the legislature."

(4) As indicated in the quotation from Johnson, supra, in addition to dismissal for the causes set forth in Public School Code section 1122 (which include incompetency), a temporary professional employe may be dismissed for an unsatisfactory rating for the final four months of the second year of temporary employment, and solely for that reason, absent a showing of bad faith or arbitrary or capricious action by the board: Nicolella v. Trinity Area School District, 444 Pa. 544, 550 (1971); or *162 action taken in a manner contrary to law: Young v. Littlestown, supra, 631, and 53 P.S. § 11308. [FN5]

FN5. This principle is derived from the provisions of the Public School Code, sec. 1108. Section 1108(b) provides in relevant part that: "A temporary professional employe whose work has been certified . . . during the last four (4) months of the second year of such service as being satisfactory shall thereafter be a . . . professional employe". . . ." Section 1108(a) provides in part that: "No temporary professional employe shall be dismissed unless rated unsatisfactory. . . ." Under these provisions, in order for a temporary professional employe to attain professional employe status (with tenure), he or she must have two full years (four semesters) of service which has been rated satisfactory: Travis v. Teter, 370 Pa. 326, 332 (1952); Acitelli v. Westmont Hilltop, 15 Pa. Commonwealth Ct. 214, 218-19 (1974).

(5) In a dismissal proceeding for incompetency under the Public School Code section 1122, the district must prove incompetence by producing substantial credible evidence of the specific factual instances of incompetent or unsatisfactory performance of duty. When the incompetence alleged is based on deficiencies covered by the rating system, an essential part of the proof is a valid unsatisfactory rating for the period of time at issue. See Thall Appeal, supra; Coble's Appeal, 61

Pa. D. & C. 298 (1947); 24 P.S. §11-1123, providing for use of the ratings. "In determining whether a professional employe shall be dismissed for incompetency . . . "; 24 P.S. §11-1125(a), providing that "No professional employe shall be dismissed under this act unless such rating records have been kept on file . . ." [FN6]

FN6. As to whether ratings are essential to a dismissal for causes unrelated to the rated skills, see Thall Appeal, supra, 229.

**9 (6) In a proceeding for dismissal of a temporary *163 professional employe for unsatisfactory rating under Public School Code section 1108, supra, note [5] (as distinguished from dismissal for incompetency under code section 1122, supra), the employe is not entitled to a trial of his competency: Johnson v. Bd. of Sch. Dir. of McGuffey Sch. Dist., 57 Pa. D. & C.2d 269, 272 (1972). The unsatisfactory rating is alone enough to sustain the dismissal. See Nicolella v. Trinity Area, supra; Acitelli v. Westmont Hilltop Sch. Dist., 15 Pa. Commonwealth Ct. 214, 219, 325 A. 2d 490 (1974). Although the rating is based upon unsatisfactory performance, no inquiry is made into the specific facts of unsatisfactory performance which underlie the rating, except as may be necessary to determine whether the rating was made in bad faith, arbitrarily or capriciously, or not in accordance with law. See paragraph (4) supra. As stated in Young v. Littlestown, supra, 631:

"A requirement that school authorities should at such hearings bear the burden of proving that the temporary professional employee's performance was not only rated as, but was in fact, unsatisfactory would eradicate the difference between the temporary professional employee refused a regular contract for unsatisfactory performance and the regular professional employee sought to be dismissed for incompetence under Section 1127 of the Public School Code of 1949, 24 P.S. §11-1127."
[FN7]

FN7. In some of its decisions involving dismissal of a temporary professional employe for unsatisfactory rating, the Commonwealth Court reviewed the record to determine whether incompetency was proved by substantial evidence, as though that were the issue. See Acitelli v. Westmont Hilltop, supra, and Kudisik v. Port

9 Pa. D. & C.3d 147    Page 8
(Cite as: 9 Pa. D. & C.3d 147, *163, 1977 WL 190, **9 (Pa.Com.Pl.))

Allegheny, supra. The comment in Kudasik (211) that the board should "present evidence in support of the reasons for the unsatisfactory rating" seems incorrect. It is not surprising, therefore, that the court in Young v. Littlestown, supra, felt the need for a thorough review of the applicable law (624).

*164 (7) Accordingly, in a hearing for dismissal of a temporary professional employe for unsatisfactory rating for the fourth semester, the board ". . . should initially offer into the hearing record its records relevant to the contested unsatisfactory rating and consequent dismissal, if the latter resulted. . . . Since the actions of the superintendent and the School Board are entitled to a presumption of regularity, its records so admitted will establish the prima facie validity of the ratings and of any professional action based thereon. The temporary professional employe must then carry, as he heretofore was required to do in mandamus, the burden of showing that the ratings or the dismissal were arrived at fraudulently, arbitrarily, capriciously or in a manner contrary to law." Young v. Littlestown, supra, 631. [FN8]

FN8. The statement in Kaper v. Girard Sch. Dist., 25 Pa. Commonwealth Ct. 552, 361 A. 2d 471, 473 (1976), that at the hearing the district should produce the rating records "and the persons whose observations the appellant's performance formed their basis" should not be construed as requiring the district to elicit testimony from such persons to prove incompetency or to establish the factual basis of the unsatisfactory rating, but rather to authenticate the records and to be available to the employe for interrogation. Of course, questions of competency can be relevant on the issue of bad faith, arbitrariness or caprice. Compare Nicolella v. Trinity Area, supra.

**10 In effect, a facially regular unsatisfactory rating of a temporary professional employe during the fourth semester of employment may be said to carry *165 with it a presumption of unsatisfactory performance, rebuttable by proof of bad faith or arbitrary, capricious or unlawful action on the part of the board. [FN9]

FN9. This "presumption" substantially states the effect of the traditional presumption of regularity of official acts in cases of this kind, referred to by the court in the question from Young v. Littlestown, supra. That court stated (632) that the prescribed procedure of establishing a prima facie case and shifting the burden to appellant on the

issues of bad faith, etc., is adopted from that followed in real estate tax assessment appeals; it is the same procedure followed in Larimer's Estate, 29 Somerset 61, 64 (1974). The presumption of official regularity functions in a real estate tax assessment case somewhat differently than in a case of this kind. There the issue is actual value which is inferred from proof of assessed value by application of the presumption. Here the issue is unsatisfactory rating which is directly proved by rating records without resort to any presumption; the presumption of regularity furnishes the basis for a rebuttable inference that the proved rating was made properly, in good faith and without arbitrariness or caprice, and is therefore meritorious. See Robinson v. Philadelphia, 400 Pa. 80, 86, 161 A. 2d 1 (1960). As to the operation of the presumption in relation to burdens of proof, see Com. v. Thompson, 27 Somerset 241, 252 et seq. (1971), affirmed per curiam 221 Pa. Superior Ct. 824, 292 A. 2d 425 (1972), allocatur refused, commented on in Com. v. Di-Francesco, 458 Pa. 188, 193, note 3, 329 A. 2d 204 (1974). As to the effect of rebutting evidence upon the presumption, see Com. v. Thompson, supra, 257-8 and 269; Delich Co. v. Board of Assessment, 417 Pa. 213, 209 A. 2d 397 (1965); Com. v. Husick, 33 Somerset 60 (1975); Com. v. Milosevich, 28 Somerset 109 (1975); Turney Tax Sale, 30 Somerset 161 (1974).

Appellant's brief states a number of respects in which it is claimed there is not substantial evidence to support the adjudication. One is that the witness produced by the administration "did not even attempt *166 to explain or justify the ratings." To the extent that this objection implies a duty on the part of the district to prove the facts underlying the ratings in order to evidence unsatisfactory performance, it is not well taken. As previously explained, the district has no such burden of proof, its burden is merely to show valid unsatisfactory ratings for the periods at issue. [FN10] We can, therefore, make no inquiry into the substantiality of the evidence underlying and supporting the ratings, except to the extent that such evidence might be relevant on the question of bad faith or arbitrary or capricious action.

FN10. The unsatisfactory ratings at issue here are for the fourth and sixth semesters of employment. Ordinarily only a fourth semester unsatisfactory rating (for the last four months of the second year of employment) is required to dismiss a temporary professional employe under Public School Code section 1108, see footnote 5 supra. In the present

9 Pa. D. & C. 3d 147
(Cite as: 9 Pa. D. & C.3d 147, *166, 1977 WL 190, **10 (Pa.Com.Pl.))

case, after appellant received such a rating, he was nevertheless hired for a third year as a further trial of his competence and was then rated unsatisfactory for the second semester of the third year (sixth semester of employment). A similar situation occurred in Young v. Littlestown Area, supra, where the court held (632, paragraph (3)) that both unsatisfactory ratings are at issue and contestable in an appeal under the Local Agency Law.

**11 Appellant's other attacks on the adjudication boil down to these two:

(1) The rating records introduced in evidence at the hearing showing appellant's unsatisfactory ratings are not in accordance with law and are irregular and invalid on their face because they were not accompanied by the required anecdotal records; and

(2) The unsatisfactory ratings and the dismissal adjudication are invalid because the hearing record *167 shows that they are the result of bad faith and arbitrary and capricious action on the part of the board.

It is questionable whether these objections fall within that portion of section 308 of the Local Agency Law, 53 P.S. §11308(b), that a "finding of fact made by the local agency and necessary to support its adjudication is not supported by substantial evidence" as appellant claims, or whether they really raise legal questions and fall within that portion of section 308 which authorizes reversal if the adjudication is "not in accordance with law." But no question has been raised as to the sufficiency of appellant's assignments of error nor to the manner in which they have been raised, so we will consider the objections as properly raised.

(1) Anecdotal Records

The sources of the anecdotal record requirement are section 1123 of the Public School Code, provisions of the rating cards, and interpretive court decisions, as follows:

(1) Section 1123 of the code, 24 P.S. §11-1123, provides in relevant part that:

"In determining whether a professional employe shall be dismissed for incompetency, and in rating the services of a temporary professional employe,

the professional employe or temporary professional employe shall be rated by an approved rating system . . . in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Public Instruction, and to be revised from time to time, by the Department of Public Instruction with the cooperation and advice of a committee appointed by the *168 Superintendent of Public Instruction, including representation from county and district superintendents of schools, classroom teachers, school directors, school supervisors, and such other groups or interests as the Superintendent of Public Instruction may deem appropriate." See also code section 1108(a), 24 P. S. §11-1108(a), providing that rating of temporary employee shall be done as provided in code section 1123. [FN11]

FN11. The Department of Public Instruction is now the Department of Education, and the Secretary of Public Instruction is now the Secretary of Education: Act of July 23, 1969, P.L. 181, 71 P.S. §1037 et seq.

(2) Paragraph 3 of the General Rating provisions of the rating cards provides that: "Ratings should have the support of anecdotal records. In the case of UNSATISFACTORY ratings, such records must be maintained in the office of the superintendent of schools and a copy supplied to the employee immediately after it has been completed."

**12 (3) The meaning of these provisions was first construed judicially in Muthollen Appeal, 155 Pa. Superior Ct. 587, 39 A. 2d 283 (1944), where the court said, p. 595 et seq.:

"We think one feature of Dr. Stull's testimony calls for comment. The ratings cards, described to some extent in footnote 3, also contain the following instruction: '3. Ratings should have the support of anecdotal records. In the case of unsatisfactory ratings, such anecdotal records must be maintained in the office of the superintendent of schools and a copy supplied to the employe immediately after he has been rated.' When asked whether appellant had been supplied with a copy of the anecdotal records submitted and filed by the assistant *169 county superintendents, Dr. Stull replied: 'The answer is no, and the explanation is that item No. 3 of this rating card is not a part of the statute. We have complied with the statute, and item number three

constitutes a private record, and the last two lines require something that is incompatible. . . . The word "immediately" in the next to the last line and the last line, I maintain is not subject to interpretation; that it does not mean tomorrow or next week; it means now. When we see the work of the teacher, we take notes. There is no original anecdotal record until we get to the office and transcribe our notes and put it into English, making a record. Therefore, it is an impossibility to supply to the employe immediately after he has been rated a copy of the anecdotal record, for it does not exist except in notes. . . . We consider that anecdotal report our private property, because the statue does not mention it. We assume that in the absence of statute it is our prerogative to interpret and imply what we think is morally correct.' The fallacious emphasis upon the word 'immediately' was summarily and correctly dispelled by Judge Greer as follows: 'We will dispose of that. "Immediately" in this instance means a reasonable time after you have opportunity to return to your office and make these reports.'

. . .

As we view it, the dismissal of a professional employe is not the sole objective to be attained by the rating procedure. It is also to be expected that improvement in the ability of such employe with consequent benefit to the pupils will be achieved by bringing to the attention of the professional employe in concrete form such deficiencies as may exist in order that they be remedied.

. . .

**13 Furthermore, the specifications in the rating *170 cards are so general in character as to place a professional employe at the mercy of a supervisory official unless required to be substantiated by anecdotal records which are to be supplied to the employe being rated with reasonable promptness after the rating has been made. The requirement that in the case of unsatisfactory ratings such anecdotal records be maintained in the superintendent's office, and a copy supplied to the employes so rated, is a salutary one which should be obeyed."

Mullolen Appeal, supra, was followed by Mullen v. DuBois Area School District, 436 Pa. 211, 259 A. 877 (1969), which reversed the school board's dismissal of a temporary professional employe for an unsatisfactory rating on the ground that it was capricious and arbitrary. The court there

stated, p. 213, note 3: "This rating was itself defective because it was not accompanied by the required narrative of Mullen's alleged shortcomings." In English v. North East Board of Ed., 58 Erie 144, the local court, in ordering reinstatement of a temporary professional employe for unsatisfactory rating, held that the failure of the board to use State-approved rating cards and to attach an anecdotal record was a minor ("de minimis") error. On appeal to the Commonwealth Court, the reinstatement was reversed and the case was remanded for a rehearing because the board's attorney acted as prosecutor in the hearing: English v. North East Board of Ed., 22 Pa. Commonwealth Ct. 240, 348 A. 2d 494 (1975).

"We would, however, caution the Board as to the importance of the anecdotal records *171 which are to accompany the ratings." In New Castle Sch. Dist. v. Bair, 28 Pa. Commonwealth Ct. 240, 368 A. 2d 345 (1977), the court for several reasons affirmed reinstatement of a professional employe. In doing so, the court quoted paragraph 3 of the General Rating provisions of the rating card and stated: "This lack of anecdotal records in and of itself makes the rating defective." p. 243. The presence of anecdotal records was stressed in Travis v. Teter, 370 Pa. 326, 333, 87 A. 2d 177 (1952), and in Acielli v. Westmont Hilltop, supra, 220, where dismissals for unsatisfactory ratings were affirmed.

Only one lower court has held the provisions for anecdotal records as directory and therefore excusable, and not mandatory: Goodwin v. Centre County Board of Education, 55 Pa. D. & C.2d 134 (1972); compare Johnson v. McGuffey, supra, 272.

None of the foregoing appellate decisions rests entirely upon an absence of anecdotal records or holds that such absence alone will defeat an unsatisfactory rating. Nevertheless, the plain import of their language so clearly points in that direction, and has been so consistently repeated in decisions of all three of the Pennsylvania appellate courts, that the handwriting is on the wall that an anecdotal record is absolutely essential to a valid unsatisfactory rating, against which Goodwin, supra, cannot prevail.

There are policy considerations which support this conclusion:

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *171, 1977 WL 190, **13 (Pa.Com.Pl.))

Page 11

(1) The language of paragraph 3 of the General Rating section of the rating card is mandatory in the case of an unsatisfactory rating. It states the general rule that: "Ratings should have the support *172 of anecdotal records." (Emphasis added.) That, of course, establishes a permissive or directory rule which ought to be complied with, not a mandatory one which must be complied with. Compare Smith v. Harmony Area, supra, 180. But the ensuing sentence plainly stated that in the case of unsatisfactory rating, anecdotal records must be maintained, and creates a mandatory imperative. The contrast in language between the two sentences is vivid. [FN12]

FN12. Whether the direction on the rating card that a copy of the anecdotal record be immediately supplied to the employe is mandatory or directory has not been directly raised, but we do not consider that omission fatal in the absence of prejudice to the employe which is not shown here.

**14 (2) An anecdote is a brief narrative giving the factual details of a specific incident or event. Without factual details, a rating of professional competence or efficiency is virtually worthless and is little more than epithetical opinion. Without supporting factual detail incompetency cannot be found; and without supporting factual detail an unsatisfactory rating is by definition arbitrary. The essentiality of anecdotal support for an unsatisfactory rating is beyond dispute. An anecdotal record of observations of the employe's performance on specific dates and times, and of the factual details of such observations, made contemporaneously with the observations while they are fresh in mind, is so important and so far superior in effectiveness and reliability to any later recital or documentation made for purposes of litigation, as to be worthy of a stringent rule mandating the former.

We can think of nothing more important to the proper functioning of the public schools than the *173 selection and retention of competent teachers, and the discharge of those found incompetent "Of all the duties of school boards the selection of teachers is perhaps the most important. The success of the school depends upon the efficiency of the teachers." Com. ex rel. Herrick v. Sunbury School Dist., 335 Pa. 6, 11, 6 A. 2d 279 (1939). Even the tenure provisions of the Public School Code are intended for the benefit of the school system, in attracting and holding an efficient teaching faculty,

and preventing the dismissal of capable teachers without cause: Teachers' Tenure Act Cases, 329 Pa. 213, 231, 197 Atl. 344 (1938). Although tenure protects the teacher, that is not its primary purpose. As the court said in Johnson v. United, supra, 378-9:

"Public schools are operated for the students and not for the officers and employee. All of the many dedicated teachers of this Commonwealth live by this tenet. It has been recognized in many cases as a basic principle of law.

"The fundamental public policy, expressed in the Constitution and underlying school laws, is to obtain a better education for the children of the Commonwealth'. . . . It was the intention of the legislature to subordinate all other considerations to this policy. . . . The teacher tenure provisions must be considered in light of this fundamental public policy.' " (Citations omitted.)

Securing the justified discharge of the incapable, and avoiding the unjustified discharge of the capable, are of equal importance to a good school system, and both are primarily secured in judicial or quasi-judicial proceedings which depend entirely upon the production of reliable evidence. The *174 form of anecdotal records supporting documentation and preservation of such evidence in unsatisfactory ratings is so intimately essential to the quality of the system, that the provision for it must be regarded as mandatory.

The predicable consequence of holding that the provision for anecdotal records is merely permissive or directory is bound to be widespread breach of the requirement, except perhaps when thought to advance the wishes of the administration. Such cavalier observance is sure to defeat the salutary goals of tenure, to the harm of the school system. That being so, the requirement of anecdotal records must be held mandatory: See Prichard v. Willistown Township School District, 394 Pa. 489, 147 A. 2d 380 (1959).

**15 Both parties concede that the proper official rating cards were used in this case. They contain the same regulation requiring anecdotal records as in the other cases we have been discussing. [FN13]

FN13. The regulation apparently has not been filed

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *174, 1977 WL 190, **15 (Pa.Com.Pl.))

Page 12

or published pursuant to the Pennsylvania Documents Act of July 9, 1976, P.L. 877, 45 Pa.C.S.A. §501 et seq. That omission does not render the regulation ineffective as to any person who has actual knowledge of the regulation, as is true of the board in the instant case: 45 Pa.C.S.A. §903(a): Com. v. Karzenberg, 241 Pa. Superior Ct. 391, 361 A.2d 1173 (1976). Accordingly, the regulation has the binding effect of statute: 1 P.L.E. §35, 285. Editor's note: Compare Centennial School District v. Com., 31 Pa. Commonwealth Ct. 307, 376 A.2d 302 (1977).

In the present case, no anecdotal record accompanies the **rating**. All of the **rating records** state conclusions only which are the opinions of the observers, without any documented **supporting factual data** to inform the board or a court or the **teacher** in question of the grounds for the **rating**. Such an anecdotal record would be of great value to *175 the board and the administration in evaluating an unsatisfactory **rating**: Acitelli v. Westmont Hilltop, supra, 220. It appears from the evidence at the hearing that appellant was observed by two administrators: Mr. Knight, the high school principal, later and now superintendent, and Mr. Landi, high school principal (no longer with the district). Only Mr. Knight testified at the hearing. He made clear that appellant's chief difficulty as teacher was controlling his class and maintaining discipline ("classroom generalship"), but he gave very few details and he had difficulty recalling specifics of relevant times and instances, making it virtually impossible for a detached reviewer without prior knowledge to obtain a clear view of appellant's deficiencies.

The evidence shows that the administration and the board held a number of interviews with appellant concerning his deficiencies, and urged him to improve them, and presumably he was therefore informed of specifics which the record does not reveal. But without the anecdotal record, this court is in the dark as to the specifics that he was informed of.

The fact that appellant declined to testify or otherwise to produce evidence adds to the lack of detail in the record. This is not a criminal case, and appellant therefore is not protected against adverse inferences from his failure to give evidence. We can only conclude that the facts testified to by Mr. Knight are true and that appellant would have

confirmed them had he honestly testified: Beers v. Muth, 395 Pa. 624, 151 A.2d 465 (1959); Dommes v. Zuroski, 350 Pa. 206, 38 A.2d 73 (1944); Nikitka Estate, 346 Pa. 63, 29 A.2d 521 (1943); Weigand v. American Stores, 346 Pa. 253, 257, 29 *176 A.2d 484 (1943); Com. v. Derencin, 26 Somerset 294, 295 (1971); 14 P.L.E. §§630 and 31, 320. Appellant's failure to testify thus gives strong support to Mr. Knight's credibility, but this voucher is not an admission and cannot supply evidentiary omissions which the district has the burden of showing affirmatively: Schwegel v. Goldberg, 209 Pa. Superior Ct. 280, 228 A.2d 405 (1967). Consequently, although appellant's silence furnishes ground to suspect that appellant's unsatisfactory ratings were justified, it is no substitute for the required documentation in the form of anecdotal narrative, and suspicion is no substitute for evidence.

(2) Bad Faith, Arbitrariness and Caprice

**16 Appellant's challenge to the adjudication on the ground of bad faith, and arbitrary and capricious action, raises questions of fact upon which appellant has the burden of proof, and the district has no duty of producing substantial evidence to negate bad faith, arbitrariness or caprice. Yet appellant has produced no evidence to carry his burden of proof of these elements. Nevertheless, he is not precluded from attempting to show them by cross-examination of the administration's witnesses or by otherwise exploiting the weaknesses of the administration's case, without producing any evidence of his own. This follows the familiar rule that although a proponent of an issue has no obligation to negate a defense which his opponent has the burden of proving, he must nevertheless produce a case free from evidence which has the effect of establishing the defense; and if his evidence establishes the defense, he defeats himself: See Hughes *177 v. Chaplin, 389 Pa. 93, 132 A.2d 200 (1957); Com. v. Gottlieb, 33 Somerset 252, 280, n. [4a] (1976); Matteo v. Sharon Hill Lanes, Inc., 216 Pa. Superior Ct. 188, 191-2, 263 A.2d 918 (1970); 27 P.L.E. § 170.

Appellant claims that the record shows bad faith and arbitrary and capricious action on the part of the board in the following respect:

(i) The administration merely introduced the rating

cards and did not attempt to explain or justify the ratings. As already pointed out, the district had no initial burden to produce evidence to support the ratings, except by an anecdotal record.

(2) Appellant received satisfactory ratings for three semesters, then an unsatisfactory rating, then a satisfactory rating, then an unsatisfactory rating. Appellant complains that there is no explanation for the ratings going up and down except that appellant failed to submit to the board's request to resign. These facts alone do not establish bad faith, arbitrariness or caprice. On the contrary, the evidence shows virtually continuous genuine concern by the administration and board about appellant's performance and efforts to bring about improvement. Those facts are inconsistent with bad faith and arbitrariness. Those facts distinguish this case from Mullen v. DuBois Area, supra, where the court stressed the suddenness of the unsatisfactory rating after five prior satisfactory ratings. There the appellant produced testimony as to his capability and the court found that the dismissal was motivated by the employe's union activity. There was substantial justification for the finding in Mullen that the board acted arbitrarily and in bad faith for reasons unconnected with quality of performance.

*178 Such evidence is lacking here. This appellant's unsatisfactory ratings were neither sudden nor unexpected, but were foreshadowed by accumulating dissatisfaction on the part of the administration with his performance. The final unsatisfactory rating may properly take into consideration appellant's overall development over the course of his employment: Acitelli v. Westmont Hillop, supra, 220-21; Owens v. Vo-Tech (No. 2), supra, 106. As the court said in Travis v. Teter, supra, 332:

*17 "In spite of appellant's argument to the contrary, it seems hardly necessary to point out that three satisfactory ratings do not of themselves entitle the teacher to four satisfactory ratings; and four, not three, were required for this plaintiff to become entitled to the tenure status of a permanent teacher. In a four lap race the leader at the end of the third lap is often not the winner and sometimes does not even finish."

As already discussed, the board's request for appellant's resignation was not wholly unjustified.

Resignation was a rational suggestion in response to growing dissatisfaction with appellant's performance and is consistent with good faith and reasonableness.

The only basis for finding arbitrary action is the absence of an anecdotal record, as previously stated.

Relief To Be Granted

The district has failed to prove valid unsatisfactory ratings and therefore the dismissal based thereon must be reversed. The question now is: What relief is appellant entitled to?

*179 Appellant claims that he is entitled to tenure and to a permanent professional employe's contract. Counsel for the board contends that such relief is not justified and that if appellant is entitled to relief it is remand to the board with instructions to proceed properly, or in the alternative reinstatement as a temporary professional employe. Counsel for the administration suggests reinstatement as a temporary professional employe, and payment of net loss of income. [FN14]

FN14. We see no authority in the Local Agency Law for awarding money damages in an appeal of this kind.

Appellant's claim to tenure status is based on Elias v. Board of School Directors, supra, (appeal from this court) in which the court held that an absence of a rating is tantamount to a satisfactory rating, which will after two full years of temporary professional employment entitle the employe to a professional employe's contract. [FN15] But an unsatisfactory rating, even though defective, is not tantamount to no rating at all. There is some logical ground for inferring satisfactory performance from a failure to rate at all, but there is no reason to infer that performance is satisfactory when it has in fact been found unsatisfactory; the validity of this proposition is not altered by reason of the absence of an anecdotal record which renders the rating legally defective. As the court said in Young v. Littlestown, supra, 630, in a somewhat different but related context, ". . . we discern no reason in policy for extending the Elias rule. . . ."

FN15. This writer was of counsel for appellant in Elias, supra, and Fike, Cascio & Boose, counsel for the board here, was counsel for appellee in Elias.

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *179, 1977 WL 190, **17 (Pa.Com.Pl))

Page 14

The Local Agency Law authorizes us to *remand *180 the proceeding to the local agency for further disposition in accordance with the order of the court." 53 P.S. §11308 (b). To justify remand, we should have some assurance that a valid anecdotal record exists. The anecdotal record requirement contemplates a record made contemporaneously with the observations by the person doing the rating, and cannot be met by a later record prepared for litigation. The following testimony appears in the transcript of the proceeding before the board (64):

**18 "Q. Would there be anything else other than the evaluation sheet, are there any further records or notes of the—for example, when you visited him on May 27th, 1976, or December 5th, 1975, did you keep any further notes that formed a basis for the evaluation or the rating sheets?

A. No. Very bluntly, in that particular class, I recall it very well and there really wasn't that much to take notes on.

Q. What about the December 5th class? Apparently December 1975 was a little better.

A. Right.

Q. Did you keep any more notes? That's what I'm asking you.

A. No, not related to this but there are some anecdotal records that are kept."

It appears from this that there may be in existence some contemporaneous anecdotal record, although the testimony suggests that it may be incomplete, and one wonders why it was not presented in the record of the board hearing. In any event, we think the district is entitled to an opportunity to present what it has. Since the principal questions concerning the admissibility and sufficiency of any existing record will be legal ones, it seems more appropriate that a continued hearing *181 be held before the court, rather than burdening the board with that duty.

Practical considerations also dictate the propriety of this procedure. If the anecdotal record submitted proves to be facially adequate to support the unsatisfactory rating, appellant may want and will be entitled to further hearing to present a defense; for

such a hearing we would remand the case to the board. If the record is facially inadequate, the court will grant relief without further hearing. A remand now would unfairly place upon the board the duty of making the legal evaluation of a presented record, which it is ill equipped to do; or else the board and the parties could be directed to assume the record's adequacy (subject to later review by this court on further appeal) and then undergo the further hearing if requested by appellant which would be entirely unnecessary if the record were later held inadequate. Moreover, remand under these circumstances holds little promise of accomplishing a satisfactory conclusion without further appeal. A remand at this point will entail unnecessary delay and perhaps unnecessary work, and is inappropriate relief.

*182 If, at the hearing before the court an adequate anecdotal record is presented, we will either remand for further hearing if appellant requests, or affirm the adjudication. If no anecdotal record, or an inadequate record, is presented to the court, we will reinstate appellant as a temporary professional employe for the next school year during which he will be subject to further rating as provided by law. See dissenting opinion of Justice Roberts in Elias, supra, 268; Official Opinion No. 40 of 1971, Attorney General of Pennsylvania, holding that a contract with a temporary professional employe should be for one year subject to satisfactory performance.

CONCLUSION

**19 We are in full agreement with counsel for the board and administration as to the importance of holding capable teachers in the school system, and of eliminating incapable ones; and that dismissals of incompetent or unsatisfactory teachers should not be impeded for frivial or insubstantial reasons. Thus, in Gabriel v. Trinity Area School District, 22 Pa. Commonwealth Ct. 620, 350 A. 2d 203 (1976), the court refused to reinstate a teacher merely because the rating sheets used differed slightly from the prescribed form. See also Young v. Littlestown

The suggestion of Chief Justice Bell in Elias, 268, and of Justice Nix in Tyler v. Jefferson Co.- DuBois Tech. Sch., 467 Pa. 595, 604, 359 A. 2d 761, 766 (1976), for a remand for proper rating of the fourth (and sixth) semesters, with anecdotal records, is inappropriate at this late date.

9 Pa. D. & C.3d 147
(Cite as: 9 Pa. D. & C.3d 147, *182, 1977 WL 190, **19 (Pa.Com.Pl.))

Area, 64 Pa. D. & C.2d 703, 706 (1974), affirmed in 24 Pa. Commonwealth Ct. 621, 358 A. 2d 120 (1976). It does not follow, however, that school districts may treat procedures which are vital and important in the dismissal process as trivial or insubstantial. Anecdotal records are vital, and we take this occasion to echo the appellate courts in cautioning school boards and administrators that the omission of anecdotal records in unsatisfactory rating cases will not be countenanced, and that the consequence of such omission must continue to be reinstatement of the dismissed employe. As the Supreme Court appropriately said in Thall Appeal, supra:

"Although we have no doubt that the Board was sincerely motivated in this matter, nevertheless its failure to comply with section 1123 [rating system] *183 and the regulations passed thereunder cannot be excused. If a dismissal is to be justified on the grounds of incompetency [or an unsatisfactory rating,] the legislative provisions for supervising the competency of professional employe must be strictly followed. . . . In fact, the difficult situation before us might well have been avoided had the Board complied with section 1123." (227-28, bracketed words added, citations omitted.)

"We would observe, however, that if school boards continue to ignore the mandate of section 1125 [and of section 1123], the reversal of dismissals, no matter how justified, seems to be the only method available to compel the establishment of [proper] permanent rating systems." (229, bracketed words added, citations omitted.)

ORDER

Now, June 1, 1977, this case is scheduled for further hearing before the court on Tuesday, June 28, 1977, at 9:30 a.m., for the purpose of affording the school district an opportunity to present an anecdotal record supporting the dismissal, and for further order, consistent with this opinion.

END OF DOCUMENT

IN THE MATTER OF CLAUDETTE MITCHELL

CRAWFORD CENTRAL SCHOOL DISTRICT

v

## PRE-HEARING BRIEF

This grievance involves an unsatisfactory rating that was given to the Grievant by the

Crawford Central School District through Mr. George H. Deshner, who is the Principal of

Meadville Area Senior High School. Mrs. Mitchell, now Mrs. McCracken, is a Spanish teacher at

the Meadville Area Senior High School. The Grievant has worked for the Crawford Central

School District since August of 1990 and received prior satisfactory ratings until the 1995 school

year. In that year, she received an unsatisfactory rating and filed a grievance and the grievance

was sustained by Arbitrator Carl Stoltenburg. The District, in compliance with the arbitration

ruling removed that unsatisfactory rating from her file and changed it to a satisfactory rating.

During the school year of 1994/1995 she received a satisfactory rating. During the school year of

1995/1996, the Grievant received an unsatisfactory rating.

This School Code requires that professional employees be rated and the State Board of

Education requires two unsatisfactory ratings as a pre-conditioned dismissal of a professional

employee on the basis of incompetency. Section 1123 of the School Code provides:

"In determining whether a professional employee shall be dismissed for
incompetency, and in rating the services of a temporary professional employe, the
professional employe or temporary professional employe shall be rated by an
approved rating system which shall give due consideration to personality,
preparation, technique, and pupil reaction, in accordance with standards and
regulations for such scoring as defined by rating cards to be prepared by the
Department of Public Instruction, and to be revised, from time to time, by the
Department o Public Instruction with the cooperation and advise of a committee



appointed by the Superintendent of Public Instruction, including representation from district superintendents of schools, classroom teachers, school directors, school supervisors, and such other groups or interests as the Superintendent of public Instruction may deem appropriate. Rating shall be done by or under the supervision of the superintendent of schools or, if so directed by him, the same may be done by an assistant superintendent, a supervisor, or a principal, who has supervision over the work of the professional employe or temporary professional employe who is being rated: Provided, That no unsatisfactory rating shall be valid unless approved by the district superintendent."

Pursuant to the directive contained in Section 1123, Crawford Central School District has developed a rating form which was approved by the Department of Public Instruction. The Crawford Central Evaluation Form takes 11 different areas into consideration other than classroom observation. A copy of a blank evaluation form is attached hereto and incorporated herein by reference. As the arbitrator can see, Crawford Central Professional Evaluation Instrument is a comprehensive form containing 11 difference areas of evaluation. Many of these areas involve a teacher's behavior, not only in the classroom, but her behavior outside of the classroom and her ability to respond to supervision.

As a general proposition, if an unsatisfactory rating has been issued in compliance with all legal requirements, the rating is presumed to be valid and will be set aside only if the employee can prove that the rating was arbitrary or capricious or was issued in bad faith. Nicolella v Trinity Area School District, 444 Pa. 544, 281 A.2d 832 (1971) and Travis v Teter 370 Pa. 326 87 A.2d 187 (1952).

The School Code and Regulations require that the School District have anecdotal records to accompany all unsatisfactory ratings, which records may include personal notes of the building principal, rating documents, summations by the teacher, and notes from parents. The CCEA has continuously objected at hearings about notes from parents being hearsay. However, in Phillis v

2

Mechanicsburg Area School District 151 Pa. Cmwlth 497, 617 A.2d 830 (1992), the Court held that these notes are admissible. In addition, the unsatisfactory rating must be approved by the Superintendent. However, the Superintendent's approval need not appear on the same form that was used by the evaluator. See Philadelphia School District Board of Education v. Kushner 109 Pa. Cmwlth. 120, 530 A.2d 541 (1987).

In conclusion, the District submits that where the law has vested description in a public official, courts will not interfere with the officials exercise of discretion unless the discretion is arbitrarily or fraudulently exercised, or is based on a mistake in view of the law. In Travis v. Teter 370 Pa. 326 87 A.2d 187 (1952), the Court stated the rule in the following language:

Expressed another way, it is the discretion and judgment of the public official (whose is vested with the discretionary power) which prevails and not that of a Court or a jury or a person aggrieved, and a Court cannot compel such official to exercise his discretion in a manner which will produce a result which the Court may deem wise or desirable.

Respectfully submitted,

Thomas, Spadafore, Walker & Keenan

By: _____
Emil M. Spadafore, Jr., Esq.

3

# THOMAS, SPADAFORE, WALKER & KEENAN

ATTORNEYS AT LAW
OLD POST OFFICE BUILDING
296 CHESTNUT STREET
MEADVILLE, PENNSYLVANIA 16335

(814) 332-6000
FAX (814) 332-6009

R. CHARLES THOMAS
EMIL M. SPADAFORE, JR.
WILLIAM L. WALKER
GREGORY A. KEENAN

JOHN E. NAGURNEY

July 10, 1996

John P. Jones, Esquire
Pennsylvania State Education Association
4250 Route 6, P.O. Box 818
Edinboro, PA 16412

RE: Crawford Central Education Association

v

Crawford Central School District

Dear Attorney Jones:

    Enclosed find true and correct copy of an Answer to Charge of Unfair Practices regarding Ms. Mitchell of the Crawford Central School District.

    Should you have any questions please feel free to contact me.

Very truly yours,

Thomas, Spadafore, Walker & Keenan

By: Emil M. Spadafore, Jr.
    Emil M. Spadafore, Jr., Esquire

EMS/kk
Enclosure

COMMONWEALTH OF PENNSYLVANIA
PENNSYLVANIA LABOR RELATIONS BOARD

CRAWFORD CENTRAL EDUCATION    :
ASSOCIATION,    :
    :
        Plaintiff    :
    :
    vs.    :
    :
CRAWFORD CENTRAL SCHOOL    :
DISTRICT    :
    :
        Defendant.    :

## ANSWER TO CHARGE OF UNFAIR PRACTICES

AND NOW, this ____ day of July, 1996, comes the Crawford Central School District and George Deshner, Principal of Meadville Senior High School, and files this Answer to the Unfair Practice Charge that was filed by the Crawford Central Education Association:

1.    The allegations of paragraph 1 of the specification of charges are denied. To the contrary, Ms. Mitchell was never denied Union representation at any investigatory meeting at Meadville Area Senior High School. To the contrary, on or about March 12, 1996, Meadville Area Senior High was conducting a Parent's Conference night. Specific parents requested to meet with Ms. Mitchell as they were not satisfied with her performance as a teacher who was teaching a Spanish class to their child. The parents specifically asked that the Principal, George Deshner, be present for the meeting. Ms. Mitchell was informed prior to the meeting that Mr. Deshner would be present and that the meeting would be conducted in Mr. Deshner's office. The meeting was set for 6:00 PM but the meeting could not begin since Ms. Mitchell did not want to start the meeting until she had Union representation. This meeting was a parent conference. Ms.

Mitchell refused to start the meeting and went out in the hallway and began to ask teachers to come in with her. Finally, the principal ordered her to go to his office and start the parent conference since the parents became very upset that she would not begin the meeting. The parents objected to the presence of a Union representative concerning a matter between their son and a teacher and did not want the confidentiality breached. As a compromise, Principal George Deshner did have Mr. David Bowser, Guidance Counselor for the sophomore class, attend the meeting and assist Ms. Mitchell.

2.    The allegations of paragraph 2 are denied. The Petitioner has failed to state any specific itemization which would constitute harassment and reprisals. To the contrary, Ms. Mitchell has failed to perform her job in a professional manner and has failed to respond to directives from her superiors.

3.    The allegations of paragraph 3 are denied. To the contrary, Ms. Mitchell was given a classroom of her own during the school year 1995/1996. She was first consulted by Mr. Deshner who asked if she would like to have her own classroom rather than be a traveling teacher. She accepted. A modular classroom was renovated and she agreed to move into the modular classroom since it would be her own room. The District denies that she was ever denied requests for basic necessities and further asserts that the problems regarding the heating that she complained about were occasioned by the students adjusting the thermostat in the area. In response to her complaints about the heating and in response to complaints about the condition of the room, the School District has instructed her to be in her classroom at all times so that students were not unattended and so they cannot adjust the thermostat or take any other action affecting the control of the room. In fact, as a result of the students misbehavior while in Ms. Mitchell's classroom, the District inserted a cage over the thermostat so that no one can control the

thermostat. In addition, Principal George Deshner shortened the amount of time that Ms.
Mitchell would have to serve on hall duty in the mornings so that she could be in her room before
the students and prevent the students from adjusting the temperature in the classroom.

Furthermore, Ms. Mitchell was specifically instructed to lock her classroom at all times when she
was not there and to check the desk before students arrived and after students left so that they
could determine who was damaging the desk in the classroom. Despite these measures taken by
the District, damage was done to the classroom.

4.    With regard to the allegations that the Administration failed to support her, the
District denies these allegations. On several occasions, students reported to the central office for
detention since they were not able to find Ms. Mitchell after school. Apparently Ms. Mitchell had
assigned detentions to students and there was some confusion as to whether they were to report
to her office, to her classroom, or to the central office. When those students arrived at the central
office, they were told to serve their detention there since they were not able to find Ms. Mitchell
and the students served the detention. When Ms. Mitchell became aware of the students serving
detention in the office, she wanted to assign more detentions to the students since the detention
was not served in her presence. The Administration refused to allow her to do this since the
students had served the detention or appeared in the office to serve the detention at the
appropriate time.

5.    The fourth paragraph of the specification charges is denied for reasons set forth
above. The District made various efforts to attempt to reduce the risk of any damage in Mrs.
Mitchell's classroom by having her present when the students were not there and by directing her
to be present and to lock the doors when she was not there. However, damage continued
throughout the school year. It is specifically denied that Ms. Mitchell ever received a reprimand

for her condition in the classroom on December 15, 1996. As a part of the evaluation, she was instructed by the Principal to check the students desks before the students arrived and to check the students desks after the students left to determine which students were defacing the desk.

6.    Denied. Mr. Deshner did not falsely accuse Ms. Mitchell of divulging confidential information. To the contrary, Ms. Mitchell did divulge confidential information directly in violation of School Laws and Rules by discussing a student's performance with the student's mother's supervisor at work. Ms. Mitchell had called the parent at work and when the parent was not present, she proceeded to discuss specific allegations concerning the behavior of a student with the supervisor. The supervisor wrote a letter complaining about this incident and this letter was read to the Grievant and to the Union representative who was with the Grievant during the meeting of January 22, 1996. The parents were present at Meadville High School at that meeting also to complain about Ms. Mitchell's divulging confidential information. The Association requested this information but the request was totally unnecessary since the Union representative was present at the time that Mr. Deshner read the letter from the supervisor to the student and his parents and to Ms. Mitchell during the conference of January 22, 1996. Any allegation by the Association that they did not know the contents of the letter is false since their client and their Union representative were fully advised of the contents of the letter.

7.    Denied. To the contrary, several administrators have observed Ms. Mitchell on several occasions either arriving late for work, arriving late for hall duty, or arriving late for cafeteria, study hall or arriving late for a class. The Petitioner is an employee and must abide by the rules and regulations of the Crawford Central School District and because she is a grievant does not entitle her to any special treatment. The remaining allegations of the specification of charges are denied and the District asserts that Ms. Mitchell has engaged in a course of conduct

which is defiant to the recommendations of her superiors, that she has breached confidential

obligations and that she has acted in an unprofessional manner.

Respectfully submitted,

Thomas, Spadafore, Walker & Keenan

By: _____
Emil M. Spadafore, Jr., Esq.

CRAWFORD CENTRAL SCHOOL DISTRICT
11280 MERCER PIKE
MEADVILLE, PA 16335

3.01

## TEACHER

### QUALIFICATIONS:

1. Holds a valid Pennsylvania Teaching Certificate and meets the requirements for certification.

2. Must have understanding and knowledge of computer technology.

3. Such alternatives to the above qualifications as the Board may find appropriate and acceptable.

### REPORTS TO: Principal, unless other specific direction is given.

### INSTRUCTS: Teacher aide, volunteers, and student teacher assigned.

### JOB GOAL: To enable students to learn subject matter and/or skills that will contribute to their development as mature, and responsible men and women.

### PERFORMANCE RESPONSIBILITIES:

1. Plans a program of study within the curricular framework of the district that meets the individual needs, interests, and abilities of the students.

2. Creates a classroom environment that is conducive to lifelong learning, to the maturity and interests of students, and encourages students to be active learners.

3. Guides the learning process toward the achievement of curriculum goals and establishes clear objectives for all lessons, units, and projects which communicate these objectives to students.

EXHIBIT
17

**Teacher**

2.

4.  Employs instructional methods and materials that are appropriate in preparing for the information age by using technology in the educational process.

5.  Assesses the accomplishments of students using a variety of tools on a regular basis and provides progress reports as required.

6.  Seeks the assistance of district specialists when students have possible learning, social or emotional difficulties.

7.  Confers with colleagues, students, and/or parents on a regular basis.

8.  Assists the administration in implementing all policies and/or rules governing student life and conduct.

9.  Develops reasonable rules of classroom behavior and procedures which maintain order in the classroom in a fair and consistent manner.

10. Plans and instructs purposeful assignments for teacher, aides, volunteers, and/or student teachers.

11. Strives to maintain and improve professional development

12. Attends staff meetings and demonstrates a willingness to serve on district committees when possible.

13. Performs other reasonable duties, not conflicting with the negotiated agreement, as are assigned by the principal for the well being of the student.

**TERMS OF EMPLOYMENT:**

Annual salary and number of days of employment to be set by the Board in accordance with appropriate article(s) of the negotiated agreement.

**EVALUATION:**    Performance of this job will be evaluated annually in accordance with provisions of the Board's policy on Professional Personnel.

REVISED:  February 26, 1996

**Pennsylvania's Code of Professional Practice and Conduct for Educators**
**22 Pa.Code 235.1, et seq.**

### 235.1 Mission

The Professional Standards and Practices Commission is committed to providing leadership for improving the quality of education in this Commonwealth by establishing high standards for preparation, certification, practice and ethical conduct in the teaching profession.

### 235.2 Introduction

(a) Professional conduct defines interactions between the individual educator and students, the employing agencies and other professionals. Generally, the responsibility for professional conduct rests with the individual professional educator. However, in this Commonwealth, a Code of Professional Practice and Conduct (Code) for certificated educators is required by statute and violation of specified sections of the Code may also be used as supporting evidence, though may not constitute an independent basis, for the suspension or revocation of a certificate. The Professional Standards and Practices Commission (PSPC) was charged by the act of December 12, 1973 (P. L. 397, No. 141) (24 P.S.§§12-1251 - 12-1268), known as the Teacher Certification Law, with adopting a Code by July 1, 1991. See 24 P.S. §12-1255(a)(10).

(b) This chapter makes explicit the values of the education profession. When individuals become educators in this Commonwealth, they make a moral commitment to uphold these values.

### 235.3 Purpose

(a) Professional educators in this Commonwealth believe that the quality of their services directly influences the Nation and its citizens. Professional educators recognize their obligation to provide services and to conduct themselves in a manner which places the highest esteem on human rights and dignity. Professional educators seek to ensure that every student receives the highest quality of service and that every professional maintains a high level of competence from entry through ongoing professional development. Professional educators are responsible for the development of sound educational policy and obligated to implement that policy and its programs to the public.

(b) Professional educators recognize their primary responsibility to the student and the development of the student's potential. Central to that development is the professional educator's valuing the worth and dignity of every person, student and colleague alike; the pursuit of truth; devotion to excellence; acquisition of knowledge; and democratic principles. To those ends, the educator engages in continuing professional development and keeps current with research and technology. Educators encourage and support the use of resources that best serve the interests and needs of students. Within the context of professional excellence, the educator and student together explore the challenge and the dignity of the human experience.

### 235.4 Practices

(a) Professional practices are behaviors and attitudes that are based on a set of values that the professional education community believes and accepts. These values are evidenced by the professional educator's conduct toward students and colleagues, and the educator's employer and community. When teacher candidates become professional educators in this Commonwealth, they are expected to abide by this section.

(b) Professional educators are expected to abide by the following:

   (1) Professional educators shall abide by the Public School Code of 1949 (24 P.S.§§1-101 - 27-2702), other school laws of the Commonwealth, sections 1201(a)(1), (2) and (4) and



EXHIBIT

(b)(1), (2) and (4) of the Public Employe Relations Act (43 P.S.§§1101.1201(a)(1), (2) and (4) and (b)(1), (2) and (4)) and this chapter.

(2) Professional educators shall be prepared, and legally certified, in their areas of assignment. Educators may not be assigned to or accept assignments outside their certification area on a temporary, short-term, emergency basis. Examples: a teacher certified in English filling in a class period for a physical education teacher who has that day become ill; a substitute teacher certified in elementary education employed as a librarian for several days until the district can locate and employ a permanent substitute teacher certified in library science.

(3) Professional educators shall maintain high levels of competence throughout their careers.

(4) Professional educators shall exhibit consistent and equitable treatment of students, fellow educators and parents. They shall respect the civil rights of all and not discriminate on the basis of race, national or ethnic origin, culture, religion, sex or sexual orientation, marital status, age, political beliefs, socioeconomic status, disabling condition or vocational interest. This list of bases or discrimination is not all-inclusive.

(5) Professional educators shall accept the value of diversity in educational practice. Diversity requires educators to have a range of methodologies and to request the necessary tools for effective teaching and learning.

(6) Professional educators shall impart to their students principles of good citizenship and societal responsibility.

(7) Professional educators shall exhibit acceptable and professional language and communication skills. Their verbal and written communications with parents, students and staff shall reflect sensitivity to the fundamental human rights of dignity, privacy and respect.

(8) Professional educators shall be open-minded, knowledgeable and use appropriate judgment and communication skills when responding to an issue within the educational environment.

(9) Professional educators shall keep in confidence information obtained in confidence in the course of professional service unless required to be disclosed by law or by clear and compelling professional necessity as determined by the professional educator.

(10) Professional educators shall exert reasonable effort to protect the student from conditions which interfere with learning or are harmful to the student's health and safety.

**235.5    Conduct**

Individual professional conduct reflects upon the practices, values, integrity and reputation of the profession. Violation of §§235.6-235.11 may constitute an independent basis for private or public reprimand, and may be used as supporting evidence in cases of certification suspension and revocation.

**235.6    Legal obligations**

(a)The professional educator may not engage in conduct prohibited by the act of December 12, 1973 (P.L. 397, No. 141) (24 P.S.§§1251-12-1268), known as the Teacher Certification Law.

(b)The professional educator may not engage in conduct prohibited by:

(1) The Public School Code of 1949 (24 P.S.§§1-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) and other laws relating to the schools or the education of children.

(2) The applicable laws of the Commonwealth establishing ethics of public officials and public employees, including the act of October 4, 1978 (P.L. 883, No. 170) (65 P.S.§§401-413), known as the Public Official and Employee Ethics Law.

(c) Violation of subsection (b) shall have been found to exist by an agency of proper jurisdiction to be considered an independent basis for discipline.

## 235.7 Certification

The professional educator may not:

(1) Accept employment, when not properly certificated, in a position for which certification is required.

(2) Assist entry into or continuance in the education profession of an unqualified person.

(3) Employ, or recommend for employment, a person who is not certificated appropriately for the position.

## 235.8 Civil Rights

The professional educator may not:

(1) Discriminate on the basis of race, National or ethnic origin, culture, religion, sex or sexual orientation, marital status, age, political beliefs, socioeconomic status; disabling condition or vocational interest against a student or fellow professional. This list of bases of discrimination is not all-inclusive. This discrimination shall be found to exist by an agency of proper jurisdiction to be considered an independent basis for discipline.

(2) Interfere with a student's or colleague's exercise of political and civil rights and responsibilities.

## 235.9 Improper personal or financial gain

The professional educator may not:

(1) Accept gratuities, gifts or favors that might impair or appear to impair professional judgment.

(2) Exploit a professional relationship for personal gain or advantage.

## 235.10 Relationships with students

The professional educator may not:

(1) Knowingly and intentionally distort or misrepresent evaluations of students.

(2) Knowingly and intentionally misrepresent subject matter or curriculum.

(3) Sexually harass or engage in sexual relationships with students.

(4) Knowingly and intentionally withhold evidence from the proper authorities about violations of the legal obligations as defined within this section.

## 235.11 Professional relationships

The professional educator may not:

(1) Knowingly and intentionally deny or impede a colleague in the exercise or enjoyment of a professional right or privilege in being an educator.

(2) Knowingly and intentionally distort evaluations of colleagues.

(3) Sexually harass a fellow employee.

(4) Use coercive means or promise special treatment to influence professional decisions of colleagues.

(5) Threaten, coerce or discriminate against a colleague who in good faith reports or discloses to a governing agency actual or suspected violations of law, agency regulations or standards.