by the way, ever said
happened. It had nothing to
do with Title 7 and it had
nothing to do with the ADA, or
Civil Rights Law violations
and you know that from those
decisions, so I don't think
your question is fair.
ATTORNEY NICHOLS:
Well, what about Ms.
Englebaugh?
ATTORNEY BINDER-HEATH:
Are you going to ask
him a question?
ATTORNEY NICHOLS:
It's the same. She's
on the record.
A.Pre-me, I don't know anything
about her.
BY ATTORNEY NICHOLS:
Q.Now, a few more questions, Mr.
Heller, just a few more questions.
A.Sure.
Q.In the records there are
statements that students made,

brought certain complaints against
Ms. deLeon, okay, and brought them to
the principal. I'm not sure whether
those reached the superintendent's
office, but they are in the record,
right, student complaints? My
question is this, one, do you know
how these student complaints --- how
were they investigated? Were they
investigated by the administration or
by the principals, I should say.
ATTORNEY BINDER-HEATH:
What year are you
talking about?
ATTORNEY NICHOLS:
I'm talking about this
period, there was a period ---
I think we're talking
essentially 2002-2003 until
she was terminated.
BY ATTORNEY NICHOLS:
Q.Now, we know one --- Mr. and
Mrs. Hogan complained. Their son
apparently had some dissatisfaction
with Ms. deLeon. We've addressed

that. That's in the record, I'm not
going to cover that. All right.
There was another student that you
just talked about here. The name
escapes me but you might remember.
Just recently this afternoon, a
student who complained about Ms.
deLeon. There are other students.
My question is this, my question is,
do you know when these complaints
were put forward by students against
Ms. deLeon, how did or did the
principal --- in this case Mr.
Deshner and his staff --- conduct the
investigations? Do you know?
A.They were investigated, right.
Q.Do you know how they conducted
the investigation? You were not
involved in that aspect I take it?
A.No.
Q.But you say you know it was
investigated, and you know that by
way of what? How do you know that?
A.Because I know they do their
job, first of all

Q.Well, you assume, you assume
that Mr. Deshner and his staff did
that job; right?
A.No, I know they investigated
it.
Q.Oh, Mr. Deshner told you or
his staff told you?
A.Yeah.
Q.That in each of these cases
when a student lodged complaints
against Ms. deLeon, they conducted an
investigation, that's how you know;
right?
A.I know that they conduct
investigations. There's concerns
brought to them, just like there is
concerns that are brought to myself
or Mr. Dolecki in the central office,
we investigate them before we can
respond. You have to, you have to
have a --- you know, a base to move
on and principals have different
concerns brought to their attention
and they investigate them just like
we do. It's just at a different

Page 186

```
 1 feel. I know that they do it, they
 2 jus don't sweep it under the table,
 3 and there has been certain situations
 4 where I know that they've had to
 5 investigate. I know they do
 6 investigate. They don't sweep
 7 anything under the table.
 8    Q The reason I raised that
 9 issue, Mr. Heller, because during the
10 inquiry conducted by your counselor,
11 it was this matter that somehow Ms.
12 deLeon had treated her students,
13 inconsistently, in an inconsistent
14 manner, you know? And while that's
15 --- I'm not clear exactly when you
16 say inconsistent. I take the
17 different treatment; would that be
18 fair to say? For that accusation,
19 when you say inconsistent, that
20 different treatment for different
21 students?
22    A. Most likely.
23    Q And that's why I further probe
24 this, if you will, you level a charge
25 against a teacher that there is
```

Page 187

```
 1 different treatment at different
 2 students, and the allegations made by
 3 not only the students by also their
 4 parents. And ---.
 5    ATTORNEY BINDER-HEATH:
 6       Actually, just for the
 7    record, I just want to make an
 8    objection. What my question
 9    to him specifically was,
10    concerning Exhibit 16 and the
11    unsatisfactory evaluation,
12    that was what I was
13    specifically referring to.
14    That Ms. deLeon continues to
15    be inconsistent in her
16    dealings with students.
17    Classroom rules are not
18    enforced uniformly. So that's
19    how it came up, just so I
20    think it frames the question.
21    I was asking specifically
22    about the evaluation.
23    ATTORNEY NICHOLS:
24       The evaluation of
25    students?
```

Page 188

```
 1    ATTORNEY BINDER-HEATH:
 2       No, Ms. deLeon's
 3    unsatisfactory evaluation for
 4    that year.
 5    ATTORNEY NICHOLS:
 6       Oh, okay. All right.
 7    BY ATTORNEY NICHOLS:
 8    Q And part of that was based
 9 upon her perceived --- what you
10 perceived to be a different treatment
11 of students; is that correct? A
12 different treatment of students?
13 Part of that evaluation.
14    A I wouldn't say, perceived. It
15 would've been observed, investigated
16 and confirmed by the building
17 administrators.
18    Q Let me ask you, now, you as an
19 administrator have some degree of
20 oversight responsibility over the
21 secondary principals, you say; right?
22 And in this case the record reflects
23 that with respect to one student in
24 the case, Ms. deLeon told him he had
25 detention and then the assistant
```

Page 189

```
 1 principal, Ms. Templeton came along
 2 and really as she --- she
 3 countermanded it. She said, this is
 4 not going to be effective now. We're
 5 going to --- I see another ---. I'm
 6 just saying what the record reflects,
 7 all right. The point is I'm going to
 8 ask a questions based on this.
 9    A What's it have to do with me?
10    Q No, no. I'm talking to
11 about it now. My question is, and
12 that was the second other instance in
13 which Ms. deLeon ---.
14    ATTORNEY BINDER-HEATH:
15       I'm going to object.
16    ATTORNEY NICHOLS:
17       I do have a question.
18    have a question.
19    ATTORNEY BINDER-HEATH:
20       I'm just going to put
21    an objection on the record
22    though about a specific
23    reference to when Mr. Heller
24    actually was employed, it's
25    very difficult to answer.
```

**Page 190**

1 ATTORNEY NICHOLS:
2 Right. I understand.
3 I understand.
4 BY ATTORNEY NICHOLS:
5 Q There was second instance in
6 which McdeLeon was instructed by
7 Ms. Templeton, assistant principal,
8 to cease the recording the class.
9 Only to subsequently find out that
10 the reason the class was being tape
11 recorded was to accommodate a blind
12 student, under the ADA law. The
13 point I'm asking you is, where a
14 teacher is charged with keeping or in
15 managing a class properly and she's
16 getting conflicting and
17 different administrators, that must
18 be confusing. I mean, do you have
19 any sympathy with that, and
20 consideration of that when you pass
21 judgment on her? That one, not only
22 that she was getting conflicting and
23 which I think maybe tomorrow we're
24 going to address, because we're going
25 have Ms. Templeton here, and we're

**Page 191**

1 going have Mr. Higgins here,
2 different instruction. Mr. Higgins
3 saying one thing, Ms. Templeton
4 saying another, Mr. Desimer pushing
5 another way. You have been a teacher
6 you say. That type of situation, did
7 you take that into account when you
8 passed judgment on her?
9 ATTORNEY BINDER-HEATH:
10 Objection.
11 ATTORNEY NICHOLS:
12 That's all I'm saying.
13 ATTORNEY BINDER-HEATH:
14 Objection --
15 BY ATTORNEY NICHOLS:
16 Q You can answer or not answer.
17 ATTORNEY BINDER-HEATH:
18 -- you are, again,
19 testifying, you are not asking
20 a question. It assumes facts
21 not in evidence. You are
22 talking about differing
23 administrations when different
24 people were here at different
25 times. You are asking general

**Page 192**

1 questions without any specific
2 information other than a
3 taping incident that occurred
4 well prior to Mr. Heller's
5 time. I'm going to object and
6 if you can answer the
7 question, go right ahead.
8 A I can't. I don't know.
9 BY ATTORNEY NICHOLS:
10 Q Okay. I've just got two final
11 questions I'd like to ask you, Mr.
12 Higgins (sic), and I have here, I
13 believe this is a -- I'm not sure
14 whether they are guidelines or where
15 they come from, but they come from
16 promulgations of the Crawford Central
17 School District, disciplinary
18 actions. I'll show it to you here,
19 right there. Disciplinary action.
20 ATTORNEY BINDER-HEATH:
21 Can I see that, too?
22 BY ATTORNEY NICHOLS:
23 Q My question is this, is it not
24 true other than the guidelines of the
25 School District that teachers have

**Page 193**

1 the primary authority when it comes
2 to discipline and management of the
3 classroom; is that not right? And of
4 course, subject to the principal. Is
5 that a correct statement?
6 A It says that teachers should
7 be able to -- if they have the right
8 classroom management, they should be
9 able to deal with 99 percent of the
10 problems. And if they have good
11 strong classroom management. Keeping
12 very well prepared, keeping your
13 students engaged and they will have
14 very few problems.
15 Q And one other statement here.
16 This is another -- I'm not sure what
17 do you call it. These are guidelines
18 are they not?
19 ATTORNEY BINDER-HEATH:
20 Let the record reflect
21 that Mr. Nichols is referring
22 to pages that are numbered
23 that don't have any reference
24 as to where they came from
25 that potentially could be from

Multi-Page™

1 the teacher handbook.
2 ATTORNEY NICHOLS:
3 They came from a
4 source, some source that's
5 promulgated by Crawford
6 Central School District. The
7 teacher's handbook. Okay.
8 All right.
9 BY ATTORNEY NICHOLS:
10 Q.One final thing here. It
11 says, discipline outside the
12 classroom. It says, to aid in
13 maintaining our school education
14 climate, teachers must remember that
15 their jurisdictional authority
16 concerning discipline extends through
17 the entire building. Breaches of
18 good behavior should not go
19 unnoticed, correct them immediately.
20 I'm asking you this, Mr. Heller, now,
21 in the pecking order, in the
22 hierarchy between teachers and the
23 principals, and, of course the
24 superintendent, but the principal's
25 staff, under what circumstances are

1 principals staff can override a
2 teacher's directive?
3 A.I don't understand your
4 question.
5 Q.Well, I'm simply saying, in
6 the case of Ms. Templeton, at least
7 in one or two incidences that I note
8 in the record she override or
9 countermanded a direct issue by Ms.
10 deLeon. I'm just questioning in the
11 scheme of authority, what
12 circumstances a staff person, an
13 assistant principal can override a
14 teacher when a teacher seeks to
15 impose discipline and maintain
16 discipline and order in the
17 classroom?
18 A.The only answer I can give you
19 is, is Mr. Dolecki has the authority
20 to override a decision that I make.
21 I have the authority to override a
22 decision the principal makes. You
23 know, sometimes there is underlying
24 circumstances or issues out there
25 that make people want to make a

1 change in that decision. It's not
2 that they don't want to provide the
3 support, it's just that something
4 else has occurred that they can't
5 divulge and that doesn't allow them
6 to support that decision that was
7 made. Does it happen very often, no,
8 but it does happen. It doesn't
9 matter what level you are on or at.
10 ATTORNEY NICHOLS:
11 I would ask that these
12 two documents be marked, what
13 is it, deLeon --- what ---.
14 ATTORNEY BINDER-HEATH:
15 Why don't we say Heller
16 18 and 19.
17 ATTORNEY NICHOLS:
18 Oh, Heller, okay. One
19 being a student complaint,
20 Aniece Mosley against Ms
21 deLeon and the second one is
22 the direct communication---.
23 It's already in the record.
24 That's already in the record.
25 ATTORNEY NICHOLS:

1 It is? Oh, okay.
2 ATTORNEY BINDER-HEATH:
3 That one is, this one's
4 not. And we want to admit it.
5 (Heller Exhibit 18
6 marked for
7 identification.)
8 ATTORNEY NICHOLS:
9 Okay. All right. Is
10 this in the record already, a
11 letter from Ms. deLeon to Mr.
12 Desmer involving Phil Seifert
13 about a phone call to his
14 mother. I think all we got
15 --- that was the one mother
16 Did we put that in the record?
17 ATTORNEY BINDER-HEATH:
18 Not this deposition. I
19 don't know if it's in there or
20 not. I think it may be in Mr.
21 Desmer's deposition. If you
22 want to mark it go ahead and
23 mark it.
24 A.In Mr. Higgins' probably
25 ATTORNEY BINDER-HEATH:

Multi-Page™

Page 198

1   It might Erin Mr.
2   Higgins' folder.
3   ATTORNEY NICHOLS:
4   Higgins, A. Well,
5   we'll keep1 'til tomorrow,
6   Mr. Higgins. Okay. I guess
7   that's all. Thank you, Mr.
8   Heller.
9   ATTORNEY BINDER-HEATH:
10  I have no allow up.
11      * *  * * * * *
12  DEPOSITION CONCLUDED AT 4:25 P.M.
13      * *  * * * * * *

14
15
16
17
18
19
20
21
22
23
24
25

COMMONWEALTH OF PENNSYLVANIA )

                              )

COUNTY OF VENANGO             )

C E R T I F I C A T E

I, Jacqueline L. Hazlett, a Notary Public in

and for the Commonwealth of Pennsylvania, do

hereby certify:

That the witness whose testimony appears in

the foregoing deposition, was duly sworn by me on

said date and that the transcribed deposition of

said witness is a true record of the testimony

given by said witness;

That the proceeding is herein recorded fully

and accurately;

That I am neither attorney nor counsel for,

nor related to any of the parties to the action in

which these depositions were taken, and further

that I am not a relative of any attorney or

counsel employed by the parties hereto, or

financially interested in this action.

_____

Jacqueline L. Hazlett, Reporter

NOTARIAL SEAL
JACQUELINE L HAZLETT, Notary Public
Johnstown, Cambria County, PA
My Commission Expires Nov. 4, 2008

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SARGENT'S
COURT REPORTING
SERVICE, INC.
210 Main Street
Johnstown, PA 15901

· PITTSBURGH, PA
· CLEARFIELD, PA          · ERIE, PA
· STATE COLLEGE, PA        · OIL CITY, PA          · INDIANA, PA          · PHILADELPHIA, PA
· HOLLIDAYSBURG, PA        · HARRISBURG, PA        · GREENSBURG, PA       · SOMERSET, PA
                                                                          · WILKES-BARRE, PA
                                                                          · CHARLESTON, WV

526 Chestnut Street
Meadville,PA
April 22,2006

To whom it may concern,

From: Janine G. Maziarz
French-Spanish Teacher, retired.

Subject: Testimony related to colleague Spanish teacher Claudette De Leon.

Ms. De Leon and I have taught together in the Meadville Area School District, at the Senior High School since she transferred from Cochranton Junior-Senior High School until her dismissal.

Her expertise in the Spanish language and Spanish Literature made her an excellent replacement for Gloria Conde, a former Cuban native who was retiring. Ms. De Leon a former Mexican citizen, was more fluent in Spanish than me, a former French citizen with Spanish descendents. I must add that her former music teacher position in Mexico City brought a great deal of cultural points into her classes.

Everyone in the administration was very professional with the then 4 member department. Enthusiasm , motivation and empowerment for all levels ( 1 to 5) were our goals, encouraged by our principal George Deshner, who was a formidable promotor of foreign languages.

Then one day, Ms. De Leon shared with me that an affluent student's parents brought to the attention of our principal that she had been incorrect in regard to their son. Consequently,  a situation developed between Ms. De Leon and our principal and the school board became aware of it at some point. Even though it was not a daily confrontation, it ran its course for 10 years.

I witnessed  the pressure which was put on Ms. De Leon. Discipline problems with students were analyzed closely, Ms. De Leon informed me. She followed the rules set by our red student notebook, she took  classes for effective discipline and applied them.

I, Mrs. Maziarz became her moral support, her confidant . She had a strong character and she followed all suggestions given to her to the " T".  She felt that sometimes she was not believed when she recounted incidents involving students.


tabbies
EXHIBIT
49

Her teaching never changed, her objective of teaching conversational Spanish at its best, and introducing new methods for more efficiency.

When observed by the administration, she followed their recommendations accurately. She shared directives with me. She was worried, overwhelmed by the extra reports she was to turn in to the administration. The assistant principals working a that time increased the pressure on her.

She became a strong target and cried a lot out of despair. She went under medical care for her depression. Her teaching was never neglected, it improved. The students had a routine which they followed well, it was their duty to comply. She shared her techniques with me.

Since she had lost her own classroom and had became again a traveling teacher she taught in my classroom two periods a day. Occasionaly I had to go into that room and her classes always brought out my admiration for her skills.

She shared her concerned about being reprimended for talking in hallways or being late at the cafeteria for study hall, when everybody else were trusted in performing their duties.

When she expressed firmly her plan of action against the school district in a meeting, she was surprised of being accused of raising her hand at Mr. Desimer. She never raised a hand at her children.

It is too common for adults to see all Mexican people as uncivilized, incompetent and uneducated. Ms. De Leon is an American citizen, well educated in the Fine Arts, and promoter of the education of young people, as are her mother and siblings who are strongly involved in schools and teaching.

The above is the information that I have seen and heard while teaching with Ms. De Leon.

Sincerely yours,

Jeanne G. Maziarz

Subscribed to before me this 24th day
of April, 2006.
(Seal)

My commission expires:

Notarial Seal
Melanie G. Jackson, Notary Public
City of Meadville, Crawford County
My Commission Expires Apr. 24, 2008
Member, Pennsylvania Association of Notaries

COMMONWEALTH OF PENNSYLVANIA

## Michael Mercatoris, Ph.D.
Clinical Psychologist

Michael Mercatoris, Ph.D. & Associates, P.C.

462 Chestnut Street • Meadville PA 16335 • 814-336-6308 • FAX 814-337-6067

March 12, 2002

Re: Claudette DeLeon

To Whom It May Concern:

Claudette DeLeon is currently a patient under the care of myself and Gregory L. Richards, M.D. of this practice for the treatment of recurrent severe depression. Because of her current psychological status I have advised her to take off work from 3/13/02 to 3/17/02. If there are any questions regarding this please feel free to contact this office.

Sincerely,

Michael Mercatoris, Ph.D.
Clinical Psychologist

CONFIDENTIAL



EXHIBIT
50

TO: Mr. John Higgins

From: Claudette de leon

RE: Classroom Evaluation

Date: 3-13-02

Please be advised that
I will comply with your
suggestions as stated on your
evaluation performed on
thursday 3-07-02.

EXHIBIT
S1



CRAWFORD CENTRAL SCHOOL DISTRICT

Instructional Support Center
11280 Mercer Pike
Meadville, Pennsylvania 16335-9504
Telephone: (814) 724-3960
FAX: (814) 333-8731
www.craw.org

Michael E. Dolecki, *Superintendent*

Charles E. Heller III
*Assistant Superintendent*
Sharon C. Sanders
*Business Management & Secretary*
Kathy K. Thomas
*Director of Curriculum & Instruction*
Nicholas J. Chetcposkh
*Director of Special Services*
John M. Bauer
*Supervisor of Buildings & Grounds*
Richard L. Fetzer
*Coordinator of Technology*

OFFICE OF THE SUPERINTENDENT

March 18, 2002

Claudette deLeon
11983 Eureka Road
Edinboro, PA 16412

Dear Ms. deLeon:

Please be advised that you are hereby suspended, with pay, from your teaching position at the Meadville Area Senior High School as of March 18, 2002. You are further hereby directed to submit to a psychiatric evaluation and the District will advise you of the time and date of your appointment with a psychiatrist to be selected. This action is based on the medical excuse that you presented to the administration of Meadville Area Senior High School on March 14, 2002.

Please acknowledge your willingness to comply with this directive on or before Friday, March 22, 2002.

Sincerely

*Michael E. Dolecki*

Michael E. Dolecki
Superintendent of Schools

MED/ak

PC:   Mr. Emil M. Spadafore, Jr., C.C.S.D. Solicitor
      Mr. George Deshner, Principal – Meadville Senior High
      Personnel File

*I will comply with the*
*above directive*

*Claudette deLeon*
*3/18/02*

*I will comply with the*
*Claudette deLeon*
*3/18/02*

EXHIBIT
52



EXHIBIT
S3

**CRAWFORD CENTRAL SCHOOL DISTRICT**

Instructional Support Center
11280 Mercer Pike
Meadville, Pennsylvania 16335-9504
Telephone: (814) 724-3960
FAX: (814) 333-8731
www.craw.org

Michael E. Dolecki, Superintendent

Charles E. Heller III
Assistant Superintendent
Shawn G. Sampson
Business Manager/Board Secretary
Kathy K. Thomas
Director of Curriculum & Instruction
Nicholas J. Charapovich
Director of Special Services
John M. Bauer
Supervisor of Buildings & Grounds
Richard L. Fraizer
Coordinator of Technology

**OFFICE OF THE SUPERINTENDENT**

April 25, 2002

Claudette deLeon
11983 Eureka Road
Edinboro, PA 16412

Dear Ms. deLeon:

Please be advised that a psychiatric appointment has been rescheduled for you with Dr. McFadden in Farrell, Pennsylvania, on Friday, May 3, 2002, at 1:30 P.M. The directions to his office are the following:

Take 79 and exit at the Mercer Exit; take Rt. 62 to intersection of Rt. 18 and 62 (at the Shenango Mall); make a left onto Rt. 18 (heading towards West Middlesex); at the corner where there will be a Sheetz and Combine Bros. Restaurant; turn right and go up the hill past the cemetery and turn into the 2nd entrance to UPMC; right onto Memorial Drive; left onto Green Street. It is the Red Cedar Solar Building with a big blue sign "Green Street Building". The office is listed as UPMC Behavior Health.

The phone number for Dr. McFadden's office is 1-724-981-5601. You are encouraged to call my office if you have any questions.

Sincerely,

Michael E. Dolecki
Superintendent of Schools

MED/cak

PC:   Mr. Charles E. Heller, III, Ass't. Superintendent
      Mr. Emil M. Spadafore, Jr., School District Solicitor
      Mrs. Patricia A. Deardorff, C.C.E.A. President
      Personnel File

Sent Certified Mail on April 25, 2002



#20

RECEIVED
MAY 20 2002
CRAWFORD CENT[illegible] SCHOOL DISTRICT
[illegible]

FILE COPY

UPMC Horizon
*Psychiatric Services*

*A hospital of UPMC Health System*

Ronald O. McFadden, MD
1980 Green Street
Farrell, PA 16121
724-983-7197
Lic.# ____________

Name Claudette DiLeon Age ______
Address ____________ Date 5/17/02
Refill ______ times

**Rx**

Claudette is / was able to return to work without restriction as of 5/3/02. Letter to follow.

Ron McFadden MD DEA# ______

In order for a brand name product to be dispensed, the prescriber must handwrite "Brand Necessary" or "Brand Medically Necessary" in the space below.

____________ Prex007

# CRAWFORD CENTRAL SCHOOL DISTRICT

Instructional Support Center
11280 Mercer Pike
Meadville, Pennsylvania 16335-9504
Telephone: (814) 724-3960
FAX: (814) 333-8731
www.craw.org

Michael E. Dolecki, Superintendent

Chair
A.
Shan
Business Manager/Board Secretary
Kathy K. Thomas
Director of Curriculum & Instruction
Nichols J. Cherepovich
Director of Special Services
John M. Bauer
Supervisor of Buildings & Grounds
Richard L. Fraker
Coordinator of Technology

## OFFICE OF THE SUPERINTENDENT

March 26, 2002

Claudette déLeon
11983 Eureka Road
Edinboro, PA 16412

Dear Ms. déLeon:

Please be advised that an appointment has been made for you with Dr. Kenneth Bill at the Clarion Psychiatric Center on April 25, 2002, at 1:00 P.M. I am requesting that you call his office as soon as possible and confirm this appointment and provide pertinent information that is required before your visit. The number of Dr. Bill's office is 1-800-253-4906. Your medical insurance should cover all expenses for the appointment. In case the insurance does not cover expenses, Crawford Central will be responsible for costs. If an appointment can be made with a doctor prior to the above date, the District will notify you in writing.

I also would like to reconfirm the District's willingness to consider discussing a paid leave for the remainder of the 2001-2002 school year based upon your resignation as a teacher in the Crawford Central School District.

Please call my office if you have any questions.

Sincerely,

Michael E. Dolecki
Superintendent of Schools

MED/cak

PC:    Mrs. Patricia Deardorff, C.C.E.A. President
       Mr. George Destiner, Principal – Meadville Senior High
       Mr. Emil M. Spadafore, Jr., C.C.S.D. Solicitor
       Personnel File

Sent Certified Mail on March 26, 2002

File: C:Drive\Misc.MED\Confidential\File\CdeLeonDrAppt-22-02.doc

AN EQUAL RIGHTS AND OPPORTUNITIES SCHOOL DISTRICT



EXHIBIT
53(b)

#20



RECEIVED
MAY 20 2002
CRAWFORD COUNTY COMMON PLEAS
SUPR OF ...

FILE COPY



## UPMC Horizon
### Psychiatric Services

Ronald D. McFadden, MD
1980 Green Street
Farrell, PA 16121
724-983-7197
Lic.# _____

*A hospital of UPMC Health System*

Name _Claudette D-Leon_ Age _____

Address _____ Date _5/17/02_

**Rx** Refill _____ times

Claudette is/was able
to return to work
without restriction as
of 5/3/02. Letter to
follow.

Ron McFadden _____ -MD DEA# _____

In order for a brand name product to be dispensed, the prescriber must handwrite "Brand Necessary"
or "Brand Medically Necessary" in the space below.

_____ Pres007



EXHIBIT
54

**CRAWFORD CENTRAL SCHOOL DISTRICT**
Meadville, Pennsylvania
**PROFESSIONAL EVALUATION INSTRUMENT**

*Appendix A must be used in conjunction with their Philosophy and Rationale Section.*

Teacher __Claudette deLeon__

Subject Area __Spanish I__    Date __2/18/02__    Grade Level __9-12__    Years of Service as a full-time employee in the District __12__

S: Satisfactory    U: Unsatisfactory

Building __Meadville Area Senior High School__

---

**I. PROFESSIONAL COMPETENCY**

**A. PREPARATION - PLANNING**
ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO PREPARE, PLAN AND USE EFFECTIVELY INSTRUCTIONAL LESSONS APPROPRIATE TO THEIR TEACHING ASSIGNMENT.

U

The following criteria are guidelines for consideration:
Instruction indicates definite goals have been established in correlation with the curriculum.
Resourceful in selection of instructional materials.
Teacher participates in peer-group discussion of teaching techniques.
Lesson plans were purposeful.

Has written plans, seating charts, plus special schedules available (when appropriate).
The room is attractive and neat (use of bulletin boards, posters, etc.).
Teacher adjusts the physical features of the room to provide a healthful and meaningful environment.
Decor or room corresponds to curriculum.

*Comments*

---

**B. TECHNIQUE - TEACHING EFFECTIVENESS**
ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO USE APPROPRIATE TEACHING TECHNIQUE TO ENHANCE TEACHING EFFECTIVENESS.

U

The following criteria are guidelines for consideration:
Uses auditory and visual aids purposely.
Makes explanations clear and concise.
Uses student's experience to motivate interest.
Use a variety of instructional methods.
Stresses interest and variety.
Obtains positive reaction from most students.
Makes effective use of community resource.

Encourages and directs student interaction.
Attempts to motivate students in reaching levels of performance commensurate with their ability.
Provide for student involvement in planning of classroom activities.
Provides alternative methods of study.
Maintains class control essential to the learning process.
Teacher demonstrates knowledge of the subject.

*Comments*    Lack of classroom control has effected the learning process. Students are sleeping in class, drinking beverages, and walking freely around room while instruction is going on. Mrs. DeLeon has been unable to implement effective classroom management

---

**C. TEACHER - STUDENT INTERACTION**
ALL PROFESSIONAL STAFF SHOULD ENCOURAGE POSITIVE TEACHER - STUDENT RELATIONSHIPS.

U

The following criteria are guidelines for consideration:
Courtesy and tact - is polite, considerate, and respectful with students.
Demonstrates ability to work with students while maintaining the right to be firm.
Encourages positive, professional relationship with students.
Strives to develop self-discipline such as responsible behavior, respect and honesty in the student.
Understands and respects differences in abilities, interests and needs of students.

Encourage student interaction and free expression of ideas.
Encourage the development of desirable study habits and/or use of study time.
Encourages the student in the planning of classroom activities.
Establishes an attitude of friendliness and a feeling of mutual interest between students and teacher, shown on television or partially.

*Comments*    Mrs. deLeon becomes argumentative and derogatory when meeting with administration regarding educational improvements. She continuously looks away or down at the floor when suggestions for improvement are being made.

---

**II. PERSONAL CHARACTERISTICS AND TRAITS**

**A. RESPONSE TO SUPERVISION**
ALL PROFESSIONAL STAFF SHOULD BE ABLE TO RESPOND EFFECTIVELY TO SUPERVISION.

U

The following criteria are guidelines for consideration:
Demonstrates ability to work with administration in achieving improvement.
Observes administrative policies while receiving the right to disagree.
Responds to constructive criticism for improvement of the educational program.

*Comments*    Mrs. deLeon lacks consistency when dealing with matters of discipline in her classroom. Some students are reprimanded for specific behaviors in the classroom, while others, exhibiting the same behaviors, go unattended.

---

**B. ATTITUDE**
ALL PROFESSIONAL STAFF SHOULD DISPLAY POSITIVE ATTITUDE TOWARD ACHIEVING EDUCATIONAL GOALS.

U

The following criteria are guidelines for consideration:
Displays interest, enthusiasm, flexibility and dedication as a teacher.
is polite and considerate.

*Comments*    Poor attitude is shown during meetings with administration. Mrs. deLeon will argue with administration, glare at administrators and have emotional outbursts.

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COOPERATE WITH OTHERS.

The following criteria are guidelines for consideration:

Maintains sound relationships and worthful cooperation with students, parents and school personnel.

Carries out duty assignments regularly.

**Comments** Mrs. deLeon has continually ignored the action plan given to her on June 8, 200?. She agreed to this action plan and all points found within, but when we met with her she the plan she continually cites harassment concerning the observations she agreed to. Statements made include "Why am I on an Action plan?", "No one else in the district is o

D. **MATURITY**

ALL PROFESSIONAL STAFF SHOULD DISPLAY MATURITY.

The following criteria are guidelines for consideration:

Demonstrates self-confidence and a pleasant disposition toward students, parents and co-workers, has a sense of humor.

Exhibits intelligent, mature behavior and conduct herself in a manner which exhibits professional dignity.

Demonstrates honesty and respect for laws.

**Comments** Mrs. deLeon is antagonistic to parents, students and administration. This behavior surfaces in the classroom, in parent conferences, and administrative meetings.

E. **DEPENDABILITY**

ALL PROFESSIONAL STAFF SHOULD BE DEPENDABLE.

The following criteria are guidelines for consideration:

Is responsible in meeting education obligations.

Demonstrates appropriate use of language and voice control.

Is prompt in meeting deadlines, can be relied upon to take some initiative and complete various assignments which are in her area.

**Comments** Mrs. deLeon has not sufficiently met the areas of concern outlined in her Action plan.

F. **COMMUNICATION**

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COMMUNICATE EFFECTIVELY.

The following criteria are guidelines for consideration:

Demonstrates appropriate use of language and voice control.

Give clear and concise instructional direction.

Has listening ability.

Has skill in asking pertinent questions.

Solves everyday problems realistically.

Record keeping is accurate and reports are submitted promptly and neatly.

**Comments** Mrs. deLeon builds walls when communicating with administration and parents. She pays no attention to what administrators are saying by looking away, looking at the floor and arguing. She glares at parents during parent conferences which cause par conferences to deteriorate rapidly.

G. **PHYSICAL CHARACTERISTICS**

ALL PROFESSIONAL STAFF SHOULD GIVE ADEQUATE ATTENTION TO PERSONAL AND PHYSICAL CHARACTERISTICS.

The following criteria are guidelines for consideration:

Gives adequate attention to personal grooming and appropriate dress.

Is physically fit as evidenced by regular attendance, and the ability to carry a normal assignment. (This does not apply to temporary disabilities).

**Comments**

H. **PROFESSIONALISM**

ALL STAFF SHOULD STRIVE FOR CONTINUED PROFESSIONAL GROWTH OPPORTUNITIES.

The following criteria are guidelines for consideration:

Strives to attend workshops, seminars, etc. to provide for professional growth.

Is an active member in professional organization.

Communicates in writing or verbal, is serve in a responsible position in local, state or state educational organization.

**Comments** There has been no evidence of professional development or growth opportuniti at this time.

I have read this report and discussed it with my evaluator.

OVERALL EVALUATION:

☐ - Satisfactory

☐ - Unsatisfactory

**Teacher's Comments:** (If extra comment area is needed, please attach sheet as indicated place)

*Due to Mrs. deLeon's leave of absence, the Appendix A (Professional Evaluation

## APPOINTMENT

The undersigned impartial Arbitrator was selected by representatives of Crawford Central School District and of Crawford Central Education Association from a panel furnished by the Pennsylvania Bureau of Mediation to hear and decide a dispute pending between the Parties. Arbitration Hearings were conducted on May 7, June 13, and August 21, 2003 at the District's Administration Offices in Meadville, Pennsylvania. At those times, both sides were represented by Legal Counsel and each of them was afforded fair and ample opportunity to present testimony, exhibits and arguments in support of the respective positions. Records of the proceedings were compiled and subsequently transcribed. After reviewing the complete evidentiary record thus comprised, as well as Post-Hearing Briefs submitted on behalf of the Parties by their Legal Counsel through the mail, the undersigned now enters the following disposition of this controversy.

## PERTINENT SUBJECT MATTER

A claim asserting as follows was filed on behalf of Grievant Claudette deLeon on or about 6-14-02:

### STATEMENT OF GRIEVANCE:

The school district has violated the collective bargaining agreement and legal statutes in their observations and evaluation of Claudette DeLeon. The district issued an unjust and improper evaluation to the grievant on May 30, 2002.


EXHIBIT
S6
tabbies

- 1 -

RELEVANT PORTIONS OF THE COLLECTIVE BARGAINING AGREEMENT

ARTICLE I
RECOGNITION

Unit    ...

The Board hereby recognizes the Association as the exclusive representative for the collective bargaining for all professional employees included in the bargaining unit as certified and determined by the Pennsylvania Labor Relations Board. A copy of said determination is reproduced and made a part hereof.

The parties acknowledge that the Directors of Secondary and Elementary Guidance, Testing and Adult Education are encompassed by the term "Guidance Counselors" which appears in the unit description portion of the Certification of Representative below.

...

ARTICLE III
GRIEVANCE PROCEDURE

A.    Definitions

1.    Grievance

A "grievance" is hereby defined as:

a.    a claim by an employee or employees regarding the meaning, interpretation or application of any provision in this Agreement

or

b.    that the local school board or its agents have acted inequitably in the application of the terms of this Agreement.

- 2 -

B. __Purpose__

The purpose of this procedure is to secure at the lowest possible level equitable solutions to the problems which may from time to time arise affecting employees. Both parties agree that these proceedings will be kept as informal and confidential as may be appropriate at any level of the procedure.

C. __Time Limits__

   . . .

6. __Level Four – Arbitration__

   . . .

   a. Within ten (10) school days after such written notice of submission to arbitration, the Board and the Association shall attempt to agree upon a mutually acceptable arbitrator and shall obtain a commitment from said arbitrator to serve. If the parties are unable to agree upon an arbitrator, or to obtain such a commitment within the specified period, a request for a list of arbitrators may be made to the Pennsylvania Mediation Board by either party. The parties shall then be bound by the rules and procedures of the Pennsylvania Mediation Board in the selection of an arbitrator.

   b. The arbitrator so selected shall confer with the representatives of the Board and the Association and hold hearing promptly and shall issue his decision not later than twenty (20) days from the date of the close of hearings, or, if oral hearings have been waived, then from the date of the final statements and proofs on the issues are submitted to him. The arbitrator's decision shall be in writing and shall set forth his findings of fact, reasoning and conclusions on the issues submitted. The arbitrator shall be without power or authority to make any decision which requires the commission of an act prohibited by law or which is in violation of the terms of this Agreement. The decision of the arbitrator shall be submitted to the Board and the Association and shall be final and binding on the parties.

c.  Costs for the services of the arbitrator, including per diem expenses if any, and actual and necessary travel, subsistence expenses and the costs of the hearing room and arbitration reporter, shall be borne equally by the Board and the Association or the aggrieved party. Any other expenses incurred shall be paid by the party incurring same.

. . .

## ARTICLE IV
## RIGHTS OF PROFESSIONAL EMPLOYEES

A.  **Just Cause Provision**

No professional employee shall be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause. Any such action asserted by the Board or any agent or representative thereof, shall be subject to the grievance procedure herein set forth.  The reasons forming the basis for disciplinary action will be made available to the professional employees and the Association promptly.

. . .

## ARTICLE XII
## EMPLOYEE EVALUATION

A.  **General Criteria**

1.  **Basis for Conducting Evaluations**

Evaluations shall be conducted under the provisions of Section 1123 of the School Code and the School District Policy governing the use of Appendix A of the Professional Evaluation Instrument.

2.  **Observation Reports**

An employee shall be given a copy of any written observation report.  No such report shall be submitted to the central office, placed in the employee's file, or otherwise acted upon without prior review by the employee.  The employee shall acknowledge that he/she has had the opportunity to review such material by affixing his/her signature to the copy to be filed with the express understanding that

such signatures in no way indicate agreement with the contents of the report.

3. **Rating Reports**

The employee shall receive a copy of all rating reports prior to said forms being placed in his/her personnel file. The employee may request a conference to review this rating form with the appropriate administrator.

4. **Rating Reports**

Notification of rating of temporary professional employees shall be done in accordance with the provisions of Section 1108(a) of the School Code of 1949 as amended and the School District Policy governing the use of Appendix A of the Professional Evaluation Instrument.

. . .

## ARTICLE XXII
## MANAGEMENT RIGHTS

The exercise of the foregoing powers, rights, authority, duties and responsibilities by the Board, the adoption of policies, rules, regulations and practices in furtherance thereof, and the use of judgment and discretion in connection therewith shall be limited only the specific and expressed terms of this Agreement and then only to the extent such specific and expressed terms hereof are in conformance with the Constitution and laws of the State of Pennsylvania and the Constitution and laws of the United States.

## ARTICLE XXV
## WAIVERS

The parties agree that all negotiable items have been discussed during the negotiations leading to this Agreement and that no additional negotiation on this Agreement will be conducted on any item, whether contained herein or not, during the life of this Agreement.

- 5 -

# SCHOOL CODE

## 24 PS 11-1123 Rating System

In determining whether a professional employee shall be dismissed for incompetency or unsatisfactory teaching performance as provided for in section 1122(a) of this act, and in rating the services of a temporary professional employee, the professional employee or temporary professional employee shall be rated by an approved rating system which shall give due consideration to personality, preparation, technique; and pupil reaction, in accordance with standards and regulations for such scoring as defined by rating cards to be prepared by the Department of Education, and to be revised, from time to time, by the Department of Education with the cooperation and advice of a committee appointed by the Secretary of Education, including 'representation from district superintendents of schools, classroom teachers, school directors, school supervisors, parents of school-age children enrolled in a public - school, a representa-tive from a college or department of education within a higher education institution located within this common-wealth, and such other. groups or interests as the Secretary of Education may deem appropriate. Rating shall be done by or under the supervision of the super-intendent of schools or, if so directed by him, the same may be done by an assistant superintendent, a super-visor, or, a principal, who has supervision over the work of the professional employe or temporary profes-sional employe who is being rated: Provided that no unsatisfactory rating shall be valid unless approved by the district superintendent.

## BACKGROUND FACTS

This grievance concerns an unsatisfactory performance evaluation issued to the Grievant by the Crawford Central School District for the 2001-2002 school year. As has already been suggested, the evidentiary record is quite voluminous and no effort will be made to reiterate all of the testimony and other evidence at this juncture, although it is incorporated fully herein by reference. The most salient aspects of this case will be identified in the course of the analysis which follows.

It is noteworthy however that the Crawford Central School District has utilized an alternative rating form, purportedly consistent with discretion afforded to the District under the Pennsylvania School Code, for many years. The procedure utilized in order to arrive at the Grievant's unsatisfactory performance evaluation is very much at the heart of this dispute. Critical details of that procedure and the relevant legal mandates will be examined hereafter in detail.

Grievant Claudette deLeon is a Spanish teacher at Meadville Area High School where she has taught since 1989. In the course of her career, she has experienced a series of disagreements with the District's Administration as well as emotional depression for which she has sought medical attention. Just prior to the issuance of her unsatisfactory performance evaluation she consented to and was subjected to a psychological examination at the District's expense. She was found to be able to return to work, but was then issued the disputed rating. The grievance form lists the "relief sought" as follows:

- 7 -

The district should rescind the evaluation and all directives and action plans. The unsatisfactory rating should be replaced with a satisfactory rating.

The District shall cease and desist from any further such action.

The District shall make the grievant whole.

And any other relief, punitive or otherwise, the arbitrator may deem appropriate.

## CONTENTIONS OF THE PARTIES

The Association insists that the District has failed to follow the proper procedure in issuing the unsatisfactory rating to the Grievant and has abdicated its responsibilities and reneged upon the commitment to teachers made when they collaborated on creating the alternative rating form. It believes that Ms. deLeon's evaluation is fatally flawed and cannot stand for various reasons, including that it was not issued within five days of the final observation preceding the rating and was not adequately sub- stantiated by anecdotal records. It suggests that the requirement that the Grievant submit to a psychological examination was unwarranted and in viola- tion of the Americans With Disabilities Act and that the Grievant was made the victim of a pattern of discrimination. It contends that the Parties' arbi- tration precedent establishes that the District must have just cause to issue an unsatisfactory rating and has the burden of proof to establish unsatis- factory performance and it argues that the District has failed in its effort to justify its action in this forum. It accordingly requests that the grievance be sustained and that the District be ordered to withdraw the unsatisfactory rating and replace it in the Grievant's personnel record with a satisfactory evaluation for the 2001-2002 school year.

- 8 -

The District maintains that neither the issuance of an "unsatisfactory" rating nor an action plan for improvement is arbitrable under apposite case law in Pennsylvania. It asserts that the action plan issued to the Grievant for the 2001-2002 school year was properly issued and that in fact action plans do not even constitute discipline. In any event, it notes that the Grievant's 2001-2002 action plan was never grieved. It characterizes the Association's arguments regarding potential retaliation, bad faith motives, hidden agenda, etc. as claims that make no sense and lack merit. It submits that the District's offer to allow the Grievant to resign in March of 2002 was legitimately tied to her unstable emotional state and not any evidence of a discriminatory motive. It emphasizes that its witnesses are more credible than the Association's witnesses, especially the Grievant, and it takes the position that the prior arbitration cases involving ratings of this Grievant clearly involved distinguishable facts not germane to the instant case. The District is confident that its issuance of the unsatisfactory rating to the Grievant was proper and it requests for all of these and other reasons that the Arbitrator deny the grievance and uphold its actions in all respects.

## DISCUSSION AND FINDINGS

While the record in this case contains a ponderous array of facts and claims which might be mentioned here and discussed both at length and with acute attention to detail, the undersigned believes instead that the more circumspect approach here is to cut out those concerns which are ultimately peripheral and to deal from the outset with the crux of the matters he is compelled to straightforwardly address. Effort will be expended to achieve that objective.

As a threshold issue, the District has interposed the argument that neither the Grievant's unsatisfactory rating nor action plans it created, ostensibly for her benefit, are arbitrable matters properly brought to this forum. However, an unsatisfactory rating issued without just cause would most emphatically deprive a professional employee of a professional advantage in violation of Article IV of the Parties' Collective Bargaining Agreement. By contrast, the action plans issued to the Grievant have not been shown to pose any particular threat to the Grievant's status or to constitute disciplinary action; accordingly, they are dismissed from further consideration in this tribunal.

As to the unsatisfactory rating, this Arbitrator is quite simply not at liberty to ignore what the record so emphatically demonstrates. Various alleged deficiencies were cited and relied upon by the District as the causal factors triggering her overall unsatisfactory rating for the school year in question and they must be reviewed. The principal document purporting to evidence the basis for that verdict is reproduced in relevant part for convenience here as follows:

- 10 -

CRAWFORD CENTRAL SCHOOL DISTRICT
Meadville, Pennsylvania
PROFESSIONAL EVALUATION INSTRUMENT

Appendix I.1 must be used in conjunction
with, the Philosophy and Rationale section.

Teacher    Claudette deLeon                    Building  Meadville Area Senior High School

Subject Area    Spanish I              Date  3/18/02    Grade Level  9-12    Years of Service as a full-time employee in the District  12
                                          S - Satisfactory                              U - Unsatisfactory

[ U ]

**B.  TECHNIQUE - TEACHING EFFECTIVENESS**

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO USE APPROPRIATE TEACHING TECHNIQUE TO ENHANCE TEACHER EFFECTIVENESS.
The following criteria are guidelines for consideration:

Uses auditory and visual aids as appropriate.
Makes subject matter clear and concise.
Uses student's experience to motivate interest.
Uses a variety of instructional methods.
Stimulates interest and curiosity.
Ostains positive reaction from most students.
Makes effective use of community resources.

Comment    Lack of classroom control has effected the learning process.  Students are
sleeping in class, drawing pictures and walking freely around room while instruction
is going on.  Mrs. DeLeon has been unable to implement effective classroom management.

[ U ]

**C.  TEACHER - STUDENT INTERACTION**

ALL PROFESSIONAL STAFF SHOULD ENCOURAGE POSITIVE TEACHER - STUDENT RELATIONSHIPS.
The following criteria are guidelines for consideration:

Courtesy and tact in politie, considerate, and respectful with students.
Attempts to maintain proper classroom while working with students.
Encourages positive, professional relationship with students.
Strives to develop self-discipline such as responsible behavior, respect and
honesty in the student.
Understands and respects differences in abilities, interest and needs of
students.

Comment    Mrs. deLeon lacks consistency when dealing with matters of discipline in her
classroom.  Some students are reprimanded for specific behaviors in the classroom
while others exhibiting the same behaviors go unattended.

**II.  PERSONAL CHARACTERISTICS AND TRAITS**

**A.  RESPOND TO SUPERVISION**

ALL PROFESSIONAL STAFF SHOULD BE ABLE TO RESPOND EFFECTIVELY TO SUPERVISION.
The following criteria are guidelines for consideration:

Demonstrates ability to work with administrators to achieve educational improvements.
Observes administrative policies while reserving the right to seek change.
Responds to constructive criticism for improvement of the educational program.

Comment    Mrs. deLeon becomes argumentative and derogatory when meeting with
administration regarding educational improvements.  She continuously looks
away or down at the floor when suggestions for improvement are being made.

Encourage and direct students interactions.
Attempts to motivate students in reaching levels of performance consistent
with their ability.
Provide for student involvement in planning of classroom activities.
Provides alternative positions of study.
Maintains class product conducive to the learning process.
Teacher demonstrates knowledge in the subject.

Encourage student interaction and free expression of Ideas.
Encourages the development of desirable study habits and/or use of study
time.
Encourages the student in the planning classroom activities.
Establishes an attitude of friendliness and a feeling of mutual interest
between students and teacher. Shows no favoritism or partiality.

- 11 -

**B.   ATTITUDE**

U

ALL PROFESSIONAL STAFF SHOULD DISPLAY POSITIVE ATTITUDE TOWARD ACHIEVING EDUCATIONAL GOALS.

The following criteria are guidelines for consideration:

Displays interest, enthusiasm, flexibility and dedication as a teacher.

Is polite and considerate.

**Comments**

   Poor attitude is shown during meetings with administration.  Mrs. deLeon will
argue with administration, glare at administrators and have emotional outbursts.

---

**C.   ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COOPERATE WITH OTHERS.**

U

The following criteria are guidelines for consideration.

Maintains sound relationships and works constructively with students, parents and school personnel.

Carries out duties fairly and cooperates regularly.

**Comments**

   Mrs. deLeon has continually ignored the action plan given to her on June 8, 2001.
She agreed to this action plan and all points found within, but when we met with her about
the plan she continually cites harassment concerning the observations she agreed to.
Statements made include "Why am I on an Action plan?", "No one else in the district is on
one.", "No one else is observed as much as I am."

---

**D.   MATURITY**

U

ALL PROFESSIONAL STAFF SHOULD DISPLAY MATURITY.

The following criteria are guidelines for consideration:

Demonstrates self-confidence and a pleasant disposition toward students, parents and co-workers, has a sense of humor.

Exhibits intelligent, mature behavior and conducts himself in a manner when outside professional dignity.

Demonstrates honesty and respect for laws.

**Comments**

   Mrs. deLeon is antagonistic to parents, students and administration.  This
behavior surfaces in the classroom, in parent conferences and administrative meetings.

---

**E.   DEPENDABILITY**

U

ALL PROFESSIONAL STAFF SHOULD BE DEPENDABLE.

The following criteria are guidelines for consideration:

Is responsible in meeting education obligation.

Is punctual in meeting schedule, can be relied upon to take some initiative and cope with various circumstances which may arise.

                    Solves everyday problems realistically.

                    Record keeping is accurate and reports are submitted promptly and neatly.

**Comments**

   Mrs. deLeon has not sufficiently met the areas of concern outlined in her
Action plan.

---

**F.   COMMUNICATION**

U

ALL PROFESSIONAL STAFF SHOULD DEMONSTRATE THE ABILITY TO COMMUNICATE EFFECTIVELY.

The following criteria are guidelines for consideration:

Demonstrates appropriate use of language and voice control.

Gives clear and concise instructional directions.

                    Has listening ability.

                    Has skill at asking pertinent questions.

**Comments**

   Mrs. deLeon builds walls when communicating with administration and parents.
She pays no attention to what administrators are saying by looking away, looking at the
floor and arguing.  She glares at parents during parent conferences which cause parent
conferences to deteriorate rapidly.

**PROFESSIONALISM**

ALL STAFF SHOULD STRIVE FOR CONTINUED PROFESSIONAL GROWTH OPPORTUNITIES.

The following criteria are guidelines for consideration:

Demonstrate a willingness to serve in a responsible position in local, district or state educational organizations.

Strives to attend workshops, seminars, etc. to provide for professional growth.

Is an active member in professional organizations.

Comment:

There has been no evidence of professional development or growth opportunities at this time.

Teacher's Comments: (if extra comment area is needed, please attach an additional sheet.)

*Due to Mrs. deleon's leave of absence, the Appendix A (Professional Evaluation Instrument) was rescheduled until 5/28/02.

OVERALL EVALUATION:

☐ U · Satisfactory

☐ U · Unsatisfactory

I have read this report and discussed it with my evaluator.

_The signature of Mrs. deleon does not indicate agreement to the statements made within this form._

_Chanette deleon_
Signature of Teacher

Signature of Evaluator

Interestingly, in a prior arbitration between not only the same Parties but also Grievant deLeon, Arbitrator Ronald F. Talarico had occasion to make certain incisive observations which are eminently apropos in the instant context as well.  Those comments are worthy of copying here:

Obviously recognizing the significance that tenure holds for professional employees, the Pennsylvania General Assembly has gone to great lengths in determining the circumstances under which a professional employee may be dismissed for incompetency.  Those requirements, set forth in Section 1123 of the Public School Code, require an approved rating system which gives due consideration to certain evaluative categories, and mandates that evaluations be in accordance with standards and regulations prepared by the Department of Public Instruction.

Pursuant to that authority, the Department of Public Instruction promulgated certain regulations found at 22 Pa. Code regarding ratings which use alternative forms:

Section 351.24(d)

"Rating shall be substantiated by anecdotal records and discussed with the employee within five working days after the final observation preceding the rating.  The discussion may take place before or after the rating is approved by the Superintendent.  The five day limitation may be extended only because of emergency or extenuating circumstances."

Section 351.26(c)

"Whenever an unsatisfactory rating is given, it shall be supported by anecdotal records.  The records shall include specific evidence likely to be important in the event of dismissal."

These regulations contain three very critical and basic requirements, i.e. (1) that the rating be substantiated by anecdotal records; (2) that the rating be discussed with the employee within five working days after the final observation preceding the rating; and (3) the five day limitation may be extended only because of emergency or extenuating circumstances.

- 14 -

...

However, there also exists a second and equally important basis upon which to invalidate the unsatisfactory rating given to the Grievant. The School District failed to adequately substantiate its rating by anecdotal records, as is also required by Section 351.2H(d). As one might expect, the requirements regarding unsatisfactory ratings are much more specific and rigorous because of the serious consequences that flow from the issuance of such a rating. One of the most repeated admonitions set forth in all of the Department of Education regulations on ratings is that unsatisfactory ratings must be accompanied by appropriate anecdotal records... Although the term anecdotal records is not specifically defined, Section 351.26(c) of the regulations require that anecdotal records "include specific evidence likely to be important in the event of dismissal."

The importance of the anecdotal records that must accompany an unsatisfactory rating cannot be overstated. This is an extremely serious situation for any teacher. After having received a first unsatisfactory rating, one's teaching career hangs in the balance because a second unsatisfactory rating will likely trigger a dismissal on the basis of incompetency.

Therefore, a proper anecdotal record should provide a clear outline for the teacher as to the events that caused the unsatisfactory rating; but perhaps even more importantly, it should reflect what can be done to improve one's performance and correct undesirable behavior. Furthermore, in the event of a dismissal the anecdotal record would, in essence, become a specific statement of the charges against the teacher, and at the same time would help form the basis for any defense of that teacher. If the anecdotal records lack these qualities to any significant degree, the rating must be considered invalid.

Accompanying the standardized Professional Evaluation Instrument that the Grievant received on June 6, 1996 is a one page Summative Evaluation Report, which is set forth in its entirety beginning on page 7 of this Opinion. That Report, simply references, in a very broad brushed fashion, the following topics:

(1) Damages to the modular classroom;
(2) Being tardy for class;
(3) Unfair treatment of students;
(4) Sharing confidential information with improper persons; and
(5) Inconsistencies in the classroom.

However, the comments contained therein are merely vague generalities, lacking specific mention of the necessary particulars....

One of the "ATTACHMENTS" or citations submitted on behalf of the Crawford Central Education Association by its Counsel purports to define anecdotal support as follows:

** 14 (2) An anecdote is a brief narrative giving the factual details of a specific incident or event. Without factual details, a rating of professional competence or efficiency is virtually worthless and is little more than epithetical opinion. Without supporting factual detail incompetency cannot be found; and without supporting factual detail an unsatisfactory rating is by definition arbitrary. The essentiality of anecdotal support for an unsatisfactory rating is beyond dispute. An anecdotal record of observations of the employe's performance on specific dates and times, and of the factual details of such observations, made contemporaneously with the observations while they are fresh in mind, is so important and so far superior in effectiveness and reliability to any later recital or documentation made for purposes of litigation, as to be worthy of a stringent rule mandating the former.[1]

Although the Association has deemed the timing of the District's unsatisfactory rating of her as a flaw which is in effect statutorily fatal to it, the undersigned believes that in fact the discussion of the Grievant's unsatisfactory rating of her as a flaw which is in effect statutorily fatal to it, the undersigned believes that in fact the fragile state of her psyche during the relevant time frame has been reasonably relied upon by the District as amounting to "extenuating circumstances." However, the blatant deficiencies in the anecdotal support related to her rating cannot be overlooked. The above-quoted extracts from the document evidencing the unsatisfactory rating dramatically illustrate this phenomenon.

1 9 Pa. D. & C.3d 147, *171, 1977 WL 190, **13 (Pa.Com.Pl.)

It is hard to imagine more emphatic evasion of factual details and plain statement of epithetical opinion than arbitrary categorization of alleged conduct without specific dates, times, and factual details. The rule in Pennsylvania is indeed stringent that observation of a professional teaching employee's performance cannot be denounced only by documentation or re- citals made non-contemporaneously with particular alleged events. In this case it appears to be quite clear that none of the general comments entered on Claudette deLeon's "Professional Evaluation Instrument" dated 3/18/02 had anything to do with her performance prior to the month of March 2002. Her emotional distress exhibited on 3/12/02 simply did not, so far as the available information indicates, warrant a premature unsatisfactory rating for the entire 2001-2002 school year without more supportive anecdotal records than the District ever produced.

- 17 -

## AWARD

The grievance is sustained in part; the disputed rating is legally invalid. The Grievant is entitled to be made whole with respect to any professional disadvantage she has been subjected to as a result of this transparent contractual violation. The undersigned impartial Arbitrator retains jurisdiction over this matter for one (1) calendar year from this date to fashion an appropriate remedy.

Pittsburgh, Pennsylvania

January 26, 2004

_____

James Clair Duff
Arbitrator

- 18 -

Crawford Central School District
Action Plan 2002/2003 School Year
Claudette deLeon

I.  Professional Competency

1.  Mrs.Claudete deLeon will be required to turn in lesson plans one week in advance for administrative review.  Lesson plans must include the lesson purpose, objectives, and teaching strategies to be utilized.

2.  The Building Administrators and Assistant Superintendent will observe Mrs.deLeon a minimum of once every two weeks.  A post conference will be held in conjunction with a review of the Action Plan after each observation. All observations conducted will not require prior notification.

3.  Mrs.deLeon will be required to observe another teacher's classroom every two weeks for the first two 6 week marking periods. A total of 6 observations will be required by the end of the second marking period.  A list of teachers will be provided for Mrs. deLeon to observe.  Mrs.deLeon will be required to give the teacher 24 hours notice before the observation takes place.  Mrs.deLeon will be required to keep a log denoting the date, time, classroom management strategies, and personal reflection of the class observed.  Within the first two weeks of the 2nd marking period a meeting will be held to discuss Mrs.deLeon's progress in regards to her Action Plan.

4.  Mrs.deLeon will develop a classroom management plan by the beginning of the 2002-2003 school year.  This plan will be reviewed and approved by the administration on August 26, 2002.

    We believe positive classroom behavior begins with a solid foundation. The following are a few suggestions that will help you start a foundation that you can build from.

A.  Think About Your Approach - Take some time to think about the strategies that you plan to use to encourage positive classroom behavior. Clarifying your strategies will make it easier for you to lead the class confidently and effectively.

B.  Visualize Possible Challenges - Imagine possible classroom challenges and review your strategies for dealing with them. Having clear-cut strategies will help keep you grounded when these challenges do arise.

EXHIBIT
S-7
tabbies

C. **Make Your Expectations Clear from the Beginning** - Make sure that students know what you expect of them. The classroom rules you present should be positive, specific and concise. You may wish to post them in the classroom or distribute them for students to sign. You should also spell out what will happen if students do not meet expectations.

D. **Model Positive Behavior** - Occasionally, you may have to remind yourself to follow your own rules. For example, if you ask students not to drink beverages in class, refrain from keeping a cup of coffee on your desk, even if you do not drink it during class.

E. **Encourage Your Students** - When you praise students who are excelling, don't forget to encourage those who are trying, but struggling. These students often lack confidence and need more positive reinforcement.

F. **Show Respect** - Showing respect for your students includes listening to their needs and preserving their dignity. It also means living up to their expectations of you, such as greeting them at the beginning of class or returning corrected homework in a timely fashion.

G. **Be Consistent** - Be sure to address student behavior in a consistent manner. Be wary of shifting strategies when misbehavior occurs. To students, this may show a lack of decisiveness. Find a strategy you like and stick with it.

H. **Keep Students Busy and Challenged** - Busy students are far less likely to exhibit disruptive behavior. Be sure that students are working at appropriate levels; boredom and frustration often lead to students' acting out.

I. **Listen to Students' Suggestions** - When building your foundation, you may be able to draw from students' and other teachers' past classroom experiences. Ask students to make suggestions about what should be expected of them and how misbehavior should be addressed. Students are often more responsive to rules they help create. Once the rules are set for the classroom they should be posted in the classroom. Utilize only 4 - 5 classroom rules that are clear and enforceable.

Creating an environment in which students know and follow the rules is challenging, but not impossible. With a little patience and perseverance, you can lay a foundation for respect and positive behavior in your classroom that lasts all year.

## II. Personal Characteristics and Traits

1. Mrs.deLeon must be willing to listen to suggestions administrators are making without becoming confrontational.

2. Mrs.deLeon must remain professional at all times when meeting with Administration and Staff. This will be evidenced by her willingness to concentrate on information being presented and not working on other materials, looking away, having emotional outbursts, and staring at floor.

3. Mrs.deLeon must follow every step of the Action Plan. She will document steps taken as per the Action Plan once every two weeks. This length of time will be reevaluated within the first two weeks of the 2nd marking period.

4. Mrs.deLeon will communicate either verbally or in writing to parents of students exhibiting routine behavioral problems in the classroom. (i.e.-talking out, not following classroom rules, out of seat, etc.) She will keep a log of the date and time of contact made or letter sent. Students who continue to misbehave after the classroom management plan has been followed and parental contact has been made are to be referred to the administration. More serious behavioral offenses are to be reported directly to the administration. (i.e.-fighting, profanity towards staff, possession/use of tobacco, etc.)

5. Mrs.deLeon should seek out workshops, seminars, and conferences that address the areas of improvement cited in the Action Plan and Appendix A. Some of these areas include, but are not limited to, classroom management, communication, discipline techniques, and positive interactions with people in the workplace.

6. The administration will be available at anytime with reasonable notice to assist you in areas, such as; professional development, classroom management, and effective communication.



## Meadville Area Senior High School

930 North Street
Meadville, Pennsylvania 16335-2199
Telephone: (814) 336-1121
Fax: (814) 337-1486

George H. Deshner
*Principal*

John C. Higgins
*Assistant Principal*
James T. Morgan Jr.
*Assistant Principal*

Don C. Apel
Guidance Director

John S. Werle
Athletic Director


EXHIBIT
58

8/30/02

Mrs. deLeon,

The Action Plan developed on June 7, 2002 required you to observe another teacher's classroom every two weeks for the first two 6-week marking periods. A total of 6 observations will be required by the end of the second marking period. To assist you in meeting this requirement we have provided a list of possible teachers that have agreed to open their classrooms to you.

We require that you give the teacher 24 hours notice before the observation takes place. You will be required to keep a log denoting the date, time, classroom management strategies and personal reflection of the class observed. Within the first two weeks of the 2nd marking period a meeting will be held to discuss your progress in regards to the Action Plan. If you have any questions please do not hesitate to contact one of the administrators in the main office.

Thank you,

John C. Higgins
Assistant Principal

PC:    Charles E. Heller III, Ass't. Superintendent
       George H. Deshner, Principal
       Dan Hootman, President of CCEA
       Personnel File

AN EQUAL RIGHTS AND OPPORTUNITIES SENIOR HIGH SCHOOL

The following teachers have agreed to open their classrooms to you:

1. Donna Lewis
2. Chuck Jones
3. Doug Mehok
4. Sean Brown
5. Carl Roznowski
6. Barbara Kurtz
7. Al Hartick
8. Sue Farkas

**SCIENCE 2002-2003**

| ROZNOWSKI CARL D9 ALL YEAR | MONDAY | TUESDAY | WEDNESDAY | THURSDAY | FRIDAY |
|---|---|---|---|---|---|
| 1 | DEPARTMENT | DEPARTMENT | DEPARTMENT | DEPARTMENT | DEPARTMENT |
| 2 | PHYSICAL SCI | PHYSICAL SCI | PHYSICAL SCI | PHYSICAL SCI | PHYSICAL SCI |
| 3 | PHYSICAL SCI | PHYSICAL SCI | PHYSICAL SCI | PHYSICAL SCI | PHYSICAL SCI |
| 4 | CHEM - ACD 03 | CHEM - ACD 03 | CHEM - ACD 03 | CHEM - ACD 03 | CHEM - ACD 03 |
| 5 | CHEM - ACD 02 | CHEM-ACD 02 | CHEM - ACD 02 | CHEM LAB 01 | CHEM - ACD 02 |
| 6 | PLAN | CHEM LAB 02 | CHEM LAB 02 | PLAN | PLAN |
| 7 | CHEM - ACD 05 | CHEM - ACD 05 | CHEM - ACD 05 | CHEM - ACD 05 | CHEM - ACD 05 |
| 8 | CHEM LAB 05 | PLAN | SH-CAFE | SH-CAFE | PLAN |

13

# MATHEMATICS 2002-2003

## 1ST SEMESTER SCHEDULE

| Period | JONES, CHUCK  B29 | MEHOK DOUG  A37 | WILLISON JOANNE  B8 |
|---|---|---|---|
| 1 | STUDYHALL - CAFE | GENERAL MATH II | GENERAL MATH I |
| 2 | PLAN | CALCULUS - ACAD | PLAN |
| 3 | GEOMETRY - ACCEL | ALGEBRA II | ALG. III/TRIG |
| 4 | ALGEBRA I | PLAN | GEN MATH I |
| 5 | APPLIED MATH III | ALGEBRA I | STUDYHALL |
| 6 | GEOMETRY - ACCEL | STUDYHALL | ALG. III/TRIG |
| 7 | ALGEBRA I | GENERAL MATH II | GEOMETRY - ACAD |
| 8 | GEOMETRY - ACCEL | ALGEBRA II | GEOMETRY - ACAD |

## 2ND SEMESTER SCHEDULE

| Period | JONES, CHUCK  B29 | MEHOK DOUG  A37 | WILLISON JOANNE  B8 |
|---|---|---|---|
| 1 | STUDYHALL - CAFE | GENERAL MATH II | GENERAL MATH I |
| 2 | PLAN | CALCULUS - ACAD | PLAN |
| 3 | GEOMETRY - ACCEL | ALGEBRA II | ALG. III/TRIG |
| 4 | ALGEBRA I | PLAN | GEN MATH I |
| 5 | APPLIED MATH III | ALGEBRA II | STUDYHALL |
| 6 | GEOMETRY - ACCEL | STUDYHALL | ALG. III/TRIG |
| 7 | ALGEBRA I | GENERAL MATH #I | GEOMETRY - ACAD |
| 8 | GEOMETRY - ACCEL | ALGEBRA II | GEOMETRY - ACAD |

# ENGLISH 2002-2003

| Period | KOSNAC, JACK  B31 | LEWIS, DONNA  A25 | MOOK, SAUNDRA  A26 |
|---|---|---|---|
| | 1ST SEMESTER SCHEDULE | 1ST SEMESTER SCHEDULE | 1ST SEMESTER SCHEDULE |
| 1 | PLAN | PLAN | PUBLIC SPEAKING |
| 2 | CREATIVE WRITING | INTRM COMP | APPLIED COMMUN IV |
| 3 | CREATIVE WRITING | STUDYHALL - CAFE | PLAN |
| 4 | SECONDARY LANG ARTS | AMERICAN HERITAGE | HUMANITIES ENGLISH |
| 5 | SECONDARY LANG ARTS | INTRM COMPOSITION | HUMANITIES ENGLISH |
| 6 | CAFE DUTY-B&C LUNCH-A | APPLIED COMMUN II | ADVANCED COMP |
| 7 | ENGLISH - ACAD | APPLIED COMMUN II | ADVANCED COMP |
| 8 | ADVANCED COMP | 20TH CEN AM LIT | DEPARTMENT |
| | 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE |
| 1 | MYTHOLOGY | COMMUN TECHNIQUE | ENGLISH LIT |
| 2 | PLAN | COMMUN TECHNIQUE | APPLIED COMMUN IV |
| 3 | WORLD LIT | STUDYHALL - CAFE | PLAN |
| 4 | SECONDARY LANG ARTS | MYTHOLOGY | WORLD LIT |
| 5 | SECONDARY LANG ARTS | PLAN | ENGLISH LIT |
| 6 | CAFE DUTY-B&C LUNCH-A | APPLIED COMMUN II | DEPARTMENT |
| 7 | ENGLISH - ACAD | APPLIED COMMUN II | WORLD LIT |
| 8 | WORLD LIT | COMMUN TECHNIQUE | ENGLISH LIT |

2

# FOREIGN LANGUAGE 2002-2003

| | deLEON, CLAUDETTE C16 1ST SEMESTER SCHEDULE | FARKAS, SUE C18 1ST SEMESTER SCHEDULE | HARTICK, AL C17 1ST SEMESTER SCHEDULE |
|---|---|---|---|
| 1 | SPANISH I | FRENCH II | GERMAN II |
| 2 | SPANISH I | FRENCH I | GERMAN V |
| 3 | SPANISH II | FRENCH II | PLAN |
| 4 | DOOR DUTY - A WING | PLAN | DEPARTMENT |
| 5 | SPANISH I | FRENCH V | GERMAN III |
| 6 | SPANISH III | FRENCH III | GERMAN I |
| 7 | PLAN | FRENCH III | GERMAN II |
| 8 | SPANISH I | FRENCH IV/V | GERMAN IV |
| | | | |
| 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE | |
| 1 | SPANISH I | FRENCH II | GERMAN II |
| 2 | SPANISH I | FRENCH I | GERMAN V |
| 3 | SPANISH II | FRENCH II | PLAN |
| 4 | DOOR DUTY - A WING | PLAN | DEPARTMENT |
| 5 | SPANISH I | FRENCH V | GERMAN III |
| 6 | SPANISH III | FRENCH III | GERMAN I |
| 7 | PLAN | FRENCH III | GERMAN II |
| 8 | SPANISH I | FRENCH IV/V | GERMAN IV |

15

# FOREIGN LANGUAGE 2002-2003

| | KENNEDY, PATRICIA | | KURTZ, BARBARA C15 | PARIS, HEATHER | |
|---|---|---|---|---|---|
| | 1ST SEMESTER SCHEDULE | | 1ST SEMESTER SCHEDULE | 1ST SEMESTER SCHEDULE | |
| 1 | MIDDLE SCHOOL | | SPANISH II | MIDDLE SCHOOL | |
| 2 | MIDDLE SCHOOL | | SPANISH II | MIDDLE SCHOOL | |
| 3 | MIDDLE SCHOOL | | PLAN | MIDDLE SCHOOL | |
| 4 | MIDDLE SCHOOL | | SPANISH V | MIDDLE SCHOOL | |
| 5 | MIDDLE SCHOOL | | SPANISH II | MIDDLE SCHOOL | |
| 6 | MIDDLE SCHOOL | | CAFE DUTY-A&C LUNCH-B | MIDDLE SCHOOL | |
| 7 | MIDDLE SCHOOL | | SPANISH IV | FRENCH I | MS - 216 |
| 8 | SPANIISH III | MS-202 | SPANISH IV | FRENCH II | |
| | 2ND SEMESTER SCHEDULE | | 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE | |
| 1 | MIDDLE SCHOOL | | SPANISH II | MIDDLE SCHOOL | |
| 2 | MIDDLE SCHOOL | | SPANISH II | MIDDLE SCHOOL | |
| 3 | MIDDLE SCHOOL | | PLAN | MIDDLE SCHOOL | |
| 4 | MIDDLE SCHOOL | | SPANISH V | MIDDLE SCHOOL | |
| 5 | MIDDLE SCHOOL | | SPANISH II | MIDDLE SCHOOL | |
| 6 | MIDDLE SCHOOL | | CAFE DUTY-A&C LUNCH-B | MIDDLE SCHOOL | |
| 7 | MIDDLE SCHOOL | | SPANISH IV | FRENCH I | MS - 216 |
| 8 | SPANIISH IV | MS-202 | SPANISH IV | FRENCH II | |

# SOCIAL STUDIES 2002-2003

| | ACHENBACH, KEN  B9 | BROWN, SEAN | FROEHLICH, DOREEN  C11 |
|---|---|---|---|
| | 1ST SEMESTER SCHEDULE | 1ST SEMESTER SCHEDULE | 1ST SEMESTER SCHEDULE |
| 1 | AP CONFERENCE | POLITICAL SCIENCE *C5* | US PA HISTORY – GEN |
| 2 | US HISTORY II | PSYCHOLOGY *C11* | STUDYHALL - CAFE |
| 3 | AP EUROPEAN HISTORY | CRIMINAL CIVIL JUSTICE *C5* | US/PA HISTORY - GEN |
| 4 | US SINCE CW - GEN | PLAN | US/PA HISTORY - ACD |
| 5 | US HISTORY II | POLITICAL SCIENCE *D8* | US/PA HISTORY - ACL |
| 6 | AP EUROPEAN HISTORY | PSYCHOLOGY *B/3* | PLAN |
| 7 | AP EUROPEAN HISTORY | CRIMINAL/CIVIL JUSTICE *C11* | US/PA HISTORY - ACD |
| 8 | PLAN | STUDYHALL - CAFE | US/PA HISTORY-ACD |
| | 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE | 2ND SEMESTER SCHEDULE |
| 1 | AP CONFERENCE | PSYCHOLOGY *C5* | US PA HISTORY - GEN |
| 2 | US HISTORY II | POLITICAL SCIENCE *C11* | STUDYHALL - CAFE |
| 3 | AP EUROPEAN HISTORY | CRIMINAL CIVIL JUSTICE *C5* | US/PA HISTORY - GEN |
| 4 | US SIN CW - GEN | PSYCHOLOGY *C/3* | US/PA HISTORY - ACD |
| 5 | US HISTORY II | CRIMINAL CIVIL JUSTICE *D8* | US/PA HISTORY - ACL |
| 6 | AP EUROPEAN HISTORY | PLAN | PLAN |
| 7 | AP EUROPEAN HISTORY | POLITICAL SCIENCE *C11* | US/PA HISTORY - ACD |
| 8 | PLAN | STUDYHALL - CAFE | US/PA HISTORY-ACD |

7

# CRAWFORD CENTRAL SCHOOL DISTRICT
## Observation Summary

**REPORT OF CLASSROOM VISITATION**

Teacher's Name _Claudette Dellidle_ Date _9/11/0?_

School _MASH_ Grade/Subject _Spanish I_

Length of Observation/Time _____ Period of Visit ____

**KEY:**
S = Satisfactory   IN = Improvement Needed
NA = Not Applicable   * = See Written Comment

**Preparation - Planning**
( S ) Lesson plans evident
( S ) Planning reflects fusion of skills and activities
( S ) Aim or purpose - Clear and attainable
( S ) Provisions for differences variety/levels
( S ) Instructional materials/Ideas/suitable
( S ) Materials reflect creativity and resourcefulness
( S ) Teacher's knowledge of lesson content

**Instructional Technique/Effectiveness**
( S ) Command of written and spoken English
( S ) Introduction and motivation
( S ) Teaching strategies appropriate visual and tactile instruction
( S ) Provisions for auditory
( S ) Illustrates/models the concept or skill
( S ) Vocabulary appropriate to group
( S ) Questions stimulate thought
( S ) Learning experience consistent with purpose/planning
( S ) Students encouraged with appropriate reinforcement
( S ) Teacher awareness of student understanding of lesson objectives
( S ) Time on task
( S ) Summary and closure
( S ) Assignment/Homework - applicable and clearly stated

**Teacher - Student Interaction**
( S ) Demonstrates courtesy and tact
( S ) Maintains consistency when working with students
( S ) Encourages student interaction
( S ) Students' involvement - participate actively
( S ) Encourages good work/study habits

**Personal Characteristics**
( S ) Demonstrates sound instructional judgement
( S ) Gives attention to personal grooming and dress
( S ) Exhibits: poise, composure, enthusiasm, and sense of humor

**Management and Organization**
( S ) Control and discipline - firm and sympathetic
( S ) Establishes/follows classroom routines and procedures
( S ) Attention to health and safety needs of students
( S ) General order and cleanliness of room
( S ) Effectiveness of seating arrangement
( S ) Use of bulletin boards and/or displays
( S ) Maintains accurate records

**COMMENDATIONS & RECOMMENDATIONS** _See Attachment_

_____

Observer's Signature _____ Title _Assistant Principal_
Conference Date _9/?/0?_

*Teacher's Signature _____ Enclosure: Yes ___ No ___

1. White copy remains with teacher.
2. Yellow copy to principal.
3. Pink copy to personnel file.

*Indicates copy has been received; not
necessarily in agreement with observer.
Written response may be attached.


EXHIBIT
59

You need to work on the following areas to improve your performance:

<u>Preparation - Planning</u>

    Aim or purpose - Clear and Attainable

<u>Instructional Techniques/Effectiveness</u>

    Introduction and motivation
    Learning experience consistent with purpose/planning
    Students encouraged with appropriate reinforcement
    Teacher awareness of student understanding of lesson objectives
    Time on task

<u>Teacher - Student Interaction</u>

    Maintains consistency when working with students
    Students involvement - participate actively
    Encourages good work/study habits

<u>Personal Characteristics</u>

    Demonstrates sound instructional judgment
    Demonstrates sound professional judgment
    Mindful of student confidentiality
    Exhibits: poise, composure, enthusiasm and sense of humor

<u>Management and Organization</u>

    Control and discipline - firm, fair and sympathetic
    Establishes/follows classroom routines and procedures
    Maintains accurate records

We believe positive classroom behavior begins with a solid foundation. The following are a few suggestions that will help you start a foundation that you can build from.

A.  **Think About Your Approach** – Take some time to think about the strategies that you plan to use to encourage positive classroom behavior. Clarifying your strategies will make it easier for you to lead the class confidently and effectively.

B.  **Visualize Possible Challenges** – Imagine possible classroom challenges and review your strategies for dealing with them. Having clear-cut strategies will help keep you grounded when these challenges do arise.

C.  **Make Your Expectations Clear from the Beginning** – Make sure that students know what you expect of them. The classroom rules you present should be positive, specific and concise. You may wish to post them in the classroom or distribute them for students to sign. You should also spell out what will happen if students do not meet expectations.

D.  **Model Positive Behavior** – Occasionally, you may have to remind yourself to follow your own rules. For example, if you ask students not to drink beverages in class, refrain from keeping a cup of coffee on your desk, even if you do not drink it during class.

E.  **Encourage Your Students** – When you praise students who are excelling, don't forget to encourage those who are trying but struggling. These students often lack confidence and need more positive reinforcement.

F.  **Show Respect** – Showing respect for your students includes listening to their needs and preserving their dignity. It also means living up to their expectations of you, such as greeting them at the beginning of class or returning corrected homework in a timely fashion.

G.  **Be Consistent** – Be sure to address student behavior in a consistent manner. Be wary of shifting strategies when misbehavior occurs. To students, this may show a lack of decisiveness. Find a strategy you like and stick with it.

H.  **Keep Students Busy and Challenged** – Busy students are far less likely to exhibit disruptive behavior. Be sure that students are working at appropriate levels; boredom and frustration often lead to students' acting out.

I.  **Listen to Students' Suggestions** – When building your foundation, you may be able to draw from students' and other teachers' past classroom experiences. Ask students to make suggestions about what should be expected of them and how misbehavior should be addressed. Students are often more responsive to rules they helped create. Once the rules are set for the classroom they should be posted in the classroom. Utilize only four to five classroom rules that are clear and enforceable.

Creating an environment in which students know and follow the rules is challenging, but not impossible. With a little patience and perseverance you can lay a foundation for respect and positive behavior in your classroom that lasts all year.

You need to work on the following areas to improve your performance:

<u>Preparation - Planning</u>

Aim or purpose - Clear and Attainable

<u>Instructional Techniques/Effectiveness</u>

Introduction and motivation
Learning experience consistent with purpose/planning
Students encouraged with appropriate reinforcement
Teacher awareness of student understanding of lesson objectives
Time on task

<u>Teacher - Student Interaction</u>

Maintains consistency when working with students
Students involvement – participate actively
Encourages good work/study habits

<u>Personal Characteristics</u>

Demonstrates sound instructional judgment
Demonstrates sound professional judgment
Mindful of student confidentiality
Exhibits: poise, composure, enthusiasm and sense of humor

<u>Management and Organization</u>

Control and discipline - firm, fair and sympathetic
Establishes/follows classroom routines and procedures
Maintains accurate records