FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLAUDETTE de LEON,<br>   Plaintiff, | )<br>)<br>) |
| vs. | ) (NO. 05-126E) |
| CRAWFORD CENTRAL SCHOOL DISTRICT<br>CRAWFORD CENTRAL SCHOOL BOARD,<br><br>   Defendants, | )<br>)<br>)<br>)<br>) |
| MICHAEL E. DOLECKI, SUPERINTENDENT,<br><br>   Defendant, | )<br>)<br>)<br>) |
| CHARLES E. HELLER, III, ASSISTANT<br>SUPERINTENDENT,<br><br>   Defendant | )<br>)<br>)<br>)<br>) |

) Document:
) **PRETRIAL STATMENT**
)
)
)
) Filed on behalf of
) Defendants by:
) **ANDREWS & BEARD**
)
) Roberta Binder Heath, Esquire
) Pa.Id. No. 50798
) rbheath@andrewsbeard.com
) 3366 Lynnwood Drive
) Altoona, PA 16602
) 814-940-8670

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAUDETTE de LEON,                          )
                                            )
              Plaintiff                     )
                                            )
Vs.                                         )        (NO. 05-126E)
                                            )
CRAWFORD CENTRAL SCHOOL DISTRICT            )
CRAWFORD CENTRAL SCHOOL BOARD,              )
                                            )
              Defendants                    )
                                            )
MICHAEL E. DOLECKI, SUPERINTENDENT,         )
                                            )
              Defendant                     )
                                            )
CHARLES E. HELLER, III, ASSISTANT           )
SUPERINTENDENT,                             )
                                            )
              Defendant                     )

## DEFENDANTS' PRETRIAL STATEMENT

Defendants Crawford Central School District, Crawford Central School Board, Michael E.

Dolecki, Superintendent, and Charles E. Heller, III, Assistant Superintendent, Inc. by and through its

counsel, Roberta Binder Heath, Esquire of Andrews & Beard, hereby submit the following Pre-Trial

Statement in accordance with the Order of this Honorable Court.

## I. FACTUAL NARRATIVE STATEMENT

Plaintiff, Claudette deLeon, is an Hispanic female. Defendants include the Crawford

Central School District ("the District"), the Crawford Central School Board ("the Board"), and

Superintendent, Michael A. Dolecki in his personal capacity and Assistant Superintendent, Charles

E. Heller, III in his personal capacity. Plaintiff's claims involve allegations concerning violations of her

civil rights pursuant to gender, race, and national origin under Title VII of the Civil Rights Act of 1964,

as amended, as well as purported violations pursuant to Sections 1981, 1983, and the Fourteenth Amendment. Plaintiff also asserts claims under the Americans with Disabilities Act. Plaintiff alleges she is also entitled to relief for enduring a hostile environment and retaliation. Plaintiff is also claiming amounts to punitive damages for the Defendants' alleged infliction of emotion distress throughout her employment with the District.

Plaintiff commenced her employment as a Spanish teacher at the District in approximately September of 1989 at the Cochranton High School. In or about January of 1991, she was transferred to Meadville High School where she continued her duties as Spanish teacher until her termination on April 30, 2003. It is the Defendants' position that the Administration began to experience a pattern of unacceptable behavior in Plaintiff's performance of her job duties beginning with the 1993-1994 school year. In this regard, it was the expectation of the Defendants that Plaintiff would perform her job duties in accordance with the Pennsylvania School Code, the Code of Professional Ethics, her job description, and the various policies adopted by the Board and implemented by the District.

During the 1993-1994 school year, the District documented and experienced ongoing issues concerning Plaintiff's tardiness, repeated problems between students and parents involving Plaintiff's unprofessional behavior, and persistent classroom management issues and concerns about her being able to prudently and consistently implement discipline among her students. Furthermore, various occurrences including but not limited to issues involving two (2) students and their parents were brought the Administrations attention where Plaintiff exhibited an utter lack of professionalism. On that basis, she was rated as being unsatisfactory in performance evaluation for the 1993-1994 school year.

Pursuant to her rights under the Collective Bargaining Agreement, Plaintiff filed a grievance concerning this unsatisfactory evaluation. It is the Defendants' position that the unsatisfactory rating is merited on the facts. However, the arbitrator determined that grievance would be sustained, basing his decision on procedural versus substantive reasons, such as concerns relative to evidentiary issues. One of the key factors concerning evidentiary issues involved a parents' concern and the concern of then Principal, George Deshner, that the Plaintiff had manufactured notes concerning alleged disciplinary problems with a particular student. It was determined, as a tactical matter, and perhaps in hindsight improperly, that the parents would not testify at the arbitration hearing. At this time, it is Mr. Deshner's contention that the Plaintiff actually produced notes at the hearing that were different from the notes that were produced at the meeting with the parents at which Mr. Deshner was present. At the parent/teacher conference, both Mr. Deshner and the Administration questioned the validity of the disciplinary notes kept by Plaintiff. The issue of fabrication was raised relative to the notes being untenably uniform over an extended period of time. Interestingly, a different version of these notes was produced at the hearing.

Prior to being disciplined, Plaintiff always had Union representation concerning any administrative meeting and her *Weingarten* rights were honored.

Plaintiff contends she was targeted as a member of a protected class and treated differently from her co-workers relative to being reprimanded for tardiness and other issues relating to the 1993-1994 unsatisfactory evaluation. However, Plaintiff failed to present any evidence that this was in fact the case other than her own unsubstantiated conclusions.

Plaintiff received a satisfactory evaluation for the 1994-1995 school year. However, she again received an unsatisfactory evaluation for the 1995-1996 school year, which again related to an ongoing pattern of problems concerning classroom management, her substandard

performance, and a lack of professional judgment. Plaintiff determined that she would submit her grievance to arbitration, which again was sustained on procedural grounds concerning a lack of a anecdotal records and a failure to meet the five (5) statutory requirement for discussion of same. Nonetheless, the District maintains that Plaintiff deserved do be rated as unsatisfactory for that school year and has testimony and documentary evidence to support same. It is imperative to note the decision to sustain the grievance was based on procedural reasons not substantive grounds.

The District continued to document on-going problems with Plaintiff's performance, which escalated at the outset of the 1997-1998 school year. These issues again related to poor classroom management and inconsistent and imprudent student discipline issues. Both Mr. Deshner and Carol Templeton, Assistant Principal at the time, attempted to address these problems with Plaintiff. However, Plaintiff was not, in any way, amenable to constructive criticism or attempting to work with the Administration to alleviate the problems that were brought to her attention. Plaintiff became combative and refused to work with the Administration. Her attitude during this timeframe has been substantiated by her own Union representatives. Plaintiff's judgment deteriorated to a shocking low when she determined she would wear her bra outside of her shirt for "spirit day" during this time frame. Also, in October of 1997, George Deshner overheard the Plaintiff inappropriately discussing her arrest for DUI and eluding the police with her students in the classroom. She indicated that, if in fact, she ever were fired she could always be a bartender. The behavior leading to her DUI arrest was a bizarre story reported in the paper, whereby she eluded police in the middle of the night for several miles causing the police to actually place puncturing strips across the highway to stop her. Plaintiff admits that, at this time, her personal life was fairly disastrous, which crises she appears to have brought into the School District and allowed to affect her professional judgment. After these incidents were investigated and discussed with

Plaintiff, she was suspended for three and half (3 1/2) days on October 15, 1997 for unprofessional conduct.

Thereafter, from November 1997 until September 1999 Plaintiff took a sabbatical leave. Prior to that time, the District was unaware of any medical or mental health issues. In addition, the reasons provided by the Plaintiff for the sabbatical request were not specific and the excuse was from a women's health center. Even the Union representative believed that the issues precipitating the sabbatical leave were gynecological in nature as opposed to relating to mental heath issues. Although Plaintiff claims she suffered a "nervous breakdown" in March of 1998, she did not report this condition to the District, nor was she working at the District at the time Plaintiff allegedly sustained this breakdown.

In September of 1999 Plaintiff returned to work without restrictions. Plaintiff provided no evidence that she had a documented disability, nor did she request any accommodations based on any alleged disability. Plaintiff primarily relates her ADA claim to her return to work after the sabbatical when she was scheduled as a traveling teacher. However, Plaintiff is unable dispute that other teachers, both male and female and even teachers with greater seniority, were traveling as well. The evidence specifies that the necessity of having teachers travel was a specific spatial issue before the building project was completed.

In no way has Plaintiff demonstrated any evidence that she was ever targeted by virtue of being a member of a protected class, or that anyone regarded her as being disabled. In addition, she can present no evidence that she was treated differently than her colleagues, or had any other expectations attached to her because she had filed grievances in the past. Testimony from her Union representatives indicated that Plaintiff had never specified or indicated that she, in any way, had complained that she was being targeted or discriminated against by virtue of being a member

of any protected class. Finally, Plaintiff never requested any accommodations to her Union's knowledge.

Plaintiff received a satisfactory rating for the 1999-2000 school year. Nonetheless, her problems with the Administration continued, and issues concerning her work performance began to reassert themselves. John Higgins was hired as assistant principal in April of 2000. Mr. Higgins had no prior dealings with Plaintiff and essentially was assigned the duties of working with Ms. deLeon to alleviate the tension between Ms. deLeon and Mr. Deshner in hopes of having a fresh and unbiased viewpoint concerning Plaintiff's performance. During the 2000-2001 school year, both Mr. Higgins and Mr. Deshner observed Plaintiff's performance and attempted to provide her with both constructive criticism as well as commendations for positive aspects of her performance. However, in February of 2001, certain issues came to the attention of Mr. Higgins that were unacceptable. One example involved Plaintiff's failing to follow protocol and leaving the building and going home without providing proper notice to the Administration and actually leaving her class unattended and utterly without supervision. Obviously, this lack of supervision and failure to provide proper notice for abandoning her duties were a serious concern to the District, which appreciated the serious nature of potential liability in leaving the students unattended during the school day.

Although, the District provided a satisfactory evaluation to the Plaintiff for the 2001-2002 school year, a Corrective Action Plan was attached to same. This Plan was discussed at length with the Plaintiff and her Union representative. The Union representative in question indicated that she believed that this was a fair Plan and one which was warranted considering the circumstances and the Administration's ongoing concerns about Plaintiff's performance. At the time, Plaintiff agreed to comply with the Plan. The Administration testified that creating a Corrective Action Plan for the Plaintiff was for the purpose of assisting Plaintiff in improving in the areas of classroom

management, consistent student discipline, and parent/student relations. There is no evidence that Plaintiff can point to that corrective action plans were given to younger or more inexperienced teachers so as to make the leap of faith that she was then being targeted due to being a member of a protected class. Simply Plaintiff has failed to elicit any evidence that the Corrective Action Plan was Administered as a pretext for discrimination, to the contrary, the testimony specifies that corrective action plans were issued to teachers with more seniority, less seniority, and male, and female teachers alike.

During the 2001-2002 school year, Mr. Higgins observed that Plaintiff had fallen into a pattern of behavior that had been addressed on numerous occasions at her previous evaluations. In this regard, it was determined that she started out the school year in a positive manner and then her performance gradually deteriorated over time. This pattern was documented by Mr. Higgins' observations of that year. In the interim, Charles Heller started with District as Assistant Superintendent on October 18, 2002. He also observed the Plaintiff and found that her performance deteriorated from the first to second time he observed her during that timeframe. In the administrative meeting of March 12, 2002, Mr. Heller and Mr. Higgins met with the Plaintiff and her Union representatives to review an observation that was performed by Mr. Higgins in which he had eight (8) suggestions concerning her performance. It was of particular concern to the Administration that Plaintiff's performance had deteriorated throughout the year to the point that Mr. Higgins observed in early March. At this meeting, the Plaintiff exhibited bizarre and unprofessional behavior. She refused to pay attention and more than once was reminded by Mr. Heller that she should not be ignoring the Administration. In reviewing Mr. Higgins suggestions, Plaintiff became negative and distraught and her behavior deteriorated to the point where her Union representatives had to

physically usher her out of the room. The meeting did not conclude. At this time, Plaintiff began crying and screaming that she could no longer "go on" teaching.

Both Mr. Heller and Mr. Higgins testified that they were shocked at her bizarre behavior and they had never experienced a similarly encounter with a teacher. Mr. Heller brought his concerns to Mr. Dolecki, Superintendent, who as also concerned about her loss of composure and her ability to return to the classroom, particularly when she had indicated that she could no longer "go on" teaching. Mr. Heller described her behavior as volatile and was concerned about her being able to rationally handle a classroom full of students and keep her composure in check. Union representative confirmed the level of Plaintiff's irrational behavior during that meeting and the aftermath.

The decision was made by the Administration to permit the Plaintiff an opportunity to resign should she so wish, with pay, until the end of the year. This option was not meant as threat or a mandate. This proposition was simply an option that Plaintiff chose not to exercise. However, due to the level of the administrative concern at this time, it was determined that an independent medical examination ("IME") concerning Plaintiff's mental state was warranted. An IME is the School District's right pursuant to the law. Plaintiff was then granted a leave of absence with pay until the IME occurred.

On May 17, 2002, Dr. McFadden released Plaintiff to return work without restrictions as of her May 3, 2002 evaluation. Prior to the IME taking place, on March 18, 2002, the District had prepared an unsatisfactory evaluation, which was discussed with Plaintiff upon her return from paid leave. Essentially, the reasons provided meriting the unsatisfactory evaluation related to Plaintiff's argumentative attitude and emotional outbursts at the administrative meetings, which were

highlighted by the March 12, 2002 meeting. It was determined that this attitude thwarted any suggested improvements as to her teaching performance and was utterly counterproductive.

As was her right, Plaintiff grieved the evaluation said grievance was sustained on procedural grounds by Arbitrator Duff because he deemed Plaintiff's unprofessional behavior at the administrative meetings, in particular the meeting of March 12, 2002, insufficient to support an unsatisfactory evaluation for the entire year. The Defendants stand by the evaluation on the merits.

Plaintiff was provided a Corrective Action Plan for the 2002-2002 school year as well. This Plan was not, in any way, intended to be harassment or retaliation, but rather a necessary approach to address the ongoing problems the District had with Plaintiff's performance and professional judgment. Although, this Plan was discussed at length with a Union representative and Plaintiff signed off on same, she failed to follow the protocols and the expectations of this Plan. During the 2002-2003 school year, the Administration provided testimony and documentary evidence that Plaintiff's behavior and performance continued to deteriorate as did her attitude. Ongoing issues concerning student discipline continued, her combative attitude escalated, as did her refusal to operate in a consistent prudent professional manner with her colleagues, the Administration, students, and parents. Issues of student confidentiality, which had been addressed in the past, also reached a new level of unacceptably as Plaintiff actually was discussing a student's grades and disciplinary problems with his mother on the telephone in front of a classroom full of other students. Other issues of confidentiality continued as well, including, but not limited to copying an investigator from the PHRC on documents containing confidential student information. Also, several issues occurred which lead Mr. Higgins to doubt Plaintiff's credibility including, but not limited to, having inconsistent student logs relative to discipline. Parental concerns continued to come to the attention of the Administration on an increasing basis. Plaintiff was not at all receptive to any issues

concerning criticism of her approach regarding student discipline and essentially refused to change her methods as she claims she was a "perfect teacher".

Finally on April 10, 2003, a meeting a occurred which became so heated that the Union representative again had to physically grab ahold of the Plaintiff and remove her from the room as she rose from her chair and moved towards Mr. Deshner to physically confront him. Her own Union representative referred to Plaintiff's behavior as "belligerent". Again, the meeting could not resume because Plaintiff refused to calm down. She was thereafter suspended without pay pending discharge, and was discharged on April 20, 2003 with a statement of charges letter. This discharge was upheld by Arbitrator Amis as being for just cause.

Plaintiff fails to present any evidence whatsoever that she was in fact treated in a different fashion from her co-workers who were not in a protected class that she was or was in any way harassed, subjected to a hostile environment, or retaliated against in any fashion that would be legally actionable. To the contrary, Plaintiff simply refuses to take responsibility for her own actions as an adult and a professional employee. She continued to behave in a manner that any employer would deem utterly unacceptable. Relative to her being in the teaching profession, her volatile, combative, and bizarre behavior was certainly unacceptable and the Defendants determined that Plaintiff should not be permitted back into the classroom.

## II. WITNESSES

1.    Adam Albaugh,
      former student
      10827 Springs Rd.
      Meadville, Pa 16335

2.    Cheryl Albaugh,
      parent of former student
      10827 Springs Rd.

11

Meadville, Pa 16335

3.    Dr. Wesley Berkebile,
      former Assistant Principal
      516 Freeport Road
      Kittanning, Pa 16201

4.    Debra Carman,
      parent of former student
      22 Forest Ave.
      Meadville, Pa 16335

5.    Richard Curry,
      Teacher
      c/o Crawford Central School District
      11280 Mercer Pike
      Meadville, Pa 16335

6.    Patricia Deardorff,
      former Union President and current Elementary Principal
      c/o Crawford Central School District
      11280 Mercer Pike
      Meadville, Pa 16335

7.    Claudette deLeon,
      Plaintiff
      11983 Eureka Road
      Edinboro, PA 16412-9626

8.    George Deshner,
      former Principal
      c/o Crawford Central School District
      11280 Mercer Pike
      Meadville, Pa 16335

9.    Michael Dolecki,
      Superintendent
      c/o Crawford Central School District
      11280 Mercer Pike
      Meadville, Pa 16335

10.   Charles Heller III,
      Assistant Superintendent
      c/o Crawford Central School District
      11280 Mercer Pike
      Meadville, Pa 16335

11.     John Higgins,
        Assistant Principal
        c/o Crawford Central School District
        11280 Mercer Pike
        Meadville, Pa 16335

12.     James LaScola,
        former Superintendent
        736 Walnut St.
        Meadville, Pa 16335-2347

13.     Doug Mehok,
        Union representative
        c/o Crawford Central School District
        11280 Mercer Pike
        Meadville, Pa 16335

14.     Carl Roznowski,
        Union representative
        c/o Crawford Central School District
        11280 Mercer Pike
        Meadville, Pa 16335

15.     Robin Stockton
        Parent of former student
        c/o Crawford Central School District
        11280 Mercer Pike
        Meadville, Pa 16335

16.     Carol Templeton,
        former Assistant Principal
        12103 Sagwaw Drive
        Conneaut Lake, Pa 16316

17.     JoAnn Willison,
        Union representative
        c/o Crawford Central School District
        11280 Mercer Pike
        Meadville, Pa 16335

18.     John Stanford
        Teacher
        c/o Crawford Central School District
        11280 Mercer Pike
        Meadville, Pa 16335

19.    Deborah Englebaugh,
       former Teacher
       4596 Whipporwill Drive
       Hermitage, PA 16148

20.    Marline Gourly
       former Teacher
       c/o Crawford Central School District
       11280 Mercer Pike
       Meadville, Pa 16335

21.    Ronald D. McFadden, MD
       Plaintiff's Physician
       1980 Green Street
       Farrell, Pa 16121

22.    Michael Mercatoris, Ph.D.
       Plaintiff's treating physician
       462 Chestnut Street
       Meadville, PA 16335

*Defendants reserve the right to call any witness on Plaintiff's list and anyone else necessary for rebuttal testimony.

## II. EXHIBITS

1.    Rating System – 24 PS 11-1123

2.    Crawford Central School District Calendar – 2001/2002 School Year

3.    Letter dated May 25, 2006 – Current and past hirings in school districts and

      teaching institutions

4.    April 25, 2002 – Letter from Mr. Dolecki to Plaintiff with directions to her scheduled

      Independent Medical Evaluation ("IME")

5.    Pages 122 and 123 of classroom lesson book prepared by Plaintiff

6.    Newspaper articles regarding Plaintiff and Joseph Mahoney

7.        August 6, 2001 – Memo from Plaintiff to Mr. Deshner regarding the Final

          Observation on June 8, 2001

8.        August 27, 2001 – Handwritten notes from Plaintiff about required classroom

          observations

9.        August 9, 2001 – E-mails from Pat Kennedy to Plaintiff regarding resources for

          Foreign Language Teachers

10.       September 5, 2001 – Handwritten notes from Plaintiff about required classroom

          observations

11.       Behavior Modification Worksheet – Detention Alternative

12.       October 18, 2001 – Typed notes from required classroom observations

13.       October 18, 2001 – Handwritten note from Plaintiff regarding discipline in Mr.

          Mehok's classroom

14.       Additional handwritten notes from Plaintiff regarding required classroom

          observations

15.       September 19, 2001 – Lesson Plan by Plaintiff

16.       September 6, 2000 – Official Record

17.       April 4, 2002 – Certificate issued to Plaintiff for completing the Act 48 Continuing

          Professional Education Program

18.       March 10, 1999 and April 29, 19999 – Transcripts from Erie County Technical

          School

19.       Plaintiff's misconduct record for the 2001/2002 school year

20.       March 26, 2002 – Letter from Mr. Dolecki to Plaintiff regarding her scheduled IME

21.       Plaintiff's parent conferences record for the 2001/2002 school year

22.    Amy Lynn/Plaintiff's lesson plans for the week of April 4 through April 5

23.    September 4, 2002 – Letter from Plaintiff to Mr. Deshner regarding her Response
       to the Unsatisfactory 2001-2002

24.    February 1, 1996 – Letter from Plaintiff to Mr. Deshner regarding a classroom
       observation on December 15, 1995

25.    May 21, 1996 – Classroom Observation signed by Dr. Berkebile

26.    May 23, 1996 – Memo from Plaintiff to Dr. Berkebile regarding the Classroom
       Observation on May 21, 2996

27.    May 19, 1998 – Letter from Mr. LaScola to Plaintiff regarding the approval of her
       request for unpaid medical leave

28.    February 14, 1001 – Memo from Plaintiff to Mr. Higgins regarding student Ben
       Williams

29.    March 19, 2002 – Letter from Mr. Deshner to Mr. Dolecki and Mr. Heller regarding
       the Spanish classes

30.    April 22, 2002 – Letter from Mr. Dolecki to Plaintiff regarding the cancelled IME on
       May 25, 2002

31.    June 4, 2002 – Typed memo regarding student Charles Kennedy with attached
       misconduct

32.    June 5, 2002 – Typed memo regarding four students with attached misconducts

33.    Classroom Management Plan for the 2002/2003 school year with attached
       Expected Behavior Plan, Discipline Plan, Daily Routine, Methods of Evaluation for
       Spanish Classes, Greetings, and Consequences

34.     August 23, 2002 – Memo from Plaintiff to Mr. Higgins regarding student Charles

        Kennedy

35.     August 23, 2002 – Memo from Plaintiff to Mr. Higgins regarding Dustin Powell and

        Karrail Phillips

36.     September 11, 2002 – Handwritten notes from Plaintiff to Mr. Deshner

37.     September 12, 2002 – Memo from Mr. Higgins to Plaintiff regarding the Classroom

        Observation on September 11, 2002

38.     September 12, 2002 – Handwritten memo from Plaintiff to Mr. Higgins regarding

        her lesson plans

39.     September 13, 2002 – Letter from Mr. Higgins to Plaintiff regarding her lesson

        plans

40.     February 13, 2003 – Memo from Plaintiff to Mr. Higgins regarding students Tom

        Dempsey and Megan Dupont

41.     February 21, 2003 – Memo from Plaintiff to Mr. Higgins regarding student Anita

        McDermont

42.     March 11, 2003 – Memo from Plaintiff to Mr. Higgins regarding feedback from

        assigned reading chapters

43.     April 8, 2003 – Memo from Plaintiff to Mr. Higgins regarding students Erica

        McAlevy and Ashley Cardman

44.     April 10, 2003 – Memo from Plaintiff to Mr. Deshner

45.     April 21, 2003 – Memo from Plaintiff to Mr. Deshner  regarding the Response to the

        Unsatisfactory Rating for the 2002/2003 School Year

46.     January 13, 2003 – Memo from Plaintiff to Mr. Heller regarding the Enclosure to Classroom Observation on January 9, 2003

47.     April 11, 2003 – Memo from Plaintiff to Mr. Heller regarding the Classroom Observation on April 2, 2003

48.     September 26, 2001 – Classroom Observation signed by Mr. Deshner

49.     October 18, 2001 – Classroom Observation signed by Dolecki with concerns, commendations and recommendations

50.     May 20, 2002 – Letter from Mr. Dolecki to Plaintiff regarding her Return to Work

51.     May 29, 2002 – Receipt of March 7, 2002 Observation Summary and Addendum

52.     October 11, 2002 – Memo from school librarian to Mr. Deshner

53.     November 13, 2003 – Memo from Plaintiff to Mr. Deshner regarding student Philip Siverd

54.     January 31, 2003 – Misconduct record of student A.M.

55.     Note handwritten by unknown student

56.     April 2, 2003 – Memo from Mr. Higgins to Plaintiff regarding assigned reading

57.     August 23, 2002 – Memo from Plaintiff to Mr. Higgins regarding the prior     memo dated August 23, 2002

58.     January 30, 2001 – Handwritten memo to Mr. Higgins regarding Plaintiff's leaving early

59.     A pre-hearing brief in the matter of Claudette Mitchell vs. Crawford Central School District concerning her 1995/1996 Unsatisfactory Rating

60.     July 10, 2996 – Information concerning the Answer to the Charge of Unfair Practices relative to 1995/1996 Unsatisfactory Evaluation

61.      October 2001 – Handwritten notation which appear to be from student of unknown origin

62.      May 19, 1998 – Letter from Mr. LaScola to Plaintiff regarding her request for unpaid medical leave

63.      March 26, 1999 – Letter from Mr. Dolecki to Plaintiff regarding the scheduling of teaching assignments

64.      May 11, 1999 – Letter from Mr. Dolecki to Plaintiff informing her that they cannot honor her request to teacher at a different school

65.      October 22, 2001 – Plaintiff's request to attend a conference

66.      August 21, 2002 – Memo from Plaintiff to Mr. Deshner regarding Damage and Classroom Inventory

67.      October 15, 1997 – Notes from Mr. Deshner with attached a transcript from meeting with Plaintiff

68.      April 4, 2003 – Handwritten memo from student to Mr. Deshner

69.      Handwritten Notes regarding Kristin Flaugh

70.      May 28, 2002 – Note signed by Mr. Deshner

71.      October 16, 2002 – Classroom Observation signed by Mr. Heller

72.      PHRC file produced pursuant to subpoena

73.      Defendants' responses to various sets of Interrogatories

74.      Plaintiff's responses to Interrogatories

75.      1993-1994 Satisfactory Evaluation

76.      Arbitration Decision of Stollenberg

77.      Deposition of George Deshner, former Principal

78.    Deposition of Carol Templeton, former Assistant Principal

79.    January 5, 1994 Letter from Deshner to deLeon

80.    (Brian Gray) Survey Re: Student Issues

81.    March 17, 1994 Letter from Mr. Gray to Mr. Deshner Re: Student Issues

82.    April 21, 1994 Letter from Superintendent LaScola to Plaintiff Re: Continuing

       Problems

83.    April 27, 1994 memo from Deshner to Plaintiff Re: Parent Conference of April 22,

84.    April 22, 1994

85.    March 6, 2006 Deposition of Claudette deLeon

86.    April 4, 2006 Deposition of Claudette deLeon

87.    April 24, 2006 Deposition of Claudette deLeon

88.    Deposition of Patricia Deardorff, former Union President and current Administrator

89.    1995-1996 Unsatisfactory Evaluation

90.    Arbitration Award of Talarico

91.    Exhibits regarding 1995-1996 Unsatisfactory Evaluation including information

       provided July 10, 1996 Information and Pre-hearing Brief

92.    Job Description for teachers

93.    Code of Professional Conduct

94.    Philosophy Evaluation Instructions and Rationale

95.    Deposition of Michael Dolecki, Superintendent

96.    September 18, 1997 Memo from Templeton to Plaintiff Re: Student Issue

97.    October 10, 1997 Memo from Templeton to deLeon

98.    October 3, 1997 Templeton Memo

99.     October 15, 1997 Suspension Letter

100.    Deshner Memo Re: DUI Discussion, transcript of meeting and article in paper

101.    November 10, 1997 Letter from Edinboro Medical Center

102.    Letter Re: Return to Work After 1999 Sabbatical

103.    Plaintiffs Responses and Supplemental Responses to

        Interrogatories.

104.    Deposition of Carl Roznowski, Union representative

105.    Meeting Notes of Rosnowski

106.    Deposition to JoAnn Willison, Union representative

107.    Meeting Notes of JoAnn Willison

108.    Teaching Certification

109.    Hiring Data Re: Minorities

110.    Satisfactory Rating 1999-2000

111.    Deposition of John Higgins, Assistant Principal

112.    May 1, 2000 Classroom Observation Signed by Higgins

113.    School District Policy 412- Evaluation of Professional Employees

114.    January 18, 2001 Classroom Observation Signed by Higgins

115.    May 25, 2001 Classroom Observation Signed by Deshner and Note

116.    February 2, 2001 Letter from Higgins to Plaintiff

117.    2000-2001 Satisfactory Evaluation

118.    2000-2001 Corrective Action Plan (for 2002-2003 School Year)

119.    September 20, 2001 Classroom Observation Signed by Higgins

120.    September 20, 2001 Letter/Packet from Higgins to deLeon

121.    December 3, 2001 Classroom Observation by Higgins

122.    March 7, 2002 Observation Report with Notes

123.    Deposition of Charles Heller, Assistant Superintendent

124.    Maziarz Affidavit

125.    3-12-02 Dr. Mercatoris Excuse

126.    March 13, 2002 Letter from deLeon to Higgins Agreeing to Comply
        with Suggestion

127.    March 18, 2002 Letter from Dolecki to deLeon Re: IME and
        Suspension with Pay

128.    April 25, 2002 Letter from Dolecki to deLeon

129.    53(b). Letter Dolecki, re: March 26, 2002

130.    May 17, 2002 Dr. McFadden Re: Plaintiff Return to Work Without
        Restrictions

131.    March 18, 2002 Unsatisfactory Evaluation

132.    Arbitrator Duff Decision

133.    Corrective Action Plan for the 2002-2003 School Year

134.    October 30, 2002 Letter from Higgins to Plaintiff Relative to
        Teacher Agreement

135.    September 11, 2002 Higgins Observation Report

136.    September 13, 2002 Memo from Higgins to Plaintiff

137.    September 23, 2002 Memo from Higgins to Plaintiff regarding being
        tardy

138.    September 24, 2002 Response from Plaintiff to Higgins Memo and

Class Roster

139.    October 2, 2002 Memo from Higgins to Plaintiff with Attachments

140.    September 30, 2002 Classroom Observation

141.    October 15, 2002 from Parent Re: Plaintiff

142.    November 13, 2002 Letter from Robin Stockton Re: Breach of

Confidentiality

143.    November 19, 2002 Informal Observation and Anecdotal Notes

144.    November 20, 2002 Letter Suspending Plaintiff for Three Days

without Pay

145.    December 19, 2002 Observation

146.    January 3, 2003 memo from Higgins

147.    January 9, 2003 Observation with Anecdotal Notes

148.    Memo Re: Discussion of Observation January 10, 2003

149.    January 31, 2003 Memo from Deshner Re: Student Issue

150.    73(b). February 11, 2003 Memo from deLeon to Deshner, Principal

151.    Student Discipline Memo 2-3-03, 2-25-03, 2-28-03

152.    Revised Corrective Action Plan for 2002-2003

153.    February 11, 2003 Student Discipline Information with Statements

from Students

154.    February 28, 2003 Memo from Higgins to deLeon Regarding Student Situation

and Assigned Readings

155.    February 28, 2003 Memo from deLeon to Higgins in Response to Memo Dated

156.    2-28-03 Concerning Student Situation.

157.     February 28, Memo from Higgins to deLeon Regarding Request for Information

158.     February 28, 2003 Memo from deLeon Regarding Response to Memo
         Dated 2-28-03

159.     February 27, 2003 First Discipline Log of deLeon

160.     February 28, 2003 Second Student Log of deLeon

161.     Higgins' Analysis of Student Log and multiple discrepancies

162.     March 4, 2003 Memo from deLeon to Deshner Regarding Student Information

163.     March 6, 2003 letter concerning suspension with pay of deLeon

164.     March 18, 2003 letter concerning suspension without pay of deLeon

165.     April 2, 2003 Observation Report with Accompanying Anecdotal Records

166.     April 7, 2003 Letter from Parent, Cheryl Albaugh, to Administration Regarding
         deLeon

167.     April 7, 2003 Memo from Deshner to deLeon Regarding Post-Observation
         Conference of April 4, 2003

168.     April 8, 2003 Anecdotal Record of Higgins Regarding deLeon

169.     Deposition of Deborah Englaubagh

170.     April 11, 2003 Professional Evaluation Report of deLeon

171.     April 16, 2003 Suspension without Pay Letter Pending Discharge to deLeon

172.     April 30, 2003 Statement of Charges Letter to deLeon

173.     RBH Affidavit

174.     PHRC Complaint February 2003

175.     Collective Bargaining Agreement

176.     Unlawful Harassment Policy

177.    Anti-discrimination policy

178.    Deposition of John Stanford

179.    Defendants' responses to Interrogatories

180.    Transcript from arbitration hearing before Arbitration Amis and exhibits it utilized.

*Defendants reserve the right to utilize and introduce all other records produced and received in the course discovery.

## IV. EXPERT REPORTS

Defendants have provided Plaintiff with a vocational expert report relative to the geographical analysis of available vocations for which Plaintiff was qualified. Said expert report was prepared by Cyndi A. Miller, MA, CRC, Vocational Case Manager for Concentra Integrated Services.

## V. SPECIAL DAMAGES

Not applicable.

## VI. UNUSUAL LEGAL ISSUES

None. However, both Plaintiff's and Defendants' Motions for Summary Judgment remain pending. Further, a Motion concerning the effect of and admissibility of prior arbitration decisions is pending. Plaintiff also has violated this Court's Order relative to providing tax returns and a Motion for Sanctions is pending. Defendants anticipate filing various motions in limune, including, but not limited to, objecting Plaintiff's provision of medical documentation and other information after the discovery deadline. Defendants anticipate other evidentiary issues being subject of the Motions in

limine, the precise nature of which will depend on this Honorable Court's ruling on the aforementioned Motions pending.

## VII. TRIAL

Bench trial, lasting approximately 5 days for Defendants' case in chief.

## VIII. PLAINTIFF'S EXHIBITS

Defendants hereby grant permission to counsel for Plaintiff to examine Defendants' trial exhibits at the offices of Andrews & Beard.

Respectfully submitted:

ANDREWS & BEARD

/s/ *Roberta Binder Heath*
Roberta Binder Heath, Esquire
Pa. I.D. No. 59798
Counsel for Defendants

3366 Lynnwood Drive
P.O. Box 1311
Altoona, PA 16603-1311
(814) 940-8670

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAUDETTE de LEON )
)
                Plaintiff )
)
                Vs. )    (NO. 05-126E)
)
CRAWFORD CENTRAL SCHOOL DISTRICT )
CRAWFORD CENTRAL SCHOOL BOARD )
)
                Defendants )
)
MICHAEL E. DOLECKI, SUPERINTENDENT )
)
                Defendant )
)
CHARLES E. HELLER, III, ASSISTANT )
SUPERINTENDENT )
)
                Defendant )

## CERTIFICATE OF SERVICE

        I, **Roberta Binder Heath, Esquire**, of the law firm of **ANDREWS & BEARD**, 3366 Lynnwood Drive, P. O. Box 1311, Altoona, Pennsylvania 16603-1311, hereby certify that the foregoing *Defendants' Pretrial Narrative* has been served as follows on this the **17th** day of **July 2006** by mailing same first class United States mail, postage prepaid, addressed as follows:

Caleb L. Nichols, Esquire
P.O. Box 1585
Erie, PA 16507

**ANDREWS & BEARD**

/s/*Roberta Binder Heath, Esquire*
Roberta Binder Heath, Esquire
Pa.Id. No. 50798

3366 Lynnwood Drive
Altoona, PA 16602
(814) 940-8670