IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAUDETTE de LEON,                                )
                          Plaintiff,              )
                                                  )
            vs.                                   ) (NO. 05-126E)
                                                  )
CRAWFORD CENTRAL SCHOOL DISTRICT                  )
CRAWFORD CENTRAL SCHOOL BOARD,                    )
                                                  )
            Defendants,                           )
                                                  )
MICHAEL E. DOLECKI, SUPERINTENDENT,               )
                                                  )
            Defendant,                            )
                                                  )
CHARLES E. HELLER, III, ASSISTANT                 )
SUPERINTENDENT,                                   )
                                                  )
            Defendant                             )
                                                  )
                                                  ) Document:
                                                  ) **DEFENDANTS' BRIEF IN**
                                                  ) **RESPONSE AND OPPOSITION**
                                                  ) **TO PLAINTIFF'S MOTION FOR**
                                                  ) **SUMMARY JUDGMENT**
                                                  )
                                                  )
                                                  )
                                                  ) Filed on behalf of
                                                  ) Defendants by:
                                                  ) **ANDREWS & BEARD**
                                                  )
                                                  ) Roberta Binder Heath, Esquire
                                                  ) Pa.Id. No. 50798
                                                  ) rbheath@andrewsbeard.com
                                                  ) 3366 Lynnwood Drive
                                                  ) Altoona, PA 16602
                                                  ) 814-940-8670

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CLAUDETTE de LEON,                          )
                                            )
                        Plaintiff,          )
                                            )
          Vs.                               )          (NO. 05-126E)
                                            )
CRAWFORD CENTRAL SCHOOL DISTRICT,           )
CRAWFORD CENTRAL SCHOOL BOARD,              )
                                            )
                        Defendants,         )
                                            )
MICHAEL E. DOLECKI, SUPERINTENDENT,         )
                                            )
                        Defendant,          )
                                            )
CHARLES E. HELLER, III, ASSISTANT           )
SUPERINTENDENT,                             )
                                            )
                        Defendant           )

## RESPONSE AND OPPOSITION OF DEFENDANTS TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

AND NOW, come Defendants, by and through their counsel of record, ANDREWS &

BEARD, and file the within Response and Opposition to Plaintiff's Motion and Brief for Summary

Judgment, and in support thereof, hereby incorporate by reference all arguments set forth in

Defendants' own Motion for Summary Judgment, Supporting Brief, Statement of Facts and

Exhibits, and in addition, respond as follows:

## I. SUMMARY OF RESPONSE

In Plaintiff's Motion for Summary Judgment, she focuses primarily on the American's with

Disabilities Act ("ADA") claims relative to alleged disability discrimination, unlawful retaliation in light of

the purported disability or perception thereof, and a related hostile environment claim. Although not

addressed in detail, Plaintiff also references her allegations of race, national origin, and gender

discrimination in portions of her Brief. Finally, Plaintiff asserts summary judgment is warranted

against Messrs. Dolecki and Heller in their personal capacities under the Pennsylvania Human

Relations Act ("PHRA"). None of Plaintiff's arguments has merit.

      Plaintiff is not entitled to summary judgment on any of the above-referenced claims

because she fails to sustain her burden of proof. Plaintiff's claims are baseless and cannot

withstand Defendants' own Motion seeking summary judgment, much less substantiate any judicial

finding of liability or her own behalf. As a matter of law, Plaintiff cannot be considered "disabled"

under the ADA as explained by the Untied States Supreme Court Stet. See, *Toyota Motor Mfg.,*

*Ky., Inc. v. Williams*, 534 U.S. 184 (2002); eg. *Emory v. AstraZeneca Pharmaceuticals*, L.P., 401

F.3d 174 (3rd Cir. 2005). Defendants reiterate their argument raised in both the Motion to Dismiss

and the Motion for Summary Judgment that Plaintiff's purported mental condition does not rise to a

legally cognizable level to be recognized or protected under the ADA. In a May 11, 2006 decision,

the Third Circuit addressed a situation involving a teacher's claim that his post-concussion

syndrome and attendant impairments should be considered a "disability" under the ADA. *Weisberg*

*v. Riverside Township Board of Education*, 2006 WL 1302643 (3rd Cir 2006). In *Weisberg*, the

Court held that the District Court appropriately granted summary judgment in favor of defendants.

Although the Court recognized that Weisberg manifested definitive residual impairments from his

head injury, including fatigue, impaired concentration, loss of memory and other mental functions,

the Court found he was not substantially limited in his cognitive functions so as to be "disabled" within

the meaning of the ADA *Id.* at pp 3-6, citing, *Toyota Motor Mfg., Supra.*

In its conclusion, the Third Circuit emphasized that Wiesberg made "no attempt to show that these

significant difficulties [fatigue and cognitive function impairments] restrict his ability to perform a broad

range or class of jobs". *Id.* at pp 6-7. Thus, the Court found that a mere cognitive impairment was

not tantamount to a "disability". According, the Court did not reach the question of whether Plaintiff had suffered adverse discrimination due to his disability. The case before this Honorable Court is similar because Plaintiff has made no attempt to evidence her mental condition substantially limits her ability to teach or perform any other type of job. One critical distinction between this case and *Wiesberg* relates to Plaintiff's assertion she is not currently impaired and was not impaired by her mental condition from the time she returned form her sabbatical leave in 1999. She merely claims she was "emotionally fragile", an argument which does not provide the requisite supportive evidence meriting protection under the auspices of the ADA.

Further, Plaintiff provides no evidence she was perceived as disabled or legally "documented" as being "disabled" under the ADA's legal definition. *Tice v. Centre Area Transportation Authority, et al*, 247 F.3d 506 (3rd Cir. 2001). *Lit v. Infinity Broadcasting Corp.*, 2005 U.S. Dist. LEXIS 19927 (E.D. Pa. 2005) (mild form of Parkinson's not an ADA disability and mere fact employer aware of condition does not demonstrate employer regarded employee as disabled). The parties do not dispute Plaintiff returned from a medical sabbatical of vague origin to work in 1999 without restriction. In this regard, Plaintiff cannot provide evidence of any nexus between any adverse employment action and alleged disability discrimination. The enumerated affronts either do not rise to the level of adverse employment actions, or are too remote in time to be linked to any arguable discrimination on the basis of a perceived disability. Under any scenario, Plaintiff provides no evidence of disability discrimination because she fails to prove she was either "disabled, or that Defendants ever perceived her as being disabled.

Plaintiff attempts to use her mental condition both as a shield and a sword. On the one hand, she asserts the umbrella of protection, but then when she was disciplined for lashing out and behaving unprofessionally, she claims she is entitled to behave that way because she was being

harassed due to her "mental condition." Nonetheless, in the next breath, she claims that "mental condition" does not interfere with her ability to perform the essential functions of her job. Plaintiff worked as a teacher, not an automaton in a menial job with no public contact. She cannot pass the "red face test" and claim that her emotional meltdown during an administrative meeting, wherein she asserted she could not "go on" and the District's subsequent request for an independent medical evaluation ("IME") to ensure her fitness to return to the classroom amounts to disability discrimination. Clearly, under the law, the District was entitled to require an IME and may have been liable if they had not and Plaintiff had acted-out in a classroom full of children. The law specifies an employer may require an IME under the ADA where that examination is "job-related and consistent with business necessity". 42 U.S.C. § 102 (c) (4) (a), In March 2002, Plaintiff's behavior and her own admissions concerning her inability to "go on" presented a necessitous and job-related issue meriting the requirement of submission to an IME. Being volatile and unprofessional is not tantamount to being "disabled," and thus, afforded ADA's protection.

Similarly, Plaintiff's hostile environment claims fail flat because she fails to elucidate any evidence, other than unsupported allegations and baseless conclusions, that she sustained "severe and pervasive" abuse, discrimination or harassment because she was a member of a protected class. The Defendants' holding the Plaintiff accountable for her actions and requiring she follow specific guidelines to improve her performance do not render her working conditions "hostile" so as to be actionable. In this regard, Plaintiff is unable to provide even one specific incident or specific example of being subjected to racial epithets, gender bias, ethnic slurs, or disability discrimination.

Finally, because Plaintiff does not provide support for her allegations of individual liability against Messrs. Dolecki and Heller to merit their remaining in this lawsuit under the PHRA or any other statute, these individuals should be dismissed.

## II. SPECIFIC RESPONSE TO THE LEGAL ARGUMENTS RAISED

### A. *Plaintiff offers no Evidence her April 2003 Termination was in violation of the ADA*

The Court should be made aware Plaintiff improperly relies on medical evidence as

exhibits, which documents were not produced in the course of discovery in a timely manner.

Further, Plaintiff relies on allegations and reports which themselves are contradictory in nature.

Interestingly, one report not previously received by Defendants was prepared by Dr. Byron Hillin

(Plaintiff's Ex. 17) relative to Plaintiff's seeking a determination of <u>total disability</u> for purposes of

receiving social security disability benefits in March 2005.  Plaintiff filed this federal lawsuit one (1)

month later, April 28, 2005, claiming she was fully capable of performing the essential functions of

her job and requesting reinstatement.  Although Plaintiff asserts Dr. Hillin related her mental

problems to the School District's "harassment" (Plaintiff's Brief at p. 18), Dr. Hillin does not reach

such a conclusion and merely reports what Plaintiff herself contends without himself reaching such

a conclusion.   In direct contradiction to any nexus between Plaintiff's condition and her employment,

Dr. Mercatoris, Plaintiff's own treating physician, in a letter dated *June 23, 2006* (discovery ended

June 7, 2006) states Plaintiff's mental condition has been exacerbated by family problems, not

issues which were work-related (See Exhibit "A").[1]  Perhaps most compelling is that Plaintiff

provides no reports from the time she returned from her medical sabbatical in 1999 until the present

that indicate her mental condition constitutes a legally recognizable "disability" under the ADA.  No

report even suggests she was in need of any accommodation to perform the essential functions of

her job.  She returned to work subject to no restrictions.  Furthermore, Plaintiff offers no evidence she

requested any reasonable accommodation related to her mental health from any Defendant or

even through her own Union from 1999 until her termination in April 2003.  (Defendants' Brief at p.

---

[1] The June 23, 2006 letter from Dr. Mercatoris was attached as an Exhibit to Plaintiff's Pre-Trial
Narrative.

16-19, 21, 25-27 and Fact at ¶ 36). Finally, Plaintiff utterly fails to set forth evidence of any nexus between her termination and her mental health.

In *Parker v. City of Williamsport*, 406 F.Supp. 2d 534 (M.D. Pa 2005), the District Court ruled in favor of the Defendant municipality and held, *inter alia*, that a firefighter's alleged depression was not a disability per se. More critical to the analysis at hand, the Court held that the employer did not have to afford Plaintiff special treatment concerning his employment expectations because of his purported mental condition. Thus, the City's not permitting the Plaintiff to re-take the training course and its ultimate termination of the firefighter for excessive absences was held to be a legitimate business decision and not in violation of the ADA.[2] Thus, summary judgment was entered in favor of the City of Williamsport. In the case at hand, summary judgment is equally appropriate where Plaintiff was simply being held to a professional standard the District had a right to expect from its professional employees.

**B. The March 2002 suspension and negative evaluation was not in violation of the ADA**

Plaintiff also improperly argues the prior arbitration decision relative to the 2001-2002 unsatisfactory evaluation is dispositive in proving disability discrimination. Defendants thoroughly addressed the surrounding circumstances preceding the March 2002 unsatisfactory evaluation and Plaintiff's suspension with pay pending a release to return to work following an IME in its Summary Judgment Motion and Brief. (Defendants' Brief at pp. 17-21). It was Plaintiff's own bizarre and unacceptable behavior which led the District to take the steps it felt were necessary and legitimate to protect its interests as an employer, and more importantly, the interests of the students.

---

[2] Also, similar to the case at hand, Summary Judgment was granted in the City of Williamsport's favor relative to Plaintiff's claim for due process violations when Plaintiff was afforded a hearing relative to his termination, as was Plaintiff in this case.

It is patently false for Plaintiff to assert she was negatively evaluated or suspended for providing a lawful medical excuse. The evidence is clearly to the contrary. (Defendants' Brief at pp. 16-18). Moreover, it is improper to mention and rely on this unsubstantiated evidence about other colleagues, who were "white females", allegedly taking sick leave or medical sabbaticals who were not suspended. Plaintiff did not call any of these three individuals named in the Brief as witnesses, nor did she supply affidavits, personnel records, or provide any supportive or illustrative information about their respective situations. As such, reliance on these unsupported and speculative conclusions is improper.

Submission to the IME was clearly "job-related and consistent with business necessity", 42 U.S.C. § 12102 (c) (4) (a). Plaintiff improperly asserts Defendants must show Plaintiff posed a direct threat to herself or others to require an IME. (Plaintiff's Brief p. 10). Plaintiff confuses the law in this regard and the interpretive regulations of the ADA. Posing a direct threat is merely one instance where an employer can claim business necessity. The Regulations specifically permit periodical "fitness for duty" examinations consistent with a business necessity 29 C.F.R. §1630. 14(C).

## C. *Plaintiff cannot prove retaliation*

In support of her ADA retaliation claim, Plaintiff cites the recent United States Supreme Court decision, *Burlington Northern & Santa Fe Railway co. v. White* 546 U.S. ____ (June 22, 2006). In said decision, the Court held that the proper analysis of retaliation provisions requires a Plaintiff to show that the challenged action was materially adverse and "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination" Id. citing *Rochon v. Gonzales*, 438 F. 3d 1211, 1219 (CADC 2006). Although the scope of what actions constitute permissible "adverse" conduct have arguably broadened under the *White* decision, Plaintiff fails to present an argument as to how this lesser standard of proof applies to the case at hand. Nothing

Plaintiff elucidates relates to her being treated in a disparate fashion or retaliated against because she was a member of a protected class.

The *White* decision has no determinative effect on this case. Plaintiff cannot argue any actions were taken by the Defendants to cause her harm outside of the workplace. *Id* at 8-9 (distinguish from *Rochon*, 438 F. 3d at 1213, where FBI retaliated against employee by refusing to pursue investigation of death threats and *Berry v. Stevenson Chevrolet*, 74 F. 3d 980 (CA 10 1996), where employer filed retaliatory false criminal charges). Further, Plaintiff fails to offer a specific example of any action taken by the Defendants rising to the level of adverse action addressed in *White*. Plaintiff was subject to a suspension *with* pay upon the IME determination. That is not an action which could be deemed to "dissuade" an individual from filing a meritorious claim. Thus, this portion of the broadened interpretation of the anti-retaliation provision is not applicable.

It is also important to emphasize that the *White* decision did not minimize the level of harm required to render an action adverse, and thus, potentially actionable. In addition, the Court stressed an objective standard must be maintained. Justice Breyer emphasized:

> "We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said does not set forth "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998); see *Faragher*, 524 U.S., at 788 (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing"). An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. Se 1B. Lindemann & P. Grossman, Employment Discrimination Law 669 (3d ed. 1996) (noting that "courts have held that personality conflicts at work that generate antipathy" and "'snubbing' by supervisors and co-workers" are not actionable under §704 (a)). The ant-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson*, 519 U.S., at 346. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid.* And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. Se 2 EEOC 1998 Manual §8, p.8-13.

We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective standards in other Title VII contexts, and those same concerns animate our decision here. See, e.g., *Suders*, 542 U.S., at 141 (constructive discharge doctrine); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (hostile work environment doctrine).

We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale*, supra, at 81-82. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. Cf., e.g., *Washington*, supra, at 662 (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch is normally trivial, a non-actionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination. See 2 EEOC 1998 Manual §8, p. 8-14. Hence, a legal standard that speaks in general terms rather than a specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington*, supra, at 661."

Clearly, relative to Plaintiff's taking a sabbatical leave, she can point to no subsequent adverse actions rising to the level of retaliation based on her taking leave. In context, she sustained adverse employment action because she was disabled or perceived to be. No causal connection or temporal proximity exists. Similarly, Plaintiff's providing a medical excuse for three (3) days in March of 2002 after she became emotionally distraught and walked out of an administrative meeting and the Defendants' decision to have Plaintiff undergo an evaluation prior to returning to the classroom does not suggest retaliatory conduct. To the contrary, logic and an objective analysis of these circumstances lead to the irrefutable conclusion that the IME was legitimate and necessary. Thereafter, Plaintiff's termination one (1) year later is supported by the evidence of record, and Plaintiff fails to produce any evidence whatsoever of retaliation based on any legally cognizable "disability" or "perceived" or "documented" disability.

Plaintiff asserts an IME request is evidence to support a "regarded as" claim and cites *Tice*, 247 F.3d 506 (3rd Cir. 2001) to support this proposition. To the contrary, in *Tice*, the Court specifically held that requiring an employee to submit to an IME before returning to work as a bus driver was *not* evidence compelling a finding the employer regarded the employee as disabled. The Court found, under the circumstances, compelling an IME comported with business necessity to ensure the safety of the passengers. *Id.* at pp. 513-515. Here, the question as to the students' safety is compelling and consistent with a business necessity.

**D. Plaintiff cannot sustain her burden of proof under a pretext analysis**

Although Plaintiff objected to her work performance being monitored by her supervisors, which performance was documented and discussed with her, she fails to show why such actions on the part of the District were not legitimate business practices. Further, Plaintiff unsuccessfully fails to provide even a remote evidentiary link between her mental condition and the monitoring of her performance in a way that establishes disability-based discrimination. The areas of concern on the part of the District are well-documented and spanned over a decade. (See Defendants' Brief at p. 12, 16-18). Consistent and recurring failure to exercise appropriate professional judgment, competent classroom management, consistent and fair student discipline, and an ability to interact appropriately and professionally with administration and parents are not extraordinary or unreasonable expectations for a School District to demand from its professional employees. In implementing the Corrective Action Plans, it is evident from the documentation that the Administration was attempting to be objective and provided commendations as merited as well as constructive recommendations. (See Defendants' Brief at pp. 15-17 and Facts at ¶¶ 96-142). Such objective documentation certainly refutes any allegations of discrimination. Plaintiff simply has no

evidence of disparate treatment necessitated to survive Summary Judgment much less to support her own Motion.

The Plaintiff repeatedly seems to confuse the requirements of the Family Medical Leave Act ("FMLA") with those of the ADA in discussing being brought back to an "inferior" position in 1999 because she traveled from class to class and did not teach advanced Spanish classes. No such requirement exists under the ADA. The District had no obligation under the Collective Bargaining Agreement to provide Plaintiff a classroom. The high school lacked space and then was under construction. (Defendants' Brief at p. 26 and Facts at ¶¶ 39-42). Furthermore, Plaintiff cannot establish her position was "inferior" as others not in a protected class with virtually the equivalent seniority level, white, males and females alike, were required to travel as well. (Defendants' Brief at pp. 19, 26-27 and Facts at ¶ 39,45). Second, her teaching certification is for all grades at all levels. (Facts at ¶ 46 and Exhibit at ¶ 33). Simply, Plaintiff's preference for not teaching introductory or lower level classes is simply that, a preference, and not evidence of any "discrimination." Plaintiff's negative evaluations and discipline cannot be tied to any disability or perceived disability and Plaintiff only bolsters Defendants' Summary Judgment Motion by her abject failure to present any evidence other than merely fanciful conclusions to support her claims.

Plaintiff fails to address the confidentiality issue in the proper context. Her copying the PHRC on letters concerning student discipline was a blatant and unnecessary violation of FERPA and School Policy relative to student confidentially. However, the issues relative to confidentiality were not isolated in nature. Inappropriate discussion of student issues was an on-going theme between the parties. (Defendants' Brief at p. 12, 14, 17 and Facts at ¶ 105-112). For instance, the issue with student confidentially was addressed in the overt breach relative to Robin Stockton's son. (Exhibit at ¶ 66). Plaintiff admits the conversation about the students' behavior and grades and work

product occurred in front of the student's classmates. The fact that she finds nothing wrong with the conversation manifests a clear failure to grasp the seriousness of the incident. This ignorance and refusal to accept responsibility for the situation at hand in and of itself speaks volumes.

Plaintiff cites *Jones v. School District of Philadelphia,* 198 F.3d 403 (3rd Cir. 1999) to support her claims for prextext. The *Jones* case actually supports Defendants' position in the case at bar. The Third Circuit affirmed the District Court's granting of Summary Judgment to the School District, finding no pretext existed. The Court found although some adverse employment actions occurred, the employer's actions were not based on race in violation of Title VII or Section 1981. The Court also found that the employee's ultimate termination was not retaliatory. The facts are very similar to the instant case. Like Plaintiff, the inappropriate conduct exhibited by Jones was the subject of discipline, an adverse action that was legitimate and not discriminatory. Similarly, Plaintiff's inappropriate behavior was disciplined accordingly. See also *Ash v. Tyson Foods, Inc.* 546 U.S. ____ (Feb. 2, 2006). (distinguish facts' evidence with Clear Correlation to race).

**E. Plaintiff is unable to establish a hostile work environment**

Plaintiff's inability to establish a hostile environment claim was addressed in Defendants' Motion for Summary Judgment. Nonetheless, certain points in Plaintiff's Motion for Summary Judgment warrant a response. It is clear from the lack of real evidence relied upon by Plaintiff in her Brief that no viable claim exists for a hostile environment under any theory of discrimination-not race, not gender, not national origin, and not pursuant to any legally recognizable disability or "documented disability".

Unlike recent cases regarding a hostile environment claims, such as *Jensen v. Potter,* 435 F.3d 444 (3d Cir. 2006), this case merely illustrates a bitter woman's plight not to face her own personal demons, which do not relate to or stem from work, but rather her own combustible

personal life. Tragic as it may be on some level, her issues do not give rise to any cause of action against Defendants.

Respectfully submitted:

ANDREWS & BEARD

/s/ *Roberta Binder Heath*
Roberta Binder Heath, Esquire
Pa. I.D. No. 50798
Counsel for Defendants
CRAWFORD CENTRAL SCHOOL DISTRICT,
CRAWFORD CENTRAL SCHOOL BOARD,
MICHAEL E. DOLECKI, SUPERINTENDENT,
CHARLES E. HELLER, III, ASSISTANT
SUPERINTENDENT

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAUDETTE de LEON | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| Vs. | ) | (NO. 05-126E) |
| | ) | |
| CRAWFORD CENTRAL SCHOOL DISTRICT | ) | |
| CRAWFORD CENTRAL SCHOOL BOARD | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| MICHAEL E. DOLECKI, SUPERINTENDENT | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| CHARLES E. HELLER, III, ASSISTANT | ) | |
| SUPERINTENDENT | ) | |
| | ) | |
| Defendant | ) | |

## CERTIFICATE OF SERVICE

I, **Roberta Binder Heath, Esquire**, of the law firm of **ANDREWS & BEARD**, 3366 Lynnwood Drive, P. O. Box 1311, Altoona, Pennsylvania 16603-1311, hereby certify that the foregoing *Defendants' Brief in Response and Opposition to Plaintiff's Motion for Summary Judgment* has been served as follows on this the **17th** day of **July 2006** by mailing same first class United States mail, postage prepaid, addressed as follows:

Caleb L. Nichols, Esquire
P.O. Box 1585
Erie, PA 16507

**ANDREWS & BEARD**

/s/Roberta Binder Heath, Esquire
Pa.Id. No. 50798

3366 Lynnwood Drive
Altoona, PA 16602
(814) 940-8670

15